## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Jason Smith on his own )
behalf and others )
similarly situated )

    Plaintiffs, )

Timothy Evans, Chief Judge of the Circuit )
Court of Cook County, Avik Das, William )
Patterson, Jennifer Nunez, Sharon Throw Koc, )
Kate Gailbraith- Verrant,  Cook County )
Juvenile Probation, AFSCME Local 3477, )
AFSCME Council 31, Lloyd Marshall, Steve )
Kasperki, Michael Newman, Roberta Lynch )

    Defendants. )

19CV1539
JUDGE SHAH
MAG. JUDGE WEISMAN

JURY DEMANDED

FILED

MAR 04 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### COMPLAINT

1.    Plaintiff  Jason Smith, on his own behalf and on behalf of other African-Americans similarly

situated and employed or formerly employed as Cook County Juvenile Probation Officers

by the Hon. Timothy Evans, Chief Judge of the Circuit Court of Cook County, Illinois ("Chief

Judge"), contend  that defendant Chief Judge who oversees the Cook County Juvenile

Probation and Court Services Department ("Cook County Juvenile Probation Department") has

discriminated against them or tolerated discrimination of them on the basis of their race through

his subordinates with him and that AFSCME Council 31 , and Local 3477 through their subordiantes
conspired and colluded with the defendant and his subordinates as follows:

A.  Imposing greater or harsher discipline on plaintiffs and other African American officers
than on by non-African-American probation officers for purported offenses of the same character
and degree;

B.  Using and allowing different and harsher terminology to describe the misconduct allegedly
committed by African-American probation officers than for misconduct of the same kind  or
character  allegedly committed by non African-American probation officers;

C.  The Employer and the Union circumvented the language in the collective bargaining agreement
to allow and terminate African American probation officers compared to non-African American
probation officers;

terminate the employment of African-American probation officers, in violation of their union employment contract and their civil rights;

E. attempted to frustrate and deprive the plaintiff from lawfully gaining access to historical records which supported the claims of racially-based disparate treatment and of policies that disparately impacted plaintiff and similar situated individuals, but also the existence of a pattern and practice of carrying out this racially-based disparate treatment; and trying recently to cover-up past racially-based disparate treatment by scapegoating white probation officers through claims of misconduct and discipline.

G. AFSCME Local 3477 and AFSCME Council 31 and their subordinates conspired and colluded with defendant Chief Judge of the Circuit Court of Cook County and his subordinates to deprive and violate the plaintiff and other similar situation individuals' constitutional rights, contractual rights, civil rights and failed to provide fair representation by refusing to respond to emails, process their grievances, enforce the language in the collective bargaining agreement or submit these meritorious grievances for arbitration because of their race and had hostility because of their non support of AFSCME. (Exhibit 1) (Exhibit 12)

H. The Employer committed a breach of contract when they failed to follow the procedures of the collective bargaining agreement and adhere to the language when they disciplined and terminated the plaintiff and other similar situated individuals. (Exhibit 2) (Exhibit 3) (Exhibit 4)

I.The Employer and the Union violated the plaintiff and other similar situated individuals constitutional rights by terminating and allowing the decision to stand for the plaintiff and other similar situated individuals and refusing to forward this matter to arbitration

J.The Union conspired and colluded in the violation of the plaintiff and other similar situated individuals' rights and failed to provide fair representation because of their race, freedom of association and non support of AFSCME by refusing to arbitrate this matter or provide representation.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 730 ILCS 110/13 of the Illinois Probation and Probation Officers Act, and Section 5(b) of the Illinois Civil Rights Act, 740 ILCS 23/5 (b)

3.     This Court has jurisdiction over the federal claims pursuant to 42 U.S.C. sec 2000e-5(f). This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. sec. 1367.

4.     This Court has Jurisdiction of these claims under 42 U.S.C. § 1983, 42 U.S.C. § 1988(a) and (b), 28 U.S.C. § 1331, 28 U.S.C. § 1343, and the First and Fourteenth Amendments to the United States Constitution and 301 Labor Management Relations Act.

5.     Venue is proper in this District pursuant to 28 U.S.C. 1391 because the events giving rise to this claim occurred in this District.

6.     The plaintiffs have met the administrative prerequisites prior to instituting these legal proceedings.

The named plaintiff filed his charge of race discrimination and retaliation before the U.S.

Equal Employment Opportunity Commission ("EEOC"). The Department of Justice issued

a right to sue letter dated December 4, 2018 to the plaintiff against the Chief

Judge of the Circuit Court of Cook County which was received on February 13, 2019.

(Exhibit 5) and the Equal Employment Opportunity Commission ("EEOC") issued a

right to sue letter dated December 19, 2018 against AFSCME Council 31, Local 3477.

(Exhibit 6)

## THE PARTIES

6. Plaintiff Jason Smith, is an African American citizen of the United States and resident of Cook County, State of Illinois. At all relevant times Plaintiff was formerly employed in the capacity of a Cook County Juvenile Probation Officer .

7. Defendant, Hon. Timothy Evans, is Chief Judge of the Circuit Court of Cook County, Illinois. In that capacity he is an "employer" for purposes of Title VII of the Civil

Rights Act and is a "unit" of State government for purpose of Section 5 of the Illinois Civil Rights Act of 2003, 740 ILCS 23/5.

8. Separate from his judicial duties, defendant Chief Judge is as a matter of law administratively responsible for supervising the Cook County Juvenile Probation Department

pursuant to the Illinois Probation and Probation Officers Act, 730 ILCS 110, *et seq.* ("Probation Act"), and the Illinois Juvenile Court Act, 705 ILCS 405/1-1 *et seq*. ("Juvenile Court Act").

9. Although the Chief Judge has authority to delegate to the Director of Court Services matters relating to the employment of juvenile probation officers like the plaintiff. The Chief Judge legally negotiated the removal of this language for the Director, Deputy Chief Probation Officers, supervisors or his subordinates to discipline and investigate probation officers. The Chief Judge is the only person who is allowed to discipline, terminate and investigate the probation officers per the language in the collective bargaining agreement. The Chief Judge has general authority and supervisory responsibility over the actions of the subordinate director and other managerial employees of the Cook County Juvenile Probation Department.

10. As set forth below, the delegation of this responsibility to the Cook County Juvenile Probation Department – while permissible under the Probation Act, the collective bargaining agreement dictates the working conditions of the probation officers – in this case constitutes an abuse of the discretion of the Chief Judge when it results in a pattern and practice of race discrimination in disregard of Title VII and other law.

3

11. Defendant AFSCME Council 31, Local 3477, Roberta Lynch, Michael Newman, Steve Kasperski and Lloyd Marshall ("AFSCME") is and has been a public-sector labor organization within the meaning of the Illinois Public Labor Relations Act, 5 ILCS 315/1, et seq., and the exclusive bargaining representative of, inter alia, employees in the job title of probation officer I, II and III under the Chief Judge.

At all times relevant, Defendant AFSCME Council 31 ("AFSCME 31") is and has been the umbrella organization for various local labor organizations, including AFSCME Local 3477. AFSCME Council has said the contract is between AFSCME Council 31 and the Chief Judge. On belief, it provides resources, representational services, and grievance and arbitration administration services on behalf of DEFENDANT AFSCME Local 3477.

## FACTS

11. Effective December 1, 2012, and continuing in effect, a Collective Bargaining Agreement ("CBA") was entered into between defendant Chief Judge Timothy Evans and the American Federation of State, County, and Municipal Employees ("AFSCME") Council 31, Local 3477 ("The Union"). (Exhibit 3)

12.     The CBA was entered into by defendant Chief Judge Timothy Evans, and not the "Office of the Chief Judge."

13.     The CBA was signed by defendant Chief Judge Evans, with no language stating or implying that his signature was on behalf of the "Office of the Chief Judge".

14.     There exists no "Office of the Chief Judge" as a legal entity described within the Probation Act or the Juvenile Court Act., In a case heard by district Judge Blanche Manning, *Ibarra v. Chief Judge*, No. 04-cv-8076, the Court, in a memorandum opinion dated March 19, 2007, held that:

The Chief Judge is the person who ultimately imposes discipline after a recommendation from the chief probation officer. In case no: 17CH15851, the Chief Judge cites that "the County has no authority to unilaterally select specific non-judicial employees of a court for termination of employment or reduction in force; simply put, the Chief Judge, not the

County, is the employer of non-judicial employees of a court. See Orenic v. Ill. State Labor Relations Bd., 127 Ill. 2d 453, 480 (1989). (Exhibit 7)

15.     The CBA representing the juvenile probation officers contained in pertinent part the following terms:

Article I, Section 2. Employer Obligation:

The union recognizes that this Agreement does not empower the Employer to do anything that is prohibited from doing by law.
* * *

4

Article XX, Section 9 No Discrimination

No employee shall be discriminated against on the basis of race, color, sex, age, religion, disability, national origin, ancestry....
* * *

Article III, Section I. Employer Rights:

The union recognizes that the Employer has the full authority and responsibility for directing its operations and determining policy except as amended changed or modified by this agreement and provided that the Employer recognizes its obligation to negotiate with the Union over changes in the conditions of employment.

Article XIX Disciplinary procedure

Section 4- Pre Disciplinary Meeting

Prior to the imposition of suspension or discharge the Department Head/ Designee shall meet with the employee to discuss the circumstances giving rise to the contemplated discipline. The employer, after presenting all known evidence and reasons for disciplinary action, will afford the employee an opportunity to rebut any evidence or charges against him/her.

**The Historical Pattern, Policy, and Practice**
**of The Defendant Employer In His Delivery**
**of Discipline to The Juvenile Probation Officers.**

Argentry Mitchell

16.    In 2009 Argentry Mitchell, an African-American supervisory juvenile probation officer, made a claim of Title VII race discrimination against the defendant Chief Judge in *Mitchell v. Rohan, et al.*, No. 09-cv-5874, (N.D. Ill). Although Mitchell performed his job in a manner which exceeded expectations, he received a 10-day suspension without pay based on a claim that that Mitchell's supervision of a subordinate was faulty.

17.    Yet a non African-American supervisory probation officer who was also accused of such faulty supervision received only a reprimand.

18.    Defendant Chief Judge was aware of Mitchell's claims, yet took no action to investigate the veracity, abandoned his duty under Illinois law to exercise general supervision over the Department; and permitted managers without his legal background to decide the veracity of evidence, the characterization of the alleged misconduct, and the degree of discipline.

19.    Because of errors made by Mitchell's counsel in the timing of service of the defendants, the district court dismissed the complaint in November, 2010, without ever reaching the merits of Mitchell's claim.

5

20. Plaintiff was employed by the Chief Judge of the Circuit Court of Cook County for fifteen years, from 2003 to 2018. The plaintiff exceeded the performance standards of his employer for fifteen years from 2003 -2018 (Exhibit 27).

A. The plaintiff has represented the Employer at conferences, meetings and as a keynote speaker for various events until he discovered that the Employer was participating in discrimination. Plaintiff was the president and a member of AFSCME Local 3477, AFSCME Council 31 had a collective bargaining agreement with the Chief Judge that stated, "The "Employer shall discipline for just cause" and the "Employer may only impose".

B. An illegal and disparaging document appeared in his personnel file in September 2017 during a deposition. The plaintiff filed a grievance and the Employer and his subordinates claimed it was poor record keeping. The plaintiff had never seen that document. The Employer has a practice and pattern of making this claim when it comes to African Americans. (Exhibit 8) and (See Theodis Chapman, Patrick Nelson and Kenneth Greenlaw) The plaintiff later found another erroneous document in his file after this request in 2018.

C. The plaintiff along with similar situated individuals formed a group called the African American Coalition to challenge the discriminatory practices with the Employer and AFSCME that were impacting African American children and employees (Exhibit 10).

D. The plaintiff appeared for a deposition on or about September 2017 in a lawsuit filed by other African American employees against the Employer and provided testimony and evidence. (Exhibit 11)

E. The plaintiff filed lawsuit 17CV08341 against the Employer for racial discrimination and retaliation.

F. The plaintiff provided information in a lawsuit filed against AFSCME in 17cv08125

G. The plaintiff has assisted others with filing of complaints or have filed complaints or their behalf through the grievance process for racial discrimination and sexual harassment or provided guidance with the EEOC or Illinois Department of Human Rights against both the Employer and AFSCME. (exhibit 29)

H. Plaintiff filed several unfair labor practices charges against the Employer and AFSCME. (exhibit 29)

I. Following the rape and kidnapping of a Chicago State University student by a juvenile delinquent, the Employer gave the perception that this juvenile was being electronically monitored for twenty four hours a day. The Plaintiff notified the public that there was no active twenty four hour supervision of juvenile delinquents and shortly there after the department changed its operation. (exhibit 13)

J. The plaintiff sent an email in 2017, condemning Avik Das for the use of the word nigger and other derogatory language that had no relevance in a meeting. (exhibit 9)

6

K.     AFSCME and their subordinates attempted to remove the plaintiff from office by having a sham trial in which the plaintiff was cleared of 12 of the 13 charges for violation of AFSCME's constitution. AFSCME through its subordinates attempted to intimidate the plaintiff when AFSCME International conducted an audit of the local which was unfounded. The plaintiff remained the president during this term. (exhibit 12)

L.     AFSCME Council 31 and their subordinates, attempted to defame the plaintiff at a conference with derogatory comments because of his advocacy of fair treatment for African Americans. AFSCME Local 3477 through their President Lloyd Marshall, defamed the plaintiff when an email was sent to another bargaining unit member, the executive board and AFSCME Council 31 stating that "it has been proven that the plaintiff has been illegally sending cases to arbitration and that the plaintiff has some character issues". The plaintiff cannot send cases to arbitration as AFSCME Council 31 is the exclusive representative.

M.     On June 7 2018, Avik Das issued a letter to the Plaintiff for termination without due process or a hearing. A letter was sent to AFSCME Local 3477 requesting a filing of the grievance, but the Union never responded. The Employer and subordinate claimed to have terminated the plaintiff.

N.     Plaintiff had a public employment contract by virtue of the Collective Bargaining Agreement that provides the plaintiff may be terminated only for cause; therefore, plaintiff had a property interest in continued public employment. See Arnett v. Kennedy, 416 U.S. 134 (1974). (exhibit 3)

O.     Plaintiff had a public employment contract by virtue of the Collective Bargaining Agreement that provides the plaintiff that the relationship with the employer shall terminate upon resignation, discharge for just cause or retirement. (exhibit 3)

P.     The plaintiff filed his own grievance without union representation only because the union never contacted him. On or about August 22, 2018, Defendant held a sham grievance hearing, plaintiff was not subject to any discipline prior to his discharge nor was the plaintiff afforded the opportunity to present evidence prior to this decision or a pre-disciplinary hearing being held.

Q.     The plaintiff emailed AFSCME Council 31, Roberta Lynch and subordinates and requested that the plaintiff wrongful termination be arbitrated. The plaintiff never received a response. It has been well known that AFSCME held hostility towards the plaintiff because of his advocacy on behalf of his members and of African Americans. (Exhibit 14)

R.     The employer and his subordinates created language contradictory to the contract that was imposed on the probation officers specifically African Americans when it appointed themselves authority that is contradictory to the Illinois Probation Probation Officer Act and the collective bargaining agreement. (See attachment Exhibit 4) (Exhibit 2) (Exhibit 3)

21. Plaintiff is an African-American juvenile probation officer who succeeded as president of union Local 3477. Mr. Smith was previously the vice-president of the local.

22. Jason Smith recognized that claims of racial discrimination to the EEOC, the Illinois Department of Human Rights ("IDHR"), the federal courts, and arbitration were failing due to the failure to allege and document a pattern and practice of racially disparate treatment and AFSCME Council 31 refusal to send these meritorious cases to arbitration despite the language in the contract.

A) The first collective bargaining agreement was signed by Chief Judge Henry Comerford in March of 1990 covering the period 1989 - 1992. (exhibit 4)

B) In the first collective bargaining agreement it outlined specifically the authority granted to managerial staff and created standards in which by the probation officers were subjected. In the second and subsequent collective bargaining agreements, these standards and authority were removed and only included the authority of the Chief Judge to impose discipline and investigate probation officers. (Exhibit 3)

C) AFSCME and it subordinates colluded with Chief Judge Timothy Evans and his subordinates to systemically discriminate and violate the rights of probation officers particularly African Americans when it came to discipline, violation of seniority, performance evaluation reviews and other working conditions.

D) There are arbitration decisions, Illinois Labor Relations Board decision and by his own admission that have defined the Chief Judge as the "Employer".

E) The collective bargaining agreements that were subsequently negotiated had this language removed and replaced with only the Employer would impose discipline.

F) It does not include the language "designee" as mentioned in the lawsuit "17CH15851" or in the collective bargaining agreement to submit these grievances.

G)     Despite the plaintiff plead to AFSCME Council 31, Local 3477 and the Chief Judge to adhere to the language in the collective bargaining agreement, AFSCME Council 31, Local 3477 continued to allow the Chief Judge and his subordinates to systemically discriminate against African Americans by refusing to submit these meritorious cases to arbitration based on the false language that was created whereby the Chief Judge and his subordinates would fabricate charges, impose different penalties onto African Americans or simply ignore the language in the contract. (Exhibit 29)

H)     AFSCME COUNCIL 31, Local 3477 arbitrarily, discriminatingly and unfairly failed to provide representation to African American Probation Officers who received the majority of terminations and suspensions because of their refusal to submit these cases for arbitration based on the language and the discriminatory practices of the Employer and his subordinates.

I)     AFSCME COUNCIL 31, Local 3477 would either stall, not respond or refuse to intervene without justification. The plaintiff had notified AFSCME Council 31, and Local 3477 executive board members of the discriminatory practices of the Employer and AFSCME COUNCIL 31. Local 3477 board members, launched a smear campaign because of the plaintiff's advocacy on behalf of all probation officers particularly African American probation officers because of the enormous amount of disciplined unfairly imposed (exhibit 14).

J)     The plaintiff disseminated a newsletter in 2016 condemning AFSCME Council 31 and the Employer for their treatment of probation officers.

K)     The plaintiff assisted and provided information for a newsletter that condemned AFSCME and the Employer it was disseminated for probation officers to decertify from AFSCME Council 31, Local 3477 in May 2018.

### The Collection of Discipline Records.

23.     Accordingly, in 2012, Jason Smith made his first request for juvenile probation officer discipline records for the preceding five years. (See exhibit 29)

24.     On several occasions the defendant employer refused to turn over the records, citing pre-textual excuses, such as the information was "irrelevant," or could not be found. (See exhibit 29)

9

25.     Finally, Jason Smith filed an unfair labor charge against the defendant Chief Judge, which resulted in a decision compelling the defendant Chief Judge to turn over the records. (See exhibit 29)

26.     In an effort to substantiate the racially-disparate treatment of African-American probation officers, plaintiff and a group of similar situated began to compile data reflecting categories of terminations, suspensions, and written or verbal reprimands among the population of approximately 400 juvenile probation officers for the years 2008 thru 2013. For each of these years the categorical data focused on four groups: African-American, Caucasian, Latino, and Other.

27.     For the year 2008 there were a total of 12 terminations and/or suspensions. Of the 12:

| 10 were African-American | (83%) |
| 1 was Caucasian | (8.5%) |
| 1 was Latino | (8.5%) |
| 0 was Other | (0%) |

For the year 2008 there was a total of one written or verbal reprimand. The one was Latino.

28.     For the year 2009 there was a total of 8 terminations/and or suspensions. Of the 8:

| 7 were African-American | (87%) |
| 0 was Caucasian | (0%) |
| 1 was Latino | (13%) |
| 0 was Other | (0%) |

For the year 2009 there was a total of 5 written and/or verbal reprimands. Of the 5:

| 3 were African-American | (60%) |
| 1 was Caucasian | (20%) |

| | |
|---|---|
| 1 was Latino | (20%) |
| 0 was Other | (0%) |

29. For the year 2010 there was a total of 17 terminations and/or suspensions. Of the 17:

| | |
|---|---|
| 12 were African-American | (71%) |
| 5 were Caucasian | (29%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

For the year 2010 there was a total of 16 written and/or verbal reprimands. Of the 16:

| | |
|---|---|
| 2 were African-American | (12%) |
| 10 were Caucasian | (63%) |
| 4 were Latino | (25%) |
| 0 was Other | (0%) |

30. For the year 2011 there was a total of 18 terminations and/or suspensions. Of the 18:

| | |
|---|---|
| 14 were African-American | (78%) |
| 1 was Caucasian | (5%) |
| 3 were Latino | (17%) |
| 0 was Other | (0%) |

For the year 2011 there was a total of 2 written and/or verbal reprimands. Of the 2:

| | |
|---|---|
| 2 were African-American | (100%) |
| 0 was Caucasian | (0%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

31. For the year 2012 there was a total of 6 terminations and/or suspensions. Of the 6:

| | |
|---|---|
| 5 were African-American | (83%) |
| 1 was Caucasian | (17%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

For the year 2012 there was a total of 2 written and/or verbal reprimands. Of the 2:

| | |
|---|---|
| 2 were African-American | (100%) |
| 0 was Caucasian | (0%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

32. For the year 2013 there was a total of 10 terminations and/or suspensions. Of the 10:

| | |
|---|---|
| 5 were African-American | (50%) |
| 3 were Caucasian | (30%) |
| 2 were Latino | (20%) |
| 0 was Other | (0%) |

For the year 2013 there was a total of 2 written and/or verbal reprimands. Of the 2:

| | |
|---|---|
| 0 was African-American | (0%) |
| 2 were Caucasian | (100%) |
| 0 was Latino | (0%) |
| 0 was Other | (0%) |

33. The total number of suspensions and/or terminations for the years 2008 through 2013 was 71:

| | |
|---|---|
| 53 were African-American | (75%) |
| 11 were Caucasian | (15%) |
| 7 were Latino | (10%) |

0 was Other                          (0%)

The total number of written and/or verbal reprimands for the years 2008 through 2013 was 28:

9 were African-American        (32%)

13 were Caucasian              (47%)

6 were Latino                  (21%)

0 was Other                    (0%)

34.    plaintiff and a group of similar situated individuals also performed an analysis of the labeling utilized by the defendants to describe the misconduct allegedly committed by juvenile probation officers during the period 2008 through 2013. The plaintiff also kept records through his term as president of AFSCME Local 3477 until 2016.

35.    The analysis revealed that the defendant employer would use in its records a descriptive label to describe the character of misconduct for a non African-American probation officer that was less aggravating, but would use a different, more aggravating label for an African-American probation officer who was accused of committing a similar type of misconduct.

36..   In this respect, the plaintiffs' analysis drew attention to the facts that the defendant employer gave disparate discipline to African-American probation officers, in contrast to the discipline meted out to non African-American probation officers who engaged in similar, or even more egregious misconduct.

37..   Instead personally taking corrective action to cure the disparate treatment complained of by the plaintiff, the Chief Judge failed and continues to fail to exercise any meaningful oversight of the Cook County Juvenile Probation Department and has abdicated his responsibility to ensure compliance with federal and state laws on race discrimination and AFSCME refuses to provide fair representation to these probation officers by submitting these meritorious claims for arbitration.

38.. Recently the defendant Chief Judge has permitted or acquiesced to actions of the. Cook County Department of Juvenile Probation in making bad faith claims of misconduct by white or non-African-American probation officers so as to portray past and current disciplinary acts as evenhanded for all probation officers, regardless of race. The defendant Chief Judge allowed Acting Director Avik Das to use the word nigger and other derogatory language during a meeting that had no relevance, but was allowed to remain in his position. See (Exhibit 9)

39. Recently, during a grievance hearing held on behalf of probation officer Edward Walsh, a white officer, one of defendant's managers, William Patterson, stated that if defendant did not discipline Walsh the union (plaintiff) would say that defendant was being racially discriminatory. (Exhibit 15). Previously, actions by white officers did not receive the same discipline or scrutiny as actions by their African-American peers. For example, four white female probation officers, two of whom are presently employed by the defendant, were cited for being romantically and sexually involved with clients – yet none were terminated or prosecuted. (Exhibit 16) In another case, a white probation officer was using county funds to purchase purses, but she was not terminated.

40. In 2014, with the aid of the compelled records, Jason Smith sent a letter to the Civil Rights Division, Employment Litigation Section, Department of Justice, requesting the initiation of an investigation into racial discrimination within the Cook County Juvenile Probation Department. A copy of the letter was sent to defendant Chief Judge.

41. The plaintiff has also directly notified defendant Chief Judge of several examples of the disparate treatment of African-American juvenile probation officers by his subordinates in the Cook County Juvenile Probation Department

42. The defendant Chief Judge unlawfully failed and continues to fail to investigate or take responsibility for the management of the Cook County Juvenile Probation Department and neglects his statutory obligation to exercise general supervision over the Cook County Juvenile Probation Department as set forth 730 ILCS 110/13, which is part of the Illinois Probation Act and have allowed his subordinates to violate this act by designated authority that is not bestowed upon the Deputy Chief Probation Officers or supervisors. AFSCME continues to allow these discriminatory violation along with the violation of the collective bargaining agreement when this authority was negotiated and removed from the collective bargaining agreement giving the Director the authority to discipline.

43.     That section of the Illinois Probation Act states in part that the director of the court services officer or chief probation officer shall at all time be "subject to the general administrative and supervisory authority of the Chief Circuit Judge...[.]"

44.     Furthermore, that section of the Illinois Probation Act states:   "Any disciplinary action taken by the director or chief probation officer shall be in accordance with any State or federal laws that may be applicable...[.]"

45.     Accordingly, as set forth here and in Count II below, the defendant Chief Judge has failed his statutory responsibility under the Illinois Probation Act to ensure that his subordinates are in compliance with such laws, including Title VII of the Civil Rights Act and the Illinois Civil Rights Act of 2003.

46.     These acts have resulted in disparate treatment of juvenile probation officers on the basis of their race, including:

a. Jim Corbett was an Caucasian-American  juvenile  probation  officer  who behavior clearly constituted sexual harassment and racial discrimination. Where these allegations  also  constituted  a violation of department's professional code of conduct, which included his use of profanity and racial slurs directed at coworkers. He was allowed to remain in his position and afforded an opportunity to earn additional pay back if he satisfied certain conditions. He was not offered a last chance agreement despite these serious violations and he supervised African American juveniles that could have had an impact on his judgment for recommendations to the courts. (Exhibit 28)

b. Christen Loeb is a white juvenile probation officer who admitted that she made mistakes which led to another probation officer not being able to complete a social investigation, which led to a minor remaining in custody. Although such errors would have led to a notice of discipline and investigation of an African-American officer, Deputy Chief Probation Officer.

15

Virginia Caulfield stated that she would never discipline Ms. Loeb. Defendant Chief Judge took no action to investigate this claim of disparate treatment whereas Joi Basley was terminated for one mistake. Christian Loeb was never investigated for these alleged mistakes (See Exhibit 17) (Exhibit 24)

c. Lauren Brown.

Lauren Brown is an African American juvenile probation officer who was assigned as a screener and adjudicator within a courtroom. In 2013, she received a three-month suspension for not placing notes into a computer system and received a suspension of 20 days in 2011. A white probation officer would not have received the same discipline. Defendant Chief Judge took no action to investigate this claim of disparate treatment. (Exhibit 18) (Exhibit 17) (Exhibit 19)

d. Kevin Gavin.

Kevin Gavin is a white juvenile probation officer assigned as a field probation officer. On two occasions Mr. Gavin received a written reprimand and a 1.5 day suspension on the accusation that "there are discrepancies" between his time sheets and case logs that could not be reconciled.      If an African-American probation officer committed the same conduct the accusation would be that they "falsified" their time sheets and case logs. Defendant Chief Judge took no action to investigate this claim of disparate treatment . (Exhibit 19)

e. Kalthea Seay

Kalthea Seay is an African-American juvenile probation officer who placed a bid to transfer to another position. Although initially offered the position, defendant Chief Judge refused the transfer because of a claim Seay did not meet performance standards. In 2014, the Cook County Juvenile Probation Department transferred Susan Patla, a white probation officer, to that position, even though she was recently disciplined for testing positive for marijuana. The CBA does not permit a probation officer to transfer if they have been disciplined or do not meet performance expectations. Defendant Chief Judge took no action to investigate of disparate treatment. AFSCME did not submit this for arbitration (Exhibit 20 ) (Exhibit 21)

F. <u>Lena Bailey Holland</u>

Lena Bailey Holland is an African-American juvenile probation officer who received a written reprimand after complaints from her subordinates about her speaking loudly and passionate towards them. The Cook County Juvenile Probation claims that the discipline she received was similar discipline issued in the past. The argument made during this meeting was that the Cook County Juvenile Probation Department violated the contract as the Collective Bargaining Agreement says only the Employer shall impose the discipline. In their response attached to complaint, management conceives that "it is not feasible for the Chief Judge to be personally involved". The collective bargaining agreement signed in on behalf of Cook County Probation Officer says exactly that only the Employer shall impose which is a breach of the contract. Supervisor Bailey Holland still receive this unjustly discipline despite the plaintiff's efforts and was sent to AFSCME Council 31 for arbitration based on this argument, but was never scheduled. (Exhibit 22)

G. Cheryl Anderson

Cheryl Anderson is an African-American juvenile probation officer who constantly notified the Chief Judge of unfair discipline and treatment while employed at the Cook County Juvenile Probation Department. Despite her pleads for assistance from Chief Judge Timothy Evans, Ms. Anderson was forced to take a leave absence, which the department classified as abandonment of her job. Ms. Anderson sent several letter to Chief Timothy Evans, but never received a response. Chief Judge Timothy Evans allowed the discriminatory treatment to effect Ms. Anderson where she had to seek medical treatment because of these issues. The Department launched unfair and biased investigations throughout a certain period of time in order to justify her removal. (Exhibit 23)

H. Paula Williams

Paula William is an African American Juvenile Probation Officer, who complained of racial discrimination after a white probation officer told her, "when you white your are right" and "when you are black you never go back". Ms. Williams reported this incident to the department where the former director threatened her not to go to an outside agency. The department or Chief Judge Timothy Evans investigated her claims until years later where they provided a statement of unfounded. Ms. Williams had a medical emergency and was later terminated by the employer for not returning to work despite her agreement with a representative of the Chief Judge that negotiated her return date. Chief Judge Timothy Evans never investigated or intervened or Ms. Williams behalf because she had contacted the Office of Inspector General to complain of political activity of employees while on duty and complained of racial discrimination.

f. Julie Montgomery.

Julie Montgomery was an African-American juvenile probation officer for 18 years when the following series of events occurred within one year, ending her career: An allegation of misconduct by the Cook County Juvenile Probation Department compelled Ms. Montgomery to accept a "Last Chance Agreement," or else face termination. Despite her pleas of innocence as to the allegation, and the Union's pleas to her that she not accept the Last Chance Agreement, the pressure and fear of losing her job, and therefore her ability to financially support her family, caused her to accept the Last Chance Agreement. After her disciplinary sentence, the Cook County Juvenile Probation Department attempted to construct another reason to create a disciplinary investigation, but it was not sustained; subsequently defendant alleged another claim of misconduct which, although could not be proven, placed enough stress upon her to force her to resign under duress in what was a constructive discharge. Defendant Chief Judge took no action to investigate of disparate treatment.

g. Joi Basley.

Joi Basley was a 17-year African-American juvenile probation officer who accepted a four-month suspension after she was accused of falsification by the Cook County Juvenile Probation Department and accepted a "Last Chance Agreement" against the advice of the Union. Under the threat of termination, she accepted these terms because of her financial condition and need to support her family. When she returned to work after the suspension the Department now accused her of a lie on her timesheet because she mistakenly added one name to her "white" time sheet. Even though she admitted the mistake to her supervisor, wherein she explained that she

erroneously failed to properly complete the itinerary she thought she had completed that date, the Cook County Juvenile Probation Department terminated her employment. All of the above described events happened within one year, ending Ms. Basley's career. Defendant Chief Judge took no action to investigate this claim of disparate treatment. AFSCME did not submit this matter for arbitration (Exhibit) 24)

The creation of the last chance agreement between AFSCME Local 3477, AFSCME Council 31 and the Defendant created a sub contract that deprived African Americans of their rights under the collective bargaining agreement. AFSCME and the Defendant knowingly imposed and agreed with this secondary contract only on behalf of African American Probation Officers. Never the less, a white employee, who is not a probation officer was offered a second and third last chance agreement despite the serious allegations against him and remains employed with the defendant. Therefore, using their discretion to ignore the just cause clause and the secondary language in the last chance agreement.

h. Tonnette Jones.

Tonnette Jones was an African-American juvenile probation officer, who after being accused of by the defendant of "failure to discharge her duties," "making false statements" and other various false accusations created by the Employer and his subordinates was terminated from her position. Where as the Employer found that Ms. Christina Grunauer, a white probation officer, was found that there were 20 days that the grievant signed in to the system, but produced no work product, and there were an additional 5 days that the grievant did not sign in or out, therefore management could not verify if she was present at work on those days. Management issued the grievant a five day suspension for failure to do work during work hours, citing that it is a public safety concern. Ms. Jones had to file a discrimination complaint against both the Employer and AFSCME in case number 18cv01319 and continues to cite concerns in her lawsuit of her being unfairly and discriminatingly represented by the Union after they submitted her case for arbitration. Defendant Chief Judge took no action to investigate this claim of disparate treatment and AFSCME continues to not provide fair representation. (Exhibit 25) (Exhibit 26)

47. The discipline records for the years 2008-2013 reveal:

    a. The use of different and more benign language or terminology to classify the same type of misconduct when attributed to a white officer in contrast to stronger terminology or language for the same type of misconduct when attributed to an African-American officer;

    b. The inordinate number of investigations initiated by the Cook County Juvenile Probation Department when a complaint is made against an African-American probation officer, as contrasted to the white officers;

    c. The number of "temporary suspensions" initiated by the Cook County Juvenile Probation Department for African-American probation officers, as contrasted to the white officers for similar conduct; and

d. A greater and more severe amount of discipline imposed by the Cook County Juvenile Probation Department upon the African-American probation officers than imposed upon the white officers for similar conduct.

**Anthony Jordan**

48. Anthony Jordan was employed as a probation officer from April 1998, to February 4, 2015, when he was terminated for alleged misconduct, by purportedly failing to properly monitor and respond to electronic monitoring alerts of a particular youth assigned to his Electronic Monitoring ("EM") Unit caseload on September 10, 2014.

49. Two days later, Mr. Jordan completed a form to notify the Juvenile Court judge assigned to the youth's case of the alleged violation by reason of the alerts.

50. Cook County Juvenile Probation Department has repeatedly stressed to all probation officers assigned to the Electronic Monitoring Unit that the priority was to first expend efforts to have the youths released from custody or temporary detention and placed on EM – and *then* to review the electronic monitoring system daily, and complete paperwork.

51. Anthony Jordan did his best to accomplish all those duties as his down time would permit.

52. In this case the youth had left his home on multiple occasions, in violation of the EM order.

53. Based upon the order of priorities, Jordan believed that he had discretion concerning when to redirect a youth's behavior, and therefore to expend time in admonishing the youth, rather than immediately fill out the report.

54. Although Anthony Jordan had no history of discipline for failing to properly monitor and respond to EM alerts, the Cook County Juvenile Probation Department had

20

previously forced Jordan in 2011 into an unfair "Last Chance Agreement," based upon a prior

claim of poor work performance.

55.     The same Cook County Juvenile Probation Department then utilized this Last
Chance Agreement to support the termination of Jordan's employment. Defendant Chief Judge,

did not supervise or exercise his authority in making the unfair and unlawful decision to

discharge Jordan.

56.     The action based on the alleged misconduct was racially discriminatory, since
Jordan's conduct was not uncommon among probation officers assigned to the EM Unit.

57.     Other probation officers who may be late in making their reports are not
terminated.     Anthony Jordan was terminated because he, as an African-American, was a

convenient the scapegoat for the Department which had to blame someone for the fact that this

youth committed a crime while on electronic monitoring, and that this crime received a

substantial amount of Chicago-area press, TV, and radio coverage. It was easier to select or

single out Jordan for this role because of his race.

### Kenneth Greenlaw

58.     Kenneth Greenlaw began his career as a juvenile probation officer in
1999. Although he had no prior disciplinary record, Mr. Greenlaw was terminated on April 22,

2014, on the allegation that he misused an assigned gas card by making gas purchases outside of

documented work hours and failed to submit gas receipts and vehicle inspection forms at certain

times.

59.     Mr. Greenlaw was assigned to the Intensive Probation Services Unit ("IPS"), an
assignment which required the use of a vehicle and constant travel to maintain frequent contact

with youths on probation.

60.     Mr. Greenlaw defended these charges by denying that he misused the gas card and that his geographic area covered the south and southwest Cook County regions and also required travel outside the region for the purpose of meetings and picking up youths at the main Juvenile Court building (1100 S. Hamilton Avenue, Chicago). He also admitted to failing to do the paperwork because he believed that it was the least priority.

61.     Nonetheless, despite his impeccable record and long service, plaintiff Greenlaw was terminated by defendant Cook County Juvenile Probation Department, which stated that Mr. Greenlaw's "integrity had been compromised to the degree that [he could] no longer be entrusted to perform any duties related to this department."

62.     Here again, the Department used an African-American as a scapegoat in connection with criticisms of record keeping.

63.     Plaintiff Greenlaw was not the only probation officer who failed to complete his gas card paperwork, but he was the only probation officer terminated. Defendant Chief Judge neither supervised nor exercised his authority in making the decision of discipline. AFSCME refused to submit his case for arbitration.

64.     Plaintiff Theodis Chapman has a Bachelors Degree in Social Work, and a graduate degree Masters of Arts Degree (Justice Studies). Mr. Chapman was appointed a juvenile probation officer in 2003, where he has continued to work to the present, and consistently has received performance appraisals which "Exceed Standards." He has no history of discipline. Mr. Chapman adds to his work by volunteering to work with disadvantaged youth in the Chicago community, and organizing and planning events with families, such as "back to school" rallies. For these efforts Mr. Chapman has received commendations and merit bonus payments.

22

65.     Nevertheless, attempts by Theodis Chapman to become a supervisor in the juvenile probation department have met with defeat and frustration. In November 2007, and again February, 2012, Mr. Chapman took the supervisors written examination. To pass the exam a minimum score of 70 is required, yet Mr. Chapman was advised that he scored on those dates a 44, and a 57, respectively, despite diligent preparation for the examinations. On both occasions Mr. Chapman requested copies of his test and the scoring method, but he has been denied.

66.     Plaintiff Chapman alleges that a disproportionate number of African-American probation officers, some with advanced graduate degrees, are advised that they supposedly failed the supervisory examination, but have not been afforded the opportunity to review the examination results and the scoring methods. Chapman further alleges that African-American probation officers are discriminated against in this manner by reason of their race, and that the designing of the supervisory examination is either intentionally, or in effect discriminatory in excluding African-Americans from supervisory positions.

67.     Defendant Chief Judge neither supervised nor exercised his authority in making the decision to investigate.

### Patrick Nelson

68.     Patrick Nelson is a college graduate, and prior DuPage County Deputy Sheriff who worked as a principal of an alternative school and was appointed a juvenile probation officer in 2001. Both .plaintiffs Nelson and Chapman filed grievances with their union claiming that they were denied compensation for time spent doing job-related training out-of-state, when white probation officers did receive compensation for similar out-of-state training. The grievances were denied by the defendant.

69.     In 2015, the Cook County Juvenile Probation Department eliminated positions occupied by Nelson and Chapman in the "Jumpstart" program under guise of reorganization.

23

70.     Rather than allow them to exercise their seniority and be reassigned to other positions within the "Jumpstart" program, the Cook County Juvenile Probation Department moved Nelson and Chapman to a field position, outside their experience within the "Jumpstart" program and without adequate training, in gross derogation of established standards.

71.     This reassignment was taken in retaliation against Nelson and Chapman for their formal complaints of race discrimination and their association in defense of their right to be free from race discrimination.

72.     Defendant Chief Judge neither supervised nor exercised his authority in making the decision of discipline. AFSCME refused to submit this case for arbitration.

## Class Allegations

73.     Plaintiffs seek to certify a class of all African-American juvenile probation officers employed at any time from January 1, 2008 to the present.

74.     Pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, plaintiff seek to certify such a class for purpose of declaratory and injunctive relief.

75.     Plaintiff meet the prerequisites for class certification pursuant to Rule 23(a).

76.     The class of African-American juvenile probation officers employed in this period is sufficiently numerous that it is appropriate for class certification and that joinder of all affected persons is impractical.

77.     The pattern and practice of racial discrimination, breach of contract and failure to provide fair representation aggrieves all African-American juvenile probation officers, puts all class members at risk of unfair discipline, working conditions, enforcement of the collective bargaining agreement, fair representation, breach of contract and raises common questions of fact and law.

78.     Finally, plaintiff will adequately represent the interests of the class.

24

79.    Certain additional non-injunctive monetary relief and other individual relief is sought by the named plaintiff individually in this action and are not presented as class claims at this time and are presented individually. All of the defendants are sued in their official and individual capacity. The common class claims of plaintiffs for injunctive and declaratory relief are typical of those of the class pursuant to Rule 23(a), Federal Rules of Civil Procedure.

## COUNT ONE
## Title VII of the Civil Rights Act of 1964

80..  Plaintiff incorporate and restate each paragraph 1 through 79, as if fully set forth in this Count and in the Counts below.

81.    By the acts set forth above, including the disparate and harsher discipline of plaintiff and other African-American juvenile probation officers when compared with non African-American juvenile probation officers for purported offenses of the same character, and for other disparate and discriminatory treatment described above, and by tolerating such actions by subordinates without redress or correction, the defendant employer Chief Judge and AFSCME have violated the rights of plaintiffs and other class members under Title VII of the Civil Rights Act of 1964, as amended, to be free of racial discrimination in their employment.

82..  As a direct and proximate result of defendant Chief Judge's violation and AFSCME of Title VII as set forth above, plaintiff and other class members have incurred loss of employment, loss of employment opportunities, emotional and mental suffering and other injury, and loss of their statutory rights to be free of such racial stigmatization.

WHEREFORE, Plaintiffs pray this Court to:

A. Declare that by such actions, and in violation of Title VII of the Civil Rights Act of 1964, the defendant Chief Judge and AFSCME has engaged in or tolerated a pattern and practice of racial discrimination in the supervision and discipline of plaintiffs and other African-American juvenile probation officers who are under the authority of the Chief Judge and AFSCME as the exclusive bargaining representative.

B. Certify a class of all African-American juvenile probation officers pursuant to Rule

23(b)(2) of the Federal Rules of Civil Procedure, for purposes of injunctive and declaratory relief

against the defendant Chief Judge and AFSCME.

C. Enjoin the defendant Chief Judge and AFSCME from engaging in or tolerating further violations of Title VII of the Civil Rights Act.

D. Direct that the defendant Chief Judge individually review any disciplinary action

against the plaintiff and class members and certify that such discipline is appropriate and non

discriminatory under Title VII before such discipline is imposed in the first instance. Allow the

Federal Court to appoint an monitor and sign off on any discipline by the Chief Judge. Direct the

Chief Judge and AFSCME to cease with the violation of the collective bargaining agreement and

adhere to the language legally negotiated. Enjoin the defendant Chief Judge and AFSCME from

engaging in or tolerating further violations of the 301 Labor and Management Relations Act or a

breach of contract.

E. Reinstate plaintiffs Jordan, Jones, Basley, Montgomery, Williams, Anderson and Greenlaw, to their employment as juvenile probation officers with full back pay, pension benefits, interest and any other relief sought.

F. Award compensatory damages to plaintiff, Smith, Jones Jordan, Greenlaw, Williams, Anderson, Basley and Montgomery arising from their unlawful discharge, constructive discharge or resignation.

G. Grant damages to plaintiff Nelson and Chapman and other African American juvenile

probation officers who were denied compensation for out-of-state job training and retaliated against for advocating for fairness.

H. Direct defendant Chief Judge Evans to allow plaintiffs to review the results and

scoring methods used for the written examination for supervisor and allow the federal court to appoint a monitor.

I. Direct defendant Chief Judge Evans to submit the written examination for supervisor

to review by an independent outside expert approved by this Court to ensure that such written

examination is appropriately job related and non-discriminatory within the meaning of Title VII.

J. Require the Chief Judge Evans to remove or expunge discipline of African-American

officers for purported or actual misconduct when non African-American officers have received less or

no discipline for offenses of the same character, including but not limited to the discipline

imposed on Emily Pierce, Lauren Brown, Julie Montgomery, Joi Basley Kenneth Greenlaw, Paula Williams, Cheryl Anderson , and such other persons who suffered unfairly from the racially discriminatory system of discipline.

K. Grant plaintiff and similar situated their damages, costs, and attorney's fees and other relief as deemed

appropriate by this Court.

## COUNT TWO
## Retaliation in Violation of Title VII of the Civil Rights Act of 1964

83.by the facts alleged above, the defendants has retaliated against plaintiff Smith for exercising his rights under Title VII.

WHEREFORE, Plaintiffs pray this Court to:

A.      Award plaintiff costs, attorney's fees, and such other relief as is required or appropriate to remedy the harm they suffered, including monetary damages.

B.      Removed all the adverse action from his personnel file and appoint a federal monitor to provide supervision of the process of the probation officers working conditions and discipline.

C.      Grant plaintiff and similar situated their damages, costs, and attorney's fees and other relief as deemed appropriate by this Court.

## COUNT THREE
## (Violation of Illinois Probation Act)

84. In violation of 730 ILCS 110/13 of the Illinois Probation Act, and by the actions set forth here above and below, the defendant Chief Judge has abandoned or abdicated his statutory duty to exercise meaningful "administrative and supervisory authority" over the managerial employees of the Department of Juvenile Probation to ensure that "disciplinary action" of the plaintiff and class members "shall be in accordance with any State or federal law that may be applicable."

WHEREFORE plaintiff pray this Court to:

A. Direct the defendant Chief Judge to review and approve any disciplinary action that may be recommended initially and that it is approved and supervised by a Federal Monitor.

B.      Direct the defendant Chief Judge to allow an outside third party, appointed by the Federal Court, to conduct unbiased investigations into claims of sexual harassment, racial discrimination, retaliation and violation of policies committed by managers and probation officers and make a recommendation for discipline.

27

C. Direct the defendant Chief Judge to pay for and engage in a mediation program, appointed by the Federal Courts, with the plaintiff and similar situated and take other actions that will address the discriminatory pattern and practice of discipline against juvenile probation officers approved by a Federal monitor.

D. Grant plaintiff such other relief as may be appropriate by this Court.

## COUNT FOUR
### (Illinois Civil Rights Act of 2003)

85. In violation of 740 ILCS 23/5(b), and by the acts set forth above, the defendant Chief Judge and AFSCME have used or allowed "criteria and methods of administration" that had the "effect of subjecting individuals" including plaintiff and other class members "to discrimination because of their race...[.]"

86. As set forth above and below, the defendant Chief Judge has abdicated his duty to exercise meaningful supervision of the discipline imposed by the Cook County Department of Juvenile Probation and has abused his discretion in failing to exercise appropriate supervision and delegating the decisions to impose discipline when he knows or should know of the racially discriminatory pattern and practice of such discipline.

WHEREFORE plaintiffs pray this Court to:

A. Require that the defendant Chief Judge adopt "criteria and methods of administration" to prevent the imposition of racially disparate discipline, refraining from the current "hands-off" method of administration, and prospectively and retroactively review the propriety and lawfulness of discipline before such discipline is imposed. Reinstate the method and requirements used in the first contract with Judge Henry Comerford absent granting the Director the authority. Allow the appointment of a Federal Monitor to supervise the conditions that probation officers are subjected and allow an outside entity to investigate and recommend disciplinary action for employees including managerial when there is a complaint filed with the approval of the federal monitor, commission or committee.

B. Grant plaintiffs their costs, legal fees and such other relief as may be appropriate by this Court.

28

## COUNT 5
## BREACH OF CONTRACT AND VIOLATION OF 301 LABOR and MANAGEMENT RELATIONS ACT.

plaintiff incorporate and restate each paragraph 1 through 79, as if fully set forth in this Count and in the Counts below. In violation of the collective bargaining agreement and by the acts set forth above and below, the defendant Chief Judge and AFSCME have breach their duty to adhere to the language in the contract and provide fair representation that have the "effect of subjecting individuals" including plaintiff and other class members "to discrimination because of their race...[.]"

As set forth above and below, the defendant AFSCME has abdicated their duty to exercise fair representation and meaningful supervision of the collective bargaining agreement with their discriminatory practices for discipline and other working conditions imposed by the Cook County Juvenile Probation Department and the Chief Judge.

WHEREFORE plaintiff pray this Court to:

A. Require that the defendant AFSCME to submit meritorious cases to arbitration supervised by a federal monitor.

B. Enforce the language in the collective bargaining agreement supervised by a federal monitor.

C. Reimburse the plaintiff and similar situated with their dues money.

D. Grant plaintiff and the class their costs, legal fees and such other relief as may be appropriate by this court.

## COUNT 6
### Retaliation in Violation of First Amendment and other Constitutional Rights

In violation of the plaintiff's first amendment rights, other constitutional rights and by the acts set forth above, the defendant Chief Judge and AFSCME have conspired and colluded to violate the plaintiff's rights because of his advocacy for fairness for probation officers, particularly African American probation officers, by notifying agencies of these civil rights violations, filing complaints of racial discrimination with appropriate agencies and through the grievance process. The defendant alleged that the plaintiff was terminated, but did not afford him due process according to the constitution and the collective bargaining agreement which impacted the plaintiff's employment, reputation and ability to earn a living wage.

WHEREFORE plaintiff pray this Court to:

A. A temporary restraining order, preliminary injunction and permanent injunction, ordering and requiring the Chief Judge to suspend all investigations, discipline, review of performances in order to allow the Federal Court to appoint a monitor to review and investigate claims of a violation of policies by probation officers, claims of racial discrimination and sexual harassment, seniority violations and performance reviews .

B. Allow the Federal Courts to appoint a monitor to supervise the activities of management and AFSCME when it comes to the working conditions of the probation officers

C. Allow the Federal Court to create a task force, committee, commission or unbiased third party to investigate the claims file for discipline against managers and probation officers

D. Allow the Federal Court to appoint a monitor to supervise the investigations of probation officers of a violation of the employer's policies, claims of sexual harassment, harassment and racial discrimination.

E. Grant plaintiff and the class their costs, legal fees and such other relief as may be appropriate by this Court.

By:  Jason Smith

Dated:  March 1, 2019
Jason Smith
3515 W. Ceramk
312-965-9052
jason_smith54@yahoo.com

Ex (1.)



**We Make America Happen**

March 17, 2015

Lee Saunders

Laura Reyes

Vice Presidents
Ken Allen

Ken Deitz, RN

Greg Devereux

Danny Donohue

David R. Fillman

Michael Fox

Kathleen Garrison

Mattie Harrell

Johanna Puno Hester

Danny J Homan

Melvin Hughes Sr.

Salvatore Luciano

John A. Lyall

Kathryn Lybarger

Roberta Lynch

Christopher Mabe

Glenard S. Middleton Sr.

Ralph Miller

Gary Mitchell

Victoria E Mitchell

Douglas Moore Jr.

Frank Moroney

Michael Newman

Henry Nicholas

Randy Perrairs

Steven Quick Sr.

Lillian Roberts

Eddie Rodriguez

Lawrence A. Roehrig

Joseph P Rugola

Eliot Seide

Mary E Sullivan

Braulio Torres

Jeanette D Wynn

Jason Smith, President
AFSCME Local 3477
3515 W. Cermak
Chicago, IL 60623

Dear Brother Smith:

I am writing because it appears that you have misunderstood a telephone conversation you had with LeeAnn Jackson of the Constitutions and Charters division of my office. I am providing this information to you and your executive board in order to avoid any further confusion.

- Local 3477 is chartered as an affiliate of Council 31. Local 3477 cannot directly affiliate with the International Union;
- The International Union cannot and will not be sending your local a revised charter reflecting a direct affiliation with the International Union;
- The Illinois Labor Relations Board certification of the bargaining unit names Council 31 as the exclusive bargaining representative for Cook County Juvenile Probation Officers;
- The collective bargaining agreement is between AFSCME Council 31 and the Chief Judge of the Circuit Court of Cook County, not between Local 3477 and the Chief Judge. The local union cannot engage in direct dealings with the employer on its own or through an outside attorney hired by Local 3477;
- I do not recommend that Local 3477 set up its own political action committee, separate and distinct from AFSCME's PEOPLE Program.

I hope this clears up any confusion that may currently exist. In my experience, Council 31 is extremely knowledgeable regarding all legal issues pertaining to contract administration and I would encourage you to raise any further questions you have with your Council staff.

In solidarity,

William Lurye
General Counsel

WL:lb

cc:    Roberta Lynch, Executive Director, AFSCME Council 31
       AFSCME Local 3477 Executive Board

American Federation of State, County and Municipal Employees, AFL-CIO
Office of the General Counsel

TEL (202) 775-5900    FAX (202) 452-0556    WEB www.afscme.org    1101 17th Street, NW, Suite 900 Washington, DC 20036-5687

Exhibit 2

Collective Bargaining Agreement

between

American Federation of State, County and Municipal Employees

(AFSCME) Council 31 -- Local 3477

Representing Juvenile Probation Officers

and

The Chief Judge of Cook County

Effective

December 1, 1989 thru November 30, 1992

each side. The job of the task force will be to advise the
employer on the elements and areas of concern that should be
considered in the promotion process. The task force may not
actually draft questions to be used in any test. Recommendations
to the Employer will be decided by a minimum of four favorable
votes of the task force.

    B. The Employer may adopt such promotion policies and
processes as it deems appropriate and are in accordance with this
Agreement, taking into consideration the recommendation of the
Special Task Force.

    The Employer shall adopt promotion policies and processes in
which the basic principle underlying demonstrable superiority will
be merit.

## ARTICLE XIX
### DISCIPLINARY PROCEDURE

#### Section 1.  General Statement:

A.   This policy shall apply to all employees in the bargaining
unit.

B.   The term "employee," as used throughout this procedure,
shall also be understood to include any recognized employee,
representative or organization.

#### Section 2.  Purpose:  To provide a mechanism whereby disciplinary
action will be initiated, including discharge, in a series of

progressive steps, depending upon severity of the rules
infraction.

#### Section 3.  Policy:

A.   Disciplinary action is taken when an employee has committed
an infraction of a department policy/procedure, as specified
in the Personnel Manual or other behavior deemed
unacceptable.

B.   Disciplinary action is timely, progressive and corrective,
and is based upon the commission of the same, similar or
other infractions.

C.   All discipline shall be given only for just cause. The
level of disciplinary action and/or degree shall be
appropriate to the infraction including, if appropriate, a
consideration of the following:

    1.   Documentation of the employee's past conduct.
    2.   Whether or not the employee was adequately warned and
        counseled of the consequences of his conduct.
    3.   Length of service.
    4.   Seriousness and circumstances of the particular
        offense.
    5.   The Department's practice in similar cases.
    6.   Motives and reason for violating a rule.

D.   Discipline will include only the following steps:

working. These representatives will be identified to the Chief
Judge/Designee and on each occasion will first secure the approval
of the Chief Judge/Designee to enter and conduct their business so
as not to interfere with the operation of the Employer and such
approval shall not be unreasonably withheld. The Union will not
abuse this privilege, and such right of entry shall at all time be
subject to general Employer department rules applicable to
non-employees.

Section 8. Impartial Arbitration: If the Union is not
satisfied with the Step 4 answer, it may within thirty (30) days
after receipt of the Step 4 answer submit in writing to the Chief
Judge notice that the grievance is to enter impartial arbitration.
If the two parties fail to reach agreement on an Arbitrator within
ten (10) days, the Chief Judge and Union may request the State
Labor Relations Board, American Arbitration Association or the
Federal Mediation and Conciliation Service to provide a panel of
arbitrators. Each of the two parties will confer within 7 days of
receipt of the panel to alternately strike one name at a time from
the panel until only one shall remain. The remaining name shall
be the Arbitrator. The Union and the Chief Judge will make
arrangements with the Arbitrator to hear and decide the grievance
without unreasonable delay. The decision of the Arbitrator shall
be binding.

Expenses for the Arbitrator's services and the expenses
which are common to both parties to the arbitration shall be borne
equally by the Employer and the Union. Each party to an
arbitration proceeding shall be responsible for compensating its
own representatives and witnesses.

-29-

The Arbitrator, in his/her opinion, shall not amend, modify,
nullify, ignore or add to the provisions of this Agreement. The
issue or issues to be decided will be limited to those presented
to the Arbitrator in writing by the Chief Judge and the Union.
His/her decision must be based solely upon his/her interpretation
of the meaning or application of the express relevant language of
the Agreement.

The decision of the Arbitrator made in compliance with the
foregoing shall be final, shall be in writing, shall include the
reasons for each finding and conclusion, and shall be rendered
within thirty (30) days following the date of the last hearing
conducted by the Arbitrator unless an extension of such period is
agreed to by the Chief Judge and the Union.

-30-

each side. The job -
employer on th
conside

tion, while progressive, may begin or advance
specified above, dependent upon the nature of
-tion.

7. Disciplinary action may only be appealed in accordance with
the Grievance Procedure.

## Section 4. Disciplinary Action Form:

The Disciplinary Action Form is to be completed for all steps of
Disciplinary Action.

A. The Disciplinary Action Form is completed as set forth
below:

- 1. The infraction and previous Disciplinary Action are
  stated.
- 2. A warning is stated that committing the same, similar,
  or other infraction will result in further Disciplinary
  Action up to and including discharge.
- 3. The Disciplinary Action Form is given to an employee by
  his immediate supervisor in a conference discussing the
  Disciplinary Action.
- 4. The form is signed by the immediate supervisor, The
  Department Director and the employee. If the employee

-41-

refuses to sign the form, the refusal is noted in the
space designated for the employee's signature.

- 5. The form shall state that the employee's signature does
  not constitute agreement with the disciplinary action
  taken.

B. When the Disciplinary Action is for Discharge, Section 2 of
paragraph A does not apply.

C. Copies of the Disciplinary Action Form are distributed as
follows:

- 1. The employee.
- 2. The Personnel Office.
- 3. The recognized employee representative.

## Section 5. Representation:

1. Representation at Investigatory Meetings

Employees shall be entitled to Union representation at all
investigatory meetings or when he/she reasonably believes
that she/he will be disciplined as a result of such meeting
The Employer shall notify the Union as well as the employee
of such interview prior to the meeting.

B. Pre-Disciplinary Meeting

There shall be a pre-disciplinary meeting for a written
reprimand, suspension or discharge. The Employer shall
notify the Union and the Employee of a pre-disciplinary

-42-

2. Commission of an infraction defined as Major Cause.

B. After reviewing all relevant documentation such as previous Disciplinary Actions, performance evaluation, etc., the Department Director/Designee holds a conference with the employee and the Union, and any other persons deemed necessary. Either during the conference or not later than fourteen (14) calendar days following the conference, the Chief Judge/Designee approves and directs one of the following:

   1. That employee is to be suspended for more than thirty days or discharged.

   2. That the employee is given lesser Discipline Action than recommended and directs implementation.

   3. That the employee is not given Disciplinary Action and directs that all record of the recommendation to suspend or discharge, whichever is applicable, be removed from the employee's personnel file.

C. The decision of the Chief Judge/Designee is distributed as set forth below:

   1. The employee, via registered or certified mail, telegram, or mailgram to his last known home address.

   2. The Personnel Office.

   3. The recognized employee representative or organization, if any.

Section 10. Temporary Suspension:

A temporary suspension may be given prior to any step of Disciplinary Action when the presence of the employee is dangerous

-45-

or will result in the disruption of operations or when Major Cause is alleged and time is needed to conduct an investigation. In no case shall a temporary suspension exceed fourteen (14) days without pay. If no further action is begun by the Employer against the employee within that period, the employee shall be reinstated with full backpay for the temporary suspension period and the employees file will be expunged if no wrong doing is found.

### ARTICLE XX
#### MISCELLANEOUS

Section 1. Transportation: Employees shall be reimbursed for use of their personally owned automobile according to the provisions of the Cook County Travel Expense Reimbursement Policy.

Section 2. Meeting Rooms: The Employer agrees to make available conference and meeting rooms for Union meeting during non-working times unless to do so would interfere with the operating need of the Employer.

Section 3. Personnel Files: Upon written request to the Department Personnel Office, an employee may inspect his/her personnel file at any time mutually acceptable to the employee and employer.

-46-

meeting and then shall meet with the employee involved and
inform him/her of the reasons for such contemplated
disciplinary action, including any names of witnesses and
copies of pertinent documents. Employees shall be informed
of their rights to Union representation and shall be
entitled to such, if so requested by the employee, and the
employee and Union representative shall be given the
opportunity to rebut or clarify the reasons for such
discipline. Reasonable extensions of time for rebuttal
purposes will be allowed when warranted and if requested.
If the employee does not request Union representation, a
Union representative shall nevertheless be entitled to be
present as a non-active participant at any and all such
meetings.

## Section 6.  Verbal Reprimand:

A.   A verbal reprimand reprimand is given for an infraction of a
     minor nature and/or where previous counseling has taken
     place.

B.   A verbal reprimand is documented on a Disciplinary Action
     Form and given to an employee in a conference.

C.   The Disciplinary Action Form is completed and distributed as
     previously specified.

D.   Any records of verbal discipline imposed shall be removed
     from an employee's personnel file, and may not be used in
     further discipline, if more than one year passes without the
     employee receiving one additional disciplinary action.

-43-

## Section 7.  Written Reprimand:

A.   A written reprimand may be given for an infraction more
     serious in nature and/or where there has been previous
     disciplinary action.

B.   The procedures specified in Section 6, B and C above shall
     also apply for Written Reprimands, but that the conference
     under B above shall include Union representation.

## Section 8.  Suspension for Thirty (30) Calendar Days or Less:

A.   Suspension for thirty (30) calendar days or less may be
     given for an infraction very serious in nature or where
     there has been previous progressive disciplinary action.

B.   The procedures specified in Section 7, B above shall also
     apply for suspensions of thirty (30) calendar days or less.

## Section 9.  Suspension More than Thirty Days or Discharge:

The Department Director has the authority to recommend the
suspension for more than thirty days or discharge of an employee,
subject to review and approval by the Chief Judge/Designee.

A.   Suspension for more than thirty days or discharge is invoked
     for just cause, which is defined as follows:

     1.   Repetition of the same or similar infractions or a
          combination of infraction for which there has been
          progressive Disciplinary Action.

-44-

Exhibit 3

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## AFSCME COUNCIL 31, LOCAL 3477

## REPRESENTING THE JUVENILE PROBATION OFFICERS

## AND

## THE CHIEF JUDGE OF THE

## CIRCUIT COURT OF COOK COUNTY

**Effective:**
December 1, 2012 through November 30, 2017

1

Kevin Hickey

Exhibit 4

- Flanagan
- Ibarra
- Labor Management
- Adult Probation
- Juvenile Probation - Contract
- Adult Probation - Contract

# Disciplinary Process Checklist

## Reference Manual for Managers

Juvenile Probation and Court Services

Circuit Court of Cook County

September 2009

Step V: __Notice of Right to Appeal__

Goal: The goal of this step is to notify the employee of the right to appeal management's decision regarding discipline/corrective action to a higher authority or an impartial person/body. Both the process (compliance with policy and procedure) and the outcome (imposition of discipline/corrective action) may be challenged.

Steps to Remember:

Written notification to the employee of the right to appeal should be part of the discipline/corrective action document, usually in the conclusion.

The step that the employee should follow should be described according to policy. For example, "You may appeal this decision to the Office of the Chief Judge within ten (10) working days."

**Seek direction from your supervisor!**

**Step I. Starting Point:**

Guiding Principle:

* Is there reliable information or reasonable suspicion that some action or inaction has occurred that is in conflict with our vision, mission, values, rules/policies/procedures, etc.? **Trigger**

* Level of suspicion should coincide with the employee's record and/or the potential negative impact of the action/inaction

  **Probabilities & Consequences**

  **Seek direction from your supervisor!**

**Step II.       Investigation:**

Goal of Process:

* To collect data to determine whether the information from Step I is accurate.

Goal of Meeting with Employee:

* To present preliminary information in real-time to the employee and ask the employee to clarify all actions/inactions that allegedly occurred.

[N.B. It is important to note that the investigation process is not limited to meetings with the affected employee. Interviews with relevant third parties, documentation and data review, etc. may also be a part of the process. Investigation also includes written response to employer inquiries.]

The employer, prior to the imposition of a suspension or discharge, must have convened a pre-disciplinary meeting.

There may be a need for further investigation (go back to Step II) if the employee/Union offers new information/evidence that was not considered.

**Do not discuss discipline decision and seek direction from your supervisor!**

Step IV:    Imposition of Discipline

Goal:  The goal of this step is to present the discipline decision to the employee and the Union. When appropriate, a meeting should be scheduled to collaborate with the employee on the development and implementation of a corrective action plan.

Guiding Principles:

All performance-related discipline decisions must have, and most conduct-related discipline decisions should have a corrective action plan

- Plan should be collaboration with the employee.
- Plan should address the underlying cause(s) of the issue, should have specific objectives, should have specific timeframes and should be reasonably achievable.

Level of discipline must be consistent with policy and practice, and should consider all relevant factors.

Discipline decision must be in writing.

3. Written notes of the meeting should be kept. These notes should include verbal statements by the employee and/or the union steward. Observations should also be documented. All notes should be signed and turned in as a part of a packet outlining each step of the process. **Documentation**

All inquires directed to an employee may be characterized as investigatory.

The process of investigation requires engagement

- Be respectful, non-judgmental, and supportive/strength-based as appropriate
- Use open-ended questions and reflective responses
- Listen and seek understanding about situation and underlying causes
- Reinforce when employee is honest, accountable and taking responsibility
- Read non-verbal behavior
- Seek clarification regarding discrepancies/inconsistencies
- Take your time in the discussion
- Document discussion
- Have a colleague witness if the issue is major or if there is a history of difficulty with the employee.

The process of investigation requires interpretation of evidence

- Eliminate biases
- Do not be influenced by your own emotions
- Admit and own management and department errors.

**Seek direction from your supervisor!**

**Step III:** **Pre-disciplinary Meeting**

Goal: The goal of a pre-disciplinary meeting is to present to the employee any and all allegations of a violation of policy/ procedure, etc. It is also to provide the employee the opportunity to explain or refute the allegations or to provide any contrary evidence or mitigating factors.

Guiding Principles:

- During the pre-disciplinary process, respect for the employee and his/her value to the organization, strengths and accomplishments should be stressed. **Working alliance**

- Information should be presented clearly and succinctly.

- Active listening is extremely important.

- Documentation of employee statements is evidence of the Employer's just consideration, the employee's commissions and the employee's veracity.

- Generally take the most direct and most simple route, unless it would cause damage to an employee who may not require discipline. **Working alliance/$**

- Conduct a discreet cost-effective investigation that could rule out any wrongdoing on the part of the employee before taking steps that may cause undue stress or hardship to an employee. **Working alliance/$**

- The amount of time/resources spent on investigations should be based on probabilities and potential consequences. **$**

6

Step to Remember:

1. ify employee of the meeting.

2. less than two (2) working days or to meeting, provide employee and Union with date, time, ation of meeting. Also provide the reasons for the contemplated disciplinary action and the names of witnesses and copies of pertinent documents. g time and place should be timely and convenient and not unduly disrupt work.

3. A bargaining unit employee, who i subject to the investigation, is entitled to the presence of a union representative.

   - The employee may choose to waive the right to representation for this part of the discipline process. **[We should consider using a waiver form]**
   - Union representative allowed to be present as non-active participant if employee does not request representation.

4. first part of the meeting with the employee should focus on informing the employee of the reason for the contemplated discipline and to provide the employee with information used as the basis for potential corrective action.

5. second part of the meeting should focus on:
   - the employee's statements refute/rebut the allegations
   - any factors the employee of in mitigation.

6. The balance of the meeting is seeking consensus where possible and clarifying where there are differences.

7. Written notes of the meeting should be kept. These notes should include verbal statements by the employee/union steward. Observations should also be documented. All notes should be signed and turned in as a part of a packet outlining each step of the process.

7

Guiding Principles:

- During the investigation process, respect for the employee and his/her value to the organization, strengths and accomplishments should be stressed. **Working alliance**

- Complete a thorough investigation in a cost-effective manner. **$**

- Generally take the most direct and most simple route, unless it would cause damage to an employee who may not require discipline. **Working alliance/$**

- Conduct a discreet cost-effective investigation that could rule out any wrongdoing on the part of the employee before taking steps that may cause undue stress or hardship to an employee.
  **Working alliance/$**

- The amount of time/resources spent on investigations should be based on probabilities and potential consequences. **$**

Steps to Remember:

1. Written notification to the employee regarding the scheduling of the meeting should be given. Meeting time and place should be timely and convenient and not unduly disrupt work.

2. A bargaining unit employee, who is subject to the investigation, is entitled to the presence of a union representative during any investigatory meeting with the Employer. The employee may choose to waive the right to representation for this part of the discipline process. **[We should consider using a waiver form]** Nevertheless, the Employer shall notify the Union of such a meeting. **[A verbal or written directive to the employee to provide a written response is not a "meeting"]**

Steps to Remember:

1. Written statement to the employee of the discipline decision must be given. The discipline document must include a clear and concise statement describing the discipline and the reasons for the discipline. The document should also:

   a. describe the nature of the offense;

   b. provide clear expectations of the employee for future behavior;

   c. include clear admonishment for future occurrences of same or similar behavior/problem; and

   explain the employee's right to appeal (see Step V below).

2. If a meeting is scheduled to impose discipline and/or to craft a corrective action plan, a bargaining unit employee is entitled to the presence of a union representative.

   a. Notify the employee of his/her right to union representation and provide the employee with an opportunity to notify the Union of the meeting.

   The employee may choose to waive the right to representation for this part of the discipline process. **[We should consider using a waiver form]**

3. Written notes of the meeting should be kept. These notes should include verbal statements by the employee and/or the union steward. Observations should also be documented. All notes should be signed and turned in as a part of a packet outlining each step of the process.

4. Notify employee of right to appeal within discipline write-up.

5. Union employees utilize the contract grievance procedure.

6. Non-union employees utilize the department grievance procedure.

4

## Introduction

Our employees are our most valuable asset. We move toward our vision and accomplish our mission through and with our employees. They have chosen a noble profession and deserve our best effort.

Employees will need support, instruction, training and guidance. Every interaction with an employee is an opportunity to further advance our mission and move toward our vision. We need to model the department values at all times, but most especially when we are trying to solve performance and conduct problems.

- Our motives must be honorable and true to our mission

- Our approach needs to be respectful and courteous

- We need to listen

- We need to be accurate

- We need to be honest

- We need to demonstrate fortitude

### General Information:

A investigatory meeting may be unnecessary if the facts are cl and not in dispute, however this is rarely the case.

Generally discipline will be progressive; however, based on the severity of the offense or infraction involved, the employer need not sequentially apply the types of discipline stated in the Union contract.

All meetings (investigation, pre-discipline, discipline) must be documented. This includes those which do not result in disciplinary action. Copies of all information must be forwarded to the director of human resources.

Attending any of the aforementioned meetings shall not result in a loss of pay for the employee or the union representative.

The process as outlined above does not contractually apply to probationary employees; however it rise to provide due process probationary employees as we

Deputy Chief Probation Officers may issue Verbal and Written reprimands and may suspend an employee for up to three (3) work days. The Director of Juvenile Probation and Court Services must be notified in advance of any suspensions to be imposed. Only the Director may issue suspensions for more than three days and may discharge an employee.

Exhibit 5



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7003 0500 0002 5072 0346

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

December 04, 2018

Mr. Jason Smith
c/o Jemelle Cunningham, Esquire
Cunningham-Lad Law Group
161 N. Clark Street
Suite 1600
Chicago, IL 60601

Re: EEOC Charge Against Circuit Court of Cook County
No. 440201806892

Dear Mr. Smith:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Eric S. Dreiband
Assistant Attorney General
Civil Rights Division

by Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Chicago District Office, EEOC
Circuit Court of Cook County

7003 0500 0002 5072 0346

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**   Exhibit 6

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:   Jason Smith
3515 W. Cermak
Chicago, IL 60623

From:   Chicago District Office
500 West Madison St
Suite 2000
Chicago, IL 60661

☐   *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2018-08134 | Shuwn Hayes,<br>Investigator | (312) 869-8036 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐   More than 180 days have passed since the filing of this charge.

☒   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*   12/19/18

Enclosures(s)

**Julianne Bowman,**
**District Director**

*(Date Mailed)*

CC:   AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEE COUNCIL 31
Judith Rivlin
General Counsel
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL
EMPLOYEES, AFL-CIO, OFFICE OF THE GENERAL COUNSEL
1101 17th Street, N.W. SUITE 900
Washington, DC 20036-5687

AMERICAN FEDERATION OF STATE, COUNTY, AND
MUNICIPAL EMPLOYEE COUNCIL 31, LOCAL 3477
C/O LEE SAUNDERS
PRESIDENT
205 N. MICHIGAN, SUITE 2100
CHICAGO, IL 60601

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[X] EEOC | 440-2018-08134 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| Jason Smith | (773) 242-4658 | 1978 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3515 W. Cermak, CHICAGO, IL 60623 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEE | 501+ | (312) 641-6060 |

| Street Address | City, State and ZIP Code |
|---|---|
| COUNCIL 31, LOCAL 3477, 205 N. Michigan Suite 2100, CHICAGO, IL 60601 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE [ ] COLOR [ ] SEX [ ] RELIGION [ ] NATIONAL ORIGIN
[ ] RETALIATION [ ] AGE [ ] DISABILITY [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 06-07-2018 | 09-18-2018 |

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a member of the above named Respondent. In or around February 2018, I was constructively discharged from my employment with the Cook County Circuit Court. On or about June 7, 2018, I received noticed that I had been discharged. I have attempted to grieve this matter, but have been refused union representation. Other Black union members have been treated similarly.

I believe that I, along with a class of other union members, have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Digitally signed by Jason Smith on 09-18-2018 12:42 PM EDT | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

### PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf; your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

### IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

### ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

### DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 869-8220** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests). *__Be sure to include your name, address, phone number and EEOC charge number with your request__*.

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

\*    **Before filing a lawsuit, but within 90 days of your receipt of the Right to Sue, or**

\*    **After your lawsuit has been filed. If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.**

If you are the *__Respondent__* you may be granted access to the file *__only after__* a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by **Aloha Print Group, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300.** You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, **it is recommended that you first review your file** to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent **in its entirety** to the copy service, **and you will be responsible for the cost.** Payment must be made directly to **Aloha Print Group,** which charges 15 cents per page.

(Revised 04/20/2016, previous copies obsolete)

Exhibit 7

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

TIMOTHY C. EVANS, as Chief Judge )
of the Circuit Court of Cook County, )
                                    )
        Plaintiff, )
                                    )
        v. )
                                      )     Case No.
COUNTY OF COOK, a body politic and )
corporate, TONI PRECKWINKLE, )          2017CH15851
President of the Cook County Board of )          CALENDAR/ROOM 04
Commissioners, and MARIA PAPPAS, )          TIME 00:00
Treasurer of Cook County, )           Injunction
                                    )
        Defendants. )

## VERIFIED COMPLAINT FOR ENFORCEMENT OF THE CHIEF JUDGE'S ADMINISTRATIVE ORDER AND FOR INJUNCTIVE RELIEF

Plaintiff, Timothy C. Evans, as Chief Judge of the Circuit Court of Cook County, (the "Chief Judge," "Circuit Court," or "Court"), by and through his attorney, Lisa Madigan, the Illinois Attorney General, and, pursuant to Illinois Supreme Court Rule 21(d), hereby petitions the Court for entry of an order compelling the Defendants to comply with the Chief Judge's General Administrative Order No. 2017-09 (hereinafter referred to as "Administrative Order"). Under Rule 21(d), Plaintiff seeks an injunction against Defendants, compelling them to take whatever action is necessary to comply with the Administrative Order, including the provision of sufficient financial support to ensure the proper operation of the court system, as detailed in said order, along with enjoining Defendants from taking any action in processing the termination, separation, or layoff of any employee of the Circuit Court without approval from the Chief Judge, or his designee. In support thereof, the Plaintiff states the following:

## JURISDICTION AND VENUE

1. The courts have the authority to compel the expenditure of resources necessary to allow the judicial branch to perform its constitutional responsibilities. *Jorgensen v. Blagojevich,* 211 Ill. 2d, 286, 312 (2004); *People ex rel. Bier v. Scholz,* 77 Ill. 2d 12, 19-20 (1979).

2. Moreover, a County has no authority to unilaterally select specific non-judicial employees of a court for termination of employment or reduction in force; simply put, the Chief Judge, not the County, is the employer of non-judicial employees of a court. *See Orenic v. Ill. State Labor Relations Bd.,* 127 Ill. 2d 453, 480 (1989).

3. Pursuant to Supreme Court Rule 21(d), the circuit court has jurisdiction to compel a person or agency to comply with an administrative order of the chief circuit judge. Ill. Sup. Ct. Rule 21(d).

4. The circuit court also has the authority to grant a temporary restraining order and a preliminary or permanent injunction after proper notice has been provided to all parties. *See* 735 ILCS 5/11-101, 11-102.

5. Venue in Cook County is proper pursuant to 735 ILCS 5/2-101 because the Chief Judge's administrative order was entered in Cook County, Illinois, and the Defendants from whom the Chief Judge seeks compliance are located and conduct their official duties in Cook County, Illinois.

## PARTIES

6. Plaintiff, Timothy C. Evans, is the Chief Judge of the Circuit Court of Cook County, who, in his capacity as chief circuit judge, entered Administrative Order No. 2017-09, dated November 30, 2017. (Exhibit 1).

RE: Smith Step 4 Grievance Response - Outlook                    Exhibit 8        Page 1 of 4



Type here to search | Entire Mailbox ⌄ |🔍          Privacy  📖   📋 Options  ❓  Sign out

| Mail | 📧 Reply | 📨 Reply All | 📇 Forward | 🗑 ✕ | Close |   ↪ ✈ 📧 |

**Calendar**

**Contents**

📁 **Deleted Items** (154)
📁 **Drafts** [209]
📁 **Inbox** (3715)
📁 Junk Email
📁 Sent Items

Click to view all folders ▼

📁 Archive
📁 Cabinet
📁 Eugene Boatright
📁 **Katrin Valencia** (18)
📁 Keith Sevick
📁 Lena Bailey
📁 Lloyd Marshall
📁 **Rose** (29)
📁 **William Patterson** (2)
📁 alicia ortiz

📁 Manage Folders...

## RE: Smith Step 4 Grievance Response
Jason Smith (Juvenile Probation)

**Sent:** Thursday, December 21, 2017 11:49 AM
**To:**  Katherine Verrant (Chief Judge's Office); William Patterson (Juvenile Probation)
**Cc:**  Avik Das (Juvenile Probation); Donna Neal (Juvenile Probation); Laura Kelly (Chief Judge's Office); Timothy Evans (OCJ); Theodis O Chapman (OCJ)

Good Afternoon Kate,

While I am in receipt of the decision from the Chief Judge/ Designee to adhere to collective bargaining agreement. It is very disturbing and troubling to have had discovered this illegal document in my personnel file. I understand the Chief Judge takes its record keeping responsibilities seriously, but this was not a mistake of record keeping, but what appears to be an attempt to discredit my name during the course of deposition. As it was stated in this meeting, the document presented during this deposition was not a document I have ever seen beforehand and I was not aware this document ever existed. The evidence presented and offered at the meeting should call into question the information provided to the Chief Judge when complaints and grievances are filed. The complaints and grievances that have been filed by either myself or others are not without merit and should be noted to the Chief Judge or his designee. Employees of the Chief Judge are not filing complaints and grievances to cause problems or to waste time. These Probation Officers already have enough trouble dealing with the violence and the problems that are impacting the families within these underserved communities while ensuring their own safety is not compromise. We would rather have our attention focus on more important issues rather than appearing at the Chief Judge's office advocating on our own behalf because of a violation of the law or the contract.

It is honor to be an employee of the Chief Judge, but to witness my rights and others violated is very troubling and lowers the morale within this department knowing it could easily be resolved. It is my hope the Chief Judge will look further into

the department to ensure these officers' rights are protected and respected.

I am requesting to review my personnel file to ensure this document has been removed and if additional documents should be removed as well. Please let me know when I can review my personnel file. I am requesting to review my personnel file at an available time next week if possible.

I hope you have a happy holiday

Probation Officer Jason Smith

From: Katherine Verrant (Chief Judge's Office)
Sent: Wednesday, December 6, 2017 2:54 PM
To: William Patterson (Juvenile Probation); Jason Smith (Juvenile Probation)
Cc: Avik Das (Juvenile Probation); Donna Neal (Juvenile Probation); Lloyd Marshall Jr. (Juvenile Probation); Laura Kelly (Chief Judge's Office)
Subject: Smith Step 4 Grievance Response

Good afternoon Jason,

On November 29, 2017, we held a Step 4 grievance meeting regarding the grievance that you filed. Present at the meeting for management were Avik Das, Acting Director of Juvenile Probation and Court Services; and William Patterson, Director of Human Resources for Juvenile Probation and Court Services. Present for the grievant were Aaron Campbell, Supervisor; and Jason Smith, the grievant. The grievance alleged a violation of Article XIX and Article XX of the CBA, and the remedy requested was that any documents contained in the personnel file that should have been removed are removed, and the grievant is treated in a non-discriminatory manner in order to be made whole.

The Office of the Chief Judge takes its record-keeping responsibilities seriously, and works to ensure compliance with the Illinois Public Labor Relations Act; relevant Collective Bargaining

Agreements; and any individual settlement
agreements. With that in mind, in order to resolve
your grievance, I have reviewed your personnel file,
and asked William Patterson to remove any documents
that should not be in the file at this time. Please
make an appointment to view your personnel file, and
let me know if there are any additional documents
that you believe should be removed.

Thank you,
Kate


Kate (Galbraith) Verrant
Labor and Employment Relations Counsel
Cook County Office of the Chief Judge
69 W. Washington, Suite 3300
Chicago, Illinois 60602
(312) 603-1903


From: William Patterson (Juvenile Probation)
Sent: Tuesday, December 05, 2017 10:46 AM
To: Jason Smith (Juvenile Probation)
Cc: Avik Das (Juvenile Probation); Donna Neal
(Juvenile Probation); Katherine Verrant (Chief
Judge's Office)
Subject: Step 4 Grievance


Good morning Jason,


I have removed the documents from your personnel
file as directed by Office of the Chief Judge
designee Kate Verrant. At your convenience, please
take an opportunity to review your personnel file
and let me know if there are still documents that
you feel still need to be removed.


Thank you.

William Patterson
Director of Human Resources
Cook County Juvenile Court
(312) 433-6527

Connected to Microsoft Exchange

Probation); Jack Laddie Jr. (Juvenile Probation); Buford Arrington (Juvenile Probation); Cedric A Bell (Juvenile Probation); Jeffrey Haynes (Juvenile Probation); Dion Strowhorn (Juvenile Probation); Shedrick Golden (Juvenile Probation); Anthony Lewis (Juvenile Probation); Sylvester H Brown (Juvenile Probation); Edwin R Paschal (Juvenile Probation); Marcus Spencer (Juvenile Probation); Willie J Nance (Juvenile Probation); John Worthy (Juvenile Probation); Gabriel Redic (Juvenile Probation)
**Subject:** Meeting

Good Afternoon Avik,

I am writing this email to express my dismay to the content of the letter or survey that was read in the meeting to the African American Men Coalition and the nigger word that was included to describe the incident in this letter. The nigger word and the other highly offensive words could have been censored in order to make your point or to provide clarity regarding the issues that were being discussed. Majority of the Officers who attended this meeting were shocked not only to this particular word that was used in this meeting, but was highly offended to the additional offensive language that was shared with these Probation Officers especially the female officers. The nigger word used during this conversation was highly degrading and impactful to those who may have been a victim of feeling discriminated or members of their family. It is my opinion that this meeting was scheduled not to provide feedback or clarity to the reasons why these programs that are impacting African American children are being dismantled, but to intimidate these Probation Officers. I am speaking on my own behalf as an African American employee of this department who continue to witness the disrespect of African Americans in this department that this sensitive language was used. As an African American, I cannot tolerate to hear this language used in my presence. I have witnessed others who have suffered the treatment of those who have tried to oppress, discriminate and to witness the Acting Director of this department used this language in the presence of African Americans is highly offensive. I am requesting a copy of this survey or letter that was read in this meeting that had no relevance, to the issues that were bought to you and your management team to be released. I am hopeful many of these officers will provide you with feedback at a later date, but listening to their concerns and their feedback, I do not believe many of these officers will provide a response. I hope to be provided a copy of this letter or survey read in this meeting.

Jason Smith
President/ AFSCME Local 3477

🏛 ⚐
Connected to Microsoft Exchange

TO: AVIK DAS
ACTING DIRECTOR
JUVENILE COURT OF COOK COUNTY
2245 W. OGEN 2ND FLOOR
CHICAGO, IL. 60612

DEAR ACTING DIRECTOR DAS;

We, as African American Cook County Juvenile Probation Officers and Supervisors are sending you this petition of great concern. Regrettably, Our Juvenile population consists of over 85% African American youth. This at risk population is in desperate need of holistic intervention including productive resources in the community. We believe that environmental stress is the main culprit for the multitudes of broken homes, poor performance in schools, gang and drug activities, as well as the senseless killings of our youth and innocent citizens particularly in the African American community.

We also believe that it's of great urgency that we in Juvenile Justice work together for a common goal to make a positive impact mainly on the African American Juvenile population, and it's imperative that the staff at Juvenile Court reflect the percentage of the clients we serve in the community.

It's crucial that the youth and their families come in contact with Juvenile Probation Officers who are a reflection of their community and understand the cultural and necessities of that community.

Through our observation here at Juvenile court, the leadership role of African American Probation Officers is slowly shrinking and we're restricted to less meaningful positions with no say so or input in the decisions of our children's welfare in the community.

Enclosed with this letter, is a petition and signatures of our co-workers who support this endeavor.

AFRICAN AMERICAN MEN COALITION OF JUVENILE PROBATION OFFICERS

CC: CHIEF JUDGE TIMOTHY C. EVANS
COOK COUNTY PRESIDENT, TONI PRECKWINKLE
COOK COUNTY COMMISONER, ROBERT STEELE
AFSCME LOCAL #3477 JASON SMITH

BENNIE BLAIR-SUPERVISOR (312) 433-4943
AARON CAMPBELL-SUPERVISOR (312) 433-6538
MICHAEL HODGES-PROBATION OFFICER II (312) 433-6867

As concerned African-American Cook County Juvenile Probation Officers, we've converged and convey our disapproval of the dismantling of valuable Juvenile programs that were under the leadership of experienced professional African-Americans. The programs referred to are CIP, Jumpstart, Mentoring, Retail Theft, Project Chance, and just recently, the renowned Street Dreams Program.

The Street Dreams creator's job responsibilities were reduced and restricted to limited contact with stakeholders and his clientele.

We wholeheartedly believe that the absence of African-Americans in Juvenile programming particularly male African-American Probation Officers would be detrimental to the youth in our communities and send a negative message to those we are privileged to serve.

Our children's lives matter and we believe that positive encouragement is essential to our youth and we have always encouraged our youth to have positive attainable goals and aspirations, but we also realize that positivity has to be counter balanced with the reality of accountability and corrective action.

We stand against the policies that are being implemented and the usurping of veteran's experience and exclusion. We therefore are signing this petition as a protest to the aforementioned actions. We are open to discussion with the hope of resolving these pertinent issues that affect the morale of our staff as well as the youth in the Cook County area

| Name | signature |
|------|-----------|

1. _Patrick Neber_
2. _Titeo Chapman_
3. _James Worthington_
4. _AARON R. Campbell_
5. _Eric Brady_
6. _Bron Hill_
7. _Michael J. Hodges_
8. _Bennie Blair_
9. _Ken Ollins_
10. _Lance Hopkins_
11. _Tyrone Hutson_
12. _Edmund L. Alexander Jr_
13. _Pamela Hudson_
14. _LaTerrian Hill_
15. _Lisa Hart_
16. _Jason Smith_
17. _Jack Laddie_
18. _Buford Arrington_
19. _Cedric Bell_
20. _Jeffery Haynes_
21. _Dion Strowbridge_
22. _Shedrick Golden_
23. _James V. Smith_
24. _Brandon Morton_
25. _Fredrick Roberts_
26. _Caffey J.T._

27. Howard Brown

28. Ku Brow

29. HENEY FRACTION

30. Edwin R Paschal

31. Fernando JoHNSON

32. WiLLiE NANCE

33. John Worthy

34. Gabriel Redic

35. _____

36. _____

37. _____

38. _____

39. _____

40. _____

41. _____

42. _____

43. _____

44. _____

45. _____

46. _____

47. _____

48. _____

49. _____

50. _____

51. _____

52. _____

53. _____

27. _____
28. _____
29. _____
30. _____
31. _____


32. _Michael M. Parker_____
33. _chris Sutter_____
34. _[signature]_____
35. _William Span_____
36. _____
37. _____
38. _____
39. _____
40. _____
41. _____
42. _____
43. _____
44. _____
45. _____
46. _____
47. _____
48. _____
49. _____
50. _____
51. _____
52. _____
53. _____

Ex 10

## STATE OF ILLINOIS
### CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION
## MEMORANDUM

TIMOTHY C. EVANS
CHIEF JUDGE

AVIK DAS
ACTING DIRECTOR
PROBATION AND COURT SERVICES



2245 W. Ogden Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6575
(312) 433-7388 Fax

March 24, 2016

To:     Jason Smith

From:   Avik Das, Acting Director

RE:     Petition from "African American Men Coalition of Juvenile Probation Officers"

---

At the request of the self-identified authors of the attached petition that you have signed, I am meeting with them on Thursday, March 24, 2016, in the afternoon. As a follow-up to their presentation, I am extending the opportunity to meet with you and the other signers of the petition in the Auditorium, on either Tuesday, March 29, 2016 at 2:30pm or Wednesday, March 30, 2016 at 2:30pm. You are welcome to attend either one of the two sessions. I hope to hear any further insights and suggestions relative to this petition that you would like to share in addition to those provided by the petition authors at their requested meeting with me; and your attendance and contribution at either of these follow-up sessions are entirely at your option.

Please feel free to contact me if you have any further questions.

Thank You.

Enclosure:    Petition

Cc:    W. Patterson
       D. Neal
       D. Alexander

Ex 10

147 Probation
Youth
Shot

22 Murdered

In 2015

"Erosion" Of
Services

Ex 10

The Youth

Eliminated

Or Significantly

Changed.

How Sad!!

Ex 10

You Can't
Silence Me
Because You
Don't Like
What I Say!!



# 2015 GSST STATS
## JUVENILE COURT INVOLVED YOUTH



## Juvenile Temporary Detention Center Weekly Population Tables

January 11, 2016

### Table 2. Juvenile Temporary Detention Center Non-AT Population by Reason for Hold, Original Offense Type and Probation Status as of January 11, 2016 (n=121)

| Reason for Hold and Original Offense Type Category | Non-Probation Involved | | | Probation Involved at Time of Hold | | | Total Non-AT Population | | |
|---|---|---|---|---|---|---|---|---|---|
| | Number | Percent | Avg. LOS days | Number | Percent | Avg. LOS days | Number | Percent | Avg. LOS days |
| New Offense | 25 | 63% | 73 | 39 | 48% | 40 | 64 | 53% | 53 |
| Person | 8 | 32% | 157 | 19 | 49% | 48 | 27 | 42% | 80 |
| Weapons | 7 | 28% | 48 | 11 | 28% | 31 | 18 | 28% | 38 |
| Property | 7 | 28% | 30 | 9 | 23% | 33 | 16 | 25% | 32 |
| Drug - Controlled Substance | 3 | 12% | 12 | 0 | 0% | 0 | 3 | 5% | 12 |
| Drug - Cannabis | 0 | 0% | 0 | 0 | 0% | 0 | 0 | 0% | 0 |
| Sex Crimes | 0 | 0% | 0 | 0 | 0% | 0 | 0 | 0% | 0 |
| Other | 0 | 0% | 0 | 0 | 0% | 0 | 0 | 0% | 0 |
| Juvenile Arrest Warrant | 15 | 37% | 40 | 39 | 48% | 34 | 54 | 45% | 36 |
| Person | 5 | 33% | 28 | 16 | 41% | 27 | 21 | 39% | 27 |
| Weapons | 4 | 27% | 86 | 6 | 15% | 55 | 10 | 19% | 67 |
| Property | 4 | 27% | 23 | 11 | 28% | 27 | 15 | 28% | 26 |
| Drug - Controlled Substance | 2 | 13% | 14 | 4 | 10% | 29 | 6 | 11% | 24 |
| Drug - Cannabis | 0 | 0% | 0 | 2 | 5% | 85 | 2 | 4% | 85 |
| Sex Crimes | 0 | 0% | 0 | 0 | 0% | 0 | 0 | 0% | 0 |
| Other | 0 | 0% | 0 | 0 | 0% | 0 | 0 | 0% | 0 |
| Violation of Probation | N/A | --- | N/A | 3 | 4% | 28 | 3 | 2% | 28 |
| Missing | N/A | --- | N/A | 0 | 0% | 0 | 0 | 0% | 0 |
| Grand Total | 40 | 100% | 61 | 81 | 100% | 37 | 121 | 100% | 45 |

⁺ Probation involved: Any youth who has been formally placed on probation, supervision or informal supervision with Cook County Juvenile Probation. Category of Offense Type is based upon actual admission on probation charge. Original petition is the categorized as the offense type and for this category, is the new charge for re-arrest.

Ex 10

Ex 10

Juvenile Temporary Detention Center Weekly Population Tables

January 11, 2016

### Table 3. Juvenile Temporary Detention Center Automatic Transfer Population Demographics as of January 11, 2016 (n=131)

| Sex | | Number | Percent | |
|---|---|---|---|---|
| Male | | 128 | 98% | |
| Female | | 3 | 2% | |
| Race | | | | |
| Black | | 109 | 83% | |
| Hispanic | | 20 | 15% | |
| White | | 1 | 1% | |
| Other | | 1 | 1% | |
| Age at Hold | | | | |
| 15 | | 38 | 29% | |
| 16 | | 63 | 48% | |
| 17 | | 30 | 23% | |
| 18 | | 0 | 0% | |
| Current Age | | | | |
| 15 | | 8 | 6% | |
| 16 | | 43 | 33% | |
| 17 | | 77 | 59% | |
| 18 | | 3 | 2% | |
| Mental Health Services Involved Youth | | Number | Percent | |
| Mental Health Involved/Isaac Ray | | 38 | 29% | |
| Holding Offense Category and LOS in Days | Number | Percent | Ave LOS in days | |
| Aggravated Criminal Sexual Assault | 5 | 4% | 205 | |
| Aggravated Battery/ Aggravated Battery With Firearm | 15 | 11% | 205 | |
| Aggravated Discharge of Firearm | 5 | 4% | 184 | |
| Aggravated DUI | 1 | 1% | 221 | |
| Aggravated Vehicular Hijacking* | 8 | 6% | 302 | |
| Aggravated Unlawful Use of a Weapon* | 2 | 2% | 38 | |
| Armed Robbery with Firearm* | 63 | 48% | 218 | |
| Attempted Murder | 8 | 6% | 399 | |
| Murder | 23 | 18% | 377 | |
| Other | 1 | 1% | 7 | |
| Total | 131 | 100% | 254 | |

*As of 1/1/16, these offenses will no longer be automatically waived into adult court.

Total JTDC population: 252

$Ex$ 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ANTHONY JORDAN,                          )
KENNETH GREENLAW,                        )
THEODIS CHAPMAN,                         )
PATRICK NELSON,                          )
and A CLASS OF UNKNOWN PERSONS           )
SIMILARLY SITUATED,                      )          No. 15-C-5907
                          Plaintiffs,    )          Hon. Sara L. Ellis
                                         )
v.                                       )
                                         )
CHIEF JUDGE OF THE CIRCUIT COURT OF      )
COOK COUNTY, ILLINOIS,                   )
                          Defendant.     )

### NOTICE OF DEPOSITION

To:  **Michael Paul Persoon**
     Despres Schwartz & Geoghegan
     77 W. Washington Street, Suite 711
     Chicago, IL 60602
     (312) 372-2511
     mike.persoon@gmail.com

PLEASE TAKE NOTICE that the deposition of Jason Smith will be taken upon oral examination, pursuant to Rule 30 of the Federal Rules of Civil Procedure, on September 13, 2017, at 10:00 a.m. at the office of the Illinois Attorney General, 100 W. Randolph Street, 13th floor, Chicago, Illinois 60601, by an attorney for Defendant, before a notary public or some other officer authorized by law to administer oaths and will continue from time to time until it is concluded.

The above named deponent is hereby notified to appear for this deposition and to bring with him all records, notes, letters, or any other documents concerning the Complaint herein, and not heretofore produced.

For purposes of this deposition, the word "Document" means all written or graphic matter of description -- however produced or reproduced; whether draft, original or reproduction or unidentical copy, signed or unsigned, approved, sent, received, redrafted or executed -- including but not limited to, written communications, letters, correspondence, memoranda, minutes, notes, memoranda of telephone or personal conversations, diaries, reports, photos, bills, receipts, checks, checkbooks, reports, studies, analyses, or material similar to any of the foregoing -- however denominated, by whomever prepared, and to whomever addressed -- which are in your custody, possession or control or to which you have had, or can obtain access.

1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that a copy of the foregoing **Notice of Deposition** was served upon the above named individual via electronic and U.S. mail to the above addressee on the 17th day of August 2017.

/s/John R. Hayes
JOHN R. HAYES

LISA MADIGAN

Illinois Attorney General

**OFFICE OF THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY**

By:      /s/John R. Hayes
         JOHN R. HAYES
         Office of the Attorney General
         100 West Randolph Street, 13th Floor
         Chicago, IL 60601
         (312) 814-5022

2

ƎxT R



**We Make America Happen**

Lee Saunders
President

Laura Reyes
Secretary-Treasurer

Richard Abelson
Judicial Panel Chairperson

Judicial Panel Members:

Kathln Bolas
Philadelphia, PA

Richard Gielin
Jersey City, NJ

Michael Harris
Amistad, UK

Clovia Mill
Cottonsville, MD

Keith Gregory
Detroit, MI

Gerard Jolly
Grove City, OH

Theodoroh McKenna
Los Angeles, CA

Darron Nakamura
Honolulu, HI

Steve Preble
Littell, WM

Jim Steppered
Green Gloved NY

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

June 20, 2016

**Lloyd Marshall**            **Jason Smith**
**1100 Hamilton, 2nd floor**  **3515 W. Cermak**
**Chicago, IL 60612**         **Chicago IL 60623**

**Re: JUDICIAL PANEL CASE NO. 16-63**
**Marshall et al v. Smith**

GREETINGS:

This is to give you formal notice that the Judicial Panel has assumed original jurisdiction pursuant to Articles X and XI of the International Constitution. A copy of the charges is enclosed.

Pursuant to Article XI, Section 8, of the International Constitution, a member of the AFSCME Judicial Panel will be appointed to preside over the trial. **A Trial Officers Selection list is enclosed.** Each side has the right to delete up to two names from the list. Before exercising this right, each should consult with the person or persons on his side of the case. This should then be returned to me with deletions, if any, by **July 5, 2016.** It is not necessary to serve a copy of the response on the other side. If I do not hear from the parties by then, I will assume that all names are acceptable.

The trial will be conducted pursuant to the International Constitution and the Rules of Procedure of the Judicial Panel. I call your attention to Article X of the International Constitution.

In Solidarity,

Richard Abelson
Judicial Panel Chairperson

RA:spp

cc:     Lee Saunders, President
        Laura Reyes, Secretary-Treasurer
        Gino Carbenia, Regional Director O&FS
        Erin Young, AFSD
        Lloyd Marshall (charging party)
        Nelson Rivera (charging party)
        Kisha Roberts (charging party)

American Federation of State, County and Municipal Employees, AFL-CIO
TEL (202) 429-1210    FAX (202) 822-8169    1625 L Street, NW, Washington, DC 20036

Tamar Stockley (charging party)
Michael Muhammad (charging party)
Jeanie Bellina (charging party)
John Anderson Jr. (charging party)
Chonna Varnado (charging party)
Martin Gleason (charging party)

## JUDICIAL PANEL, AFSCME, AFL-CIO

## LIST OF SELECTION OF TRIAL OFFICERS

Article XI, Section 8 of the International Constitution provides:

> In any case coming before the Judicial Panel, other than cases in which the accused is an International Officer, the Judicial Panel chairperson shall send a list of the names of the members of the Judicial Panel to the accuser and the accused. Within fifteen days thereafter, **each party shall be afforded the opportunity to delete not more than two names from the list of Judicial Panel members,** by written notification to the Judicial Panel chairperson. From the names remaining, the chairperson shall appoint one member of the Judicial Panel to serve as the trial officer.

The names of the members of the Judicial Panel are listed below:

XXXX  **RICHARD ABELSON, Washington, DC**
_____**KAHIM BOLES, Philadelphia, PA**
_____ **RICHARD GOLLIN, Jersey City, NJ**
_____**KEITH JANUARY, Detroit, MI**
_____**DAYTON M. NAKANELUA, Honolulu, HI**
_____**THEODORAH McKENNA, Los Angeles, CA**
_____**JIM TUCCIARELLI, Staten Island, NY**
_____**SHEILA HILL, Catonsville, MD**
_____**STEVEN PREBLE, Itasca, MN**
_____ **GERARD JOLLY, Grove City, OH**
_____ **MICHAEL HANNA, Portland, OR**

The following member will not serve as the trial officer in this proceeding pursuant to **Article III, Section 6** of the Rules of Procedure of the Judicial Panel: **R. Ableson**

By: _____     Accused Party _____ Charging Party _____

Judicial Panel Case No. **16-63** _____     Date: _____

Note: Unless the Judicial Panel chairperson receives your response by **7/5/16**, all names will be deemed acceptable. **Return this form directly to the Judicial Panel Chairperson, AFSCME, AFL-CIO, 1625 L Street, NW, Washington, DC 20036; or fax to 202/822-8169**

a. Jason Smith has attempted to gain support by advocating to the membership that AFSCME Local 3477 release its charter and leave from under the jurisdiction of AFSCME Council 31 and AFSCME International and organize labor under a different International Union or stand a one and organize independently.

11. Jason Smith has violated Article VIII, Section 1 of the AFSCME Local 3477 Constitution and has violated the AFSCME International Constitution and all pertinent provisions set forth within the International Constitution.

   a. President Jason Smith retained an outside attorney Thomas Gage and introduced him at our membership meeting on February 10, 2016 as our locals new attorney. The specific expenditure amount to retain this lawyer is unknown and was not approved by the Executive Board. Furthermore, President Jason Smith was informed by Council 31 attorneys Helen Thornton and Maggie Lorenc, Staff Representative Eugene Boatright and International General Counsel William Lurye that the local could not engage in direct dealings with the employer on its own or through an outside attorney hired by AFSCME Local 3477. It is important to note that Jason Smith was informed of this before he actually retained a lawyer and also no line items explaining this expenditure has appeared on any financial reports. This act by President Smith and possibly others is also a violation of the AFSCME International Financial Standards Code Article V, Section 4 D.

12. President Jason Smith has violated Article VIII, Section 1 of the AFSCME Local Constitution and the AFSCME International Constitution along with best practice provisions within the Steward Handbook of AFSCME International and all any other pertinent provisions set forth within all of the above.

   a. Jason Smith allowed members of AFSCME Local 3477 to be represented by other members of his choice on a regular basis who were not recognized as certified stewards of Local 3477. This was President Smith's unauthorized practice from 8/15/14 through 1/15/15.

   b. Jason Smith failed to adhere to the best practice policy Article VI of the AFSCME International Stewards Handbooks. Jason Smith while serving as Chief Steward and President, failed to have an established steward committee and meet on a regular basis.

   c. Jason Smith while serving as President of AFSCME Local 3477 failed to appoint a Chief Steward for Executive Board approval. The appointment of a Chief Steward is a best practice policy within the AFSCME International Handbook Article VII.

   d. President Jason Smith refused to appoint several qualified and Certified Stewards to the Executive Board for approval. President Smith dismissed all of Local 3477's Stewards when he sent a memo to the

against the wishes of the Executive Board.

13. President Jason Smith has violated Article VIII Section 1 of the AFSCME International Constitution and any pertinent provisions set forth in the above and the AFSCME Financial Standards Code.

a. President Jason Smith organized and established a Political Action Committee (PAC) within Local 3477. Jason Smith was advised by Council 31 and General Counsel William Lurye that this was not an accepted or recommended practice for Local 3477 to set up its own PAC separate and distinct from AFSCME People Program. Jason Smith solicited funds from members and also violated pertinent provision within the AFSCME Financial Standard Code by, but not limited to including and logging this specific PAC account into the financial and treasurer records and books of AFSCME Local 3477.

If the Judicial Panel of the American Federation of State, County and Municipal employees concludes that the aforementioned charges are not appropriate for the Judicial Panel, we would ask that the local be allowed to maintain original jurisdiction and possibly proceed within the provisions allowed in the Local and International Constitution. We are requesting that Jason Smith be removed from his office as President of AFSCME Local 3477 and if the charges warrant it, be suspended from Local 3477 and AFSCME International for the maximum period of time permitted for penalties related to the aforementioned charges. We are also requesting that Jason Smith be disqualified from seeking an elected office position within Local 3477 or any other Local within AFSCME for the maximum period of time permitted within the constitution relating to the charges put forth.

In Solidarity,

Lloyd Marshall

Nelson Rivera

Kisha Roberts

Tamar Stockley

Michael Muhammed

Jeannie Bellina

John E. Arterton JR.

Chonny Vornado

Hatter Gleaxxin

Exhibit
13

**fyi**

Rogers, Phil (NBCUniversal, WMAQ) [Phil.Rogers@nbcuni.com]
**Sent:** Friday, September 19, 2014 1:56 PM
**To:**    Jason Smith (OCJ)

Jason, I received this just a few minutes ago from rose golden. Any thoughts?

Yes, the 24 hour monitoring from Sentinel will begin today. Instead of officers having to check their computers, Sentinel will send an email alert for each instance of non-compliance to the electronic monitoring probation officer, all three supervisors and the Deputy Chief Probation Officer. This is a significant improvement to the process.

This means that if officers are performing other duties outside the office when the alert comes in, management can step in to take action. This can include contacting staff who are in the community to investigate and attempt to resolve the non-compliance.

These email alerts will be ongoing throughout the shifts. The results of the audit will determine next steps to provide overnight staffing which we currently do not have.

Hope this helps. Please contact me if you have additional questions.

Exhibit 14

# Interfering in my duties

### Jason Smith (OCJ)

Sun 8/17/2014 5:36 AM

~ Jason Smith (OCJ) <jason.smith@cookcountyil.gov>;

MLorenc@afscme31.org <MLorenc@afscme31.org>; Nsmith@afscme31.org <Nsmith@afscme31.org>;

Maggie,

It is my responsibility of this Local to make a decision that is in the best interest of all of our members. Your attempt to undermine my ability to lead this local will serve as a negative reflection on the Council. I am the President of this Local and if people do not understand their roles and responsibilities it is our purpose to help them understand. In order for Lloyd to be my Chief Steward over the grievance committee he has to be appointed and approved by the Executive Board. This did not happen. For you to contact management and inform them that the you was withdrawing the grievance is another example of a dictatorship rather than a democratic process. Management has instilled fear and coerce our members to accept these agreements. It is our responsibility to not only protect that member, but to protect this entire bargaining unit. I will not accept the interference of you or anyone else when it comes to me faithfully discharging my duty. The next time this happens I will contact the International and I will inform my members about this decision. Please refrain from trying to influence my board and impugn or my character to lead this Local.

Jason Smith
President/ AFSCME Local 3477

From: Jason Smith (OCJ)
Sent: Sunday, August 17, 2014 6:17 AM
To: Martin Gleason (OCJ); Maggie Lorenc
Cc: Lloyd Marshall Jr. (OCJ); Kisha T Roberts (OCJ); Tyrone Hutson (OCJ); Juanita A Cannon (OCJ); Jeffery Haynes (OCJ); Russell Akis (OCJ); Samuel Johnson (OCJ)
Subject: RE: Settlement

Maggie,

1. Lloyd has not been appointed the Chief Steward
2. It cannot be a disagreement if there is no discussion.
3. Please refrain from interfering in the busy of the Local. As a staff rep your role is to advise not to try and lead our local.
4. I am the President of this Local and when we file grievances we do not only file them on behalf of the member, but on the behalf of the Local.
Everyone continues to say they have tried to contact me, but I do receive text messages and phone calls from everyone else beside the people who have said they have tried to contact me.

Board we are meeting on Monday at 2:00 p.m. in the 3rd conference room by Jennifer Nunez's office. I wanted to meet with Lloyd, Kisha and Tyrone to resolve another matter during the morning, but it can wait

# RE: Settlement

## Jason Smith (OCJ)

Sun 8/17/2014 5:17 AM

To Martin Gleason (OCJ) <martin.gleason@cookcountyil.gov>; Maggie Lorenc <MLorenc@afscme31.org>;

cc Lloyd Marshall Jr. (OCJ) <lloyd.marshalljr@cookcountyil.gov>; Kisha T Roberts (OCJ) <kisha.roberts@cookcountyil.gov>;
Tyrone Hutson (OCJ) <tyrone.hutson@cookcountyil.gov>; Juanita A Cannon (OCJ) <juanita.cannon@cookcountyil.gov>;
Jeffery Haynes (OCJ) <jeffery.haynes@cookcountyil.gov>; Russell Akis (OCJ) <russell.akis@cookcountyil.gov>; Samuel
Johnson (OCJ) <samuel.johnson@cookcountyil.gov>;

Maggie,

1. Lloyd has not been appointed the Chief Steward.

2. It cannot be a disagreement if there is no discussion.

3. Please refrain from interfering in the busy of the Local. As a staff rep your role is to advise not to try and lead our
local.

4. I am the President of this Local and when we file grievances we do not only file them on behalf of the member, but
on the behalf of the Local.

Everyone continues to say they have tried to contact me, but I do receive text messages and phone calls from
everyone else beside the people who have said they have tried to contact me.

Board we are meeting on Monday at 2:00 p.m. in the 3rd conference room by Jennifer Nunez's office. I wanted to
meet with Lloyd, Kisha and Tyrone to resolve another matter during the morning, but it can wait
until after the meeting.

Jason Smith
President/ AFSCME Local 3477_____
From: Martin Gleason (OCJ)
Sent: Friday, August 15, 2014 2:43 PM
To: Maggie Lorenc
Cc: Jason Smith (OCJ); Lloyd Marshall Jr. (OCJ); Kisha T Roberts (OCJ); Tyrone Hutson (OCJ); Juanita A Cannon (OCJ);
Jeffery Haynes (OCJ); Russell Akis (OCJ); Samuel Johnson (OCJ)
Subject: Re: Settlement

If going forward with the grievance is going against the members wishes AND it will damage the member's ability to
earn an income, then we must withdraw the grievance.

I am sorry I have not responded earlier. I am not in the building today and working on other projects

I think we need to take some perspective here:
1) Everyone on the executive board has the best interests of the membership in mind
2) The differences in opinion stem from:
    2a) Personality
    2b) Philosophy

Fact one should be weighed way more heavily than fact 2. In order for us to lead, then we must start with fact 1 and work towards an understanding of the various personalities and philosophies of fact 2.

As a board, we can make new decisions and forge a new path. We are not beholden to anything other than our constitution, our members and the council. However, it would be detrimental to us, as a team, to throw out everything that has been done under different administrations. We owe it to our members, especially those who are in the disciplinary process now, to figure out our differences and ensure that our members rights are protected. To this end, i strongly suggest that we have a current steward meeting ASAP—out of the building and dedicated only to solving this issue.

As a board, we should only use email and text to get across the facts of a case. Electronic communication does not always adequately convey tone—and I am too old to include smiley faces and emoji's to get my point across. Furthermore, while Robert's Rules of Order to have provisions for electronic communication, I have no idea what they are.

Please everyone,walk away from this issue for the next 48 hours.

All the best-
Marty


On Aug 15, 2014, at 2:03 PM, Maggie Lorenc <MLorenc@afscme31.org> wrote:

> Executive Board,
>
> In your last board meeting on Wednesday, you all voted that when it came to grievance matters in which there was a disagreement between the President and Chief Steward, the executive board would ultimately decide. In this instant case, there is an extremely tight time frame in order to make a decision that would affect one of our member's life. Other than Jason and Lloyd, I have not heard from or seen any other board members weigh in with their opinions. However, this is the situation. Management offered to give the member a clean resignation, no challenge to unemployment in exchange for the withdrawal of current grievances and waiver of filing any grievances. This agreement was not, to my knowledge, put in writing nor do we need to; it would probably be less beneficial to us if we did. I have spoken with Lloyd, the member, and I tried calling Jason. The member is adamant that she wants to resign and she wants all grievances filed on her behalf withdrawn. If we refuse to withdraw the grievance, the employer will move forward with discipline, which will mean the member will be terminated and her unemployment would be in jeopardy.
>
> This board would be doing this member a disservice if it stood in the way of her decision to resign. I believe, as it has in other similar cases as this, management will honor its word and not challenge this member's unemployment. Our local must also be an organization of its word and therefore uphold the agreement made surrounding this member's decision to resign. I applaud all the involved parties who have taken an interest in looking out for this member and this local's interest. At this point, I have contacted management to let them know that once the member resigns, we will not pursue any grievances on this member's behalf in order to honor the agreement. I hope this puts the matter to rest and we can move forward in problem-solving on a better method of communication with regards to these matters. Thank you all.
>
> Maggie
>
> Maggie Lorenc

> From: Lloyd Marshall Jr. (OCJ)

> Sent: Friday, August 15, 2014 11:01 AM

> To: Jason Smith (OCJ)

> Cc: Kisha T Roberts (OCJ); Tyrone Hutson (OCJ); Juanita A Cannon (OCJ); Jeffery Haynes (OCJ); Russell Akis (OCJ); Samuel Johnson (OCJ); Martin Gleason (OCJ); mlorenc@afscme31.org

> Subject: Julie Montgomery resignation

>

> It has come to my attention that President Jason Smith plans on going forward with a Temporary Suspension for Julie Montgomery even after she resigns as of today.  Mrs. Montgomery has stated to me and to Maggie Lorenc that she does not want to proceed with any grievances that were filed on her behalf after she resigns.  She understands that all grievances filed on her behalf will be withdrawn by this local and no further action in the future will take place on her behalf.  She stated that she will call President Smith and txt him to inform him to not proceed with anything and any pending grievances on her behalf.  Thank you and if any questions, call me.  FYI i can not submit her resignation if it is not in good faith on OUR part.

# RE: Meeting

## Jason Smith (OCJ)

Mon 12/1/2014 7:24 AM

To Maggie Lorenc <MLorenc@afscme31.org>;

Helen Thornton <HThornton@afscme31.org>

Maggie,

I think you are misinformed about who has the decision when it comes to the contract. Council 31 does not have the sole authority of making decisions on behalf of this Local. If this was true then there would be no need for our committee to vote on our contract and no need for a local executive board. Management put it in writing and it seems you interpret things the way you would like them to be interpreted. We never agreed to only give the Field Officers the fifteen day time frame. This offer of settlement was for our entire bargaining unit. If you have contacted me and discuss these issues with the President of this local you would have known the facts. If you think you have the sole discretion to settle these matters without the input of me and my local you are sadly mistaken. It is my intent to speak to the international about these continuing issues with you and the Council. As you stated on a number of occasions. You do not work for the Local, you work for the Council. My membership is capable of making decisions especially when they are in session. Instead of you constantly violating our contract you should focus more on doing your job. Your job is to advise this Local. You were not elected or chosen to represent this membership. I do not make threats rather I state the facts. Just because you all have done things wrong for a number of years do not make it right. It is my intent to inform the membership about the decisions of the Council and let them make the decision where we should go from here in regards to this grievance.

Thanks

Jason Smith
President/ AFSCME Local 3477

From: Maggie Lorenc [MLorenc@afscme31.org]
Sent: Friday, November 28, 2014 7:42 AM
To: Jason Smith (OCJ)
Cc: Helen Thornton
Subject: Re: Meeting

Jason,

If you recall, you made an offer to settle this grievance at the impact meeting regarding JEMS. YOU said you would settle the grievance for the department giving the officers 14 days to enter contacts. Keith asked me about the grievance, and I told him we made an offer and were waiting for a response from management. We got Rose on the phone, and she said she thought we could settle and needed to put it in writing. That's the last I heard of it and have yet to see the settlement in writing. So, YOU settled this grievance, and if you are now trying to go back on your word, that will give management more reason to not want to ever discuss issues with the local because you keep reversing on what you said.

I will continue to do my job, which is administering the contract on the local's behalf, so please stop threatening me when I'm doing my job. We have had this discussion before about the contract and who has authority to make decisions. Your intention to take arbitration decisions to the membership is a major break with procedure that has been followed by the local for it's entire history, and it's the role that your executive board was elected to do. Without even consulting them or giving them a chance to vote, you're taking it to a membership meeting. That's the kind of decisions that create divisiveness. I again encourage you to discuss these issues with your eboard who are perfectly capable of making these decisions and were elected to do so by the membership.

Maggie Lorenc
AFSCME Council 31
Sent from my iPhone

> On Nov 28, 2014, at 7:02 AM, "Jason Smith (OCJ)" <jason.smith@cookcountyil.gov> wrote:
>
> Maggie,
>
> I spoke with Keith this week and he informed me that the JEMS issued was settled. Who settled this agreement, why were we not notified and who authorized this agreement? If the agreement was for the fifteen days it was supposed to be for all Probation Officers not just Field Officers. These type of things cause division within this local and chaos. The membership will vote on this issue at the membership meeting to either send it to arbitration or to allow this arrangement to stand. I have warned you several times not to interfere in the local business. I will be drafting a letter to the International about these issues we continue to experience and will be sending a copy to Roberta.
>
> Jason Smith
> President/ AFSCME Local 3477
> _____
> From: Maggie Lorenc [MLorenc@afscme31.org]
> Sent: Wednesday, November 26, 2014 1:02 PM
> To: Jason Smith (OCJ)
> Cc: Helen Thornton
> Subject: RE: Meeting
>
> Jason,
>
> Helen had another meeting that just came up unexpectedly, so she won't be able to meet with us on Tuesday. However, she suggested we take time at universal negotiations on Dec. 8th to talk. Does that work?
>
> Again, let me know what time and where the membership meeting on Tuesday will be. Thanks and have a happy Thanksgiving.
>
> Maggie
>
> Maggie Lorenc
> Staff Representative
> AFSCME Council 31
> (312) 641-6060 ext. 4357
>
> *********************
>
> Important/Confidential: This message is intended only for the use of the addressees shown above. It contains

information that may be privileged, confidential, and or exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are hereby notified that the copying, use or distribution of any information or material transmitted in or with this message is strictly prohibited. If you received this message in error, please contact me immediately and destroy the original message. Thank you.

>
> **********************
>
> _____
> From: Jason Smith (OCJ) [jason.smith@cookcountyil.gov]
> Sent: Wednesday, November 26, 2014 9:51 AM
> To: Maggie Lorenc
> Cc: Helen Thornton
> Subject: RE: Meeting
>
> Maggie,
>
> I welcome the feedback to the language in the contract, but we can also add to this discussion the language in the local constitution and AFSCME constitution. I am not available on Monday as I have grievance hearings and other appointments for that day. We can meet at Juvenile Court to discuss these issues, but I think it would be best if all of my members hear the different interpretation of the contract and what has been taking for the last several months and years under the guidance of Council 31. Please choose a time for Tuesday and I will confirm with you later today.
>
> Jason Smith
> President/ AFSCME Local 3477.
>
> _____
> From: Maggie Lorenc [MLorenc@afscme31.org]
> Sent: Monday, November 24, 2014 7:34 PM
> To: Jason Smith (OCJ)
> Cc: Helen Thornton
> Subject: Meeting
>
> Hey Jason.
>
> Helen suggested that the three of us meet to discuss our viewpoints on these contract interpretation issues prior to the membership meeting next week. I wanted to see if you were available to meet either Monday, Dec. 1 after 1pm or Tuesday morning before the membership meeting. Please let me know if either of these dates work. We can either meet at Juvenile in one of the conference rooms if one is available or at the Chicago office. Let me know. Thanks.
>
>
>
> Maggie Lorenc
> Staff Representative
> AFSCME Council 31
> (312) 641-6060 ext. 4357
>
> **********************
>
> Important/Confidential: This message is intended only for the use of the addressees shown above. It contains information that may be privileged, confidential, and or exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are hereby notified that the copying, use or distribution of any information or material transmitted in or with this message is strictly prohibited. If you received this message in error,

please contact me immediately and destroy the original message. Thank you.

\>

\> *********************

**To:** Lloyd Marshall Jr. (OCJ)
**Subject:** Violation of the constitution

Lloyd,

Per our constitution the only person who can bind this Local is the president. I am not sure if our communication is clear, but I have informed you several times that no agreement will be signed unless it receives both our signatures. The next violation of our constitution and the contract will lead to formal charges being filed. This is a reminder you are my vice president and it is your job to assist my office. Signing agreeements without my written approval is a violation.

Jason Smith
President/ AFSCME Local 3477

# Settlement

## Jason Smith (OCJ)

Fri 8/15/2014 11:17 AM

Lloyd Marshall Jr (OCJ) <lloyd.marshalljr@cookcountyil.gov>

Kisha T Roberts (OCJ) <kisha.roberts@cookcountyil.gov>; Tyrone Hutson (OCJ) <tyrone.hutson@cookcountyil.gov>;
Juanita A Cannon (OCJ) <juanita.cannon@cookcountyil.gov>; Jeffery Haynes (OCJ) <jeffery.haynes@cookcountyil.gov>;
Russell Akis (OCJ) <russell.akis@cookcountyil.gov>; Samuel Johnson (OCJ) <samuel.johnson@cookcountyil.gov>; Martin
Gleason (OCJ) <martin.gleason@cookcountyil.gov>; mlorenc@afscme31.org <mlorenc@afscme31.org>

Dear Executive Board,

Everyone who knows my character understand I fight hard for our members and would never do anything to
cause them harm. With that being said. It is not my intention to go forward with the grievance once I review the
agreement between the grievant and management. Whenever we file a grievance we do not just file it for the
individual, but for the entire Local because it has merit. We have an obligation for fair representation and to
protect not just the individual, but our collective baraigning agreement. It is always my intent to protect the
bargaining unit and one decision from an individual could cause lasting damage to all the Probation Officers. I
have been filing greivances and unfair labor practices over the last six years. I have seen agreements and certain
language that can have a lasting impact not only on the individual but us as a whole. It is not my intent to
demean Lloyd or make his position less than what it is. His role is my vice president and not the president. I have
a right to review whatever language that is being contemplated prior to it being submitted. If the agreement is
ironclad and will not have a devasting impact on our bargaining unit after the departure of this grievant. I will
comply with the agreement. This Executive Board needs to start looking at the facts and information. Please do
not take heed to what is being told to you. This board needs to ask the right questions as to the reasoning. I
continue to hear that Lloyd continues to have off the record conversations with some board members, but not all
to try and persuade them in a different direction. This board should hold everyone accountable and ask
questions. I know the information, I know the facts, I know some laws about labor, our constitution, international
constitution and I know our contract. It is our responsibility to protect our contract. Once I review the agreement
for the grievant and it is up to par. I will withdraw the grievance in good faith once I see management made a
good faith effort as well.

Jason Smith
President/ AFSCME Local 3477

**From:** Lloyd Marshall Jr. (OCJ)
**Sent:** Friday, August 15, 2014 11:01 AM
**To:** Jason Smith (OCJ)
**Cc:** Kisha T Roberts (OCJ); Tyrone Hutson (OCJ); Juanita A Cannon (OCJ); Jeffery Haynes (OCJ); Russell Akis
(OCJ); Samuel Johnson (OCJ); Martin Gleason (OCJ); mlorenc@afscme31.org
**Subject:** Julie Montgomery resignation

It has come to my attention that President Jason Smith plans on going forward with a Temporary Suspension for
Julie Montgomery even after she resigns as of today. Mrs. Montgomery has stated to me and to Maggie Lorenc
that she does not want to proceed with any grievances that were filed on her behalf after she resigns. She
understands that all grievances filed on her behalf will be withdrawn by this local and no further action in the
future will take place on her behalf. She stated that she will call President Smith and txt him to inform him to not

proceed with anything and any pending grievances on her behalf. Thank you and if any questions, call me. FYI i can not submit her resignation if it is not in good faith on OUR part.

Exhibit 15

The State of Illinois )

                **AFFIDAVIT**

                ) S.S.

County of Cook )

I, Edward Walsh , of Rolling Meadows, Illinois, MAKE OATH AND SAY THAT:

1.   I, Edward Walsh, Illinois, am a member of AFSCME Local 3477 Cook County Juvenile Probation Officers. During a grievance hearing held at the Chief Judge Office. William Patterson, of Cook County Juvenile Probation, Human Resource Director made the statement that if the Union was not complaining about discrimination that you would not be here. President Jason Smith of AFSCME Local 3477 stated to the Chief Judge Designee that it should be just cause not just because of someone color that they are being disciplined.

SUBSCRIBED AND SWORN TO    )

BEFORE ME, on the            )

13th day of January, 2016       )

                            )

_Peter N. Ryan_          )   _Edward Walsh_

NOTARY PUBLIC          )   Edward Walsh

My Commission expires:  3 - 6 - 2019

OFFICIAL SEAL
PETER N. RYAN
Notary Public - State of Illinois
My Commission Expires 3/06/2019

Exhibit 16

Q. APR

10 APR -7 AM 11: 20

**M E M O R A N D U M**

March 26, 2010

TO:        Michael J. Rohan
           Director of Probation and Court Services

FROM:      SPO Irene Porter,
           Screening/Adjudication

RE:        SAFETY OF SPO'S IN RELATIONSHIP TO
           QUALITY ASSURANCE

Greetings:

Sir, I was informed that there is a possibility of a meeting between Labor and Management today. I have a particular concern. What protection does management offer to a SPO(s) who executes the Quality Assurance practice, but receives in response threats or false allegations from the people under their supervision? For example, I experienced the following:

> When given a directive to complete a task, one officer threw his County ID and Badge on my desk. (Incident reported to DCPO Pieroth)
>
> Located some past due work in an officer's assigned space and was yelled at by the officer for exposing the matter to the DCPO.
>
> Client came in and claimed the field officer tried to sell her a pet after taking her teenage brother across State Line to a Casino Boat. Client reported that the field officer also reported her family to DCFS when officer was confronted about the inappropriateness of her conduct. (DCPO C. Walls handled this matter). Several months later this officer was instrumented in helping the SPO to receive a discipline. (Client reported this matter directly to DCPO Walls)

Don't you think Mr. Rohan that SPO's would feel more secure if Chief's would perform in such a manner to allow you to be more responsive in your efforts to initiate proper investigations and support to SPO's in their efforts to be in compliance to policy and procedure.

$Ex 14$

### STATE OF ILLINOIS
### CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

To:     SPO Irene Porter

From:   Michael J. Rohan

Date:   April 8, 2010

Re:     Clarification

I am in receipt of your memorandum of 3/26/10 relative to the supervisor's role with quality assurance. Frankly, I am perplexed by your assertions which do not appear timely and predate the department's quality assurance initiative. Your memo references incidents that may have occurred over the past four to five years and should have been addressed at the time each occurred. I am not in a position to respond to incidents that I was not privy to nor do I see the correlation to the current QA process.

If you have any questions regarding QA, please discuss them with your deputy chief.

MJR/kms

c:  Charles M. Young
    Rose Golden
    Irv Ashford

Does not
DENY IT.

Cx 17

Michael Willis (OCJ)From: Christen Loeb (OCJ) Sent: Friday, September 07, 2012 8:27 AM To:
Alicia Ortiz (OCJ); Virginia Caulfield (OCJ); Jeffery McKnight (OCJ) Cc: Carmen Casas (OCJ);
Rose Golden (OCJ); Charles Young (OCJ); Michael Willis (OCJ); Michael Rohan (OCJ) Subject:
RE:9/7/2012

Michael Willis (OCJ)Actions

To:MJason Smith (OCJ)

InboxFriday, September 07, 2012 1:36 PM

This message was sent with High importance.

From: Christen Loeb (OCJ)

Sent: Friday, September 07, 2012 8:27 AM

To: Alicia Ortiz (OCJ); Virginia Caulfield (OCJ); Jeffery McKnight (OCJ)

Cc: Carmen Casas (OCJ); Rose Golden (OCJ); Charles Young (OCJ); Michael Willis (OCJ);
Michael Rohan (OCJ)

Subject: RE: Substitute Adjudicators errors' in JEMS

Alicia,

Thank you for pointing out the need for additional staff in adjudication. There is no doubt
that it would be helpful to the department to have more, full time adjudicators. It was not
until I sat in a Court room and actually did the work of an adjudicator that I fully appreciated
what they do. It is much more difficult than it appears and I believe that it needs to be
staffed with qualified probation officers. This should cut down on the amount of errors but it
will never eliminate them. Even the most seasoned veteran, whether it be a field officer or
an adjudicator will make mistakes. I have looked at what I did in Court that day and
discovered what the error was and I will correct it in the future. Although this "volunteer"
situation is not ideal it has helped to take the stress off an understaffed department. It is
always unfortunate when mistakes happen. I realize that put you and your officers in a bad
position and it also inconvenienced the family. From now on, if I am in Court, I will call you
when a social is ordered or send an email with the minors name as a safety net. Until the
staffing situation changes I look forward to hearing any other ideas you may have. I know
that you have expressed your disapproval with screeners volunteering to help adjudication.
While I share some of your concerns I believe that I am doing no harm by volunteering. I will

Ex 17

work hard to limit my mistakes as I continue to assist the adjudication department. Although I hope in the future that my clerical errors can be addressed with me directly, I understand your need to have this issue addressed on a larger scale. If this mistake results in slots being filled in adjudication then my mistake being exposed in such a public way will have served a purpose. I hope we can work together as co-workers and come up with a solution in the short term to eliminate any future problems and to make sure that our families have a positive experience.


thank you again


Christen Loeb

Supervisor chicago court services screening unit

312 433-6768

christen.loeb@cookcountyil.gov


..............................................................


From: Alicia Ortiz (OCJ)

Sent: Thursday, September 06, 2012 11:10 AM

To: Virginia Caulfield (OCJ); Jeffery McKnight (OCJ); Christen Loeb (OCJ)

Cc: Carmen Casas (OCJ); Rose Golden (OCJ); Charles Young (OCJ); Michael Willis (OCJ)

Subject: Substitute Adjudicators errors in JEMS


As previously indicated in the voicemail sent out on 9/05/12, I am following up on this matter in an email. I bring to your attention the fact that on 9/05/12, the cases of Alejandro Valdez, petitions # 12JD01624, 12JD01625. 12JD01970 & 12JD01981 were heard in court on said date before Judge Sharkey for a sentencing hearing. Unfortunately, was never assigned to a PO

Ex 17

due to the fact that the substituting adjudicator, the screening supervisor, failed to create the orders for the socials in JEMS, therefore generating the need for the case assignment in my JEMS basket. This minor reportedly violated EM, and now will also have an "Escape" charge, and is being held in custody pending sentencing. This minor's cases were continued to 9/19/12 for sentencing which means that my officer has less than two weeks to prepare a social that entails four petitions, four police reports, court action and four child statements.

I am respectfully requesting that this matter be address as soon as possible to avoid any future errors of this magnitude. Unfortunately, this is not the first time that this happen. As recently as July 16, 2012, three minors were in court on that date, which were ordered for sentencing to 8/22/12. The order for the socials was not created in JEMS again by the same officer filling in as an adjudicator. Luckily, one of the unit officers happened to be in court when the socials were ordered and questioned me regarding the cases a few days later. I was then able to research those cases and followed up with you. Having done that, only two of the cases were entered in JEMS, so I then called you once again, and you instructed me to just call the officer and she would take care of it.

I realized that our department has lost numerous officers, and perhaps adjudicators will be replaced by support staff. I also realized that the screening officers are assisting and do not adjudicate on a consistent basis, therefore increasing the chances of mistakes taking place. However, considering that one of the departments goals is to be "paperless", as a field supervisor, I rely on the court adjudicator's court hearing notes in JEMS, and their detailed notes including exact court orders, agreements, amendment to petitions, verification of addresses and phone numbers is crucial to the case assignment to the field officers.

Our department's goal is to expedite service to the minors before the court and avoid detention of minors as much as possible. Therefore not only does quality assurance needs to take place on a daily basis in the adjudication department, but the staff issue also needs to be address as soon as possible to avoid costly mistakes as the ones mentioned above.

Alicia Ortiz

Supervisor Probation Officer

Chicago North Division

Juvenile Probation Department

1100 S. Hamilton Ave 2nd Flr.

$\mathcal{E}_x$ (7

## Inappropriate Confrontation

Michael Willis (OCJ)

Actions
To:
M
Jason Smith (OCJ)

Friday, September 07, 2012 12:16 PM
**From:** Alicia Ortiz (OCJ)
**Sent:** Friday, September 07, 2012 9:08 AM
**To:** Carmen Casas (OCJ)
**Cc:** Virginia Caulfield (OCJ); Rose Golden (OCJ); Charles Young (OCJ); Michael Willis (OCJ)
**Subject:** Inappropriate Confrontation

Good Morning,

As a follow up to the brief voicemail that I left on your cell phone yesterday at approximately 2:30PM, I am emailing my concerns.

I wish to report that DCPO Caulfield created an unsafe work environment and threatened me. I no longer feel comfortable being alone in an office with her. It is my observation that perhaps she is currently under a lot of stress and is not handling it well. Considering that in this day and age in our society, disgruntle employees have committed tragic events, I am alarmed about this situation and wish to make record of it. I should not have to be subjected to this, simply because I was trying to address an important work related matter.

The following is a brief description of what took place:

Unfortunately, I had an encounter with DCPO Caulfield yesterday afternoon which alarms me. I initially saw her in the southeast kitchen on the second floor. As I walked in I said hello to her, and she quickly walked out without saying anything or acknowledging me. I realized that she was upset, and continued on my way to your office to sign out for the day. While I was talking to Almetha, Ginny hurriedly walked in and asked Almetha if you were in the office. Almetha informed her that you had left, and Ginny then asked if she could have a word with me. As we walked in, I initially sat at the round table and Ginny closed the door but did not sit down. It was physically apparent that she was extremely angry not to mention her tone of voice. Ginny started by telling me that she had talked to you the previous afternoon and I responded that you had shared that with me. She then questioned why I sent the email to everyone in the department after she had already told me that she would be handling it. I reminded her that I had previously addressed this similar matter with her prior to the case in question, and that in that occasion I had to call a

Ex 17

second time for a third case which was still omitted even after it had been raised as a concern. However, her response to me was to call the officer directly. I informed her that this was an important matter that needed to be address especially since a minor was now in custody. Ginny responded that it had been brought to her attention

that I did not want screeners to adjudicate, and that was my problem. I reminded her that our department's goal was to service the minors and that I felt strongly about

my work. Ginny then made statements that I just want people suspended, and that Judge Sharkey had approached her and stated that he was not looking to get C. Loeb in trouble. Ginny further stated that the Judge was going to speak to Mike on behalf of C. Loeb. Ginny then stated, "C. Loeb will never get discipline!" I then informed her that my intentions were never to get someone suspended or for someone to lose their jobs. I simply wanted the matter resolved. She then stated that people have been suspended in Adjudication and that she is handling the situation. Ginny further stated that from now on J. McKnight is assigned to Cal. 63. I replied that it was good, and that was a better plan than what she had mention the previous day of having the adjudicators simply fill out a facesheet for the SPOs' to review, especially since we are suppose to be "paperless". At one point Ginny opened the door and continue to raise her voice at me to the point that I asked her to calm down and to lower her voice

and close the door. Ginny complied but then stated in a harsh tone " I sure hope you don't ever make a mistake!" At that point I perceived that as a threat and luckily she opened the door and started to walk out of your office. She stopped to get some candy and as I passed her, she made a statement in a sarcastic demeaning tone how I should send an email everywhere addressing the so-called-paperless.

The attached email which I sent out yesterday does not include any comments about dicipline or suspensions of staff. I strongly believe that she was out of order. I therefore feel compelled to

bring this unnecessary confrontation to your attention.

Alicia Ortiz
Supervisor Probation Officer
Chicago North Division
Juvenile Probation Department
1100 S. Hamilton Ave 2nd Flr.
Chicago, Illinois 60612

Ex 17

Office # 312 433-6529

Fax #  312 433-4654

email:  alicia.ortiz@cookcountyil.gov

_____

From: Alicia Ortiz (OCJ)

Sent: Thursday, September 06, 2012 11:10 AM

To: Virginia Caulfield (OCJ); Jeffery McKnight (OCJ); Christen Loeb (OCJ)

Cc: Carmen Casas (OCJ); Rose Golden (OCJ); Charles Young (OCJ); Michael Willis (OCJ)

Subject: Substitute Adjudicators errors' in JEMS

As previously indicated in the voicemail sent out on 9/05/12, I am following up on this matter in an email. I bring to your attention the fact that on 9/05/12, the cases of Alejandro Valdez, petitions # 12JD01624, 12JD01625, 12JD01970 & 12JD01981 were heard in court on said date before Judge Sharkey for a sentencing hearing. Unfortunately,  was never assigned to a PO due to the fact that the substituting adjudicator, the screening supervisor, failed to create the orders for the socials in JEMS, therefore generating the need for the case assignment in my JEMS basket. This minor reportedly violated EM, and now will also have an "Escape" charge, and is being held in custody pending sentencing. This minor's cases were continued to 9/19/12 for sentencing which means that my officer has less than two weeks to prepare a social that entails four petitions, four police reports, court action and four child statements.

I am respectfully requesting that this matter be address as soon as possible to avoid any future errors of this magnitude. Unfortunately, this is not the first time that this happen. As recently as July 16, 2012, three minors were in court on that date, which were ordered for sentencing to 8/22/12. The order for the socials was not created in JEMS again by the same officer filling in as an adjudicator. Luckily, one of the unit officers happened to be in court when the socials were ordered and questioned me regarding the cases a few days later. I was then able to research those cases and followed up with you. Having done that, only two of

Ex 17

the cases were entered in JEMS, so I then called you once again, and you instructed me to just call the officer and she would take care of it.

I realized that our department has lost numerous officers, and perhaps adjudicators will be replaced by support staff. I also realized that the screening officers are assisting and do not adjudicate on a consistent basis, therefore increasing the chances of mistakes taking place. However, considering that one of the departments goals is to be "paperless", as a field supervisor, I rely on the court adjudicator's court hearing notes in JEMS, and their detailed notes including exact court orders, agreements, amendment to petitions, verification of addresses and phone numbers is crucial to the case assignment to the field officers.

Our department's goal is to expedite service to the minors before the court and avoid detention of minors as much as possible. Therefore not only does quality assurance needs to take place on a daily basis in the adjudication department, but the staff issue also needs to be address as soon as possible to avoid costly mistakes as the ones mentioned above.

Alicia Ortiz

Supervisor Probation Officer

Chicago North Division

Juvenile Probation Department

1100 S. Hamilton Ave 2nd Flr.

Chicago, Illinois 60612

Office # 312 433-6529

Fax # 312 433-4654

email: alicia.ortiz@cookcountyil.gov

$\mathcal{E}x17$

Chicago, Illinois 60612

Office # 312 433-6529

Fax #    312 433-4654

email: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Michael Willis (OCJ)Actions

To:MJason Smith (OCJ)

InboxFriday, September 07, 2012 12:38 PM


From: Alicia Ortiz (OCJ)

Sent: Friday, September 07, 2012 9:08 AM

To: Carmen Casas (OCJ)

Cc: Virginia Caulfield (OCJ); Rose Golden (OCJ); Charles Young (OCJ); Michael Willis (OCJ)

Subject: Inappropriate Confrontation


Good Morning,

As a follow up to the brief voicemail that I left on your cell phone yesterday at approximately 2:30PM, I am emailing my concerns.

I wish to report that DCPO Caulfield created an unsafe work environment and threatened me. I no longer feel comfortable being alone in an office with her. It is my observation that perhaps she is currently under a lot of stress and is not handling it well. Considering that in this day and age in our society, disgruntle employees have committed tragic events, I am alarmed about this situation and wish to make record of it. I should not have to be subjected to this, simply because I was trying to address an important work related matter.

$Ex 17$

The following is a brief description of what took place:

Unfortunately, I had an encounter with DCPO Caulfield yesterday afternoon which alarms me. I initially saw her in the southeast kitchen on the second floor. As I

walked in I said hello to her, and she quickly walked out without saying anything or acknowledging me. I realized that she was upset, and continued on my way to your

office to sign out for the day. While I was talking to Almetha, Ginny hurriedly walked in and asked Almetha if you were in the office. Almetha informed her that you had

left, and Ginny then asked if she could have a word with me. As we walked in, I initially sat at the round table and Ginny closed the door but did not sit down. It was

physically apparent that she was extremely angry not to mention her tone of voice. Ginny started by telling me that she had talked to you the previous afternoon and I

responded that you had shared that with me. She then questioned why I sent the email to everyone in the department after she had already told me that she

would be handling it. I reminded her that I had previously addressed this similar matter with her prior to the case in question, and that in that occasion I had to call a

second time for a third case which was still omitted even after it had been raised as a concern. However, her response to me was to call the officer directly. I informed

her that this was an important matter that needed to be address especially since a minor was now in custody. Ginny responded that it had been brought to her attention

that I did not want screeners to adjudicate, and that was my problem. I reminded her that our department's goal was to service the minors and that I felt strongly about

my work. Ginny then made statements that I just want people suspended, and that Judge Sharkey had approached her and stated that he was not looking to get C. Loeb

in trouble. Ginny further stated that the Judge was going to speak to Mike on behalf of C. Loeb. Ginny then stated, "C. Loeb will never get discipline!" I then informed

her that my intentions were never to get someone suspended or for someone to lose their jobs. I simply wanted the matter resolved. She then stated that people have

been suspended in Adjudication and that she is handling the situation. Ginny further stated that from now on J. McKnight is assigned to Cal. 63. I replied that it was good,

and that was a better plan than what she had mention the previous day of having the adjudicators simply fill out a facesheet for the SPOs' to review, especially since we

are suppose to be "paperless". At one point Ginny opened the door and continue to raise her voice at me to the point that I asked her to calm down and to lower her voice

and close the door. Ginny complied but then stated in a harsh tone " I sure hope you don't ever make a mistake!" At that point I perceived that as a threat and luckily she

opened the door and started to walk out of your office. She stopped to get some candy and as I passed her, she made a statement in a sarcastic demeaning tone how I

should send an email everywhere addressing the so-called-paperless.

The attached email which I sent out yesterday does not include any comments about dicipline or suspensions of staff. I strongly believe that she was out of order. I therefore feel compelled to

bring this unnecessary confrontation to your attention.

Alicia Ortiz

Supervisor Probation Officer

Chicago North Division

Juvenile Probation Department

1100 S. Hamilton Ave. 2nd Flr.

Chicago, Illinois 60612

$E_x$ 18

AViK OAS

\* THE DEPARTMENT
    Revised during Arbitration
    after info was presented
        of racial discrimination

Discrimination    Complaint
    AFSCME LOCAL    471
        STEP

 **AFSCME**
In the public service

# OFFICIAL GRIEVANCE FORM

NAME OF EMPLOYEE  LAUREN BROWN          DEPARTMENT  Juv PROB
CLASSIFICATION    PROBATION OFFICER II
WORK LOCATION     (R...(i))        IMMEDIATE SUPERVISOR  I. PURIS
TITLE    PROBATION OFFICER

## STATEMENT OF GRIEVANCE:

List applicable violation:  On OCTOBER 22, 2013, MANAGEMENT
    VIOLATED ARTICLE XIX, ARTICLE XX ...  AND ALL
    PERTINENT CONTRACT PROVISIONS WHEN DISCIPLINED ...

Adjustment required:  THE UNION IS REQUESTING THAT ALL DISCIPLINE BE
    RESCINDED AND PURGED FROM THE GRIEVANT FILE AND THAT SHE BE
    ...

I authorize the A.F.S.C.M.E. Local __3477__ as my representative to act for me in the disposition of this grievance

ate   10/15/13         Signature of Employee,  _____
Signature of Union Representative  _____         Title VP/CHIEF STEWARD
Date Presented to Management Representative  10/  /13
Signature  _____  10-28-13              Title (U)/Q/HR

Disposition of Grievance:

**THIS STATEMENT OF GRIEVANCE IS TO BE MADE OUT IN TRIPLICATE. ALL THREE ARE TO BE SIGNED BY THE EMPLOYEE AND/OR THE AFSCME REPRESENTATIVE HANDLING THE CASE.**

ORIGINAL TO   MICHAEL ROHAN
COPY   _____ /...  /...
COPY: LOCAL UNION GRIEVANCE FILE

NOTE: ONE COPY OF THIS GRIEVANCE AND ITS DISPOSITION TO BE KEPT IN GRIEVANCE **FILE OF LOCAL UNION.**

$Ex 18$

### STATE OF ILLINOIS
### CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. Hamilton Avenue
2ⁿᵈ Floor
Chicago, Illinois 60612
(312) 433-6569
(312) 433-7388 Fax

October 21, 2013

Lauren Brown
8548 Monaghan Drive
Tinley Park, IL 60487

Dear Lauren:

    I am in receipt of a number of memorandums from Deputy Chief Irv Ashford which summarize the pre-disciplinary and rebuttal meetings that were initiated to address your significant work performance deficiencies and chronic non-compliance with department standards. It was reported that during the course of these meetings, that neither you nor your union representatives offered plausible explanations for not contacting and/or providing appropriate and timely service to your clients and their families. Rather, you offered excuses for not performing your basic casework responsibilities. Your chronic non-compliance with department standards reflects exceptional poor judgment on your part as well as a fundamental lack of commitment to your clients, our department, and the Court.

    A review of your case materials determined that once again you failed to faithfully discharge the vast majority of your job responsibilities over an extended period of time. The documents reflect that you never initiated contact with approximately thirteen of your clients and their families which precluded referrals for services according to department expectations. This behavior is inexcusable and violates the trust placed in our department by the Court to provide adequate supervision and advocacy for clients referred to our care. Further, the pre-disciplinary documents reflect that you failed to document contacts with twenty-nine clients and agencies within our case management system. You also failed to follow-up with service providers, clients and their families to monitor their progress and/or initiate case activities that might benefit them. The voluminous documentation that I reviewed also indicated that you failed to follow clear directives of both your deputy chief and supervisor. The culmination of your egregious poor performance, non-compliance with department standards, and unprofessional behavior is grounds for a major cause disciplinary action including your possible

Ex/8

termination from this department. A review of your personnel file reflects that I suspended you for twenty days in mid 2011 for similar performance deficiencies with the admonition that further related non-compliance would prompt your termination. At that time, a corrective action plan was developed to address similar performance deficiencies. You have not demonstrated the initiative to improve your skill sets to provide appropriate services to clients placed under our department's care by the Court. Based on my analysis of your work, I have serious doubts regarding your commitment to faithfully discharge your responsibilities and honor your oath of office as an officer of the Court.

Therefore, effective Tuesday, October 22, 2013, you are hereby suspended for a three-month period, without pay, for the period through and including Wednesday, January 22, 2014. Your expected return to work date is Thursday, January 23, 2014. As a condition of your suspension, you are required to turn over your badge and Cook County I.D. Please note that any singular reoccurrence of such purposeful non-compliance with department standards will result in your termination from the department.

Sincerely,

Michael J. Rohan
Director of Probation
and Court Services

kms

c Charles M. Young
Rose M. Golden
Michael Willis
Jason Smith
Personnel File



October 21, 2013

DCPO Rose Marie Golden
Cook County Juvenile Probation
Human Resources Department
1100 South Hamilton
Chicago, Illinois 60612

DCPO Golden:

I hereby request to review and copy all records concerning my employment with
the Cook County Juvenile Probation Department, pursuant to the Illinois Personnel
Records Act. As you are aware, you must supply me with an inspection opportunity
within seven (7) working days of this request.

Please contact me, immediately, either by phone at (815) 464-0330, or by mail at
8548 Monaghan Drive, Tinley Park, Illinois 60487, to set up a time and date mutually
convenient for me to conduct the inspection and arrange to make copies. Thank You.

Sincerely,

Lauren W. Brown
8548 Monaghan Drive
Tinley Park, Illinois 60487
(815) 464-0330

Ex 19

## STATE OF ILLINOIS
### CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. Hamilton Avenue
2ⁿᵈ Floor
Chicago, Illinois 60612
(312) 433-6569
(312) 433-7388 Fax

To: Kevin Gavin

From: Michael J. Rohan

Date: May 15, 2013

Re: Suspension

It has come to my attention that a pre-disciplinary meeting was convened early this month to address a series of allegations relative to your chronic performance deficiencies. An audit of your caseload reflected serious concerns which included but were not limited to your failure to comply with YASI protocols and Title IV-E case planning protocols. Further, your casework reflected non-compliance with completions of assigned social investigations pursuant to department policy and inaccurate/vague information/entries in your case logs. A review of your time sheets and case logs reflected discrepancies that could not be reconciled. You also were cited for the very serious failure of not contacting minors held in detention according to policy as well as your failure to adhere to policy relative to completing information forms as required by department standards.

Unfortunately, these allegations relative to your performance deficiencies are not an aberration but rather reflect a continued problem with your attention to detail, timeliness and overall accountability. While I appreciate and respect your apparent acknowledgement of your responsibilities and performance deficiencies, previous attempts at corrective action did not resolve or improve your performance problems. I have been informed by your union representative that as a condition to reduce the contemplated disciplinary action, you have agreed to waive your right to grieve this decision. Therefore, based on the multitude of assertions which document your performance deficiencies and chronic non-compliance with department standards, you are hereby suspended for one and one-half days (1 1/2) days, without pay, effective the afternoon of May 16, 2013, through May 17, 2013, inclusive, with your return to work date of Monday, May 20, 2013. Please submit your badge and i.d. to your deputy chief, Carmen Casas, which will be returned to you upon the completion of this disciplinary action.

MJR/kms

c: Charles M. Young
Rose Marie Golden
Carmen Casas
Michael Willis
Francisco Arenas
Personnel File

Ex 17

# MEMORANDUM

2-17-10

TO:     KEVIN GAVIN
        PROBATION OFFICER II

FROM:   JACK COLLINS
        SUPERVISOR PROBATION OFFICER

RE:     PAPERWORK

---

I am writing this to inform you of your continuing problem with submitting timesheets. I have not received a timesheet since the week of 7-27-09. I have mentioned to you numerous times about getting this paperwork to me on a timely basis and according to policy. You have continued to not submit the timesheets. Also, I have counted 9 (nine) YASI's that should have been done and are not completed. There are 8 (eight) reassessments that have not been completed according to policy.

cc:   Mark Morrissey
      Deputy Chief Probation Officer
      Bridgeview

$Ex$ 20

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE PROBATION DEPARTMENT**

**ROSE MARIE GOLDEN**
**Director of Human Resources**
**Probation and Court Services**



1100 South Hamilton 8th Floor
Chicago, Illinois 60612
312-433-6527
312-433-5209 (Fax)
rose.golden@cookcountyil.gov

March 20, 2013

Susan Patla
1652 Gardner Road
Westchester, Illinois 60154

Dear Susan,

On March 20, 2013, a step-one grievance meeting was held in response to a grievance filed on your behalf. The grievance, which was filed on March 13, 2013, indicates that, "Management violated Article XIX Section 8 of the collective beginning agreement. There are no criminal charges pending and the PO is not dangerous." The grievance form lists the required adjustment as, "The union is requesting, the grievant be made whole by reversing her temporary suspension, removing any related correspondence out of her file and return the PO to work immediately." Along with the two of us, present for the meeting were DCPO William Patterson and union representatives Jordanette Matthews and Russell Akis.

During the meeting, your union representative argued that you do not present a danger at work. I responded by indicating that you were not suspended due to concerns you were dangerous. You were suspended due to the fact that you clearly violated the Department's Code of Conduct by participating in the illegal activity of using marijuana. Therefore, the grievance is denied.

Sincerely,

Rose Marie Golden
Director of Human Resources
Cook County Juvenile Probation Department

CC.      Michael J. Rohan
         Charles M. Young
         Virginia Caulfield
         William Patterson
         Russell Akis
         Jordanette Matthews
         Personnel File

Exhibit 21

WILLIAM M. PATTERSON
DIRECTOR OF
HUMAN RESOURCES

1100 SOUTH HAMILTON - 8TH FLOOR
CHICAGO, ILLINOIS 60612
TEL: (312) 433-6327
FAX: (312) 433-5399
william.patterson@cookcountyil.gov

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE PROBATION DEPARTMENT

## MEMORANDUM

DATE:     12-12-14

TO:        KALETHA BEAY
            COURT SERVICES DIVISION

FROM:    WILLIAM PATTERSON
            DIRECTOR OF HUMAN RESOURCES

RE:        HUMAN RIGHTS SETTLEMENT

The Department is attempting to settle your Human Rights claim by allowing you to switch adjudication positions with P.O. Susan Patla. In order for this to occur, we need the union to agree to transfer P.O. Patla to your position. We have requested this permission from the union but have not received a written agreement. Please contact the union to see if they are still willing to agree to the transfers. If we do not have a written agreement by December 19, 2014, we will inform the Illinois Human Rights Department that we were unable to come to an agreement and the claim should proceed.

Thank You.

elm

C:      ROSE M. GOLDEN
        CHARLES M. YOUNG
        AVIK DAS
        KEITH SEVCIK
        PERSONNEL FILE

*Ex 21*



ILLINOIS DEPARTMENT OF
## Human Rights

Pat Quinn, Governor
Rocco J. Claps, Director

October 27, 2014

Jason Smith
3515 W. Cermak Rd.
Chicago, IL 60623

Re:   Charge No. 2014CF2907
      Complainant: Kaletha Seay
      Respondent: Office of The Chief Judge Circuit Court of Cook County

Dear Mr. Smith:

I have been advised that you can provide information pertinent to the Department's investigation of the above captioned charge. Please contact me as soon as possible to discuss this matter. It is critical that the Department's investigation be as thorough and complete as possible. Therefore, it is important that all possible witnesses be interviewed. Even if you do not have any knowledge of this matter, I still need to contact you to confirm this. Please be advised that it is illegal for anyone to retaliate against a witness in one of the Department's investigations. If requested, the Department can keep the names of witnesses confidential. However, at a later date confidential witnesses may be subpoenaed if there is a public hearing on the case.

Please contact me as soon as possible at (312) 814-4414 between the hours of 8:00 a.m. and 4:00 p.m. You may also reach me via email at Serenity.Lee@illinois.gov. If I am not available, please leave your name and a telephone number and/or an email address where I can reach you during business hours. If you send an email, please reference the charge number above and state your name in the email message.

Your cooperation in this matter is greatly appreciated.

Sincerely,

Serenity Lee
Human Rights Investigator
Charge Processing Division

#27
08/12

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr

Ex 21

Charge No.: 2014CF2007
Page 3 of 9

around October, 2013, when she reviewed her bid, she was the individual with the highest seniority on the bid list. Complainant stated that around November or December of 2013, Susan Patla (non-black), Screener/Adjudicator, who was in Complainant's job title at the time, was added to the bid list **(Exhibit B)**. Complainant stated that Patla has more seniority than Complainant but that Patla was not qualified to be on the bid list because Patla was suspended sometime around June, 2013. Complainant stated that Patla told Complainant that she had been suspended.

5. Complainant's copy of the November 5, 2013, bid list **(Exhibit B)** indicates that Patla has more seniority than Complainant with a seniority date of September 16, 1987.

6. Complainant stated that sometime in January, 2014, she found out that Patla was transferred instead of her. Complainant stated that neither the union nor Respondent provided her with an explanation as to why she was not transferred.

7. Complainant stated that she is not aware of any other individuals in her job title who were or were not denied a transfer. Complainant stated that she believes Respondent denied her the transfer due to her race, black, because Patla, race, non-black, was transferred instead even though Patla was suspended within a year prior to the transfer.

8. Jason Smith (black), Juvenile Probation Officer II/Union Vice President, stated that Respondent's transfer decision is mostly based on seniority but that qualification; past discipline (i.e. suspension); completion of the mandated yearly minimum 20 hour training, and "sometimes" expertise are also looked into. Smith stated that if an individual was disciplined within the past year or does not meet the qualifications (e.g. negative performance review), then s/he will not be transferred even if s/he had the most seniority. Smith stated that if an individual does not meet the minimum qualifications, her/his name should not appear on the bid list. Smith stated that in 2013, Complainant was not transferred because she received a negative performance evaluation and therefore, did not meet the minimum qualification. Smith stated that Respondent transferred Patla in January, 2014, even though she was suspended within the past year and did not meet the minimum qualification. Smith stated that Complainant should have been transferred in January, 2014, because she was the individual with the most seniority who met the qualifications.

B. Respondent's Evidence:

1. Rose Golden (non-black), Director of Juvenile Probation Department, stated that Respondent is the juvenile probation department for Cook County and that Respondent hired Complainant on May 16, 1990 **(Exhibit C)**. Golden stated that Complainant is a field probation officer at Respondent's Markham courthouse location. Golden stated that Complainant's job duties were to manage a caseload of juvenile offenders and to assist the juvenile offenders to not come back to court. Golden stated that Complainant was one (1) of the eight (8) field probation officers at the Markham courthouse location. Golden stated that Complainant met

Ex 22

8.   Michael Willis (black), former Supervising Probation Officer, stated that he
     served as the union president for 20 years prior to retiring on December 31, 2014.
     Willis stated that there was a Bridgeview position that opened due to an
     individual retiring. Willis stated that Patla had recently been disciplined but that
     this fact/qualification was not considered in her transfer to the Bridgeview
     position because the union and management came to an agreement to wave the
     qualification and transfer Patla. Willis stated that he made it clear to Complainant
     and other union members that he was "the one that advocated that Patla had to get
     out of the assignment or that she would not have a job." Willis stated that when Patla
     returned from her sick leave on a date he could not recall, she was placed in a job
     assignment that was making her condition worse. Willis stated that Patla was
     "calling me like every day that she could not take it and that it was too much."
     Willis stated that he contacted management in order to protect Patla's job and that
     a meeting was held between himself and Golden regarding Patla's transfer. Willis
     stated that Patla did have more seniority than Complainant and that with the
     discipline qualification waived, it only made sense for Patla to be transferred
     based on her seniority. Willis stated that while he was the union president "the
     union always tried to advocate for the members. I've never heard of someone
     complaining because we were helping another member." Willis stated that
     regardless of the individual's history of discipline record, the union always tried
     to help the individual if s/he was "stuck in bad assignments" as in Patla's
     situation. Willis stated that "most non-blacks don't get suspensions so what
     makes this look different is that" a non-black individual was suspended and that
     the situation worked out for this non-black individual." Willis stated that "I was a
     part of the conversation. I went in on behalf of the union and advocated for this.
     You can't grieve something that a union president was a part of.'"

9.   Willis stated that regardless of race, he advocated for all union members but that
     some like Complainant did not agree because Patla was white. Willis stated that
     "when Patla started calling me, and I went directly to Rohan" who in turn directed
     witness to "meet with Golden." Willis stated that "basically I said she (Patla)
     needed to move" because Respondent "put her in an assignment that was just
     causing further problems." Willis stated that Patla was the individual with the
     most seniority who wanted the Bridgeview position. Willis stated that Patla
     could not have survived and that multiple individuals, including the union,
     management, and her supervisor, feared for her safety. Willis stated that it did not
     make sense to place someone like Patla, who had just returned from sick leave
     and who has never worked in inner city or with delinquent youth, in [tangle-wood]
     and "expect them to thrive." Willis stated that "it was obvious that she was going
     to get hurt soon or later." Willis stated that Respondent agreed that the
     assignment was not suitable for Patla due to safety issues. Willis stated that even
     when she learned that Patla was transferred due to safety issues, Complainant
     stated that she did not care. Willis stated that "I was consistent whether you're
     black or white or whatever... I did not advocate for Susan (Patla) because she is
     white."

10.  Charles Young (black), former Deputy Director of Probation and Court Services,
     stated that that "there would be discussions I would have with the Director of HR,
     Rose Golden. Probably better than 95%... even 95% of the time Rose Golden

$Ex\ 22$



**AFSCME Local 3477**
**Juvenile Probation**
**116 S. Western**
**PO Box 12499**
**Chicago, IL 60612**                    October 31, 2015

**President**
Jason Smith

**Vice President**
Lloyd Marshall

**Secretary**
Kisha Roberts

**Treasurer**
Theodis Chapman

**Executive Board**
Russell Akis
Marty Gleason
Jeffery Haynes
Samuel Johnson
Juanita Wills

**Trustees**
Aaron Campbell
Nick Chio
Nelson Rivera

**Staff Rep**
Eugene Boatright

To: Hon. Chief Judge Timothy Evans

    Laura Kelly, Human Resource Administrator
    Office of the Chief Judge

From: Jason Smith, President
    AFSCME Local 3477

Re: 4th Level Grievance (Supervisor Lena Bailey Holland)

This document is being submitted with a grievance according to the collective bargaining agreement to the Chief Judge for a hearing. Please contact me at 773 242 4658 or jason4951@sbcglobal.net. to discuss dates regarding this matter.

CC: Eugene Boatright, Staff Rep, AFSCME Council 31
    Lloyd Marshall, Vice President, AFSCME Local 3477

*Ex 22*

# STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

TIMOTHY C. EVANS
CHIEF JUDGE

AVIK DAS
ASSISTANT DEPUTY DIRECTOR
PROBATION AND COURT SERVICES



1100 S. Hamilton Avenue
1st Floor
Chicago, Illinois 60612
(312) 433-4884
(312) 433-6744 Fax

MEMORANDUM

February 3, 2015

TO:         Lena Bailey-Holland
            Supervising Probation Officer

FROM:       Avik Das
            Assistant Deputy Director

RE:         Step 3 Grievance Response

On Friday, January 23, 2015 you, Jason Smith, union president, and Russell Akis, union steward, presented your grievance, dated January 20, 2015 and filed at the third step. Deputy Chief Probation Officer (DCPO) Donna Neal joined with me at this meeting to hear your grievance. The grievance seeks adjustment of the discipline (written reprimand) you received on December 17, 2014 for unprofessional conduct. This discipline was affirmed on January 15, 2015 by both DCPO Jennifer Nunez and the Director of Human Resources, William Patterson, after they heard your first grievance of this discipline on January 13, 2015.

At our meeting, you and your union representatives offered the following observations in support of your grievance:

1. Management does not have the authority to impose discipline; such authority rests solely with the Chief Judge.
2. In this case, management has exercised its authority to discipline without just cause.
3. You deny making the statements that constitute the unprofessional conduct upon which this discipline is primarily based.
4. Management has not provided a specific date or time when these alleged statements were made and, therefore, you not only deny ever making such statements, but also you cannot recall what circumstances the three witnesses to those statements could ever have witnessed this conduct.
5. You admit to having a loud voice, but deny ever having a malicious intent or conducting yourself in a disrespectful manner towards any staff.
6. You have no history of discipline.
7. You are a very good worker of 15 years who is committed to getting the job done.

Ex 22

Mr. Akis stated that the incident where PO Slavin alleges you to have said, "Grow some balls..." took place inside your office. He asked why Shanel Jones and Nicole Holmes, who sit right outside of the office, did not hear the comments.

Mr. Patterson asked if the union was saying that their members (PO's Slavin, Moore & Shanahan) were lying. Mr. Akis stated that this was a case of "he said, she said." He said that it was unfair to allow Lena to be punished with a written reprimand that would stay in her personnel file for 18 months, prohibit her from transferring and possibly from being promoted to DCPO.

Mr. Patterson stated that when union members submit written complaints about others, that management must respond. He said that the comments made to PO Slavin were said directly in front of two people who corroborated the incident. The fact that Ms. Jones and Ms. Holmes did not hear the comments does not mean that they were not said. The two ladies sit outside of your office and were not in as close proximity to where the comments were made as PO's Moore and Shanahan were.

Both Mr. Smith and Mr. Akis maintained that you could have been offered a "Coaching & Counseling Memo" and that this discipline was much too severe for allegations based on what one employee says about another.

RESPONSE

With regards to the Chief Judge being the only one who can impose discipline, it is not feasible for the Chief Judge to be personally involved in all disciplinary hearings for all employees of the Circuit Court of Cook County. These responsibilities have been and continue to be properly managed by the Department Directors and their designees.

The comments that PO Slavin alleges that you made "You should grow some balls and stop hiding behind Melissa" and "you supposed to be a man, you ain't know man, a man confronts me when they got a problem" were corroborated by both PO's Moore and Shanahan. These PO's were present in your office when the comments were made which bares more significance than the two support staff members who sit outside of your office stating that they did not hear the comments.

Numerous other witnesses reported that they have heard you use an elevated tone of voice, bang your hand on your desk, and slam down your phone. During the Investigatory Meeting, you denied ever yelling on your phone with the door open, yelling down the hall for people to come to your office, hanging up on people, or using your hands when speaking. You have taken no responsibility for actions that were corroborated by several witnesses other than the three Probation Officers that your union representatives reported you have personality conflicts with.

Your union representatives stated that you should have received "Coaching & Counseling" and that the written reprimand was not appropriate in this situation. The comments you made were egregious and violate our department's Professional Code of Conduct. This discipline is commensurate with discipline imposed for similar issues in the past.

For the reasons listed above, your grievance is denied in its totality.

C.    Rose Marie Golden
      Avik Das
      William Patterson
      Jason Smith
      Russell Akis
      Personnel File

*Ex 22*

# STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
## JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

TIMOTHY C. EVANS
CHIEF JUDGE

ROSE MARIE GOLDEN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. Hamilton Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6569
(312) 433-7388 Fax

| | |
|---|---|
| **TO:** | **Supervising Probation Officer Lena Bailey-Holland** |
| | **RUR Pre-Trial/Diversion** |
| **FROM:** | **DCPO Jennifer Nunez** |
| **RE:** | **Summary of Pre-Disciplinary Meeting & Disciplinary Decision** |
| **DATE:** | **December 17, 2014** |

On December 17, 2014, a Pre-Disciplinary meeting was conducted based on allegations of unprofessional conduct. Along with the two of us, present for the meeting was DCPO Amanda Halawa-Mahdi, and Union Representatives Jason Smith and Russell Akis.

## REBUTTAL SUMMARY

Mr. Smith and Mr. Akis spoke on your behalf and stated that you did not violate the Professional Code of Conduct. They stated that everyone the union interviewed echoed each other in that they denied ever hearing you or seeing you behave in an unprofessional manner. I asked for the names of the individuals that were interviewed and Mr. Smith and Mr. Akis stated they interviewed the "majority" of the people management interviewed and also Walter Mosby from DHS. I again asked who specifically was interviewed and started to read the names of the people management interviewed. Mr. Akis stated that they interviewed everyone management did except for those who made the complaint. I then said that the complaint was issued by PO Josh Slavin. Mr. Akis stated that they did not speak to the other two (PO Melissa Donnelly and PO Paula Shanahan). Mr Akis stated that DCPO Throw-Koc and Sharon McDowell were unavailable. Mr. Smith stated that the union hoped this issue could be settled without having it go any further but in the event that a grievance might be filed they would have to call those interviewed to testify.

I asked if the union representatives would share what the witnesses were asked and was told they were asked about all of the allegations made in PO Slavin's complaint. Mr. Smith said that all of the witnesses said that they have never witnessed any of the behavior outlined in the complaint. Mr. Akis said that one witness, who is not a member of our department, commented that you were never demeaning to staff but that your style is very different from the previous Supervisor and that perhaps your style takes "getting used to."

Ex 22

Mr. Smith stated that he was concerned that management might be damaging your reputation by interviewing individuals outside of our department. I replied that it was a union member who brought forth this complaint and named potential witnesses. Mr. Smith stated that he hoped this matter could be resolved quickly and that your reputation and integrity stay intact as you do your job.

## CONCLUSION OF FACTS AND DISCIPLINARY DECISION

The department investigated allegations expressed in a memorandum dated October 20, 2014 from PO Josh Slavin regarding concerns he had regarding your behavior. Witnesses corroborated that you made inappropriate comments to PO Josh Slavin, you should grow some balls and stop hiding behind Melissa" and "you supposed to be a man, you ain't no man, a man confronts me when they got a problem." These comments were unprofessional and violated the department's Professional Code of Conduct. As a result, the department is issuing a **written reprimand.** The written reprimand will be removed from your file if you are free from the same or similar offenses for eighteen (18) consecutive months in accordance with the Collective Bargaining Agreement.

You are reminded that you must communicate with all court and non-court personnel in a professional manner. This includes but is not limited to: keeping your volume at a normal speaking level, minimizing hand gestures, and not discussing staff concerns with coworkers or other staff you supervise.

Failure to comply with the department's Professional Code of Conduct may result in progressive discipline.

C.     Rose Marie Golden
       Avik Das
       William Patterson
       Jason Smith
       Russell Akis
       Personnel File

$E_x$ 22

# STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

TIMOTHY C. EVANS
CHIEF JUDGE

AVIK DAS
ACTING DIRECTOR
PROBATION AND COURT SERVICES



2245 W. Ogden Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6575
(312) 433-7388 Fax

October 14, 2015

TO:        Lena Bailey-Holland
           Supervising Probation Officer

FROM:      Avik Das
           Acting Director

RE:        Step 3 Grievance Response: 2014 Performance Appraisal

On Thursday, October 8, 2015 you, Jason Smith, union president, and Patrick Nelson, union steward, presented your grievance, dated September 30, 2015, and filed at the third step. Deputy Chief Probation Officer (DCPO) Mark Werner joined with me at this meeting to hear your grievance. You seek an adjustment of your performance appraisal that DCPO Virginia Caulfield completed for a part of the 2014 performance evaluation period. Per your grievance as submitted, the specific adjustment sought is that "[your] evaluation [is] changed to exceeding expectations and that [you] be made whole with this change and awarded merit pay." The appraisal at issue was affirmed by DCPO Caulfield pursuant to her review at step one and it was affirmed again by DCPO Donna Neal pursuant to her review at step two.

At our meeting, you and your union representatives offered the following observations in support of your grievance:
1. You only dispute DCPO Caulfield's rating in Element #5, "Teamwork and Cooperation."
2. You are not disputing DCPO Caulfield's ratings in the other four elements, two of which have you meeting standards and two of which have you exceeding them.
3. In Element #5, you argue that you should be rated as "Exceeds" and not as DCPO Caulfield rated you: "Meet Standards."
4. You note that another DCPO who evaluated you for another portion of the same evaluation period rated you as "Exceeds" overall, thus qualifying you for merit pay prorated for that period of time.
5. You highlighted aspects of DCPO Caulfield's performance appraisal in which she documented what you characterize as examples of performance that exceeded standards in Element #5.
6. You also highlighted aspects of DCPO Caulfield's performance appraisal in which she documented performance that you characterize as insufficient to justify limiting your rating in element #5 to "Meet Standards."

In addition to hearing your grievance arguments, I requested that you and your union representatives take time after our meeting to contemplate and let me know what you may consider to be a viable

Page 1 of 2

Ex 22

resolution to this grievance in lieu of merit pay. In response to my request, I acknowledge receipt of an email dated October 9, 2015 from your union representative, Jason Smith, indicating that you are still seeking merit pay relative to the performance appraisal at issue.

Having considered your arguments and the resolution you seek, I deny your grievance in its entirety based on the following conclusions:

1. Article XX, Section 6 limits the determination to be made in this type of grievance to "whether or not the employee was entitled to the applicable payment."
2. Although you argue your differences with DCPO Caulfield's opinion of your performance in Element #5, your arguments do not speak to the only matter subject to review in this grievance: whether or not you were entitled to merit pay.
3. DCPO Caulfield administered the evaluation instrument correctly, and did not produce an evaluation that would entitle you to merit pay (i.e. money that you were due but did not receive).
4. DCPO Caulfield completed your performance appraisal as your immediate supervisor.
5. Pursuant to arbitration concerning Article XX, Section 6, a bargaining unit member can only have his or her annual performance evaluation completed by his or her "immediate supervisor" and, the next level of management is prohibited from changing it.
6. In light of the contract and the related arbitration decision, I do not see a basis to alter DCPO Caulfield's evaluation, be it in the element you bring to issue, or in any other aspect of the evaluation.

CC:    W. Patterson
       G. Caulfield
       M. Werner
       D. Neal
       J. Smith
       L. Marshall
       P. Nelson
       E. Boatwright

Ex 23

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
  CHIEF JUDGE

MICHAEL J. ROHAN
  DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

January 24, 2011

Added

To:   Timothy C. Evans, Chief Judge of the Circuit Court

From: Cheryl D. Anderson, Probation Officer II
      1100 S. Hamilton 2nd Fl Chgo, Il 60612

Re:   Request to transfer

I am requesting to transfer to Community Services Unit, due to the extreme harassment and humiliation. On December 21, 2010, I was interrogated and audited following a statement, I made to the Illinois Policy Institute. On that day I was questioned for 4 hours, without a lunch break. As a result, my blood pressure soared. My health will not permit to return to that unit.

All of my children in Englewood phoned to tell me, that people they never met were asking questions of them. The children stated that they informed the unidentified people, one was Kevin Hickey, Ore Jones, and William Patterson. If the Deputy had been going into the field with me, he would know that I see my kids. I felt humiliated and disrespected, my credibility was destroyed. I realize now why Mike Rohan, told me that I could not stay in the building after 5:00pm, the reason was he had Kevin Hickey go thru my desk and files since day one. Kevin Hickey states that he was only doing what he was told. P.O. Vicky Jones, the wife of Deputy Jones stated that her husband as well as William Patterson was instructed to audit me, so that the discipline could follow. P.O. Vicky Jones states that Mike Rohan never wanted me there, and often discusses his contempt about me. I instructed P.O. Jones to phone Bruce Wisniewski to inform his of the many underhanded tactics of Mike Rohan. One tactic is to discipline, while he is off, so that it may appear that he does not have anything to do with it.

While off, my blood pressure went down 27 points, as of January 19, 2011. Sir I have attached a copy of the page of the Union letter, that explained how the Quality Assurance, and how it was implemented. I was never told of any problems with my caseload period. The job of the Supervisor or anyone else. I was never told that there were any problems with my caseload. In fact my Supervisor assessed me at an above, for the 2nd year. Also in my Supervisor's annual evaluation, there is no mention of any deficiencies of any of his officers, especially me. Mr. Mitchell has provided me a copy of it. Deputy Ore Jones assessed him at a Meets. Why didn't Supervisor know that I was not doing my job? How do you discipline me, and never address the Supervisor. Why didn't Mr. Mitchell receive a disciplinary for not discipline the Officer? For all of the above reasons, I am requesting to be transferred immediately. I look forward to positive change in the workplace.

Ex 23

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ᴺᴰ FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

January 27, 2011

To:     Bruce Wisniewski, Human Resources
        69 W. Washington 33rd fl.
        Chicago, Il 60601

*Notified*

From:   Cheryl D. Anderson, P.O. II
        815 N. Harlem
        Oak Park, Il 60302

Re:     Phone conversation on January 27, 2011

Thank you for returning my phone message. I wanted to know the status of my transfer request. You instructed me to ask Mike Rohan, if I can move from my current work location. I reminded you that Mike Rohan is the perpetrator in the harassment, investigation. Next you stated that I would have to wait until the investigation with Stu Garbart was over. I then stated that when P.O Mary Tomasinski, and P.O. Mary Pat and P.O. Carol Moss phoned you about 6 months ago, when they told you that Supervisor Alice Disc was harassing them, they were moved in 48 hours! Not one of them had to take all of their sick/vacation leave to alleviate the anxiety they said they were witnessing. When I pleaded with you, to simply do the right thing, allow me to transfer. None of the White Female Officers had to go talk to an investigator, or forced to remain in that situation. Talking to you about the disparity of treatment, you still were not done yet, you then state how the Union, would not allow a member to move without interfering with the AFSCME contract. I then reminded you, of the 3 Probation Officers I worked with for over 20 years at Adult Probation, all have the same Union!

Again, Bruce, your responses and lack of regard for me, is sad. For once, "Do the Right Thing, and give me the same consideration you give others! Just is Fair. Also, did you get the letter from P.O. Vicky Jones? I read it, and my heart weeps. How could Mike Rohan continue to harass her, even after she fainted at a work training conference? Rohan instructed her to waive her rights for discipline and take 5 days without pay. When P.O. Jones refused to make a deal with Mike Rohan, he then tendered her with 15 days without pay! Mike Rohan is not "Monty Hall". He cannot harasses and retaliate, because he is the Director. Is it okay for me to give he Mr. Garbart's number so that she speaks with him also?

I am also requesting that my sick/vacation time be reinstated. For as long as I have been requesting help, is should have been moved. It is not fair that I am not offered any relief as my co-worker.

Cc:     Mr. Timothy C. Evans, Chief Judge of the Circuit Court.

Ex 23

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

January-30, 2011

To: Timothy C. Evans, Chief Judge of the Circuit Court
25 W. Washington  Daley Center Plaza
Chicago, Il 60601

From: Cheryl D. Anderson, Probation Officer II
1100 S. Hamilton 2nd fl.
Chicago, Il 60612

Re: Unethical Behavior

AFSCME Regional Director Nefertiti Smith reported Mike Rohan-Director, phoned her on
Wednesday January 26, 2011. The purpose of the phone call was to find out if P.O. Cheryl D.
Anderson and other P.O's were within their Union Rights, to meet with the Chief Judge, Timothy
C. Evans. Nefertiti Smith states that she told Mike Rohan; she had nothing to do with us coming
to meet with the Chief Judge. Director Rohan wanted to know if there was any way to discipline
me for reporting him for his constant unfair treatment.

Sir, this behavior is indicative of a troubled and deceitful person. At what end will Mike Rohan
continue to harass and sabotage me. Who cares if an employee goes to speak with the Chief
Judge, unless he was guilty of the unfair treatment and harassment? I pay Union dues, how dare
you to contact my Union Director, to inquire if there were any means to discipline/terminate me.

Mike Rohan has crossed the line. He has finally been exposed for going overboard in his
attempts to punish and humiliate me. Director Rohan is not worthy of the position he has. He
should spend time on the Youth in Cook County, and how to assist them and their Families.
Judge, this behavior is not sound, who would do something like that. I don't think I am Safe with
this kind of behavior. It is not good to feel Safe in one's own work place.

Please investigate and respond.

Cc: J. Stuart Garbartt Atty, Meckler Bulger Tilson Marick & Pearson LTP Attorneys At Law
123 N. Wacker Drive  Suite 1800
Chicago, Il 60606

Ex 23

## STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
## JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7389 FAX

( February 1, 2011 )

To: Timothy C. Evans, Chief Judge of the Circuit Court
25 W. Washington  Daley Center Plaza 26th floor
Chicago, Il 60601

Notted

From: Cheryl D. Anderson, Juvenile Probation Officer CDA
1100 S. Hamilton 2nd fl
Chicago, Il 60612

Re: Incident Report-Today February 1, 2011

Today at 1:23pm Deputy Chief Ore Jones continues to berate and humiliate me. I came in to sign the time sheet from yesterday, to find Deputy Jones in my chair, with the time sheet clipboard on his lap. When I entered the office, he stated that " I walked in just in time"! With all Probation Officers' present, Mr. Jones, starts with the Beratement. He becomes loud and demeaning,. I politely answer his questions, attempting to avoid further humiliation. In the interim I requested the whereabouts of the time sheet. Officer Reginald Squalls tells me that Ore Jones has the timesheet on his lap. With that said, Deputy Jones, continues with the, demeaning behavior, now knowing that I wanted the time sheets. Being held captive, I had to wait until Mr Jones, decides to tender the time sheets.

I had written a letter to Deputy Jones regarding his Inappropriate Behavior toward me, just yesterday. I took the letter to Deputy Jones's desk, versus giving it to him with all the Unit Officer's present. After returning, I inform Mr. Jones that I left a letter on his desk, Deputy Jones responded by yelling out, "You need to do your work"! I wouldn't't have to yell it you did your work!!!! I left without a response. The continued confrontation was overwhelming. Whenever I see him, I know that a confrontation will follow. I informed Bruce Wisniewski of Ore Jones's behavior, and requested a transfer, after returning to work from a 5-week emergency leave, for the same harassment and retaliation.

I have nothing to say to him. I do not feel safe around him period.   I have been humiliated and harassed enough. I went home, again with a Migraine, and rocketed blood pressure. I cannot work in this ENVIRONMENT!

$E_x$ 23

## STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
## JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

February 1, 2011

To:   Ore Jones, Deputy Chief-East Division
1100 S. Hamilton 2nd fl
Chgo, Il 60612

From: Cheryl D. Anderson, Probation Officer II - East Division
1100 S. Hamilton 2nd fl
Chgo, Il 60612

Re:   **Inappropriate Statements lead to Inappropriate Behavior**

In the unit staff meeting yesterday, January 31, 2011, which lasted from 10:15 to Noon, **you constantly made negative and inappropriate statements about Supervisor Mitchell and I**. I felt that whatever condescending remarks you needed to make, could have been stated to each of us, in private, versus in front of the entire unit. Although Mr. Mitchell is on medical leave, and was not present, which makes it easier to talk about him, I was present, and found it to be without taste. **This is not the first time, whereas you commonly exhibit no professionalism and lack of class.**

This leads me to my concern about you wanting to go into the field with me, *I am not comfortable around you*, and *would not consent to go anywhere with you* ! I am not comfortable working with you! Any man who constantly belittles and **makes illicit statements about co-workers and even to children bears watching!** Supervisor Mitchell stated that you made an inappropriate comment about another Supervisor, at our location. Deputy Jones, you have already visited my Kids/Youth on Probation, without my knowledge. The kids you contacted were afraid because you had never been out in the field with me, they don't know you! They trusted me and did not feel comfortable talking to you. None of the other Officer's in my Unit suffered the embarrassment of you interrogating their Kids! Knowing you, I wondered what **inappropriate statements you made to them?**

I do not want to be around you, having already witnessed **your inability for Self Control.** My true concern knows that you have already **made inappropriate statement to a Kid/Youth on Probation.** Approximately 4-4 months ago, while during a bugal swab, you obviously thought the Kid was looking at your Genitals, you then asked, if the Youth was looking at **"Your Private/Genitals"**? WOW! As great of an Officer, You think you are, your behavior, then and now is UNACCEPTABLE!!!! As you mentioned yesterday, the lawsuit the "Adult Probation Department" is facing regarding the protection of our clients, *Your Words are Costly!*

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

February 4, 2011

To:     Timothy C. Evans, Chief Judge of the Circuit Court
        25 W. Washington Daley Center Plaza 26th fl
        Chgo, Il 60601

From:  Cheryl D. Anderson, Probation Officer II
        1100 S. Hamilton 2nd fl.
        Chgo, Il 60612

Re:     Fear for My Personal Health and Safety!

At 12:30 pm on Friday February 4, 2011, upon leaving Calendar 80, I entered the office of
Deputy Ore Jones. I requested my paycheck. Mr. Jones started talking, saying nothing about my
paycheck. I simply stated that I wanted my paycheck and did not have anything further to talk
about. Deputy Jones stood up and demanded that I leave his Office. He yelled again that I leave
his Office. I immediately left his office, and stood in the outer corridor and requested my check
again. He stated that he did not have my paycheck, and how did I know, he had my paycheck?
Deputy Jones then stated that I should go to the 8th floor to retrieve it! I stated why would I do
that when I knew he had it. I should not have to beg any one for my hard earned money. I do
not have to put myself in this demeaning/humiliating situation. No one should.

I stood outside, until he decided to go into his desk drawer to get my paycheck, and then handed
it to me. As I stated in earlier incident reports, "I DO NOT FEEL SAFE, AROUND DEPUTY
JONES. MY HEALTH AND PERSONAL SAFETY IS AT RISK!!!!!

I am requesting permission to move my belongings and work in the empty Office Space, that of
Supervisor Argentry Mitchell. I am also requesting that the computer, in Mr. Mitchell's Office
be returned so that I can use it. Sir, I cannot take this Harassment another day. Director Rohan
will not move me, because he supports Deputy Jones, in his Daily Attacks. Anyone else would
have been moved already! **Is it possible for Deputy Frances Bruce to tender my paychecks,
as well as the duties; of Deputy Jones** Deputy *Bruce is a Female*, **who** is knowledgeable and
fair. Mr. Jones is a Dangerous Man, out of Control! Again, I DO NOT FEEL SAFE AROUND
DEPUTY JONES, HIS BEHAVIOR AND DISCONTENT FOR ME IS OUT OF
CONTROL!!!!!

Ex 23

### STATE OF ILLINOIS
### CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

December 27, 2010

To:  Ore Jones
     Deputy Chief
     East Division

     William Patterson
     Deputy Chief
     Chicago Northwest Division

Rose M. Golden
Human Resource Director
Juvenile Probation Department

From: Cheryl D. Anderson CDA
      Probation Officer II
      East Division

Re:  Request to stop continued Vandalism and Sabotage. Enough already!!!!!!!!

I am requesting each of the above Deputies be directed to not vandalize and sabotage my work area. This includes going into my desk drawers, physically searching thru my personal belongings, and removing my personal items, as well as my assigned court documents, only to be presented later, as a deficiency for discipline. On the day before the investigational disciplinary hearing Deputy Ore Jones, had moved the chair with my purse on it to search through my belongings. Unbelievable blatant disregard, keep in mind I was present at work. I just happen to be returning to my desk. Just think what he does whenever I am not present!

I have submitted incidents reports, to the Chief Judge Office, whereas the actual case file materials had been removed. On Wednesday December 23, 2010, at the investigation hearing, many of the removed documents were presented as work/documents never tendered. What a coincidence? Sounds like a set-up to me.

Now I am certain as to why my work area is always in disarray, whereas I never find my belongings the same way I left them. I hereby request that each of you not touch anything on/in my work area, without my permission. Mike Rohan has given all of you the okay to continue with this retaliatory behavior. Charles Young obviously tender instructions to the three of you. Mr. Young acts like he does not know what is going on when in fact he directly tenders al instructions to each of the Deputies, as well as the sneaky manipulation that Rose M. Golden does daily. Last but not lease Mike Rohan # 1 as his emails states, has the last word on all of the Sabotage, Retaliation and Harassment, in the Juvenile Probation Department. None of the Corruption that occurs here would not occur, if Mike Rohan did sanction it! John Bentley, who is a close friend that Rohan hired, is a true executor of

Ex 23

## STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
## JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

March 17, 2011

To:    Mike Rohan, Director-Juvenile and Court Services
       1100 S. Hamilton 2nd Floor Chg., Ill 60612

From:  Cheryl D. Anderson, Probation Officer II  CDA
       1100 S. Hamilton 2nd Floor Chg., Il 60612

Re:    Denied Attendance to Free Conference

Today, I specifically requested permission to attend the "State of the African American Male Conference", sponsored by the Honorable Congressman Danny K. Davis, and the Sankofa Safe Child Initiative. This conference will take place on March 25, and March 26, 2011, at Malcolm X College, from 8:00 to 5:00pm. I wanted permission to attend for that Friday only. I attached the flyer to a department training form and submitted it to you for approval. Shortly afterwards, you stated that my request was DENIED. This conference will be the 1st of its kind, whereas Young and Old African Americans Males can address their specific needs and concerns.

As a Juvenile Probation Officer, working in the Englewood Area, I am well aware of the need for resources, in our community. To deny me and my fellow Probation Officers, an opportunity to attend this conference, is Beyond Belief!

Wednesday March 16, 2011, you stated that I could not attend the ACA Conference, because I was not allocated for use of funds from the "Juvenile Block Incentive Grant". You asked me if I think you should include me in the Federal Funded 'JBIG. I answered yes; you then stated that you would not include me, in any upcoming training. It is time that you include me, and other Black Officers, the same opportunities as you do the White Officers. Especially, the right for All Officers, to benefit from "JBIG"! Federal Law prohibits Discrimination of any kind

To make matters worse, you continue to deny all transfer requests. I have the qualifications, and prior work experience needed to work in the presently, "All White Mental Health/Clinical Division". As you know that there should be equal representation to the Youth we serve.

But to deny my attendance to a "FREE CONFERENCE", begs an examination of your obvious Judgment and Biases toward me!

Cc:    Timothy C. Evans, Chief Judge of the Circuit Court
       Danny K. Davis, Congressman of the 7th District
       Robert Steele, Commisioner-2nd District
       Mike Willis, AFSCME Steward

$Ex$ 23

Rohan dirty work. He and the other cronies, never, ever, challenge the ill rooted deeds of Mike Rohan, never, ever. That would take some courage, wouldn't it?

I wonder what Director Rohan would do, if his son, Mike Rohan Jr., who works in Adult Probation were treated like this. Heaven forbid, if his recently hired (June/2010) daughter, Erin Rohan, who works in TASC, here at 1100 N. Hamilton, the same location as her Dad, was scrutinized and harassed as I am. I think not. I have a right to work in a safe and bully free work. I deserve the same respect and opportunity for advancement as Mike Rohan Sr. children receive, the very same. This has gone on for too long, as I stated to Bruce Wisniewski, I am tired, something has to give! Now I am being punished for speaking to Mr. Lee Williams, investigative reporter, to the point that I requested vacation days, to get my blood pressure down. I knew Deputy Jones, would find an excuse to deny my request. He is a Mike Rohan want to be, and is a bully to those he feels won't fight back. Good job Ore!

Finally, know that I will not stop speaking up against the Corruption, and Unfair Treatment, that is the norm in this department. My GOD won't let me. Director Rohan is so comfortable with his corruption, and retaliation, he cannot stop, why would he? For the record, Mike Rohan, you are not GOD! GOD is Good, not evil!

I would not wish this cruelty, humiliation and unfair labor practices, on anyone, of any Race!

Cc:     Timothy C. Evans, Chief Judge of the Circuit Court
        Michael P. Toomin, Chief Judge of Juvenile Services
        Michael J. Rohan-Director of Juvenile Probation
        Charles Young, Deputy Director-Juvenile Probation Department
        Michael Willis, Union Steward-AFSCME Local 3477

Ex 23

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

December 22, 2010

To:     Ore Jones
        Deputy Chief
        East Division

        William Patterson
        Deputy Chief
        Chicago Northwest Division

From:   Cheryl D. Anderson  CDA
        Probation Officer II
        East Division

Re:     Performance Appraisal for 2010

**Based upon the Collective Bargaining Agreement, Supervisors and especially Deputies <u>do
not</u>** have the authority to alter the collective bargaining agreement. Per your letter, Deputy
Jones, and Deputy Patterson, will change/alter my Evaluation, whereas I will not be qualify for
Merit Pay. The letter states that the Deputies, determine who receives Merit Pay, and not the
Immediate Supervisor. Deputy Patterson is already in arbitration for the Merit Pay//2009
whereas, he ordered Supervisor Mitchell to change the wording, and lower my score.

Further, **the Collective Bargaining Agreement, Article XX, Section VI, clearly states**:
Each employee in the bargaining unit shall be evaluated on an annual basis. **The Immediate
Supervisor shall complete an employee's performance evaluation.**
As written in the Performance Appraisal, I accept the score of "Exceeds", determined by my
Immediate Supervisor Argentry Mitchell.
I have been ordered to report to an Investigatory Meeting, for December 22, 2010. Conveniently,
after my Supervisor takes a Family Leave. Also, Director Mike Rohan is off work. Mr.. Rohan
is the culprit of this Audit. By appearing to be off work, he does not appear to have anything to
do with this witch-hunt, to discipline/harasses. Deputy Jones, Deputy Patterson and Rose
Golden, and Charles Young, are eager to carry out Rohans Punishment. I wonder if any of you
ever ask, why are we always-harassing Cheryl D. Anderson. Of course not!

Cc     Timothy C. Evans, Chief Judge of the Circuit Court
       Michael P. Toomin, Presiding Judge-Juvenile Justice Division
       Michael J. Rohan-Director of Juvenile Probation
       Charles Young Deputy Director-Juvenile Probation Department
       Michael Willis, Union Steward-AFSCME Local 3477

$E_x$ 23

Finally, you should focus on why you have are not allowed me to attend Conferences. I have been denied attendance to Free Conferences, whereas I still reported to work in Protest The African American Male Conference, is something that I made you aware of. It was I, who suggested to you, that All Officers, be allowed to attend, because of it's extreme value, as Training Hours. Finally, after 3 days, you granted permission for it to appear in the Friday Flyer. Given the facts as to how I brought this information to you, I was threatened with Discipline if I Attended. I am always treated different from the other employees. Blatant Harassment Again and Again. I am the only County Employee, whose Work is not up to par. How can you treat everyone the same, when it is I who is Always, Always under Scrutiny!!!! We have Hundreds, Possibly Thousands of Employees, who will be Granted Training Hours, Except Cheryl D. Anderson, how Convenient!

I can't help but to remember how you openly stated that you would not allow me the benefit of the JBIG, for 2 years! You will not, nor do you have any intentions on, including me, to be allocated for JGIB. You wrote on my request that the Department does not have money for a Black Female Officer to Attend the ACA CONFERENCE. Why don't you use the same funds that you used to send your ex-baby sitter/Supervisor, and all White Staff, for me as well to attend, at least 1 Conference! Question, is that Grant, only for All White Officers, and People you know to use? It sure does appear that way! These are questions that only the Overseer of the Grants, can Investigate, like the State's Attorney Office, and then the Originators of the Grant! Where is the Denial of my request to attend the National Association of Blacks in Criminal Justice? Why hold off in your Denial of Approval. I am clear about your disdain for me, and I Know that request will be denied as well. Tell me can you approve my attendance from the JBIG, when it too addresses the concerns of Blacks? This will be my 3rd request, and based on your track record, I know that I will be denied Again! **Remember, I stand by every letter, and Breath I Take!**

Cc:    Timothy C. Evans, Chief Judge of the Circuit Court
       Mike J. Rohan Personnel File- (Not his Son's Personnel File-Mike Rohan Jr., who works in Adult Probation)
       Charles Young Personnel File
       Rose Golden Personnel File
       Ore Jones Personnel File
       All Other Interested Parties

*Ex 23*

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

March 24, 2011

To:    Mike Rohan, Director-Probation and Court Services

From: Cheryl D. Anderson, Probation Officer II Juvenile Probation and Court Services **CDA**

Re:    **Termination would be a Relief From This Daily Discrimination/Retaliation.**

I am in receipt of another threatening letter to suspend and/or terminate me. I get it! You will make an example of out of me, **for challenging you on your continued Racist Behavior!!!!! *Guess what, I will not STOP!!!!!*** Why not just terminate me??? The almost Daily, Harassment, and or Threat of Up Coming Discipline are nothing less than a Beyond Hostile Work Place! You are DRUNK WITH POWER! How Scary!!! I don't have any rights, Correct, Wrong!!! This is America, and the Constitutions states that I have a right to the **1st Amendment**. *Are you familiar with the U S Constitution?* Blacks are no longer 3/5 human. For the record, again, I stand by every Memo, letter, and/or Physical March. You could at least have the "Intestinal Fortitude", to tell me why you have such UNPARRALEL Hatred for Me. Your manipulation is soooo obvious, whereas you attempt to change the focus, by attempting to say, I slandered Ore Jones/Black, Versus You/ the White Director. How is it that the Policies regarding Ethics do Not Apply to or for ME? How is it that I can't not complain or report Misconduct, But YOU, ON Behalf of Ore Jones can? Everything I report is "Slander", while my so call Right to Inform My Employer of Misconduct, does not apply to Juvenile Policy/Title VII/EEOC Standards. Tell me did Deputy Jones receive Discipline for Asking a Minor, if he was looking at his Penis/Private Area? Check your records. Can we have the Officer who wrote up his very UNETHICAL Behavior Present at my Pre-Disciplinary Tuesday? If any part of that Policy, that Deputy Jones tenders to me, has been applied to his GROSS MISCONDUCT? Funny how you can apply policy for your Good Manager, but I don't have Any Right to Charge Him. Supervisor Argentry Mitchell will be in attendance for this Kangaroo/Witch Hunt Disciplinary Hearing as well! You can request that Officer Norsette, attend as Well!

As far as the **"Harassment Investigation"**, you found it to have no bases. **No Surprise!!** How can you determine what I experience? **Prove me wrong!** I have Never Said /Wrote anything that is not **TRUE!** Democracy, it is the foundation, for this Great Nation. To accuse the person who is being discriminated against as Slanderous, for making a Complaint is Atrocious!!! WOW, if an employee requests an investigation of Harassment from Management, you say that it is Slander! Mike, did you know, that when an employee is complaining of Injustices in the Work Place, you should not accuse that Employee! But when the Director responds by accusing you, **the employee, of Slander and False Statements, where or who can the employee turn to?** The message you send is clear-" **If you say anything negative, as to how one is being Retaliated/Discriminated against, or to talk negatively about Management, or you will be disciplined"!!!!!** <u>Your Message is Clear!</u>

Ex 23

## STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

**TIMOTHY C. EVANS**
CHIEF JUDGE

**MICHAEL J. ROHAN**
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

April 15, 2011

To:     Charles Young, Deputy Director

From:   Cheryl Anderson, Probation OfficerII   CDA

Re:     Incident Report

Yesterday at the beginning of another "Harassment" Investigation, you asked if I was taping the hearing. I stated no, and asked if you were taping me? I am not clear, as to what your response was? Were you taping me? Also, I noticed that when Karola Scott brought in a large Conference Phone, and asked Rose Golden, where did she want it, you both looked awkward. Kaola asked again where she should put the phone? Rose Golden whispered for her to take it away.

Acknowledging the fact, that it is Illegal to Tape a conversation without Permission. It is also illegal to allow Mike Rohan, to listen to the "Harassment" Investigation via Conference Call.

Cc:     Timothy C. Evans, Chief Judge of the Circuit Court
        Michael J. Rohan, Director
        Rose Golden, Director of Human Services
        Shawn Hayes, EEOC Investigator-USGoverment
        Mike Willis, Union Steward

Ex 23

MEMORANDUM

December 13, 2010

TO          Cheryl Anderson
            Probation Officer
            East Division

FROM        Ore Jones
            Deputy Chief
            East Division

            William Patterson
            Deputy Chief
            Chicago Northwest Division

RE:         Performance Appraisal for 2010

We are in receipt of the performance appraisal submitted by SPO Argentry Mitchell evaluating your performance from 1-1-2010 thorough 12-31-2010. As you may be aware, the department management has historically reviewed the performance appraisal documents prior to presentations to the line officers. Last year, supervisors and department management agreed on a revised protocol for the performance appraisal process which required the following:

*All officers' appraisals completed by the supervisors will be reviewed and approved by the deputy before they are shared with the officers. The deputy will make the final determination as to what performance level was achieved by the officer (i.e. exceeds, meets or below standard) after reviewing the evaluations and consulting with the supervisors who completed them.* [Presented to supervisors and deputies on 06/10/09]

Notwithstanding the department's policy/practice requiring management review prior to your receiving a scored instrument, Supervisor Mitchell, perhaps due to the time crunch occasioned by his leave, failed to secure approval from the two deputy chief probation officers responsible for approval of your performance scores. I apologize for this oversight and hereby advise you that William Patterson and I will be reviewing accuracy and thoroughness of the 2010 performance documents and the supporting evidence. Please be assured that any and all changes to the final performance appraisal results will be reviewed and discussed with you prior to your sign off and you will be permitted to respond in writing to your evaluation if you have any concerns.

Thank you.

C           Michael J. Rohan
            Charles Young
            Rose Golden

$E_x$ 23

AFSCME LOCAL 3477
STEP 3

 **AFSCME.**
*in the public service*

# OFFICIAL GRIEVANCE FORM

NAME OF EMPLOYEE Cheryl D. Anderson          DEPARTMENT Juvenile Probation

CLASSIFICATION PROBATION OFFICER II

WORK LOCATION JUVENILE COURT     IMMEDIATE SUPERVISOR Argentry MITCHELL

TITLE   P.O. II

*discrimination*

## STATEMENT OF GRIEVANCE:

List applicable violation: Management violated Article XX – Section 9, and any
        and all other relevant provisions of the Collective Bargaining

Agreement.  By conducting unwarranted investigatory hearings, (1-4 hours) at
a time,thereby creating a Hostile Work environment. Such violations, has

resulted in on-going Harassment and Retailiation i. e   denial of Merit Pay
Awards, year ending 2009 & 2010, refusal to pay Total Conference Fees,Promotion
Adjustment required:

        THAT CHERYL D. ANDERSON BE MADE WHOLE.
    This includes the 27 VACATION DAYS, that were used after the last investigatory
meeting on December 21, 2010, whereas, a lunch break was denied. THE DISPARITY
IN TREATMENT STOP AND DISPERSE IMMEDIATELY!

I authorize the A.F.S.C.M.E. Local 3477          as my representative to act for me in the disposi-
tion of this grievance

Date Feb 16, 2011          Signature of Employee Cheryl D. Anderson

Signature of Union Representative Mich D. Will          Title

Date Presented to Management Representative

Signature _____          Title _____

Disposition of Grievance

**THIS STATEMENT OF GRIEVANCE IS TO BE MADE OUT IN TRIPLICATE. ALL THREE ARE TO BE
SIGNED BY THE EMPLOYEE AND/OR THE AFSCME REPRESENTATIVE HANDLING THE CASE.**

ORIGINAL TO

COPY _____

COPY: LOCAL UNION GRIEVANCE FILE

**NOTE: ONE COPY OF THIS GRIEVANCE AND ITS DISPOSITION TO BE KEPT IN GRIEVANCE
FILE OF LOCAL UNION.**

THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES          F-20

Ex 23

CHIEF Judge watifd

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before compiling this form. | ☐ FEPA | AMENDED |
| | ☒ EEOC | 440-2011-03069 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Cheryl D. Anderson | (773) 485-6783 | 03-08-1957 |

Street Address: City, State and ZIP Code
815 N Harlem, Oak Park, IL 60302

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| COOK COUNTY JUVENILE PROBATION | 15 - 100 | (312) 433-6569 |

Street Address: City, State and ZIP Code
1100 S. Hamilton, 2nd Floor, Chicago, IL 60612

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address: City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 
Latest: 04-01-2011

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or about November 14, 1988. My most recent position is Probation Officer. I filed two previous EEOC Charges of Discrimination (EEOC Charge Number: 440-2007-02844 and 440-2008-05485). Subsequently, I have been subjected to different terms and conditions of employment including, but not limited to, not receiving merit pay increases, not being reimbursed for training related expenses, being denied training, and being denied transfers. I have also been subjected to harassment and was suspended.

I believe I have been discriminated against because of my race, Black, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I also believe I have been discriminated against because of my age, 54 (date of birth: March 8, 1957), and in retaliation for engaging in protected activity, in violation of the Age Discrimination in Employment Act of 1967, as amended.

FILE

APR 0 5 2011

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Apr 05, 2011 _Cheryl D. Anderson_ Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Ex 23

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

December 22, 2010

To:     Ore Jones
        Deputy Chief
        East Division

        William Patterson
        Deputy Chief
        Chicago Northwest Division

From:   Cheryl D. Anderson
        Probation Officer II
        East Division

Re:     Performance Appraisal for 2010


**Based upon the Collective Bargaining Agreement, Supervisors and especially Deputies <u>do</u>
<u>not</u> have the authority to alter the collective bargaining agreement.** On Tuesday December
14, 2010, I requested a copy of my performance evaluation from Deputy Jones; he then tendered
a copy to me.
Further, **the Collective Bargaining Agreement, Article XX, Section VI, clearly states**:
Each employee in the bargaining unit shall be evaluated on an annual basis. **The Immediate
Supervisor shall complete an employee's performance evaluation.** An employee's
performance evaluation shall be reviewed and discussed with the employee and the employee
shall be permitted to respond in writing to their evaluation. This was done as stipulated by the
Collective Bargaining Agreement, with Supervisor Argentry Mitchell. Nowhere does it state that
the Deputy has the right or the authority to alter the evaluation.

As written in the Performance Appraisal, I accept the score of "Exceeds", determined by my
Supervisor Argentry Mitchell.


Cc:     Timothy C. Evans, Chief Judge of the Circuit Court
        Michael P. Toomin, Presiding Judge-Juvenile Justice Division
        Michael J. Rohan
        Charles Young
        Avik Das
        Francisco Arenas
        Michael Willis

Ex 2Y



**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES

1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7383 FAX

MEMORANDUM

DATE:       April 10, 2014

TO:         PO Jei Bailey
            East Division

FROM:       Ute Jones, III ⟨signature⟩
            Deputy Chief Probation Officer
            East Division

RE:         Pre-disciplinary/Rebuttal Meeting Summary

On April 9, 2014, a pre-disciplinary/rebuttal meeting was commenced and concluded in regards to an allegation of falsifying a timesheet and case log. Present for the hearing were myself, union representatives, SPO Lloyd Marshall, PO Jeffery Haynes and DCPO William Patterson. You presented your own rebuttal with PO Haynes making additional comments after you concluded your statements. You admitted that you did not see the client, Tyson Wilson and mother, Carla Wilson on January 31, 2014 as documented on your January 2014 timesheet and log. You indicated that you made a mistake by documenting the information in both locations. You referenced having appointments with Cheryl Bristol from the Personal Support Program who is currently counseling/coaching you about various issues. You indicated that while meeting with Ms. Bristol you focused on making sure reports are being submitted in a timely manner. You further stated that you were rushing to get the timesheet and log in on time and did not go back and review it for corrections.

Next, you indicated that you are developing a new system with Cheryl Bristol to make sure all reports are double checked. You stated that support has been offered through myself, DCPO Patterson and SPO Rivera. Further, you indicated you made horrible choices in the past, and this is not the same situation. Lastly, you indicated that you continue to see Cheryl Bristol bi-monthly. PO Haynes stated that he wanted to clarify that a mistake was made as opposed to intentional falsification. I indicated to you that your documentation did not state what you specifically discussed or addressed with your client/family, and reiterated that you wrote "W" and "M" for contacts. You also documented, "PO met the family in the home" on your log. DCPO Patterson stated that the comment you wrote on your log, "no incidents to report," is vague and does not describe detail that would naturally occur in a client/family interaction.

Ex 24

Please note that the Department's Accountability Policy regarding timecard timesheets and logs indicates that falsification shall be grounds for termination. While mistakes can be made, there is no indication that you had met with the family at all along that timeframe. In fact you had not been to the client's home since 11-27-2013. You also repeated the incorrect information in your log and added that there were "no incidents to report."

Upon your return to work in October 2013, I outlined and reviewed with you a supplemental plan to assist you to improve your job performance. You were directed to follow this plan as written without deviation unless prior approval was given by your supervisor or myself. Also, Deputy William Patterson and myself met with you to review the supplemental plan and explained to you that we would be meeting with you for the next six months to ensure that you were completing your job responsibilities according to department policy. You indicated at that time that you understood the plan, and you were not requesting union representation for these meetings.

Based on the severity of charges which resulted in your major cause suspension and Last Chance Agreement signed by you June 26, 2013, I must refer this matter to the Director in that the resulting disciple will exceed my authority.

C    Michael J. Rohan
     Charles M. Young
     Rose Golden
     William Patterson
     Iris Rivera
     Michael Willis
     Jason Smith
     Personnel File

Ex 24

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DIVISION**



1100 S. Hamilton Avenue
2ⁿᵈ Floor
Chicago, Illinois 60612
(312) 433-6569
(312) 433-7388 Fax

April 22, 2014

Joi Basley
5416 S. Wells
Chicago, IL 60609

Dear Ms. Basley:

I am in receipt of a report which charges you with falsification of a court record alleging that you purposely misrepresented having contact with a client and parent that did not occur. During the course of the pre-disciplinary meeting, you acknowledged that you did not see this client or his mother as documented on your timesheet and case log. There was no feasible explanation for these misstatements offered by yourself or your union representatives. A review of your personnel file will reflect that as recent as June 26, 2013, you were suspended for four months without pay, and entered into a "last chance agreement" which stipulated that any non-compliance with department standards and protocols would lead to your termination. The resolution of your previous major cause discipline included your acknowledgement of your falsification of department records and your chronic non-compliance with department standards as well as the ramifications of not adhering to all of the conditions set forth in the "last chance agreement".

It is my assessment that through your actions, you have violated your oath of office and I am confident that your integrity has been compromised to the degree that you can no longer be entrusted to perform any duties related to this department. Therefore, your employment with this department is terminated effective immediately.

Sincerely,

Michael J. Rohan
Director of Probation
and Court Services

kms

c    Charles M. Young
Rose Marie Golden
William Patterson
Michael Willis
Jason Smith
Personnel File

$Ex$ 25

**State of Illinois**
**Circuit Court of Cook County**
**Office of the Chief Judge**

TO:      Jason Smith
            President
            AFSCME 3477

FROM:   Kate Galbraith
            Counsel
            Office of the Chief Judge

DATE:    2/24/2016

RE:       Step 4 Grievance Response – P.O. Christina Grunauer—5-Day Suspension

---

On January 19, 2016, a Step 4 grievance hearing was held regarding the grievance filed by Jason Smith, President of AFSCME 3477 on behalf of P.O. Christina Grunauer. Present for the union was Jason Smith, President; Theo Chapman, Union Steward; and Jeff Haynes, Union Steward. Present for management was William Patterson, Director of Human Resources for Juvenile Probation and Court Services; and Donna Neal, Deputy Chief of Juvenile Probation and Court Services.

In this grievance, the union claimed a violation of Articles XIX and XX of the Collective Bargaining Agreement (CBA) and all pertinent contract provisions when a five day suspension was imposed on the grievant. The adjustment that the union is requesting is that management rescind the suspension and remove the suspension and all related documentation from her personnel file, reimburse her for lost wages and other benefits, and treat her in a nondiscriminatory manner so that the grievant may be otherwise made whole. It is important to note that the parties' positions contained in this decision are mere summaries and any documentation submitted or other statements made at the grievance meeting which are not included in the summaries may have also been relied upon in arriving at the decision below.

After a review of the documentation and testimony given at the grievance meeting, no violation of the CBA is found. At issue in this grievance is a five day suspension issued by management on October 19, 2015 to the grievant for failure to complete work during work time. William Patterson, Director of Human Resources for Juvenile Probation and Court Services, relayed a summary of events leading up to the grievant's suspension. The grievant is a 24/7 EM Officer, whose role is to monitor alerts generated by the electronic monitors and to respond to those alerts in a timely manner. Mr. Patterson stated that the grievant was one of the first officers to join the unit after its inception in November 2014. After hearing concerns from other officers regarding the grievant's failure to respond to alerts, Donna Neal, Deputy Chief of Juvenile Probation and Court Services, looked into the grievant's work history, which is generated by her individual log-in. Ms. Neal found that there were 20 days that the grievant signed in to the system, but produced no work product, and there were an additional 5 days that the grievant did not sign in or out, so management could not verify if she was present at work on those days. Management issued the grievant a five day suspension for failure to do work during work hours, citing that it is a public safety concern. Management stated that it took into account the grievant's lack of past discipline during her 12 year career when issuing the suspension.

For the union, Jason Smith, President, began by stating that the only party with the authority to discipline employees in the bargaining unit is the Chief Judge himself, and that the union believes that the Deputy Chief Probation Officers (DCPOs) do not have the authority to suspend employees. The union

believes that the discipline was issued without just cause, and that the suspension was punitive, not corrective. Mr. Smith also stated that the grievant has received many commendations, including meeting or exceeding standards on her performance reviews since 2011. He further claimed that the grievant's suspension violated Article XX of the CBA because the grievant was discriminated against "as a political statement, to try to justify discrimination against African-American POs in the Department." (Note: the grievant is a white female).

After reviewing the documentation and testimony, no violation of the CBA is found. The grievant failed to log into the system, and failed to complete work on 20 occasions when she did log in, and during all levels of the disciplinary and grievance process did not provide any verification of work completed during the days in question. Thus, this hearing officer is unable to validate the union's claims that the grievant was at work or completed any of her required assignments on the days in question. Past performance reviews are not relevant to the determination of just cause in a disciplinary proceeding. Regarding the grievant's claim of discrimination, no evidence was presented to support the union's theory.

As to the union's argument that the Chief Judge himself is the only one who can issue discipline, the Article/Section giving rise to this allegation was not specifically mentioned in the grievance. Additionally, it is not feasible for the Chief Judge to impose discipline all employees of the Circuit Court of Cook County. This power is delegated to the department heads and their designees, which include Deputy Chief Probation Officers (DCPOs).

This grievance is denied in its entirety.

cc: Avik Das

2

$Ex\ 26$

**State of Illinois**
**Circuit Court of Cook County**
**Office of the Chief Judge**

TO:      Martin Gleason
         Steven Kasperski
         Union Stewards
         AFSCME 3477

FROM:    Carina Segalini
         Counsel
         Office of the Chief Judge

DATE:    4/19/2018

RE:      Step 4 Grievance Response – P.O. Tonnette Jones – Termination

---

On April 2, 2018, a Step 4 grievance hearing was held regarding the grievance filed by AFSCME 3477 on behalf of P.O. Tonnette Jones. Present for the union was Martin Gleason, Union Steward; Steven Kasperski, Union Steward; and Tonnette Jones, the grievant. Present for management was Avik Das, Acting Director and Chief Probation Officer for Cook County Juvenile Probation and Court Services; Jennifer Nunez, Deputy Chief Probation Officer of the Administrative Services Division for Juvenile Probation and Court Services; and William Patterson, Director of Human Resources for Cook County Juvenile Probation and Court Services.

The union claimed a violation of Article XIX of the Collective Bargaining Agreement (CBA) and all pertinent contract provisions, when management terminated grievant on April 16, 2018. The adjustment that the union is requesting is that the grievant "return to work as a full time employee and be made whole." Tonnette Jones, Step 4 Official Grievance Form. It is important to note that the parties' positions contained in this decision are mere summaries and any documentation submitted or other statements made at the grievance meeting which are not included in the summaries may have also been relied upon in arriving at the decision below.

After a review of the documentation and testimony given at the grievance meeting, no violation of the CBA is found. The grievant has worked for the Juvenile Probation Department (JPD) for three (3) years as a Probation Officer at the Cook County Juvenile Center, 1100 S. Hamilton. She received verbal discipline once in the past. Avik Das, Acting Director for Juvenile Probation and Court Services, presented management's position on the termination. Mr. Das explained that the termination of the grievant arose from (1) a verbal reprimand for not following her supervisor's instructions; (2) mischaracterizing her relationship with and invoking the involvement of two minors in her personal issues with her supervisor; (3) filing unsubstantiated and inconsistent complaints against a supervisor with the police, Sheriff, and Human Resources; (4) the misuse of the JEMS notes system to negatively characterize her supervisor rather than focus on notes for the case file; (5) writing letters regarding minors on unapproved personal letterhead that stated negative consequences for non-compliance; and (6) general insubordination that was disruptive to operations.

Mr. Das stated that the grievant was verbally reprimanded on December 4, 2017 for not acting within the chain of command, not following her supervisor's instructions, and interfering with court proceedings that directly affected the due process of minors being held in custody and facing charges. That verbal reprimand occurred because the grievant had removed a statement from a social investigation

1

where grievant should have been given a chance to show that she could improve her work. Further, the Union asserted that one of the points in the termination letter included a direct disobedience by the grievant when she brought her children to work after being told not do so. The Union asserted that the grievant was told once and that her children remained downstairs after that occurrence. The only time a child of hers came into the work place after that directive was to pick up a cell phone that the child used for safety purposes.

In summary, the Union asserted that the grievant had worked in the department for years. She had one conflict with one supervisor over a couple cases. She felt threatened by those in a position of higher authority. Grievant has a good relationship with minors in the department and works well with minors. She has support of other personnel and judges and her termination was without just cause.

After listening to the testimony and reviewing the documentation given, no violation of the CBA is found. Article XIX, Section 2 gives the employer the authority to issue a verbal reprimand, issue a written reprimand, issue a suspension, or discharge an employee. CBA, Art. XIX, §2(A). The CBA specifically states "Although discipline shall normally be progressive and corrective, the Employer need not apply these types of discipline in sequence, but rather base the type of discipline to fit the severity of the offense and/or infraction involved. The Employer may only discipline an employee for just cause." CBA, Art. XIX, §1. In this case, the grievant received a verbal reprimand on December 4, 2017, a temporary suspension that started on December 19, 2017, a written notice of a pre-disciplinary meeting on January 17, 2018, and a termination letter on March 16, 2018.

In this instance, the Employer's decision to discharge the employee fit the severity of the infractions by the grievant and was based on just cause. After receiving a verbal reprimand, the grievant continued to demonstrate a pattern of behavior that became disruptive to the operations within the JPD. Probation officers within the JPD must work in a collaborative manner and be able to handle disagreements with supervisors in a professional manner. When faced with a disagreement with her supervisor and management, grievant demonstrated that she did not handle the disagreement in a professional, collaborative manner. Grievant mischaracterized her relationship with her supervisor to minors involved in active cases within the JPD. By sharing her negative opinions about her supervisor with minors involved in active cases, grievant demonstrated an unprofessional judgment in the handling of disagreements within the JPD and an unprofessional judgment in handling an active case. Moreover, grievant was insubordinate in following a supervisor's instructions on what information to submit to a judge. Grievant gave the impression of complying with the instructions only to follow with an act in direct defiance to her supervisor and submitted the deleted information to the judge without the supervisor's approval. Additionally, grievant inappropriately threatened minors with negative consequences in letters written on letterhead that was not approved by the JPD and used the JEMS notes to continue making negative remarks about her superiors. These incidents demonstrate a pattern of behavior that is disruptive to operations and lacks a professional demeanor. There is no indication that grievant's behavior would change when faced with a different disagreement with a different supervisor, that she would follow a different supervisor's instructions, or that she would refrain from making inappropriate comments to minors in pending cases.

This grievance is denied in its entirety.

cc:     Avik Das

of a minor at the request of a supervisor and the grievant then continued to provide a separate statement with the same information directly to the judge and without a supervisor's approval. Additionally, the grievant involved two minors in her hostile dynamic with management. In one incident, grievant had a dispute with her supervisor which grievant characterized as hostile and threatening and reported the incident to the police and invoked the minor in a follow up investigation. However, the minor's account was inconsistent with the grievant's account and the minor indicated that it only appeared to be a conversation, not an altercation. In a second incident involving a minor, grievant directly told a minor that her supervisor was racist and the minor confirmed that grievant had stated such and urged the minor to write to the judge about the racism in the JPD. Both minors confirmed that grievant characterized the situation as hostile and racist.

Mr. Das further stated that as a investigation was conducted that resulted in a showing of insubordination by grievant, the misuse of the JEMS notes system to disparage supervisors, and a history of writing unapproved letters that threatened negative consequences to minors if there was non-compliance. The investigation showed the grievant's history of not collaborating in efforts to complete socials on minors for court proceedings wherein she would simply reject a supervisor's request for changes and disrupt court proceedings by failing to make those changes. This reluctance to make changes and work in a collaborative environment was evidenced by the consistent failure to make the requested changes and the grievant's verbal statements to a supervisor that were insubordinate and indicated she would not make the changes (e.g., the statement "you're gonna keep waiting, baby"). The grievant further misused the JEMS notes system to make opinionated and negative statements about her supervisors rather than using the system to make factual notes about the minor's case. The grievant further showed a history of writing letters on letterhead that she made up for herself and was not approved by management and the letters inappropriately threatened negative consequences, such as being brought into custody, if the minor did not comply.

Mr. Das stated that the combined effect of this behavior by the grievant warranted just cause for termination under Article XIX. The grievant made it clear that she could not see her opinions working with the opinions of the others in the department and that her view is the superior view. The grievant's behavior will always create a poor dynamic in the department that would be disruptive to operations.

Martin Gleason and Steve Kasperski, Union Stewards (hereinafter, "the Union"), presented the Union's stance on the termination. The Union asserted that discipline is supposed to be progressive and corrective. Under progressive and corrective discipline, the grievant should be allowed time to demonstrate that she can correct her behavior after discipline. Instead, this case went from a verbal reprimand in early December 2017 to a dismissal in March 2018. In order to implement progressive and corrective actions, the grievant should have been allowed time to work with another supervisor, a chance to show she can make changes to her written work under a supervisor's direction, and a chance to show she could work productively within the department.

With respect to the incidents involving the minors, grievant specifically told one minor to not become involved in the reporting of her supervisor to the police. In the other incident, the Union asserted that the minor's case was complicated and that the grievant was trying to accelerate the minor's case so the minor could return home for Christmas. In revising one of the socials that was problematic in court, the Union asserted that the grievant made 14 of the 16 requested changes and the grievant did not make the other changes because she wanted to be accurate. With respect to the letterhead and the contents regarding consequences to minors, the Union asserted that the grievant, as a probation officer, liked to give clients a wide range of possibilities. Since a probation officer has many conversations with clients and develops a relationship with the client, sometimes a probation officer may just "cut to the chase" and inform the client of certain consequences. Here, the grievant thought she was merely informing the clients and not threatening them with negative consequences. The writing of letters is an example of

Ex 27

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

AVIK DAS
ACTING DEPUTY DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6575
(312) 433-7388 FAX

June 13, 2017

TO:     Jason Smith
        Probation Officer
        Chicago West Division

FR:     Avik Das
        Acting Director

RE:     2016 Performance Appraisal – Merit Pay

        We would like to take this opportunity to formally extend our collective appreciation for your consistently strong efforts this past year on behalf of your coworkers and clients. A review of your performance appraisal for 2016 reflects that your work was determined to exceed department standards by your immediate supervisor. Please accept our commendation for your commitment to our court/department throughout the past year. Your merit bonus is included in this paycheck.

        Congratulations and thank you for your continued commitment and dedication.

CC:     Personnel File

Ex 27

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

AVIK DAS
ACTING DEPUTY DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6575
(312) 433-7388 FAX

To:         Jason Smith
            Probation Officer

From:       Avik Das
            Acting Director

Date:       June 28, 2016

Re:         2015 Performance Appraisal – Merit Pay


We would like to take this opportunity to formally extend our collective appreciation for your consistently strong efforts this past year on behalf of your coworkers and clients. A review of your performance appraisal for 2015 reflects that your work was determined to exceed department standards by your immediate supervisor. Please accept our commendation for your commitment to our court/department throughout the past year. Your merit bonus is included in this paycheck.

Congratulations and thank you for your continued commitment and dedication.

ew

Ex 27

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

AVIK DAS
ACTING DEPUTY DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6575
(312) 433-7388 FAX

To:           Jason Smith
              Probation Officer

From:         Avik Das
              Acting Director

Date:         July 31, 2015

Re:           2014 Performance Appraisal – Merit Pay

          We would like to take this opportunity to formally extend our collective appreciation for your consistently strong efforts this past year on behalf of your coworkers and clients. A review of your performance appraisal for 2014 reflects that your work was determined to exceed department standards by your immediate supervisor. Please accept our commendation for your commitment to our court/department throughout the past year. Your merit bonus is included in this paycheck.

          Congratulations and thank you for your continued commitment and dedication.

elm

*Ex 27*

## STATE OF ILLINOIS
### CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. Hamilton Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6569
(312) 433-7388 Fax

To:     Jason Smith

From:   Michael J. Rohan
        Charles M. Young
        Rose Marie Golden
        William Patterson

Date:   May 23, 2014

Re:     2013 Performance Appraisal – Merit Pay


We would like to take this opportunity to formally extend our collective appreciation for your consistently strong efforts this past year on behalf of your coworkers and clients. A review of your performance appraisal for 2013 reflects that your work was determined to exceed department standards by your immediate supervisor. Please accept our commendation for your commitment to our court/department throughout the past year. Your merit bonus will be included in this paycheck.

Congratulations and thank you for your continued commitment and dedication.

kms

Ex 27

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**

*JUVENILE JUSTICE AND CHILD PROTECTION DIVISION*

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. Hamilton Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6569
(312) 433-7388 Fax

To:        Jason Smith
           Chicago West Division

From:      Michael J. Rohan
           Charles M. Young
           Rose Marie Golden
           William Patterson

Date:      June 3, 2013

Re:        2012 Performance Appraisal – Merit Pay


    We would like to take this opportunity to formally extend our collective appreciation for your consistently strong efforts this past year on behalf of your coworkers and clients. A review of your performance appraisal for 2012 reflects that your work was determined to exceed department standards by your immediate supervisor. Please accept our commendation for your commitment to our court/department throughout the past year. Your merit bonus is included in this paycheck.

    Congratulations and thank you for your continued commitment and dedication.

kms

*Ex 27*

# STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
### JUVENILE JUSTICE AND CHILD PROTECTION DIVISION

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. Hamilton Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6569
(312) 433-7388 Fax

To:     Jason Smith
        Probation Officer

From:   Michael J. Rohan
        Charles M. Young
        Rose M. Golden

Date:   June 8, 2012

Re:     2011 Performance Appraisal – Merit Pay

---

Please accept our congratulations for your strong and consistent work performance for the past year 2011. Your dedication and commitment to your coworkers, the Court, and the community is noteworthy and is a positive reflection on your personal and professional approach to your work. A review of your performance appraisal reflects that you were found to "exceed standards" for your assigned responsibilities. Please accept our commendation for your work and commitment to excellence.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continued efforts on behalf of the department.

MJR/CMY/RMG/tg

c: Personnel File

Ex 27

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

To:     Jason Smith
        Probation Officer

From:   Michael J. Rohan
        Charles M. Young
        Rose M. Golden

Date:   July 22, 2011

Re:     2010 Performance Appraisal – Merit Pay

---

Please accept our congratulations for your strong and consistent work performance for calendar year 2010. Your dedication and commitment to your coworkers, the Court, and the community is noteworthy and is a positive reflection on your personal and professional approach to your work. A review of your performance appraisal reflects that you were found to "exceed standards" for your assigned responsibilities. Please accept our commendation for your work and your commitment to excellence.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continued efforts on behalf of the department.

MJR/CMY/RMG/tg

c: Personnel File

Ex 27

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

To:    Jason Smith
        Probation Officer

From:  Michael J. Rohan
        Charles M. Young
        Rose M. Golden

Date:  May 24, 2010

Re:    2009 Performance Appraisal – Merit Pay

---

      Please accept our congratulations for your strong and consistent work performance for calendar year 2009. Your dedication and commitment to your coworkers, the Court, and the community is noteworthy and is a positive reflection on your personal and professional approach to your work. A review of your performance appraisal reflects that you were found to "exceed standards" for your assigned responsibilities. Please accept our commendation for your work and your commitment to excellence.

      We are pleased to include your merit bonus in your paycheck. Thanks again for your continued efforts on behalf of the department.

MJR/CMY/RMG/tg

c: Personnel File

Ex 27

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

To:     Jason Smith
        Probation Officer

From:   Michael J. Rohan
        Charles M. Young
        Rose M. Golden

Date:   September 24, 2009

Re:     2008 Performance Appraisal – Merit Pay

_____

Please accept our congratulations for your exceptional work performance for calendar year 2008. Your dedication and commitment to your coworkers, the Court, and the community is noteworthy and is a positive reflection on your most personal and professional approach to your work throughout the year. For this past year, you were found to "exceed standards" for your assigned responsibilities. You are to be commended for your work which reflects most positively on yourself and the department.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continued efforts on behalf of the department.

MJR/CMY/RMG/dmo

c: Personnel File

*Ex 27*

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

To:     Jason Smith
        Probation Officer

From:   Michael J. Rohan
        Charles M. Young

Date:   October 2, 2008

Re:     2007 Performance Appraisal – Merit Pay

---

Please accept our congratulations for your exceptional work performance for calendar year 2007. Your dedication and commitment to your coworkers, the Court, and the community is noteworthy and is a positive reflection on your most personal and professional approach to your work throughout the year. For this past year, you were found to "exceed standards" for your assigned responsibilities. You are to be commended for your work which reflects most positively on yourself and the department.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continued efforts on behalf of the department.

c: Personnel File

Ex 27

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

TO:             **Jason Smith**
                **Probation Officer**

FROM:           **Michael J. Rohan**
                **Charles M. Young**
                **Thomas V. Morgan**

DATE:           **September 21, 2007**

RE:             **Calendar 2006 Work Performance Review**

---

On behalf of the staff of the entire department, we would like to extend our collective congratulations to you for your dedication and commitment to your coworkers, the Court, and the community. Based on the performance appraisal for calendar year 2006, you were found to "exceed standards" for your assigned responsibilities. You are to be commended for your work during the past year which reflects most positively on yourself and the department.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continuous fine efforts on behalf of the department.

c:      Personnel File

MJR/TVM/CMY/dmo

*Ex 27*

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

TO:  **Jason Smith**
     **Probation Officer**

FROM:  **Michael J. Rohan**
       **Charles M. Young**
       **Thomas V. Morgan**

DATE:  **September 22, 2006**

RE:  **Calendar 2005 Work Performance Review**

---

On behalf of the staff of the entire department, we would like to extend our collective congratulations to you for your dedication and commitment to your coworkers, the Court, and the community. Based on the performance appraisal for calendar year 2005, you were found to "exceed standards" for your assigned responsibilities. You are to be commended for your work during the past year which reflects most positively on yourself and the department.

We are pleased to include your merit bonus in your paycheck. Thanks again for your continuous fine efforts on behalf of the department.

c:    Personnel File

MJR/TVM/CMY/dmo

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT



$E_x$ 27

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES

1100 SOUTH HAMILTON
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

TO:          JASON SMTH

FROM:        Michael J. Rohan
             William P. Siffermann
             Charles M. Young

DATE:        August 10, 2004

RE:          Calendar 2003 Performance

---

On behalf of the management staff of the entire department, we would like to extend our congratulations to you for your dedication and commitment to your coworkers, the Court, and the community. Based on the performance appraisal for calendar year 2003, you were found to "exceed standards" for your assigned responsibilities throughout the year. You are to be commended for your work which reflects most positively on yourself and the department.

We are pleased to include your merit bonus in your next paycheck. Thanks again for your continuous fine efforts on behalf of the department.

c:    Personnel File

MJR/WPS/CMY/dmo

$Ex 27$



# Illinois Labor Relations Board

## IMPORTANT- PLEASE READ CAREFULLY!

October 24, 2014

Timothy C. Evans
Chief Judge of the Circuit Court of Cook County
Richard J. Daley Center, Suite 2600
Chicago, IL 60602

Jason Smith
AFSCME, Local 3477
1100 South Hamilton
Chicago, IL 60612

<div style="margin-left: 40%;">

Case Number:    S-CA-15-047
Board Agent:    Thomas Allen
160 N. LaSalle Street
Suite S-400
Chicago, IL 60601-3103
(312) 793-6354

</div>

Dear Parties:

The Illinois Labor Relations Board has received the enclosed unfair labor practice charge alleging a violation(s) of the Illinois Public Labor Relations Act, 5 ILCS 315 (2012), *as amended*. Unfair labor practice procedures are governed by Section 1220.20 of the Board's Rules and Regulations. Upon receipt of this letter and the attached unfair labor practice charge you are considered officially served in accordance with Section 1220.20(c) of the **Rules.**

Under separate cover, the Board agent assigned to the case will request that the Charging Party submit, in writing, all information that s/he deems relevant to the charge as given on the Board's form. The Charging Party will have approximately two weeks to comply with this request. Extensions of this deadline will be given only for good cause and may only be granted for one to three days. Upon receipt of the Charging Party's submissions, the Board agent will conduct an assessment of the case. If the Board agent deems the evidence fails to raise an issue for hearing, s/he will contact the Charging Party and advise it that the case will be recommended for dismissal unless the Charging Party chooses to withdraw the case within 10 days. If the Board agent deems the evidence is sufficient to proceed with the investigation, s/he will contact the Respondent by letter and request a position statement responsive to the issues present in the case. The Respondent's position statement will be due approximately two weeks after the request. Again, the Board agent may grant only brief extensions of time to the Respondent, and may only grant one for good cause. There may be brief follow-up contacts with one or both parties, but only for purposes of clarification or extraordinary circumstances.

Ex 27

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s) |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 440-2014-05397 |

**Illinois Department Of Human Rights**

State or local Agency, if any

and EEOC

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Patrick Nelson | (708) 989-1676 | 05-30-1962 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2433 W. Washburne, Chicago, IL 60608 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| COOK COUNTY JUVENILE PROBATION | 500 or More | (312) 738-8200 |

| Street Address | City, State and ZIP Code |
|---|---|
| Office Of The Chief Judge, 1100 S. Hamilton, Chicago, IL 60612 | |

| Name | | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                     Latest
08-08-2014

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began employment with Respondent on or about April 9, 2001 and my current position is Probation Officer. During my employment, I have been subjected to different terms and conditions of employment, which includes, but is not limited to, being denied the ability to earn and use compensatory time, and being denied a performance bonus.

I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Aug 08, 2014 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date               Charging Party Signature | |

$Ex$ 27

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s) |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See the enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | |
| | ☒ EEOC | 440-2014-05396 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Inc. Area Code) | Date of Birth |
|---|---|---|
| Mr. Howard Brown | | 10-12-1951 |

Street Address: City, State and ZIP Code
**931 E. Hyde Park Blvd, Chicago, IL 60615**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| OFFICE OF THE CHIEF JUDGE-COOK COUNTY JUVENILE PROBATION | 500 or More | (312) 738-8200 |

Street Address: City, State and ZIP Code
**1100 S. Hamilton, Chicago, IL 60612**

| Name | | Phone No. (Include Area Code) |
|---|---|---|

Street Address: City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — Latest: **08-08-2014**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent on or about June 12, 2000. My current position is Probation Officer. During my employment, I have been harassed, scrutinized, and disciplined, while non- Black employees were not subjected to similar working conditions.

I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

**Aug 08, 2014**
Date

Ex 25

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2014-05398 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.)<br>Ms. Joi Basley | Home Phone (incl. Area Code)<br>(773) 368-9226 | Date of Birth<br>08-08-1972 |
|---|---|---|

Street Address     City, State and ZIP Code
5416 S. Wells, Chicago, IL 60609

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>COOK COUNTY JUVENILE PROBATION | No. Employees, Members<br>500 or More | Phone No. (Include Area Code)<br>(312) 738-8200 |
|---|---|---|

Street Address     City, State and ZIP Code
1100 S. Hamilton, Chicago, IL 60612

RECEIVED EEOC

AUG 1 3 2014

CHICAGO DISTRICT OFFICE

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address     City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest / Latest
04-22-2014

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began employment with Respondent in or about February, 1999. My position was Probation Officer. During my employment, I was subjected to different terms and conditions of employment than non-Black employees, including but not limited to discipline, threat of discharge, last chance agreement, and then discharge.

I believe that I have been discriminated against because of my race, Black, and in retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I declare under penalty of perjury that the above is true and correct. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Aug 13, 2014 _____<br>Date       Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

Ex 29

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s) |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | FEPA | |
| | X EEOC | 440-2014-04452 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl Area Code) | Date of Birth |
|---|---|---|
| Kenneth A. Greenlaw | (708) 730-1079 | 01-03-1967 |

| Street Address | City, State and ZIP Code |
|---|---|
| 502 Bensley Ave., Calumet City, IL 60409 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| COOK COUNTY CIRCUIT COURT | 500 or More | (312) 603-6000 |

| Street Address | City, State and ZIP Code |
|---|---|
| Juvenile Probation Department, 1100 S. Hamilton, Chicago, IL 60601 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest / Latest |

| X RACE | COLOR | SEX | RELIGION | NATIONAL ORIGIN | 04-22-2014 |
|---|---|---|---|---|---|
| RETALIATION | AGE | DISABILITY | GENETIC INFORMATION | | |
| OTHER (Specify) | | | | CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or about February 16, 1999. My most recent position was Juvenile Probation Officer. During my employment, I was suspended and discharged. Non-Blacks were not suspended and discharged for the same and/or similar infractions.

I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED

CHICAGO DISTRICT

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

| | | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE |
|---|---|---|
| May 27, 2014 | X Kenneth J. Greenlaw | (month, day, year) |
| Date | Charging Party Signature | |

Ex 29

## STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
## JUVENILE PROBATION DEPARTMENT

**ROSE MARIE GOLDEN**
**Director of Human Resources**
**Probation and Court Services**

1100 South Hamilton, 8th Floor
Chicago, Illinois 60612
312-433-6527
312-433-5209 (Fax)
rose.golden@cookcountyil.gov



### MEMORANDUM

DATE:     4/28/2014

TO:       JASON SMITH, LOCAL 3477

FROM:     ROSE M.GOLDEN, DIRECTOR OF HUMAN RESOURCES

RE:       RESPONSE TO INFORMATION REQUEST

I am in receipt of the information request (dated April 24, 2014) you submitted relative to a grievance filed on behalf of Joi Basley. I recently provided you with a list of the discipline for the past five years. I do not keep information in my database specific to all last chance agreements. To create a comprehensive list would involve culling through hundreds of employee files, and would be unduly burdensome. Please note that copies of all such agreements have been previously provided to the union.

Regarding your request for a copy of Ms. Basley's personnel file, that information must be requested by the employee. I also cannot allow you to inspect the file until I receive a written request from the employee consenting to your review. I have previously provided you copy of the Personnel Records Review Act. Please provide additional clarity regarding your request for all relevant information.

CC: MICHAEL J. ROHAN, CHARLES M. YOUNG, WILLIAM PATTERSON, BRUCE WISNIEWSKI, MAGGIE LORENC, MICHAEL WILLIS

Ex 27

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE PROBATION DEPARTMENT**

**ROSE MARIE GOLDEN**
**Director of Human Resources**
**Probation and Court Services**



1100 South Hamilton, 8th Floor
Chicago, Illinois 60612
312-433-6527
312-433-5209 (Fax)
rose.golden@cookcountyil.gov

MEMORANDUM

DATE:       4/28/2014

TO:          JASON SMITH, LOCAL 3477

FROM:      ROSE M.GOLDEN, DIRECTOR OF HUMAN RESOURCES

RE:          RESPONSE TO INFORMATION REQUEST

I am in receipt of the information request (dated April 24, 2014) you submitted relative to a grievance filed on behalf of Joi Basley. I recently provided you with a list of the discipline for the past five years. I do not keep information in my database specific to all last chance agreements. To create a comprehensive list would involve culling through hundreds of employee files, and would be unduly burdensome. Please note that copies of all such agreements have been previously provided to the union.

Regarding your request for a copy of Ms. Basley's personnel file, that information must be requested by the employee. I also cannot allow you to inspect the file until I receive a written request from the employee consenting to your review. I have previously provided you copy of the Personnel Records Review Act. Please provide additional clarity regarding your request for all relevant information.

CC MICHAEL J. ROHAN, CHARLES M. YOUNG, WILLIAM PATTERSON, BRUCE WISNIEWSKI, MAGGIE LORENC, MICHAEL WILLIS



Ex 27

**Cook County**
**Juvenile Probation Officers**
**Council 31**
**Chicago, IL 60680**
**Local 3477**    July 3, 2013

President
Michael Willis

Vice President
Jason Smith

Secretary
Carol Braz

Treasurer
Steve Kasperski

Executive Board
Russell Akis
Jose Bravo
Marty Gleason
Jordanette Matthews
Marisol Vergara

Trustees
Aaron Campbell
Nelson Rivera
Kisha Roberts

To:    Rose Golden
       Human Resource Director

From:  Jason Smith
       Vice President, AFSCME Local 3477

RE:    Second notice for information

I am in receipt of your answer to my request for information and making a second request in order for the union to prepare for a grievance hearing. The employer's refusal to provide relevant information to a union is considered a failure to bargain with the union and an unfair labor practice. 29 U.S.C. §158(n)(5). I have spoken to members of the union and they cannot recall management providing this relevant information. It is not a legitimate reason to deny information to the union because we can retrieve this information from our members especially when our members cannot recall receiving this information. Management is aware that this is a new administration for AFSCME Local 3477 and the information cited in your memo cannot be confirmed. This union has a obligation and duty to represent their member in a grievance hearing. The following information is needed in order for the union to make an informed decision surrounding this grievance.

The union is conducting an investigation regarding the grievance we filed on behalf of a Probation Officer who were placed on temporary suspension.

The following information is being requested for the second time:

• The names of each Probation Officer who were placed on temporary suspension within the last five years.
• The offense
• Time frame ( The date they were placed on temporary suspension and the date they were allowed to return to work)
• Outcome of each case (ex suspension, rescinded etc.)

        c.c.    Michael Willis, President, Local 3477 AFSCME
                Maggie Lorenc, Council 31 AFSCME
                Bruce Wisniewski, Legal Services Administrator, Office of the Chief Judge
                Keith Sevick, Legal Counsel, Office of the Chief Judge
                Michael Rohan, Director, Juvenile Probation

Ex 29



We Make America Happen

**AFSCME Local 3477**
**Juvenile Probation**
**116 S. Western** October 25, 2013
**PO Box 12499**
**Chicago, IL 60612**

**President**
Michael Willis

**Vice President**
Jason Smith

**Secretary**
Carol Braz

**Treasurer**
Steve Kasperski

**Executive Board**
Russell Akis
Jose Bravo
Marty Gleason
Jordanette Matthews
Marisol Vergara

**Trustees**
Aaron Campbell
Nelson Rivera
Kisha Roberts

To:     Rose Golden
        Human Resource Director

From:   Jason Smith
        Vice President, AFSCME Local 3477

RE:     Request for Information

**Information Requested:** (Lauren Brown)

There is a grievance file on behalf of Lauren Brown as it relates to Articles XIX and Article XX of the collective bargaining agreement. The union will maintain the confidentiality of personnel information in order for managment to comply with the Illinois Public Labor Relations Act. This information should be provided to the Union by November 1, 2013.

- A list all discipline in your office for the past five years. Please include employee name, date of incident, description of incident and action taken with the employee.
- A date and time to inspect her personnel file
- Please provide information as relates to all Screeners in regards to notification of office interviews
- 21 Day Cases/ Notice to Appear for all Screeners
- 90 Day and 180 Day cases protocols
- Information as it relates to the protocol for all Screeners seeking assistance from ASA
- Protocol for Screeners to make Community referrals
- The Protocol for Screeners to maintain case files for this population.
- The Job Description of a Screener and Adjudicator for this department
- A copy of sign training manual and received by all Probation Officers

Please contact me if the agency requires further clarification of our request or wants to meet to discuss the request, or a format or means of furnishing this information to the union.

CC: Michael Willis, President Local 3477 AFSCME
     Maggie Lorenc, Staff Rep, Council 31, AFSCME
     Lauren Brown, Probation Officer, Local 3477 AFSCME
     Keith Sevick, Legal Counsel, Office of the Chief Judge
     Michael Rohan, Director, Cook County Juvenile Probation
     Charles Young, Deputy Director, Cook County Juvenile Probation

Ex 25

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE PROBATION DEPARTMENT**

**ROSE MARIE GOLDEN**
**Director of Human Resources**
**Probation and Court Services**



1100 South Hamilton 8th Floor
Chicago, Illinois 60612
312-433-6527
312-433-5209 (Fax)
rose.golden@cookcountyil.gov

**MEMORANDUM**

DATE:   10/31/2013

TO:     JASON SMITH, ISA AL 3439

FROM:   ROSE M. GOLDEN, DIRECTOR OF HUMAN RESOURCES

RE:     RESPONSE TO INFORMATION REQUEST

I am in receipt of the information request (dated October 25, 2013) you submitted relative to a grievance filed on behalf of Lauren Brown. Per your request, attached is a list of the discipline for the past five years. Regarding your request to inspect her personnel file, I cannot act on this request until I receive a written request from the employee consenting to your review. Please see the attached copy of the Personnel Records Review Act.

I am unclear as to what type of information you are requesting regarding points three through five. Regarding your request for protocols, a written policy/job description for the screener/adjudicator position is still in the development process. However, I have attached the corrective action plan dated August 23, 2011 created for PO Lauren Brown. This corrective action plan was created to reflect current practice and was provided to PO Brown to clarify her expected job duties and timeframes.

Please clarify the relevance of requesting a copy of the pre-service training manual. The department does not keep training material dating back to the year PO Brown was hired (1989). She would not have been given a more recent copy as the training manuals are only distributed to new hires.

CC: MICHAEL J. ROHAN, CHARLES M. YOUNG, MAGGIE LORENC,

$E \vee 29$

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE PROBATION DEPARTMENT**

**ROSE MARIE GOLDEN**
**Director of Human Resources**
**Probation and Court Services**



1100 South Hamilton 8ᵗʰ Floor
Chicago, Illinois 60612
312-433-6527
312-433-5209 (Fax)
rose.golden@cookcountyil.gov

**MEMORANDUM**

DATE:    OCTOBER 3, 2013

TO:      JASON SMITH, LOCAL 3477

FROM:    ROSE M.GOLDEN, DIRECTOR OF HUMAN RESOURCES

RE:      REQUEST FOR IINFORMATION

I am in receipt of the updated request for information dated September 27, 2013 regarding the grievance filed on behalf of Barbara Vasquez. You have requested that this information be submitted to the union by October 4, 2013. Due to computer related issues, that information cannot reasonably be provided within the requested timeframe. I have been working with the MIS unit to correct the issue and will need time to prepare the data. I am also in the process of seeking additional legal information on this matter. Once these issues are resolved, I will work toward sending this information to the union by October 21, 2013. Please note that due to the personal and confidential nature of the data requested, I will prepare and send a notice to all affected employees informing them of the information to be released prior to submission.

CC:      MICHAEL J. ROHAN
         CHARLES YOUNG
         WILLIAM PATTERSON
         KEITH SEVCIK
         MICHAEL WILLIS
         BARBARA VASQUEZ

Ex 29

### STATE OF ILLINOIS
### CIRCUIT COURT OF COOK COUNTY
### JUVENILE PROBATION DEPARTMENT

**ROSE MARIE GOLDEN**
**Director of Human Resources**
**Probation and Court Services**



1100 South Hamilton 8th Floor
Chicago, Illinois 60612
312-433-6527
312-433-5209 (Fax)
rose.golden@cookcountyil.gov

### MEMORANDUM

DATE:      SEPTEMBER 17, 2013

TO:        JASON SMITH, LOCAL 3477

FROM:      ROSE M GOLDEN, DIRECTOR OF HUMAN RESOURCES

RE:        REQUEST FOR INFORMATION


I am in receipt of the updated request for information Inter...      ber 5, 25...r...ding a
grievance filed on behalf of Emily Pierce alleging a violation of Art...        Section 1 H...ver, in
your memorandum, you site Article XX, Section 9.1 Yo... have req...      copy of ...g... bation
Officer's performance evaluation under the supervision of Deputy Chief Probation Officer Carmen
Casa and Dennis Alexander for the 2012 evaluation year." In that this is confidential information
contained in each employee's personnel record, please pro...d... a... s... want ... st... m... m... m... of h...
attested employee indicating their consent for you to in...ct... of ... pers... nel ... ... ... ... to fo...
the...sand, the Personnel Records Review Act allows only for inspection by a union representative
and not copies. However, any employee may require a copy of their performance appraisal and elect
to provide a copy to you.


CC:        MICHAEL J ROHAN
           GEORGES YOUNG
           WILLIAM PATTERSON
           KEITH SEVCIK
           MICHAEL WILLIS
           EMILY PIERCE

Ex 3

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE PROBATION DEPARTMENT**

**ROSE MARIE GOLDEN**
**Director of Human Resources**
**Probation and Court Services**



1100 South Hamilton 8th Floor
Chicago, Illinois 60612
312-433-6527
312-433-5209 (Fax)
rose.golden@cookcountyil.gov

---

MEMORANDUM

---

DATE:   6/27/2013

TO:     JASON SMITH, LOCAL 3477

FROM:   ROSE M.GOLDEN, DIRECTOR OF HUMAN RESOURCES

RE:     REQUEST FOR INFORMATION

---

I have reviewed your request for information regarding officers who were placed on temporary suspension. In that in each instance the officers were represented by the union, all of the information you requested has already been tendered to the union. Please feel free to contact me if you require information beyond that which is already available to the union.

CC:     MICHAEL J. ROHAN
        CHARLES M. YOUNG
        KEITH SEVCIK
        MICHAEL WILLIS

$E_x$ 29

## STATE OF ILLINOIS
## CIRCUIT COURT OF COOK COUNTY
## JUVENILE PROBATION DEPARTMENT

**ROSE MARIE GOLDEN**
**Director of Human Resources**
**Probation and Court Services**



1100 South Hamilton 8th Floor
Chicago, Illinois 60612
312-433-6527
312-433-5209 (Fax)
rose.golden@cookcountyil.gov

## MEMORANDUM

DATE:   7/17/2013

TO:   JASON SMITH, LOCAL 3477

FROM:   ROSE M GOLDEN, DIRECTOR OF HUMAN RESOURCES

RE:   REQUESTS FOR IINFORMATION

I am in receipt of the request for information dated July 3, 2013 regarding a grievance filed on behalf of Juan Mojica alleging a violation of Article XIX, Sections 4 and 8. In your memorandum, you requested the names of all officers who were placed on temporary suspension within the last five years, the offense, timeframe of the suspension, and case outcome. Please provide a written statement clarifying the relevance (specific to the allegations in this grievance) of the information requested.

CC:   MICHAEL J. ROHAN
         CHARLES YOUNG
         WILLIAM PATTERSON
         KEITH SEVCIK
         MICHAEL WILLIS

$Ex$ 29

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE PROBATION DEPARTMENT**

**ROSE MARIE GOLDEN**
**Director of Human Resources**
**Probation and Court Services**



1100 South Hamilton 8ᵗʰ Floor
Chicago, Illinois 60612
312-433-6527
312-433-5209 (Fax)
rose.golden@cookcountyil.gov

---

**MEMORANDUM**

---

DATE:    7/19/2013

TO:      JASON SMITH, LOCAL 3477

FROM:    ROSE M GOLDEN, DIRECTOR OF HUMAN RESOURCES

RE:      REQUEST FOR IINFORMATION

---

I am in receipt of the request for information dated July 12, 2013 regarding a grievance filed on behalf of Emily Pierce alleging a violation of Article XX, Section 6. In your memorandum, you requested "a copy of each Probation Officer's performance evaluation under the Deputies' supervision for the 2012 evaluation in their division." In that this is confidential information, please provide a written statement clarifying the relevance (specific to the allegations in this grievance) of the information requested.

CC:      MICHAEL J. ROHAN
         CHARLES YOUNG
         WILLIAM PATTERSON
         KEITH SEVCIK
         MICHAEL WILLIS

Ex 29

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE PROBATION DEPARTMENT**

**ROSE MARIE GOLDEN**
**Director of Human Resources**
**Probation and Court Services**



1100 South Hamilton 8th Floor
Chicago, Illinois 60612
312-433-6527
312-433-5209 (Fax)
rose.golden@cookcountyil.gov

## MEMORANDUM

DATE: SEPTEMBER 17, 2013

TO: JASON SMITH, LOCAL 3477

FROM: ROSE M GOLDEN, DIRECTOR OF HUMAN RESOURCES

RE: REQUEST FOR IINFORMATION

I am in receipt of the request for information dated September 5, 2013 regarding a grievance filed on behalf of Barbara Vasquez alleging a violation of Article XIX and all pertinent contract provisions" You have requested:

- "A list of all discipline in your office for the past five years. Please include employee name, date of incident, description of incident, and action taken with the employee.

- A copy of written notices to Barbara Vasquez advising/reminding her to comply with policies in regards to supervision for all Probation Officer under her supervision.

- A list of all discipline in your office for the past five years whereby Supervisors were disciplined because of the Probation Officer under their supervision. Please include employee name, date of incident, description of incident and action taken with the employees."

Regarding your request for copies of memorandums sent to SPO Vasquez, all information was submitted with the pre-disciplinary notice. Relative to your request for discipline records, in that this is confidential personnel information of a sensitive nature, I am declining to comply with this request based on your expressed intention to release this information publicly. In your memo you indicated that: "The disclosure of these documents would enable the public to monitor the manner in which the Agency disciplines government employees and assess the job conduct of public servants. Disclosure of the requested information would serve the public interest by allowing the public to compare the discipline imposed by the agency on employees for similar offenses and thus to

$E \times 29$

determine if the agency is carrying out its management responsibilities in a fair and equitable manner. Disclosure would also serve the public interest by allowing the public to determine if the agency is complying with its legal contractual requirements." It is imperative that all information shared with the union regarding personnel information be maintained in a confidential manner.

CC:  MICHAEL J. ROHAN
    CHARLES YOUNG
    WILLIAM PATTERSON
    KEITH SEVCIK
    MICHAEL WILLIS
    BARBARA VASQUEZ

Ex 25



**AFSCME Local 3477**
**Juvenile Probation**
**116 S. Western** October 25, 2013
**PO Box 12499**
**Chicago, IL 60612**

**President**
Michael Willis

**Vice President**
Jason Smith

**Secretary**
Carol Braz

**Treasurer**
Steve Kasperski

**Executive Board**
Russell Akis
Jose Bravo
Marty Gleason
Jordanette Matthews
Marisol Vergara

**Trustees**
Aaron Campbell
Nelson Rivera
Kisha Roberts

To:   Rose Golden
      Human Resource Director

From: Jason Smith
      Vice President, AFSCME Local 3477

RE:   Request for Information

**Information Requested:** (Lauren Brown)

There is a grievance file on behalf of Lauren Brown as it relates to Articles XIX and Article XX of the collective bargaining agreement. The union will maintain the confidentiality of personnel information in order for managment to comply with the Illinois Public Labor Relations Act. This information should be provided to the Union by November 1, 2013.

- A-list all discipline in your office for the past five years. Please include employee name, date of incident, description of incident and action taken with the employee.
- A date and time to inspect her personnel file
- Please provide information as relates to all Screeners in regards to notification of office interviews
- 21 Day Cases/ Notice to Appear for all Screeners
- 90 Day and 180 Day cases protocols
- Information as it relates to the protocol for all Screeners seeking assistance from ASA
- Protocol for Screeners to make Community referrals
- The Protocol for Screeners to maintain case files for this population.
- The Job Description of a Screener and Adjudicator for this department
- A copy of sign training manual and received by all Probation Officers

Please contact me if the agency requires further clarification of our request or wants to meet to discuss the request, or a format or means of furnishing this information to the union.

CC: Michael Willis, President Local 3477 AFSCME
    Maggie Lorenc, Staff Rep, Council 31, AFSCME
    Lauren Brown, Probation Officer, Local 3477 AFSCME
    Keith Sevick, Legal Counsel, Office of the Chief Judge
    Michael Rohan, Director, Cook County Juvenile Probation
    Charles Young, Deputy Director, Cook County Juvenile Probation



X Ex 3

**Cook County**
**Juvenile Probation Officers**
**Council 31**
**Chicago, IL 60680**
**Local 3477**

**President**
Michael Willis

**Vice President**
Jason Smith

**Secretary**
Carol Braz

**Treasurer**
Steve Kasperski

**Executive Board**
Russell Akis
Jose Bravo
Marty Gleason
Jordanette Matthews
Marisol Vergara

**Trustees**
Aaron Campbell
Nelson Rivera
Kisha Roberts

March 20, 2014

To:     Chief Judge Timothy Evans
        Office of the Chief Judge

From:   Jason Smith
        Vice President, AFSCME Local 3477

RE:     Request for Information (Probation Officer Kenneth Greenlaw)

There is a grievance file on behalf of Probation Officer Kenneth Greenlaw as it relates to Articles XIX and XX of the collective bargaining agreement. The union is requesting that the Employer direct the department head/ designee to provide the following information to the union by March 28, 2014.

- The names of all the Probation Officers in this department who have been placed on temporary suspension.

- All relevant information pertaining to the allegations set forth for the temporary suspension.

This information is being requested in order for the union to prepare for the next step in the collective bargaining agreement and possible arbitration if there is no resolution to this grievance.

CC: Michael Willis, President AFSCME Local 3477
    Maggie Lorenc, Staff Representative, AFSCME Council 31
    Kenneth Greenlaw, AFSCME Local 3477
    Bruce Wisniewski, Office of the Chief Judge
    Keith Sevick, Office of the Chief Judge
    Personnel File

Untitled Message

To.: (Mark [ Rom Hynda (III.))

Arndtn ..lkval (II-), Wilson Pergith (UL))

Subject   Regarding QA P.O. Saffer

Tahoma

Mark I have reviewed with interest your preview of a case assigned to P.O. Saffer that was highlighted in the QA process. I appreciate your diligence in reviewing this concern as well as the response of supvervisor Davoren and Officer Saffer. As we all know, those are mistakes where cases which are transferred are not at the standard we would prefer. That being said your efforts to ensure appropriate resources/referrals is most appreciated . I also believe a complete audit of this officer's work will be instructive for her. Please keep me apprised of your progress.

Email to Mark Dean Myrda
Re: QA - P.O. Snyder     c: Salazar & Pratt

Mark - I have reviewed with interest your review of a risk assigned to P.O. Snyder that was highlighted in the QA process. I appreciate your [illegible] diligence in reviewing the concerns as well as the rigors of the Division of Officer Safety. As we all know, there are numerous concerns which are mustered and not at threshold we would prefer. That being said your efforts to ensure appropriate assessment/protocols is not appropriate. I also [illegible] a negative audit of this officer and will be instructive for her. Thanks

These key in approval of your program.



State of Illinois
Circuit Court of Cook County
Juvenile Probation Department

Charles M. Young
Director of Administrative Services

1100 S. Hamilton Avenue
8th Floor
Chicago, Illinois 60612
(312) 433-6636 Tel
(312) 433-5209 Fax

## M E M O R A N D U M

July 18, 2001

TO: **BRIAN MODJESKI**
**PROBATION OFFICER**

FROM: **CHARLES M. YOUNG** *C M Y*
**DIRECTOR OF ADMINISTRATIVE SERVICES**

RE: **STEP 2 GRIEVANCE**

On July 2, 2001 I convened a meeting to address the step 2
grievance filed on your behalf by AFSCME representatives
Jordanette Matthews and Lauren Brown. Present for this meeting
with you were union representatives Jordanette Matthews and
Edwin Paschal. DCPO Rose Golden attended as a management
representative. Pursuant to my request the union clarified that
the grievance violation only referred to Article XIX, Section 2,
A (3) which refers to suspension. The union's position is that
the 2 day suspension was excessive and the social in question
was the main focus, but parts of it were being viewed out of
context. Ms. Matthews also felt that your typing of socials
should not be an issue since other P.O.'s also type their
socials. Ms. Matthews also indicated that your failure to
prepare cases for transfer is not unique to you-other officers
do not always follow the correct procedure. Ms Matthews stated
that the sanctions imposed should equal the offense and the two
day suspension was excessive.

I stated that I had reviewed the memos issued by Supervisor
Patricia Peters and DCPO John Cosgrove. The socials and
transfer of cases were not the major issues. The disciplinary
action also addressed other areas including:

- The deterioration of your work performance over a period
of time

PAGE 2

- Specific memos issued to you by your supervisor relative to your poor performance

- Multiple meetings involving you, your supervisor and deputy chief addressing performance weaknesses

- Belligerence and insubordination exhibited by you toward your supervisor Pat Peters

After a short caucus requested by the union, Ms. Matthews asked that management consider some leniency because you have been working toward improving your work performance. You stated that you did not have any additional statements or comments.

After reviewing all documentation relative to this disciplinary action and grievance, I support the 2 day suspension imposed by DCPO John Cosgrove. Failure to perform your job responsibilities is a serious violation of department policy and a disservice to our clients. The step 2 grievance is denied.

c:   M. Rohan
     W. Siffermann
     M. Willis
     J. Matthews
     File

CMY:dmo

**State of Illinois**
**Circuit Court of Cook County**
**Office of the Chief Judge**

TO:        Jason Smith
              AFSCME Local #3477

FROM:     Keith Sevcik
              Counsel, Office of the Chief Judge

DATE:     2/5/15

RE:        Step 4 Grievance Response- Ed Walsh- 3 Day Suspension

       A Step 4 grievance hearing was held regarding the grievance filed by AFSCME Local 3477 on behalf of the grievant, Officer Ed Walsh. The union claimed a violation of Article XIX of the CBA after management imposed a 3 day suspension on the grievant. As a remedy, the union asks that the discipline be rescinded and purged from the personnel file and the grievant be made whole.

       After a review of the documentation and testimony given at the grievance meeting, the suspension given to Probation Officer Walsh is reduced from 3 days to 1.5 days.

cc:  William Patterson

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DIVISION**

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. Hamilton Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6569
(312) 433-7388 Fax

To:     Richard Makowski

From:   Michael J. Rohan

Date:   October 24, 2012

Re:     Grievance Settlement

Pursuant to a meeting which was convened in my conference room today, October 24, 2012, a settlement of your grievance was reached through dialogue with you and your union representatives. In addition to you and I, you were represented by Jordanette Matthews and Juanita Cannon both of whom advocated on your behalf and were in agreement with the settlement. During the course of our meeting, I summarized the foundation for this corrective action which was initiated by your deputy chief. There has been a continued pattern of non-compliance with department standards relative to your timely and thorough completion of paperwork and record keeping.    Both you and your union representatives cited the long-term issue you have had with your assigned computer.    I acknowledged that while you computer may have been out dated, you were being cited for a lack of motivation to complete your work in a timely manner. You have had (and continue to have) the option of utilizing a colleague's computer and/or to have asked for assistance from a support staff member in entering your case information. It is my understanding that this may be a moot point as you now have received a new computer.

After much deliberation, there was an offer to reduce the current discipline to a one (1) day suspension with the understanding that you waive your right to pursue any other grievance relative to this decision. Further, both you and your union representatives agreed to stipulate that your performance issues were not related to a training deficiency but rather self motivation. If there is no reoccurrence of a similar performance deficiency (which would be determined by a review of both your supervisor and deputy chief) for a one year period (through October 24, 2013), you can request that this disciplinary decision be removed from your personnel file.    Any reoccurrence of a similar performance problem would be progressive from the original three day suspension.

MJR/kms

c:  Charles M. Young
    Rose Marie Golden
    Michael Willis
    Jordanette Matthews
    Juanita Cannon



**STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

Timothy C. Evans
Chief Judge

William M. Patterson
Director
Human Resources

1100 S. Hamilton Avenue
8th Floor
Chicago, Illinois 60612
(312) 433-6527
(312) 433-5209 FAX

MEMORANDUM

October 30, 2014

TO:      SPO Brian Modjeski
          Detention Alternatives Division

FROM:    William Patterson  wP
           Director
           Human Resources

RE:      Result of Investigatory Meeting

Today we met to discuss concerns that you failed to appropriately supervise your assigned officer, P.O.
Jordan. After investigating the matter, the Department is not proceeding to formal discipline. However,
you are reminded that you must follow all quality assurance protocols of Home Confinement with
Electronic Monitoring to ensure that your staff is in compliance with policy. It is your duty as a
supervisor to make sure that officers assigned to you complete their duties and ensure that their work
is thorough and accurate.

Thank you.

C:        Rose Golden
          Charles Young
          Avik Das
          Donna Neal
          Jason Smith √
          Lloyd Marshall

MEMORANDUM

January 12, 2004

TO: William Pech
    Supervisor
    Southeast Division

FROM: S. Dmukauskas  S D
      Deputy Chief Probation Officer
      Southeast Division

RE: Pre-Disciplinary Meeting

A Pre-Disciplinary Meeting is set for Wednesday, January 14, 2004, at 3:00PM in conference room 2039AW, second floor of the Hamliton Building.

The reason for the possible disciplinary action is as follows:

1) Lack of supervisory accountablility in:

    A) Tracking and noting which youth on PO O'Sullivan's caseload were held in Temporary Detention Center.

    B) Holding PO O'Sullivan accountable for weekly visits with those youth on his caseload who were held in TDC.

2) Failure in supervisory oversight:

    A) Failure to note and correct PO O'Sullivan's failure to complete a social investigation on three cases.

    B) Failure to complete a thorough audit of PO O'Sullivan's caseload and thus fail to have a record on two of his cases.

Your presence is required and you have the right to union representation.

MEMORANDUM

Date: January 22, 2004

To: William Fech
    Supervisor
    Southeast Division

From: Simon Dmukauskas
      Deputy Chief Probation Officer
      Southeast Division

RE: Discipline--Written Reprimand

A written reprimand is being issued on the basis that Supervisor
William Fech :

1) Failed in supervisory accountability and oversight as follows:
   A) Failed to track and note which youth on PO O'Sullivan's
      caseload were held in Temporary Detention Center.

   B) Failed to hold PO O'Sullivan accountable for weekly
      visits with those youth on his caseload while they were
      held in TDC.

   C) Failed to note and correct PO O'Sullivan's failure to
      complete a social investigation on three cases.

   D) Failed to complete a thorough audit of PO O'Sullivan's
      caseload and thus did not have a record or accounting of
      two of PO O'Sullivan's cases.

In your oral rebuttal you stated that there existed several
mitigating factors :

1) There was considerable stress in being a supervisor for a
traditional delinquent field unit for the first time.

2) You did not have supervisor training

3) There had been problems with PO O'Sullivan that were not
corrected by your superiors

4) You were trying to do a good job and did not want to ask for
extra help because you were concerned about appearing incapable
of doing the job.

5)  You are apologizing for the problems that occurred.

The above mentioned factors may somewhat mitigate your
culpability but do not absolve you of responsibility for the
failures in supervisory accountability for the performance (or
in this case lack thereof) of a probation officer in your unit.

Nor do they diminish your responsibility in seeking guidance, training, advice if you felt ill prepared to supervise a field unit.

Your failure in supervisory oversight occurred in areas that should be obvious to any experienced professional in the Probation Department since these involved fundemental obligations: seeing clients in TDC; completing socials; noting case assignments. Thus your are held responsible and accountable.

Taking into consideration that this is your first involvement with the disciplinary process and the listed mitigating factors I am issuing a written reprimand with the added condition that if there is no recurrence of this or any other lapses in your supervisory responsibility this written reprimand will be removed from your personnel file in nine (9) months instead of the contractual eighteen (18) months.

Additionally you have agreed to the following corrective actions:

1) You will structure PO O'Sullivans work schedule to assure that all his job requirements are completed as per policy.

2) You will devise a system for tracking case assignments, court dates, socials for each probation officer in your unit.

3) You will devise a system for noting and tracking all unit clients who are held in TDC and assure that unit POs maintain appropriate contact with such clients.

4) You will audit every single case assigned to your unit to assure that you have noted and documented in your records each case. This will ensure that you can track folders, visits, socials, logs etc.

5) You will seek and accept the assistance of this DCPO and SPOs (such as SPO Dvorsky and SPO Matthews) in devising the above mentioned systems and in any other situations where you feel the need for assistance, guidance or advice.

Failure to comply with the above conditions could result in further disciplinary action up to and including termination.


cc Michael Rohan
   Director Court Services

   Charles Young
   Director Administrative Services

   Jordanette Matthews
   SPO and Union Steward

   Personnel File

MEMORANDUM

October 20, 2014

To: Director Rose Golden

    Deputy Director Charles Young

    Assistant Deputy Director Avik Das

    Human Resource Director William Patterson

CC: Union President Jason Smith

From: PO Josh Slavin

Re: Ongoing Concerns with SPO Bailey-Holland and DCPO Pieroth

---

I have been fortunate and blessed to have a nineteen year career with the Cook County Adult and Juvenile Probation Departments. I have been commended and have exceeded in almost all of my performance appraisals. The work I produce and the pride I take in my job has been noted by both departments. Unfortunately, the current work conditions in this division are dehumanizing, toxic, and hostile. The interactions I have experienced with SPO Lena Bailey-Holland and DCPO Bill Pieroth have been unlike any other I have ever experienced in my career. Their behavior is blatantly unprofessional and unbecoming of management and goes against the department's standards. Unfortunately, I believe my co-workers are scared to put anything in writing because they are in fear of retaliation. However, I have no choice due to my rapidly deteriorating health because of this environment. I look forward to a swift investigation and resolution of this current hostile work environment that SPO Bailey-Holland and DCPO Pieroth are responsible for.

First, my interactions with SPO Bailey-Holland are always toxic, hostile, and dehumanizing. I am constantly being yelled at from down the hallway to get into her office. If I don't respond she gets louder and louder until people in different work areas and different departments can hear her. When I go into her office she bangs her fists against the desk and speaks to me in the most hostile and dehumanizing manner possible. She also screams at me on the phone while having it on the speaker setting, before always hanging up on me. I have many witnesses to how outrageous this behavior is. I would ask for PO's Smolar, Brown, Donnelly, Shanahan, support staff Celestine Hill, and SPO Throw-Koc to be interviewed.

SPO Bailey-Holland is constantly blaming me that it's my fault when anything doesn't go smoothly. She has been heard bad mouthing my co-workers and I to other agencies, departments, and to our own support staff. She is often heard yelling, "If they'd do their damn jobs we wouldn't have any problems" When my unit members or myself go to her for any direction or help she yells our, "what now, why you always coming to me with problems, figure it out your damn selves, and stop coming to me". But, if we

do not come to her with a question she screams at us for not coming to her and makes a scene. We are constantly being belittled and are always wrong with everything we do. She is constantly overheard blaming the RUR officers for any problems that occur. Also, she puts everyone on speaker phone with her door open and is constantly broadcasting our personal business to other people.

Last week SPO Bailey-Holland agreed to meet with the three RUR probation officers (Melissa Donnelly, Paula Shanahan and myself) who asked for a meeting to address the atmosphere in the workplace that has been created since SPO Bailey-Holland transferred to our unit. This meeting went on for at least two hours. She continued blaming each of us for all of the unit problems. As in her past behavior, she continued to talk about individual unit members without accepting any accountability for the part she plays in the current unit dynamic. Whenever she was confronted about her behavior she would turn it around on us. She continued to yell at me in front of the other two RUR officers in our meeting, "you should grow some balls and stop always hiding behind Melissa". She continued yelling at me, "you supposed to be a man, you ain't no man, a man confronts me when they got a problem with me". I stated I have on several occasions only to be yelled at and be dehumanized further. Later, after this meeting she was overheard bad mouthing the three officers to support staff, Shanel Jones. However, it should also be noted, that while discussing issues we have with support staff regarding the transportation of minors to the Saura Center, she was equally talking negatively about Shanel Jones. All three of us walked out of this meeting further dejected and more appalled and scared of SPO Bailey-Holland's behavior. The three of us left very upset.

The second part of the meeting was to try and address the protocols and expectations of our unit in regards to after work releases and transports. However, we walked out of the meeting with her refusing to give any verbal or written information regarding protocol. This will continue to be a problem when someone can not work past their contracted approved schedule. This issue happened again on Friday 10-17-14. PO Shanahan was seen leaving in tears, I was sick to my stomach, and PO Donnelly was visably very upset. As PO Donnelly and I were leaving for the day I overheard PO Smolar talking to PO Donnelly where PO Smolar stated that he is uncomfortable with the tension in the office and he is sorry. He further stated that she (referring to SPO Bailey-Holland) talks about you guys to me, but I just try and keep her on my good side so it doesn't start happening to me.

In conclusion, SPO Bailey-Holland's behavior is so toxic, dehumanizing, and hostile it has created a work environment that is imposable to work in. On numerous occasions we have tried to address our concerns with her just to be screamed at and treated unprofessionally. At this point, we have gone from a unit of highly motivated, productive, and self-sufficient officers, to a group of people who are scared to make decisions fearing the ramifications from SPO Bailey-Holland. PO Shanahan and myself tried to address her behavior two weeks ago with DCPO Pieroth. He told us we should collectively put our concerns in writing if we wanted anything to be addressed. We told him we will let him know if we will proceed with anything. Later, we informed him that we will try and meet with her first. He never came to ask any kind of follow up questions or show any concern based on our issues.

In addition to the unprofessional behavior of SPO Bailey-Holland, I would also like to mention the behavior I have experienced with DCPO Pieroth. DCPO Pieroth's behavior and blatant disregard for our

department standards are even more concerning based on his position with this department. His behavior is appalling. On October 9th I walked into DCPO Pieroth's outer office area, as I do every day, to hand support staff Sandy Bennett the RUR list for her to type. As I was handing her the list I heard DCPO Pieroth and DCPO Caulfield making fun of me in his office. They were heard making fun of the way I talk how I say mitten and button. They continued to say how ridiculous I act and talk. Stunned, I looked into his office and realized they had no idea I was outside and heard them continue to make fun of me. I walked back into my office shocked and stunned what I overheard.

On 10-14-14 DCPO Pieroth came into our office with a lot to say. While PO Shanahan was attempting to praise SPO Bailey-Holland for the way she handled a particular case, DCPO Pieroth agreed, but then started to say how "rough" her approach is. We then started to discuss his move to us and the difficult transition that is occurring when DCPO Pieroth stated something to the effect of, "what's the big deal, its just one girl raped and stuffed in a trunk. He then told us how he stated that to Director Rose Golden, and was told how inappropriate that was. He stated several times, I probably shouldn't have said that to you guys, but continued to make jokes and make light of this horrible and horrific incident. This was a media case and a poor girl was brutalized and victimized and he is making fun of the girl. On a personal level, which I expect will remain only the knowledge of the people I have written this memorandum to, I am a survivor of sexual abuse from 7th grade to my freshman year of high school by my junior high principal. Also, at that time it was a high profile media case. I can't believe this department employs a deputy chief who makes fun of a recent case that had such a negative impact of this department in the media. However, as this is the second time that DCPO Pieroth is in direct supervision of my unit I know that he has a history of making fun of our client's names, afflictions, and diagnosis. He continuously gives nicknames to our clients and their family who have issues or he just makes fun of their situations.

> BLANK
> CELL

Additionally, a few weeks ago PO Shanahan and I were walking out of our office. DCPO Pieroth was walking in the other direction when PO Shanahan stated, "2 mountain dews Bill"? He looked around to verify no one else was around and stated, "I deserve two, I just left the Chief Judges office and got it good". He put his buttock out and leaned over and stated, "I got it right in there but I bent over and took it like a man". He started to chuckle and walked away.

I will not and can not accept the behavior of either Supervisor Bailey-Holland or DCPO Pieroth; both of these managers' behaviors are inexcusable. The work we do is challenging and hard enough without the additional undue stress that I am bearing as a direct result of their unprofessional and dehumanizing behavior. I look forward to a swift investigation and am asking for my entire division to be interviewed about their interactions with our direct management. My personal health is deteriorating rapidly due to this hostile, toxic, and de-humanizing workplace environment and I notice the significant effect it is having on my co-workers. My hope is that the department will act quickly to rectify this situation, but I should make it known that I will file a complaint with the EEOC if this is not swiftly rectified. I will also follow up with Judges Evans and Toomin if no action is taken. I have already consulted my physician in regards to the effect that this is having on me. Thank you for your help in this matter and look forward to a quick response.

RE: Violation of Senior Officers rights                                                    Page 1 of 2

## RE: Violation of Senior Officers rights

Jordanette Matthews (OCJ)
**Sent:** Monday, February 03, 2014 11:04 AM
**To:** Alicia S Ortiz (OCJ)

Alicia I take offense that the union is only working in the best interest of African Americans. As a Negro I am truly offended that you would make a statement of " who's looking out for Latinos and Other Ethnic groups" are you serious? You talk about the executive boards members being held accountable. Look at the make up of the board; understand that Latinos on the board overwhelming vote in conjunction with the non-Blacks 98% of the time regardless of the topic. Please get your facts straight. If you think that Blacks are so protected, why is that I did not get the position in training? Oh yeah a Latino female was given the position. Ouida Cunningham asked about the interstate compact position when she knew Paulette Levy was leaving, she was informed that the position would not be filled. Then came Ed Lynch who is not Black and was given the position. The other subject about going fair share, that is anyone's choice. Your assumption that there will be a new union, if that is what members want they should go for it.

Jordanette Matthews

**From:** Alicia S Ortiz (OCJ)
**Sent:** Friday, January 31, 2014 2:59 PM
**To:** Jason Smith (OCJ)
**Cc:** Marisol Vergara (OCJ); Steven Kasperski (OCJ); Nelson Rivera (OCJ); Carol J Braz (OCJ); Jordanette Matthews (OCJ); Russell Akis (OCJ); Jose D Bravo (OCJ); Martin Gleason (OCJ); Kisha T Roberts (OCJ); Aaron R Campbell (OCJ)
**Subject:** Violation of Senior Officers rights

I would like to formally complain, and request that a grievance be file not only for the "duties" of the Interstate Compact Coordinator, but also for the position which was previously filled by PO I. Porter, currently assigned to SPO Loeb. I previously submitted a bid for the Interstate Compact Coordinator on 10/30/13, and was informed by Mr. C. Young that I could not bid for that position which was a management position, not a union position. If my memory serves me right, this use to be a non-supervisory union position prior to Mr. Lynch being assigned to it. I do not understand why or when this union allowed this to happen. We then learned at the full management meeting that a union member has assumed the responsibilities of the Interstate Compact. Why was this not posted? Not only did the Department violate our union contract, Article XVIII, Section 1 A, B, Section 2, D, but so did this union by allowing this to take place.

Also, prior to SPO Porter retiring, the Department reportedly was phasing out her position which resulted in SPO Porter retiring. Yet, it is my understanding that SPO Loeb has now assumed those responsibilities, now being house in the Markham Court Building part time. Please explain how you allowed this, violating senior officers that had bids in for that position. I myself rescinded that bid when the Department claimed it was being phased out. With all due respect, SPO Loeb has never been accountable for her time, sneaking in and out of the building, not speaking to her staff, not letting them know if she is off or working another assignment such as adjudication or detention screening which she needs to stop doing. In my opinion those employees should file a discrimination lawsuit but because she "leaves them alone", they continue doing as they please. Personally, I would've expected this board to have made it clear to her that she should not volunteer to perform the duties of another union position, making the case to management that those positions should be filled by another union member. Also, can someone please explain why she is allowed to earn comp time when she works other assignments yet when several other of us do, we do not have that privilege? I would also like to understand why the Screeners/Adjudicator from Markham did not fall under the current SPOs in Markham like they used to historically. I believe that R. Golden indicated that they wanted some consistency between the suburbs and the city, then why is it that SPO Loeb did not assume the Bridgeview, Maywood, Rolling Meadows & Skokie Screener/Adjudicators?

With all due respect, when will this union, specifically this current Union President stop violating the rights of senior officers. Unfortunately, I have been the victim of his actions more than three times if I am not mistaken.

RE: Violation of Senior Officers rights

Enough is enough. This union is simply here to serve the troubled/problem officers referred to by management as the "Outliars". Some strongly believe that African American Officers are discriminated by management since more African Americans are discipline. Yet, I would strongly argue that the union only protects, make deals for, and takes care of African Americans union members especially those in the click of M. Willis, our Union President. Where does that leave us Latinos, and "Other" ethnic groups since management takes care of the White officers and the union takes care of the African Americans? I am confident that I am not the only senior officer who is upset with the recent movement within the department. Both management and this union executive board need to be held accountable. It's no wonder why more of us have gone fair share and are looking forward to a new union.

I look forward to your response, and I thank you for your attention to this matter. Please forward this to M. Willis since he no longer has a county email and I do not have it nor do I want his personal email. Personally, I also do not understand why he continues being the union president since he has retired.

**Alicia Ortiz**
**Supervisor Probation Officer**
**Juvenile Probation Department**
**Southwest Suburban Division**
**Bridgeview(Markham Unit)**
**10220 South 76th Avenue**
**Bridgeview, IL 60455**

**Office #  708-974-6690**
**Fax #     708-974-6677**
email:  alicia.ortiz@cookcountyil.gov



Council 31
AFSCME

June 17, 2010

Sent via Certified and Regular U.S. Mail

Bruce Wisniewski, Administrator
Office of the Chief Judge
69 W. Washington St., Suite 3300
Chicago, IL 60602

Re: AFSCME Local 3477 – Temporary Suspension (Sanford) – Arbitration Referral

Dear Mr. Wisniewski:

This letter is being written to inform you of AFSCME Council 31/Local 3477 intent to arbitrate the above referenced matter. In the near future, you will contacted by our Law Department with a panel of arbitrators and mutual agreeable dates and times.

If there are any questions, please do not hesitate to contact me at (312) 641-6060 ext. 4357 or mlorenc@afscme31.org. Thank you.

Sincerely,

Maggie Lorenc
Staff Representative
AFSCME Council 31

cc: Mike Willis
    Francisco Arenas
    Avik Das
    Joe Bella

American Federation of State, County and Municipal Employees, Council 31



State of Illinois
Circuit Court of Cook County

Chambers of
Timothy C. Evans
Chief Judge

50 West Washington Street
Suite 2600
Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-6000

November 6, 2015
Commissioner Stanley Moore
Cook County Board of Commissioners – 4th District
118 North Clark Street, Room 567
Chicago, Illinois 60602

Dear Commissioner Moore,

I want to express today that I appreciate your concern about our juveniles on probation. I believe every stakeholder in our justice system has the same goal of ensuring that we do everything we can to put our children in a position to succeed. And I believe every stakeholder strives for the same goal of pursuing our mission in a financially prudent manner while ensuring the safety of our staff, our juveniles, and the community at-large.

This letter addresses your suggestions and provides the relevant context to understand why we operate in the manner that we do.

Currently, all of our Cook County Juvenile Probation Officers (JPO or JPOs) are authorized to carry law-enforcement grade pepper spray, an expandable baton and wear a bulletproof vest. These protective measures are available at the request of each officer, and every officer is trained in non-violent crisis intervention strategies and physical self-defense including the use of pepper spray and baton. Some assignments that involve being in the field later at night or on weekends oblige the officers to travel in pairs and to be equipped with pepper spray, baton, and vest. Sixteen (16) assignments like this exist within the Juvenile Electronic Monitoring (EM); these officers each carry a caseload of active EM clients and may be in the field as part of their duties.

To date, most field officers do not wear bulletproof vests or carry a baton. Officers may all have pepper spray but will carry it with them optionally and often not visibly at their discretion. As of today, there is no record of staff having to use their pepper spray, baton, or rely on the protection of a bulletproof vest.

You have suggested that all Field Probation Officers carry a firearm and wear a bullet-proof vest. In addition, the local bargaining unit representing JPOs has made periodic proposals to management seeking that all or some subset of officers be authorized to carry firearms along with a demand for increased compensation for carrying firearms.

However, the perceived enhancement to officer safety that a firearm provides is far outweighed by the longstanding history of JPOs safely operating in the field without having to rely on their existing protective gear, and by the overwhelmingly positive relationship JPOs have with young people and the communities served.

I am concerned that introducing firearms would compromise this relationship and obscure the compassionate "face" of our juvenile court and judges that JPOs provide. We strive to reflect the rehabilitative values of juvenile justice and the idea that JPOs are resources and support to young people and communities struggling with violence and crime.

Our message is a simple one: The department stands with our young people and not in fear of them. Introducing deadly force carries too much of a potential for that mission to be compromised.

Regarding your request that I fill the position of Chief Probation Officer, that position is currently held by Avik Das. This budgeted position, as it is titled, has always been filled by the immediate subordinate to the position of "Director of Juvenile Probation and Court Services." Mr. Das succeeded Charles Young, who retired at the end of 2014, as "Chief Probation Officer," and the position that is vacant is the one for "Director of Juvenile Probation and Court Services." This position has been vacant since the retirement of Rose Golden in late February of this year. Since that time, Mr. Das has been fulfilling his role as "Chief Probation Officer" insofar as he is the "Acting Director" and highest ranking manager in the department.

You have also asked that we restructure the duties of EM Officers. By labor law and the applicable collective bargaining agreement, any restructuring of duties for the bargaining unit positions at issue would be subject to union negotiations.

Nevertheless, your suggestion here accurately focuses on the allocation of tasks for each officer. The local union representatives and several of the officers that would be subject to restructuring have already resisted how duties are assigned. Nevertheless, back-up for managing cases in the absence of the "primary" officer is presently built in through the allocation of the other officers within the EM operation. While this suggestion of "primary" and "secondary" roles may not be explicitly apparent in case allocation, all EM staff members collaborate as needed in the absence of an assigned officer. Our management team remains interested in discussing alternatives with the union for assigning duties or tasks but has not, to date, received any proposals from the union in this area.

For your suggestion to assign one probation officer at each of the county courthouses with the ability to conduct device installs after a judge has ruled a juvenile offender be placed on electronic monitoring, it is important to note that the suburban juvenile court calendars are not active every court-business day of the week. The one exception here is Markham.

Juvenile cases are heard in Skokie on Mondays, in Rolling Meadows on Tuesdays, and in Bridgeview on Fridays. Juvenile cases for Maywood are heard on Wednesdays and Thursdays within the main Juvenile Court building (1100 S. Hamilton). All Chicago-area cases are heard Monday through Friday in the main building. Therefore, management has been exploring how to deploy at least one officer to start every day in the Markham juvenile court calendar. Similar to the above suggestion, such a position would involve further negotiations with the union and may not be feasible absent additional line staff to cover existing assignments.

You have also asked that we provide the probation officers the power to arrest juvenile offenders who violate the terms of EM. While this is allowed on a limited basis by the Probation and Probation Officers Act (730 ILCS 110/11), JPOs have not traditionally exercised this authority in Cook County.

Like my concern about firearms, this idea would have a corrosive effect on the supportive relationship that is characteristic of JPO work. Moreover, probation powers of arrest are limited to violations of the terms of probation which are not necessarily the same as violation of the terms of EM. That is to say, young people active on EM are not necessarily on probation, and the basis for a finding of violation of EM is not the same as the basis for a finding of a violation of probation. In addition, our Adult Probation Department – despite having firearms and 24/7 EM field capacity – does not arrest individuals for violating EM.

On another matter, our EM devices currently have GPS tracking, but they lack the voice and siren capabilities you mention. The contract with the current vendor expires in February, and it is a single contract that services both Juvenile and Adult Probation departments. The procurement office encourages such contracts that support a "volume discount." Both Juvenile and Adult are seeking a 1-year extension with the current vendor while we develop and issue an RFP for this technology, and field test various devices during the extension period in order to determine a vendor that works best for each department's needs.

You have also recommended that we implement a 24-hour EM responsive shift. To do this would require additional staff. We currently do have officers based in the office monitoring alerts and movement and effecting corrective phone calls or violation reports as necessary to minimize delay in response. Given that the argument for firearms would strengthen with the introduction of an overnight team, perhaps the county could contract for overnight field services so as to preserve the distinction that JPOs are not armed. Contracting with a vendor would also protect our officers from engaging in that level of potentially dangerous overnight work.

In addition, you have asked that we restructure duties of EM probation officers to ensure that each group of offenders on EM devices has two probation officers inside of EM assigned to them with the ability to respond to tampers or violations. The department certainly would welcome the opportunity to grow the ranks of its staff across its operations, but the suggestion involves "restructuring" duties of bargaining unit employees. Whereas the earlier suggestion spoke of the need for "back-up" for an absent "primary" officer, this speaks to having an officer specifically assigned tasks to respond to tampers or violations. Ultimately, this suggestion tracks what management is currently developing

within the existing ranks of the EM division: "rapid response." Officers assigned the task of "rapid response" on a given shift would make tampers and violations their priority over specific cases that on their own do not involve tampers and violations. Obviously, our operation's ability to expand our "rapid response" capacity can be assisted with more officers if such positions do not come at the expense of existing assignments that are already staffed.

Finally, you have asked that the courts should look closely at cases where the offender is placed on electronic monitoring and repeatedly violates the terms of the monitoring. This suggestion, perhaps unintentionally, implies that judges do not look closely at the level of compliance an offender demonstrates, be it while he or she is subject to EM or other detention alternatives.

To the contrary, judges make individualized determinations in open court subject to the presentations made by the parties and probation. At issue in these determinations is whether or not secure detention is warranted in light of the information presented. Thus, a young person with multiple violations may in fact be seen as "imperfect" in complying with EM, but their behavior and circumstances may not necessarily suggest such a risk of flight or to public safety that would warrant incarceration.

Ultimately our judges struggle everyday with the challenge to provide the care and support for young people in the least restrictive setting without compromising public safety. Certainly, none of our judges want to wake up to news that an EM participant committed an act of violence. Rest assured that our judges are making reasonable and informed determinations to balance the best interests of young people and the demands of public safety.

Commissioner Moore, I want to reiterate that I appreciate your attention and concern about the juveniles in our communities in Cook County.

I stand with you on ensuring that our Juvenile Probation Department has all the tools and training it needs to guide our youth away from poor decisions and on a path of success.

I acknowledge that we may not agree on every solution to the challenges our professionals face on the job. But your voice is an important one, and I welcome this discussion and any discussion you would like to have in the future.

Sincerely,

Timothy C. Evans



AFSCME LOCAL __3477__
STEP __2__

# OFFICIAL GRIEVANCE FORM

NAME OF EMPLOYEE ___CAROLYN HOPSKINS___ DEPARTMENT ___JUVENILE PROBATION___

CLASSIFICATION ___PROBATION OFFICER II___

WORK LOCATION ___MARKHAM___ IMMEDIATE SUPERVISOR ___I. PORTER___

TITLE ___PROBATION OFFICER___

## STATEMENT OF GRIEVANCE:

List applicable violation: ___ON 10/7/2013, MANAGEMENT VIOLATED ARTICLE XX SECTION 9 OF THE COLLECTIVE BARGAINING AGREEMENT AND ALL PERTINENT PROVISIONS OF THE CONTRACT BY MAKING INAPPROPRIATE COMMENTS THAT CREATED A HOSTILE WORK ENVIRONMENT.___

Adjustment required: ___THE GRIEVANT IS REQUESTING THAT MANAGEMENT CEASE AND DESIST WITH THIS VIOLATION IN ORDER TO BE MADE WHOLE___

I authorize the A.F.S.C.M.E. Local __3477__ as my representative to act for me in the disposition of this grievance

Date ___11/4/13___ Signature of Employee ___Carolyn Hopkins___

Signature of Union Representative _____ Title ___VP/ CHIEF STEWARD___

Date Presented to Management Representative ___11/4/13___

Signature _____ Title _____

Disposition of Grievance: _____

**THIS STATEMENT OF GRIEVANCE IS TO BE MADE OUT IN TRIPLICATE. ALL THREE ARE TO BE SIGNED BY THE EMPLOYEE AND/OR THE AFSCME REPRESENTATIVE HANDLING THE CASE.**

ORIGINAL TO _____

COPY _____

COPY: LOCAL UNION GRIEVANCE FILE

**NOTE: ONE COPY OF THIS GRIEVANCE AND ITS DISPOSITION TO BE KEPT IN GRIEVANCE FILE OF LOCAL UNION.**

THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES        F29



**State of Illinois**
**Circuit Court of Cook County**
**Juvenile Probation Department**

Charles M. Young
Deputy Director
Probation and Court Services

1100 S. Hamilton Avenue
8th Floor
Chicago, Illinois 60612
(312) 433-6636
(312) 433-5209 Fax

**MEMORANDUM**
December 18, 2013

TO:     Carolyn Hopkins
        Probation Officer

FROM:   Charles M. Young  C. m. y,
        Deputy Director

RE:     **Step 3 Grievance**

A Step 3 grievance meeting was conducted by me as Director Michael J. Rohan's designee on Friday, December 13, 2013. In addition to you and me, also present were union representatives Michael Willis and Jason Smith and management representative Mark Werner. The purpose of the meeting was to address the grievance filed on your behalf by AFSCME Local 3477. After some initial discussion regarding the language in the grievance, Mr. Smith inquired if I was aware of the summary of the documents from previous meetings. I indicated that I had reviewed the summaries and I would not be stipulating to any information. He indicated that there was no new information other than you were not pleased with the response you received from Mr. Rohan. You stated that you were not a liar nor do you have any mental health issues and you had also been told by Supervisor Irene Porter that you should seek a transfer because DCPO Irvin Ashford was coming after you. You indicated that you did not hear this from DCPO Ashford.

I have reviewed the documents in this matter and I was also present when Supervisor Porter did not corroborate the allegations raised by you and the union at the initial grievance hearing. Therefore, the Step 3 grievance is denied in its entirety.

CMY:elm

C:   M. Rohan
     R. Golden
     W. Patterson
     M. Werner
     M. Willis
     J. Smith
     Personnel File

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE PROBATION DEPARTMENT

ROSE MARIE GOLDEN
Director of Human Resources
Probation and Court Services

1100 South Hamilton 8th Floor
Chicago, Illinois 60612
312-433-6527
312-433-5209 (Fax)
rose.golden@cookcountyil.gov



## MEMORANDUM

ng the meeting, you ___ ed tha ___ communi ___ t ___ hat DCPO
field asked him to in ___ te you ___ t from PO ___ ou cited this
action as a continued harass ___ n the part of DCPO Caulfield. As part of my investigation of your
complaints, I also met with ___ Caulfield, SPO Jeff McKnight, and PO Terry Hill. During my
meeting with SPO Jeff McKnight (DCPO Patterson and union representative, Jason Smith were also
___ nt y ___ talk t ___ n ___ te ___

It is appropriate for a DCPO to request that a complaint be investigated. Based on all the interviews
con ___ I was ___ ble to substant ___ your complaints of harassment against DCPO Caulfield or
PO ___ ill. I c ___ der this matter ___ ed.



**We Make America Happen**

**Cook County**
**Juvenile Probation Officers**
**Council 31**
**Chicago, IL 60680**
**Local 3477**

To: Michael J. Rohan
Director of Juvenile Probation

From: Jason Smith
Vice President Local 3477

**President**
Michael Willis

**Vice President**
Jason Smith

**Secretary**
Carol Braz

**Treasurer**
Steve Kasperski

**Executive Board**
Russell Akis
Jose Bravo
Marty Gleason
Janette Matthews
Marisol Vergara

**Trustees**
Aaron Campbell
Nelson Rivera
Kisha Roberts

I am in receipt of your second response to this grievance. We accept and acknowledge this baseless response as this document contains nonfactual information as it relates to Probation Officer Jeannie Wells' grievance. To insinuate that the union was unprepared is grossly negligent. Specifically your indication where she was advised "she need not prepare or bring notes" The union responded to your preemptive response that was dated August 10, 2012, where you indicated "I concur with Rose Golden's response to your grievance and the content of these memorandums." You further stated, "At this time I consider this matter closed". The union responded by filing a step 3 grievance as a formality in the process on August 12, 2012. The union understands management is duty bound to meet with the union to discuss the grievance, but it was apparent from your preemptive response to this grievance that a decision from you was final.

Each step in the process should be impartial and unprejudiced. For the Director of Juvenile Probation, who sets the standards for all Probation Officers in our department, to reach a conclusion without a thorough investigation demonstrates a lack of concern for this member's well being. She has taken significant personal time to cope with this ordeal. For management to believe this member would speak in this meeting is another example of poor judgment. This member spoke in a previous meeting with Human Resource Director Rose Golden and became visually upset and distraught. The union would never have a member re-experience a horrific ordeal especially with a decision already decided. Management had the opportunity to address this indefensible act that was committed by Deputy Chief Probation Officer Virginia Caulfield in this meeting, but decided to accept this unprofessional behavior as a standard in this department.

The union is extremely disappointed in this decision and will be proceeding to the next level in this process. We will submit this grievance to the Chief Judge's office.

CC: Michael Willis
Maggie Lorenc
Charles Young
Virginia Caulfield
Jeannie Wells
Personnel File

Fw: FLMA - Outlook

Outlook

Fw: FLMA

From: Jeannie Wells (Juvenile Probation)
Sent: Monday, July 11, 2016 9:56 AM
To: William Patterson (Juvenile Probation)
Cc: eyoung@afscme.org
Subject: FLMA

At this point I am being harassed by Administration concerning taking FLMA. I have
repeatedly told Administration and the Union that, I or my Doctor Ms. Bading has never
requested FLMA papers from Mr. Patterson. I have suffered continued Harassment,
Discrimination and Retaliation from Administration. I have filed a complaint with the
EEOC in 2009, filed a charge of Unfair Labor Practices with the Department of Labor in
September of 2015, filed 2 Police Reports, Complained to the Union and written various
memos, and now suspended falsely for 5 days and a days pay taken from me. Explained
to me Mr. Patterson, why I would not be physically and mentally overwhelmed. This
does not mean that I can be forced to take FLMA or need FLMA. I need to be treated
fairly and with respect by Administration.

*Employment*

*Harassment*

July 31, 2012

To:     Director Michael Rohan

From:  Probation Officer Jeannie Wells

Re:     Retaliation

On July 26, 2012 at approximately 3:47 P.M., I was violated by
DCPO Caulfield. I was speaking to Fernando Johnson and
Yvonne Gilmore in the front of JTDC stairs in the front lobby of
the building. DCPO Caulfield walked around my co-worker and
got in my face in a threatening manner by pointing her finger in
my face. She spoke in a hostile tone and asked "Jeannie, what are
you doing?" She further stated "are you doing something that is
work related?" I paused in disbelief and answered yes, I am
speaking to my two co-workers on my break. Ms. Caulfield then
ordered me to go to my work station immediately and at this time
Ms. Gilmore started to walk away. DCPO Caulfield then stated,
"Jeannie, I am issuing you a verbal directive to go to your work
station." She then told Mr. Johnson he could do whatever he
wanted. I informed Ms. Caulfield that I was going to put this in
writing and she stated, loudly, fluttering her hands in the air, that I
could do whatever I wanted.

Still in disbelief, I attempted to sign out at 4:45 P.M and I
discovered that she had moved the time sheet from supervisor
McKnight's office to her office. As I was signing out she stated in
a sarcastic tone, "why are you still here its past your work hours
and I responded that it was not work related. She stated as Deputy
Chief she had a right to ask me whatever she wants because she is
my deputy chief. With a smirk on her face she told me to have a
nice evening and I said you too! DCPO Caulfield said "oh I will."

VERIFIED RESPONSE
STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF )

Jeannie Wells )
Complainant )                    Charge No.: 2017CR2748

and )

Office of the Chief Judge )
Circuit Court of Cook County )

Respondent. )

NOW COMES the Respondent, Office of the Chief Judge Circuit Court of Cook County, and responds to the Charge of Discrimination filed against it by the Complainant, Jeannie Wells, as follows:

I. A. ISSUE/BASIS

Respondent denies that the Complainant was subjected to unequal terms and conditions of employment on May 27, 2016, in retaliation for having for engaged in protected activity or for her race, Black.

B. PRIMA FACIE ALLEGATIONS

1. *I have been employed with Respondent since October 1992.* Respondent agrees that Complainant was hired October 19, 1992.

2. *I have been suspended without pay.* Respondent agrees that complainant has been suspended without pay.

3. *(I have been) subjected to different terms and conditions of employment than my co-workers.* Respondent denies that Ms. Wells was subjected to different terms and conditions of employment.

4. *I have been subjected to different terms and conditions of (my) work assignment.* Respondent denies that Ms. Wells was subjected to different terms and conditions of work assignment.

5. *I have been discriminated against because of my race, Black and in retaliation for engaging in protected activity.* Respondent denies that there was any adverse action that closely followed the Complainant's protected activity within such a period of time as to raise an inference of retaliatory motivation. Any action taken by Respondent was made by current department policy and applied to all employees and was not retaliatory.

**State of Illinois**
**Circuit Court of Cook County**
**Office of the Chief Judge**

TO           Jason Smith, Vice President
             AFSCME Local #3477

FROM:        Keith Sevcik  *KS,*
             Counsel

RE:          4ᵗʰ Level Grievance Response- Jeannie Wells- Harassment

DATE:        November 6, 2012

_____

A fourth level grievance hearing was held on October 3, 2012 regarding the grievance filed by AFSCME Local #3477 on behalf of the grievant, Juvenile Probation Officer Jeannie Wells. Present for the union were Union representatives Mike Willis, Jason Smith and the grievant. Present for management was Human Resources Director Rose Golden and DCPO William Patterson.

The union grieved a violation of Article III, Section 3 and any other relevant provisions of the collective bargaining agreement claiming that the grievant was subjected to harassment by her Deputy Chief in July of 2012. As a remedy, the union asks that management immediately remove the Deputy Chief from the grievant's Division, suspend the Deputy Chief and send her for diversity training. It is important to note that the parties' positions contained in this decision are mere summaries and any documentation submitted or other statements made at the grievance meeting which are not included in the summaries may have also been relied upon in arriving at the decision below.

After a review of the documentation and testimony given at the grievance meeting no violation of the CBA is found. Preliminarily, at the beginning of the hearing this writer asked the union if they were claiming Title VII harassment and if so, what form of harassment/discrimination were they alleging. The union stated that they were alleging Title VII harassment on the basis of race. The union amended their grievance to include an alleged violation of Article XX, Section 9 (No Discrimination). Although the union indicated that they would amend the remedy on the grievance, an amended remedy was never received. In order to be considered racial harassment/ hostile work environment under Title VII of the Civil Rights Act as well as the Illinois Human Rights Act, the alleged harassing conduct must be severe and pervasive and have a nexus to the complainant's race. Even, assuming arguendo, if the Deputy Chief engaged in the conduct as described by the grievant and the union, these actions do not rise to the level of severe and pervasive. Additionally, absolutely no evidence was

offered that the alleged conduct was engaged in because of the grievant's race. The mere fact that the grievant is black and the Deputy Chief is white is not even close to enough to substantiate the claim that management violated the CBA by engaging racial harassment.

The grievance is denied in its entirety.

cc:    Rose Golden

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2016-033 |

**Illinois Department Of Human Rights** and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Buford T. Arrington | (312) 860-8829 | 08-18-1957 |

Street Address: 9707 South Union Avenue, Chicago, IL 60628

City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| OFFICE OF THE CHIEF JUDGE/COOK COUNTY JUVENILE PROBATION | 500 or More | (312) 738-8200 |

Street Address: 1100 South Hamilton Avenue, Chicago, IL 60608

City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address:

City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — Latest: 06-10-2015

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent on or about September 18, 1989. My current position is Probation Officer. On or about June 10, 2015, I was denied a transfer while a non-Black employee was granted the transfer I requested. I complained to no avail.

I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

MAY 0 2 2016

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

Date: May 02, 2016

Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| FEPA | |
| X EEOC | 440-2016-03181 |

**Illinois Department Of Human Rights** and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Theodis Chapman | (708) 813-3294 | 03-12-1969 |

Street Address
16341 Oxford Drive, Markham, IL 60428
City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| AFSCME COUNCIL 31 (LOCAL 3477) | 201 - 500 | (312) 641-6060 |

Street Address
205 North Michigan Avenue, Suite 2100, Chicago, IL 60601
City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address
City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

| [X] RACE | [ ] COLOR | [ ] SEX | [ ] RELIGION | [ ] NATIONAL ORIGIN | DATE(S) DISCRIMINATION TOOK PLACE: Earliest / Latest |
|---|---|---|---|---|---|
| [ ] RETALIATION | [X] AGE | [ ] DISABILITY | [ ] GENETIC INFORMATION | | 04-26-2016 |
| [ ] OTHER (Specify) | | | | [X] CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I became a member of Respondent in or around 2003. Respondent has failed to represent me and has delayed scheduling an arbitration date for my grievances.

I believe that I was discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I also believe that I was discriminated against because of my age, 47 (Date of Birth: March 12, 1969), in violation of the Age Discrimination in Employment Act of 1967, as amended.

RECEIVED EEOC

APR 2 6 2016

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

Apr 26, 2016

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | 440-2016-03290 |

**Illinois Department Of Human Rights** and EEOC

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Patrick Nelson | (708) 989-1876 | 05-30-1962 |

Street Address — City, State and ZIP Code

2433 West Washburne, Chicago, IL 60608

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| AFSCME LOCAL 3477 COUNCIL 31 | 201 - 500 | (312) 641-6060 |

Street Address — City, State and ZIP Code

205 North Michigan Avenue, Suite 2100, Chicago, IL 60601

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address — City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 12-10-2015  Latest:
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a member of the Respondent for union representation. On or around December 10, 2015, the Respondent refused to move forward with the processing of my union grievance.

I believe I have been discriminated against because of my race, Black and sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I also believe I have been discriminated against because of my age, 52, (date of birth: [illegible] in violation of the Age Discrimination in Employment Act of 1967, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

_____
Date              Charging Party Signature



## We Make America Happen

**AFSCME Local 3477**
Juvenile
Probation
116 S. Western
PO Box 12499
Chicago, IL 60612

**President**
Lloyd Marshall

**Vice President**
Steven Katperski

**Secretary**
Lorenzo Fiorentino

**Treasurer**
Jeanne Belina

**Executive Board**
Kisha Roberts-Tabb
Nelson Rivera
Marty Gleason
Jeffery Haynes
Jose Bravo

**Trustees**
Rich Naidukas
Derrice Ivy
Tamar Stockley

**Staff Rep**
Eugene Boatright

Thursday, October 20, 2016

Kate Galbraith

[body text illegible]

Steve Katperski,
Vice President AFSCME Local 3477

Cc: Jeannie Wells
Avik Das
William Patterson
Lloyd Marshall
Eugene Boatright

Eugene Boatright
Staff Representative
AFSCME Council 31
312-641-6060 ext. 5794<tel:312-641-6060%20ext.%205794>

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: "Jason Smith (Juvenile Probation)"
<jason.smith@cookcountyil.gov>
Date: 11/10/16 11:33 AM (GMT-06:00)
To: Eugene Boatright <EBoatright@afscme31.org>
Cc: Joe Bella <JBella@afscme31.org>
Subject: Arbitration

Good Morning AFSCME,

Attached to this email is a request to forward this
matter to arbitration. The Local and the Council
failed to appear and provide representation for this
matter and I have requested several times from AFSCME
Council 31 to provide representation. I am requesting
a response from AFSCME Council 31 by next week to
review the documents and to respond to me in writing
if they will proceed to arbitration over this
grievance that was filed. If the Union elects not to
proceed, I need a clear and concise explanation why
this matter does not meet the criteria. If I do not
receive a response from the Union, I plan to proceed
accordingly. If there is a need for additional
documentation please let me know.

I have attached the following to this email

- The grievance
- The employer response to the grievance.

I look forward to hearing from you

Jason Smith

MEMORANDUM

TO: MIKE ROHAN, DIRECTOR OF COURT SERVICES

FROM: CONCERNED STAFF

RECEIVED
12 FEB 17 PM 12: 17

SUBJECT: EXCESSIVE DISCIPLINE OF PROBATION OFFICERS AND ABUSE OF EXECUTIVE AUTHORITY

DATE: 2/6/2012

CC: TIMOTHY EVANS, CHIEF JUDGE
TONI PRECKWINKLE, COOK COUNTY BOARD PRESIDENT
COOK COUNTY BOARD OF COMMISSIONERS

Mr Rohan I would like to thank you for addressing the last memo of concerns on 6/1/2011 regarding dress code policy and abuse of leave. I would further hope that this concern would be given the same attention and action. As a dedicated employee in very good standing with the probation department, I feel that it is my duty to bring these current issues to your attention

Let me just say that my sole purpose for working with probation has always been to make a difference in the lives of the youth we service. From the day I took the oath I swore to demonstrate integrity, support the agency mission, and always put the clients before individual, personal, or ulterior motives

Unfortunately, not everyone shares my passion including some in upper management Mr Rohan let me first say that you started out as a dedicated leader, upon taking on the position as Director of Probation and Court Services. I supported you, your directives, and your vision for the Juvenile Probation Department.

Unfortunately, over the years I have seen you go from visionary to dictator. Just like other past promising leaders here in Chicago and in this state, I had high hopes but instead I've witnessed you digress into the present narcissistic, racist, vindictive dictator, you currently are

You have surrounded yourself with Deputies that have no opinions, no self determination, lack people skills and many of them function more like programmed robots as opposed to leaders for probation staff to look up to. Why would any probation officer strive to want to be a Deputy when the position has been reduced to promotional enslavement. So much for your leadership.

Your last two years can be summed up as *divisive, contradictory* and *vindictive*. On the one hand you pitch the probation department and its dedicated probation officers to delegations, grant providers and the media as the model for other states, counties, and departments to follow.

But internally you promote division by promoting less qualified individuals with no management skills, no people skills, no diversity skills, and no common sense. I've witnessed you deny merit worthy promotions to individuals with Masters Degree's and with far better credentials and qualifications in the past and present, just because they had an opinion in management meeting that didn't coincide with yours, they were not the right preference, or because they didn't kneel to you "the dictator." How well someone strokes your ego and tell you how much of a genius you are, should not be criteria for promotion. These actions on your part have had a detrimental effect. So much more could have been accomplished in the last two years in the probation department; were it not for your prejudicial disposition and overt biased towards certain people.

In addition, I have been monitoring your ongoing abuse of the privilege and honor of sitting in such an esteemed position as Director. You have corrupted an otherwise bright young legal mind (Katren Valencia) to do your bidding by constantly rewriting policies to fit an agenda that seeks to: undermine the collective bargaining agreement, violate worker rights, to nullify the unions ability to defend their members adequately, entrap workers on technicalities that can be manipulated by your firing squad (Rose Golden, Charles Young, Katrin Valencia, Donna Neal), and forgo the arbitration process where your unjust discipline maybe uncovered and overturned.

Instead of promoting worker responsibility and accountability your policies are intentionally corrupted to promote fear, mistrust, and to increase the suspensions of African American employee's as evidence of the disproportionate numbers of them disciplined, suspended, and fired under them. Many times without due process of arbitration. You've even gone on record in stating that "the next group of Probation Officers you hire will be everything except African American." If that's not discrimination and bigotry towards African Americans then what is! You've worked hard but it hasn't been for the kids or the community, it's been for your own selfish purpose to reduce the Probation Department to "Rohans Castle."

Your present agenda has less to do with the clients, and the agency mission, which I took an oath to uphold. Instead you've reduced this wonderful service resource to a small dictatorship that wastes worker hours and productivity with redundant paperwork rather than servicing the clients, chokes worker moral, promotes worker division, and denies worker rights. Furthermore your agenda incites distrust among employees of different ethnic groups, among supervisory and subordinate staff, and between supervisors and your appointed deputies.

To your defense Mr. Rohan, due to budget problems with the county and state, you've been able to hide your unscrupulous practices as the Director of Probation and Court Services. You've also been able to function in virtual anonymity; operating as long as you have with no oversight committee i.e., Cook County Board President, Cook County Board of Commissioners, the Chief Judge and others in higher authority to monitor you and hold you to the same standards you demand from your subordinates has given you the false impression that somehow you are above the law, you are insulated, untouchable and everything you do and say is beyond reproach. On the contrary, just as you judge your staff by their performance and deeds so should you be judged.

I hope that you take this not in anger but in earnest. Hopefully these issues will be given the same attention and corrective action taken as a previous memo you distributed that addressed employee's dress code and abuse of leave. As our director I would hope that the information comprised in this memo is taken seriously and these issues be given your highest consideration

Sincerely,

Concerned Staff



**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
INTAKE QUESTIONNAIRE**

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. **Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.**

**1. Personal Information**

Last Name: Matthews        First Name: Jordanette        MI:

Street or Mailing Address: 8843 S. Wabash        Apt Or Unit #:

City: Chicago        County: Cook        State: Illinois        ZIP: 60619

Phone Numbers: Home: ( 773 ) 846-0046        Work: ( 312 ) 433-6501

Cell: ( 312 ) 485-2195        Email Address: Jorda504@sbcglobal.net

Date of Birth: May 04 1952        Sex: Male [ ]  Female [X]        Do You Have a Disability? [ ] Yes  [X] No

**Please answer each of the next three questions.**        i. Are you Hispanic or Latino? [ ] Yes  [X] No

ii. What is your Race? Please choose all that apply.    [ ] American Indian or Alaska Native    [ ] Asian    [ ] White
[X] Black or African American    [ ] Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (counrty of origin or ancestry)? USA

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Stephanie M. Johnson        Relationship: Sister

Address: 215 E. 77th Street        City: Chicago        State: Il  Zip Code: 60619

Home Phone: ( 773 ) 783-7533        Other Phone: ( )

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

[X] Employer    [ ] Union    [ ] Employment Agency    [ ] Other (Please Specify)

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here [ ] and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: Circuit Court of Cook County Juvenile Probation Department

Address: 1100 S. Hamilton        County: Cook

City: Chicago        State: Il  Zip: 60612        Phone: ( 312 ) 738-8200

Type of Business: Probation        Job Location if different from Org. Address:

Human Resources Director or Owner Name: Rose M. Golden        Phone: 312 433-6527

**Number of Employees in the Organization at All Locations: Please Check (√) One**

[ ] Fewer Than 15    [ ] 15 - 100    [ ] 101 - 200    [X] 201 - 500    [ ] More than 500

**3. Your Employment Data** (Complete as many items as you can)    Are you a Federal Employee? [ ] Yes  [X] No

Date Hired: September 18, 1989        Job Title At Hire: Probation Officer I

Pay Rate When Hired:        Last or Current Pay Rate: 37.890 hourly  gross 3.031.20 2x month

Job Title at Time of Alleged Discrimination: Supervisor Probation Officer        Date Quit/Discharged:

Name and Title of Immediate Supervisor: Deputy Chief Probation Officer Sharol Unger

2

**If Job Applicant, Date You Applied for Job** April 2010      **Job Title Applied For** lateral transfer to Training Department

### 4. What is the reason (basis) for your claim of employment discrimination?

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☒ Race   ☐ Sex   ☐ Age   ☐ Disability   ☐ National Origin   ☐ Religion   ☐ Retaliation   ☐ Pregnancy   ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing    ☐ ii. family medical history    ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify:

If you checked genetic information, how did the employer obtain the genetic information?

Other reason (basis) for discrimination (Explain).

### 5. What happened to you that you believe was discriminatory? Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 - Discharged by Mr. John Soto, Production Supervisor)*

A) Date: June 1–3, 2010      Action: That I have the seniority for this position and was denied. see additional information

Name and Title of Person(s) Responsible: Director Michael J. Rohan, Deputy Director Charles M. Young, DCPO Kevin Hickey TRNG

B) Date: June 1, 2010      Action: I was told by Dir. Rohan that he was considering filling this position with a less senior person and he was aware that there was aware of the tension between Blacks & Latinos

Name and Title of Person(s) Responsible: Deputy Chief Probation Officer Rose M. Golden H.R.

### 6. Why do you believe these actions were discriminatory? Please attach additional pages if needed.
I have more seniority than the person chosen.

The problems between Blacks and Latinos should have never been said to me. He stated that he knew Blacks would say that he chose a Latino woman over a Black woman.

### 7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?
I was nervous when making my presentation, that I read from a piece of paper. The tension between Blacks and Latinos should never have been said to me. He stated that he knew that would be controversy about him choosing a Latino woman over a Black woman. This was stated by Director Michael J. Rohan, Probation and Court Services.

### 8. Describe who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

**Of the persons in the same or similar situation as you, who was treated *better* than you?**

| A. Full Name LETICIA BARRERA | Race, sex, age, national origin, religion or disability<br>Female Hispanic | Job Title<br>Supervisor |
|---|---|---|
| Description of Treatment She was given the lateral transfer although she has less seniority | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Description of Treatment | | |

Of the persons in the same or similar situation as you, who was treated *worse* than you?

3

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| BONITA GHESS | BLACK | PROBATION OFFICER II |

Description of Treatment PO Ghess was told after she interviewed and tested, she had als met w/Deputy that the posting was being rescinded until a later date...

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9. Please check all that apply:

☐ Yes, I have a disability

☐ I do not have a disability now but I did have one

☐ No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

Yes ☐ No ☐

If "Yes," what medication, medical equipment or other assistance do you use?

12. Did you ask your employer for any changes or assistance to do your job because of your disability?

Yes ☐ No ☐

If "YES", when did you ask? _____ How did you ask (verbally or in writing)?

Who did you ask? (Provide full name and job title of person)

Describe the changes or assistance that you asked for:

How did your employer respond to your request?

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Helen A. Warren | Supervisor Probation Officer Trng. Dept | 1100 S. Hamilton Chgo, Il. 312 433-6685 |

What do you believe this person will tell us?

SPO WARREN WILL TELL YOU THT SHE DID NOT HAVE TO TAKE A TEST WHEN SHE TRANSFERRED TO THIS POSITION AND THAT SPO JOE PACELT, PROVIDED INFORMATION TO ANOTHER APPLICATION W/LESS SENIORITY.

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| | | |

What do you believe this person will tell us?

14. Have you filed a charge previously in this matter with EEOC or another agency?  Yes ☐  No ☒

15. If you have filed a complaint with another agency, provide name of agency and date of filing:

16. Have you sought help about this situation from a union, an attorney, or any other source?  Yes ☒  No ☐

Provide name of organization, name of person you spoke with and date of contact. Results, if any?
AFSCME LOCAL 3477 President Michael S. Willis June 1-4,10 and Juanita Cannon June 2-4,10. Vice-President Francisco Arenas June 3-4,10. A grievance was filed no results.

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

Box 1  ☐  I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

Box 2  ☒  I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____
Signature

June 5, 2010
Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1 FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08)
2 AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(s), 42 USC §2000ff-6
3 PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626 8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4 ROUTINE USES. EEOC may disclose information from this form in other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5 WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

RECEIVED

10 JUN -3 PM 2: 12

CIRCUIT COURT OF
COOK COUNTY, IL
JUVENILE PROBATION
DIRECTOR'S OFFICE



AFSCME LOCAL __3477__

STEP __1__

# OFFICIAL GRIEVANCE FORM

NAME OF EMPLOYEE   Jordanette Matthews          DEPARTMENT   Juv. Prob.

CLASSIFICATION   Probation Officer

WORK LOCATION   Juv. Ct.      IMMEDIATE SUPERVISOR   Sharol Unger

TITLE ___SPO III___

## STATEMENT OF GRIEVANCE:

List applicable violation:  In that management violated Article XVIII, sec. 1-A, section A and
D and Article XX section 9, well any relevant contract provisions.

Adjustment required:  That Jordanette Matthews be made whole, not be treated in a
discriminatory fashion, and that she given the SPO position based on her seniority.

I authorize the A.F.S.C.M.E. Local   3477      as my representative to act for me in the disposi-
tion of this grievance

Date ___June 3, 2010___      Signature of Employee   Jordanette Matthews

Signature of Union Representative ___Joe Basley___   Title   Steward

Date Presented to Management Representative ___June 3, 2010___

Signature _____   Title   SPO III

**THIS STATEMENT OF GRIEVANCE IS TO BE MADE OUT IN TRIPLICATE. ALL THREE ARE TO BE
SIGNED BY THE EMPLOYEE AND/OR THE AFSCME REPRESENTATIVE HANDLING THE CASE.**

ORIGINAL TO_____

COPY _____

COPY: LOCAL UNION GRIEVANCE FILE

**NOTE: ONE COPY OF THIS GRIEVANCE AND ITS DISPOSITION TO BE KEPT IN GRIEVANCE
FILE OF LOCAL UNION.**

THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES      F29

Jordanette Matthews

ADDITIONAL PAGE

5) There was a posting for a new position posted for a Supervisor in the Training Department. The date of the posting was 4/27/2010. I filled out Filling of Vacancy Request For dated 4/30/2010.

On 5/18/2010 I was at union negotiation at the Holiday Inn Mart Plaza in downtown Chicago. Francisco Arenas another Supervisor Probation Officer came to me and stated that DCPO Rose Golden had been trying to get in touch with me and I was to call her immediately.
I returned DCPO Golden' call, she stated that I was scheduled to be interviewed on 5/19/2010 at 10:00 am. She also stated that I would have to make a presentation on Friday 5/21/2010 for ½ hour to 1 hour, I informed her that I had scheduled time off for that Friday.

5/19/2010 10:00 am I arrived on the 8th fl.; Conference Rm. D. Bonita Ghess Probation Officer II and DCPO Golden were already in the room. PO Ghess and I were administered the same test at the same time. PO Ghess had bid on the case Plan Specialist position. After I completed the test, DCPO K. Hickey and I left the testing area to go to his office. I was interviewed by DCPO Hickey for about an hour. DCPO Hickey informed me that I would have to design and facilitate a training on the benefits of case planning and present to a group as if they were new officers. I was to make this presentation on Monday 5/24/2010 at 1:00 pm.

5/24/2010 I arrived at the aforementioned time to present the training. The panel consisted of DCPO' K. Hickey, R. Golden, W. Patterson and D. Neal. I made the presentation.

5/28/2010 DCPO K. Hickey requested that I meet with him. DCPO Hickey stated that I was nervous and read from a piece of paper during the training. I stated I was nervous. He also stated that he thought that I would not be a good fit for the training department as I was not comfortable with training and was did not posses the skills needed for case planning. I stated that I was the most senior officer and I should be trained for the position. Hickey stated that the final decision would be up to Director Michael J. Rohan, who was on vacation and would return on Tuesday 6/1/2010.

6/1/2010 Director M. Rohan ' secretary called and stated that the Director wanted to me with me. I met with Director Rohan , he started off talking about a Union matter. He then stated let's talk about training. He restated what DCPO Hickey had said, that I seemed nervous and read from a piece of paper. I stated that I was nervous and did read what I had prepared. Director Rohan stated that he was aware that there was tension between Blacks and Latinos, I did not respond. He further stated that he knew if he gave the position to a Latino woman that there would be some controversy, but the was leaning towards Lettie Barrera. I stated that I was the senior officer and the Union contract was

clear about senority. Rohan stated that he was aware and that if I chose to grieve his decision we would still be friends. Rohan also stated that there were people that are Supervisors who should not be Supervisors and he was aware that people questioned his decisions about some of the people that her promoted to Deputy.

After I left Director Rohan' officer I immediately went to the office of the Union President Michael S. Willis. I informed him of the meeting that I had with the Director. Mr. Willis asked if I was going to file a grievance, I stated yes. I called Vice-President Francisco Arenas and left him a voicemail that I wanted to file a grievance.

6/2/2010 I arrived at work and went to the office of Vice-President Arenas and informed him that I wanted a grievance filed immediately, he concurred.

DISCRIMINATION AFSCME LOCAL 3477
STEP 1



**AFSCME.**
*in the public service*

# OFFICIAL GRIEVANCE FORM

NAME OF EMPLOYEE __Jordanette Matthews__ DEPARTMENT __Juv..Prob.__

CLASSIFICATION __Probation Officer__

WORK LOCATION __Juv. Ct.__ IMMEDIATE SUPERVISOR __Sharol Unger__

TITLE __SPO III__

## STATEMENT OF GRIEVANCE:

List applicable violation: __In that management violated Article XVIII, sec. 1-A, section A and D and Article XX section 9, well any relevant contract provisions.__

Adjustment required: __That Jordanette Matthews be made whole, not be treated in a discriminatory fashion, and that she given the SPO position based on her seniority.__

---

I authorize the A.F.S.C.M.E. Local __3477__ as my representative to act for me in the disposition of this grievance

Date __June 3, 2010__ Signature of Employee _____

Signature of Union Representative __Joi Basley__ _____ Title __Steward__

Date Presented to Management Representative __June 3, 2010__

Signature _____ Title __SPO III__

Department Disposition:

---

**THIS STATEMENT OF GRIEVANCE IS TO BE MADE OUT IN TRIPLICATE. ALL THREE ARE TO BE SIGNED BY THE EMPLOYEE AND/OR THE AFSCME REPRESENTATIVE HANDLING THE CASE.**

ORIGINAL TO _____

COPY _____

COPY: LOCAL UNION GRIEVANCE FILE

**NOTE: ONE COPY OF THIS GRIEVANCE AND ITS DISPOSITION TO BE KEPT IN GRIEVANCE FILE OF LOCAL UNION.**

THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES          F29

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

To:    Jordanette Matthews

From:  Michael J. Rohan

Date:  June 14, 2010

Re:    Grievance

I am in receipt of the grievance you filed relative to a proposed change in assignment. I am available to meet with you this week on the 16th or 17th after 1 p.m. Please contact Kathy Sanders at 312-433-6901 to schedule a date that is mutually convenient.

Thanks.

c:  Charles M. Young
    Rose Golden
    Michael Willis
    Joi Basley



**We Make America Happen**

**AFSCME Local 3477**
Juvenile Probation
116 S. Western
PO Box 12499
Chicago, IL 60612

**President**
Jason Smith

**Vice President**
Lloyd Marshall

**Secretary**
Kisha Roberts

**Treasurer**
Theodis Chapman

**Executive Board**
Riznzel Akrs
Marty Gleason
Jeffery Haynes
Samuel Johnson
Juanita Wilks

**Trustees**
Aaron Campbell
Nicholas Chie
Nelson Rivera

**Staff Rep.**
Eugene Boatright

November 24, 2015

Avik Das
Chief Probation Officer/ Acting Director
1100 South Hamilton 2nd floor
Chicago, IL 60612

Re: Representation rights and duties

Dear Mr. Das,

I am in receipt of an email describing an action that took place on November 23, 2015 regarding a formal meeting held between management and Probation Officer Nelson. Mr. Nelson requested union representation on several different occasions. This email attempted to describe what you believe is a non-intimate right of the Union and a violation of the Collective Bargaining Agreement by the President of this Local. I should not have to remind you that I was duly elected by members of AFSCME Local 3477 to represent all members of this bargaining unit and my presence at this meeting was warrant given the nature and the surrounding issues that continue to have a negative impact on Probation Officer Nelson. Several statutes exist that entitled a member and this Union to be present at such meeting. A representative of an appropriate unit in an agency shall be given the opportunity to be present at any formal discussion between one or more representatives of the agency and one or more employees in the unit of their representative concerning any grievance, personnel policy, practices or other general condition of employment.

These laws were established to provide the Union with an opportunity to safeguard its interests and the interests of the employees in the bargaining unit. By attending formal discussions the representative is assured the opportunity to hear, along with unit employees about matters of interest to unit employees and be in a position to take appropriate action to safeguard those interests. There are certain elements that need to be satisfied in order for a formal discussion to exist.

- The status of the individual who held the discussion (D.C.P.O. Dr. Lewis-Management)
- Whether any other management representatives attended (D.C.P.O. Griffin-Management)
- Site of the discussion (Conference Room)
- How the meeting for the discussion was called (Advance Notice)
- Whether a formal agenda was established for discussion (PDP)
- The manner in which the discussion was conducted (two SPOs and two DCPOs and Probation Officer Nelson)
- This meeting was mandated (Avik Das )

All of these elements existed at this meeting held on November 23, 2015. Please do not misconstrue the meaning of this letter as if these are the only elements that need to exist for a formal meeting. The Union never attempted to negotiate, dictate or bargain what was presented in the PDP despite our concerns about the training be received to discharge his duties as a Field Probation Officer. The email conveniently asserted that the only time that the Union can be present in during an investigatory hearing or a matter of labor negotiation. The presence of the Union as a mere observer did not disrupt the conduction of the meeting nor was it outside of my assigned responsibility as the President of this Local. The Union knows management would not deny a victim of harassment their right to have a person present if he/she so desire? The Union has always participated in the PDP if requested by both management and a bargaining member. I am not sure what makes this President the exception. Furthermore, the Union is not waiving it rights to be present at any formal discussions on behalf of Probation Officer Nelson if he requests union representation. The Union is aware that Officer Chapman is scheduled for a formal discussion with management and if he requests union representation and is denied this right this is a violation.

The Union will continue to protect their own rights and the rights of these bargaining and members. The Union continues to promote the idea of inclusion and resolving these issues in good faith in order to promote an environment that is harmonious.

Respectfully,

Jason Smith
President, AFSCME Local 3477

CC: Chief Judge Timothy Evans
Joe Bella, AFSCME Council 31 Regional Director
Eugene Boatright, AFSCME Council 31
Probation Officer Patrick Nelson, AFSCME Local 3477

July 8, 2015

Dear: AFSCME LOCAL 3477

My name is Buford Arrington, I am a Probation Officer with Cook County Juvenile Probation and Court Services Department for over 25 + years. In that time I have willingly contributed my experience in various units within the department. I have also received many Exceeds Standards on my various Performance Appraisals throughout the years. I come to work every day just as I have for the last 25+years excited about contributing to helping empower the minors, their families and the communities. I am proud and thankful to be employed as a Probation Officer and a loyal longstanding member of the union.

I am approaching 26years of service and I have waited years to get the opportunity to work in Intake Screening. When a recent vacancy for intake screening became available I was very excited. I felt that I earned the opportunity after years of loyal service to the department to bid into the position. I viewed this final move of my career as being a proud moment for my involvement with the minors and their families.

My moment of happiness was short lived as I discovered that another Probation Officer with less seniority who is a white female was given the position over me by management.

I find it to be sad and alarming that I had to file a grievance report for the position I worked hard to qualify for and bid into. I view the entire department and the union as family. I should not be put in this position; whereby, I am being discriminated against by being denied the opportunity to work in the intake screening position. According to my collective bargaining agreement and from my years of service, I have earned my seniority rights to be there.

Please look carefully at my job history at Juvenile Court and my record, both will speak for itself. I do not want to talk negatively about anyone as to what they have and have not done. I want management to look at my work as a probation officer, my qualifications, and my collective bargaining right to assume the intake screening position.

I am requesting the union for which I have been a longstanding and loyal member to protect my contractual union rights, my state and federal rights to not be discriminated against in the workplace and not be treated like my color and my years of service is secondary to another individual because they happen to be white

Sincerely,

Buford Arrington

Buford Arrington

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
Chief Judge

MICHAEL J. ROHAN
Director
Probation and Court Services



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612

TO: DCPO Mark Morrissey
From: PO Jonathon Willis
Date: January 7, 2010
RE: Meeting on December 17, 2009

I am writing this letter to address a meeting that took place on Dec. 17, 2009. Let me first say that I was in shock at the nature of the meeting. I am still in shock to this day that the meeting even took place. It was embarrassing and humiliating as a professional to be subjected to this discriminating behavior on your part. I have to ask how many other employees have been subjected to this type of interrogation. The witch-hunt that was conducted by management makes me feel very uncomfortable that I am not welcomed as a professional in this department. We work in a judicial system that allows for due process to everyone that comes through our doors, yet the very same employees who work in the system are not afforded these same rights? What is most damaging is that the entire basis for this questioning was based on some alleged "credible source" that was *never produced.*

During the interrogation I answered all the questions asked of me. Apparently my responses did not suffice because I was still warned about this serious allegation against me and the fact that I would be disciplined if I were suspected of drug use in the future. The presumption that I as an African American man am guilty, and you a male Caucasian are innocent is frightening to me when you offered to take a urine test with me? I felt very uncomfortable with that request. Finally, I was warned that a more serious investigation would arise as a result of any future inquiries made by whom? More credible sources?

When the meeting concluded I was informed that no disciplinary action would be taken as a result of the meeting. Basically, management placed in my personnel file a letter memorializing the meeting indicating that I lied during the interview. To this date I have not received a copy of the letter. I have only seen the copies that were given to the union. This only further makes me believe that I am being discriminated against by management.

I take my profession and my role as a Probation Officer in this department very serious and I would not do anything to jeopardize my integrity, character, or employment with our department.

In closing I want the memo memorializing the meeting on December 17, 2009 removed from my personnel file.

Respectfully,

Probation Officer, Jonathan Willis

CC:      Michael Rohan
         Charles Young
         Rose Golden
         Micheal Willis
         Jordanette Matthews
         Personnel File

MEMORANDUM

October 20, 2014

To: Director Rose Golden

Deputy Director Charles Young

Assistant Deputy Director Avik Das

Human Resource Director William Patterson

CC: Union President Jason Smith

From: PO Josh Slavin

Re: Ongoing Concerns with SPO Bailey-Holland and DCPO Pieroth

I have been fortunate and blessed to have a nineteen year career with the Cook County Adult and Juvenile Probation Departments. I have been commended and have exceeded in almost all of my performance appraisals. The work I produce and the pride I take in my job has been noted by both departments. Unfortunately, the current work conditions in this division are dehumanizing, toxic, and hostile. The interactions I have experienced with SPO Lena Bailey-Holland and DCPO Bill Pieroth have been unlike any other I have ever experienced in my career. Their behavior is blatantly unprofessional and unbecoming of management and goes against the department's standards. Unfortunately, I believe my co-workers are scared to put anything in writing because they are in fear of retaliation. However, I have no choice due to my rapidly deteriorating health because of this environment. I look forward to a swift investigation and resolution of this current hostile work environment that SPO Bailey-Holland and DCPO Pieroth are responsible for.

First, my interactions with SPO Bailey-Holland are always toxic, hostile, and dehumanizing. I am constantly being yelled at from down the hallway to get into her office. If I don't respond she gets louder and louder until people in different work areas and different departments can hear her. When I go into her office she bangs her fists against the desk and speaks to me in the most hostile and dehumanizing manner possible. She also screams at me on the phone while having it on the speaker setting, before always hanging up on me. I have many witnesses to how outrageous this behavior is. I would ask for PO's Smolar, Brown, Donnelly, Shanahan, support staff Celestine Hill, and SPO Throw-Koc to be interviewed.

SPO Bailey-Holland is constantly blaming me that it's my fault when anything doesn't go smoothly. She has been heard bad mouthing my co-workers and I to other agencies, departments, and to our own support staff. She is often heard yelling, "if they'd do their damn jobs we wouldn't have any problems". When my unit members or myself go to her for any direction or help she yells out, "what now, why you always coming to me with problems, figure it out your damn selves, and stop coming to me". But, if we

do not come to her with a question she screams at us for not coming to her and makes a scene. We are constantly being belittled and are always wrong with everything we do. She is constantly overheard blaming the RUR officers for any problems that occur. Also, she puts everyone on speaker phone with her door open and is constantly broadcasting our personal business to other people.

Last week SPO Bailey-Holland agreed to meet with the three RUR probation officers (Melissa Donnelly, Paula Shanahan and myself) who asked for a meeting to address the atmosphere in the workplace that has been created since SPO Bailey-Holland transferred to our unit. This meeting went on for at least two hours. She continued blaming each of us for all of the unit problems. As in her past behavior, she continued to talk about individual unit members without accepting any accountability for the part she plays in the current unit dynamic. Whenever she was confronted about her behavior she would turn it around on us. She continued to yell at me in front of the other two RUR officers in our meeting, "you should grow some balls and stop always hiding behind Melissa". She continued yelling at me, "you supposed to be a man, you ain't no man, a man confronts me when they got a problem with me". I stated I have on several occasions only to be yelled at and be dehumanized further. Later, after this meeting she was overheard bad mouthing the three officers to support staff, Shanel Jones. However, it should also be noted, that while discussing issues we have with support staff regarding the transportation of minors to the Saura Center, she was equally talking negatively about Shanel Jones. All three of us walked out of this meeting further dejected and more appalled and scared of SPO Bailey-Holland's behavior. The three of us left very upset.

The second part of the meeting was to try and address the protocols and expectations of our unit in regards to after work releases and transports. However, we walked out of the meeting with her refusing to give any verbal or written information regarding protocol. This will continue to be a problem when someone can not work past their contracted approved schedule. This issue happened again on Friday 10-17-14. PO Shanahan was seen leaving in tears, I was sick to my stomach, and PO Donnelly was visibly very upset. As PO Donnelly and I were leaving for the day I overheard PO Smolar talking to PO Donnelly where PO Smolar stated that he is uncomfortable with the tension in the office and he is sorry. He further stated that she (referring to SPO Bailey-Holland) talks about you guys to me, but I just try and keep her on my good side so it doesn't start happening to me.

In conclusion, SPO Bailey-Holland's behavior is so toxic, dehumanizing, and hostile it has created a work environment that is impossible to work in. On numerous occasions we have tried to address our concerns with her just to be screamed at and treated unprofessionally. At this point, we have gone from a unit of highly motivated, productive, and self sufficient officers, to a group of people who are scared to make decisions fearing the ramifications from SPO Bailey-Holland. PO Shanahan and myself tried to address her behavior two weeks ago with DCPO Pieroth. He told us we should collectively put our concerns in writing if we wanted anything to be addressed. We told him we will let him know if we will proceed with anything. Later, we informed him that we will try and meet with her first. He never came to ask any kind of follow up questions or show any concern based on our issues.

In addition to the unprofessional behavior of SPO Bailey-Holland, I would also like to mention the behavior I have experienced with DCPO Pieroth. DCPO Pieroth's behavior and blatant disregard for our

Exhibit K

The State of Illinois       **AFFIDAVIT**

) S.S.

County of Cook

I, Edward Walsh , of Rolling Medows, Illinois, MAKE OATH AND SAY THAT:

1.    I, Edward Walsh, Illinois, am a member of AFSCME Local 3477 Cook County Juvenile Probation Officers. During a grievance hearing held at the Chief Judge Office. William Patterson, of Cook County Juvenile Probation, Human Resource Director made the statement that: if the Union was not complaining about discrimination that you would not be here. President Jason Smith of AFSCME Local 3477 stated to the Chief Judge Designee that it should be just cause not just because of someone color that they are being disciplined.

SUBSCRIBED AND SWORN TO     )
BEFORE ME, on the     )
13th day of January, 2016     )
    )
_Peter N. Ryan_     ) _Edward Walsh_
NOTARY PUBLIC     ) Edward Walsh
My Commission expires: 3 - 6 - 2019     )

OFFICIAL SEAL
PETER N. RYAN
Notary Public - State of Illinois
My Commission Expires 3/06/2019



We Make America Happen

**AFSCME Local 3477**
**Juvenile Probation**
**116 S. Western**
**PO Box 12499**
**Chicago, IL 60612**

**President**
Jason Smith

**Vice President**
Lloyd Marshall

**Secretary**
Kisha Roberts

**Treasurer**
Tyrone Hutson

**Executive Board**
Russell Akis
Marty Gleason
Jeffery Haynes
Samuel Johnson
Juanita Wills

**Trustees**
Aaron Campbell
Nick Chio
Nelson Rivera

**Staff Rep**
Eugene Boatright

November 5, 2015

To: Laura Kelly, Human Resource Administrator
      Office of the Chief Judge

From: Jason Smith, President
        AFSCME Local 3477

Re: 4th Level Grievance (SPO Lena Bailey-Holland) Performance Evaluation

This document is being submitted with a grievance according to the collective bargaining agreement to the Office of the Chief Judge for a hearing. Please contact me at 773 242 4658 or jason4913@global.net. to discuss dates regarding this matter.

CC: Eugene Boatright, Staff Rep, AFSCME Council 31
      Lloyd Marshall, Vice President, AFSCME Local 3477
      Supervisor Lena Bailey- Holland, AFSCME Local 3477



**AFSCME Local 3477**
**Juvenile Probation**
**116 S. Western**
**PO Box 12499**
**Chicago, IL 60612**

**President**
Jason Smith

**Vice President**
Lloyd Marshall

**Secretary**
Kisha Roberts

**Treasurer**
Tyrone Hutson

**Executive Board**
Russell Akis
Juanita Wills
Marty Gleason
Jeffery Haynes
Samuel Johnson

**Trustees**
Aaron Campbell
Nicholas Chio
Nelson Rivera

**Staff Rep**
Eugene Boatright

September 25, 2015

Laura Kelly – Administrator
Office of the Chief Judge
69 W. Washington, Suite 3300
Chicago, Illinois 60602

Re: Probation Officer Buford Arrington (Seniority)

Dear Ms. Kelly

It is our intent to arbitrate the case of Probation Buford Arrington. . This letter is being submitted to the Office of the Chief Judge to give notice that this case should enter into arbitration. AFSCME Local 3477 never received a written response from the Office of the Chief Judge regarding this matter. Please contact myself or Eugene Boatright Council 31 Staff Rep if there are any questions. I can be reached at 773-242-4658 or jason4951@sbcglobal.net

Sincerely,

Jason Smith
President

CC: Eugene Boatright, Staff Rep AFSCME Council 31
    Buford Arrington, Probation Officer AFSCME Local 3477



**AFSCME Local 3477**
**Juvenile Probation**
**116 S. Western**
**PO Box 12499**
**Chicago, IL 60612**

November 5, 2015

Laura Kelly – Administrator
Office of the Chief Judge
69 W. Washington, Suite 3300
Chicago, Illinois 60602

Re: Probation Officer Gabriel Redic – Performance Evaluation

**President**
Jason Smith

**Vice President**
Lloyd Marshall

**Secretary**
Kisha Roberts

Dear Ms. Kelly

It is our intent to arbitrate the case of Officer Redic performance evaluation. This
letter is being submitted to the Office of the Chief Judge to give notice that this case
should enter into arbitration. Please contact myself or Eugene Boatright Council 31
Staff Rep if there are any questions. I can be reached at 773-242-4658 or
jason4951@sbcglobal.net

**Treasurer**
Theodis Chapman

**Executive Board**
Russell Akis
Juanita Wills
Marty Gleason
Jeffery Haynes
Samuel Johnson

Sincerely,

Jason Smith
President

**Trustees**
Aaron Campbell
Nicholas Chio
Nelson Rivera

CC: Eugene Boatright, Staff Rep AFSCME Council 31
Probation Officer Gabriel Redic, AFSCME Local 3477

**Staff Rep**
Eugene Boatright



**AFSCME Local 3477**
**Juvenile Probation**
**116 S. Western**
**PO Box 12499**
**Chicago, IL 60612**

November 5, 2015

Laura Kelly – Administrator
Office of the Chief Judge
69 W. Washington, Suite 3300
Chicago, Illinois 60602

**President**
Jason Smith

**Vice President**
Lloyd Marshall

**Secretary**
Kisha Roberts

**Treasurer**
Theodis Chapman

**Executive Board**
Russell Akis
Juanita Wills
Marty Gleason
Jeffery Haynes
Samuel Johnson

**Trustees**
Aaron Campbell
Nicholas Chio
Nelson Rivera

**Staff Rep**
Eugene Boatright

Re: Probation Officer Patrick Nelson – Performance Evaluation

Dear Ms. Kelly

It is our intent to arbitrate the case of Officer Nelson performance evaluation. This letter is being submitted to the Office of the Chief Judge to give notice that this case should enter into arbitration. Please contact myself or Eugene Boatright Council 31 Staff Rep if there are any questions. I can be reached at 773-242-4658 or jason4951@sbcglobal.net

Sincerely,

Jason Smith
President

CC: Eugene Boatright, Staff Rep AFSCME Council 31
    Probation Officer Patrick Nelson, AFSCME Local 3477



We Make America Happen

**AFSCME Local 3477**
**Juvenile Probation**
**116 S. Western**
**PO Box 12499**
**Chicago, IL 60612**

**President**
Jason Smith

**Vice President**
Lloyd Marshall

**Secretary**
Kisha Roberts

**Treasurer**
Theodis Chapman

**Executive Board**
Russell Akis
Juanita Wills
Marty Gleason
Jeffery Haynes
Samuel Johnson

**Trustees**
Aaron Campbell
Nicholas Chio
Nelson Rivera

**Staff Rep**
Eugene Boatright

November 5, 2015

Laura Kelly – Administrator
Office of the Chief Judge
69 W. Washington, Suite 3300
Chicago, Illinois 60602

Re: Probation Officer Theodis Chapman – Performance Evaluation

Dear Ms. Kelly

It is our intent to arbitrate the case of Officer Chapman performance evaluation. This letter is being submitted to the Office of the Chief Judge to give notice that this case should enter into arbitration. Please contact myself or Eugene Boatright Council 31 Staff Rep if there are any questions. I can be reached at 773-242-4658 or jason4951@sbcglobal.net

Sincerely,

Jason Smith
President

CC: Eugene Boatright, Staff Rep AFSCME Council 31
    Probation Officer Theodis Chapman, AFSCME Local 3477



**We Make America Happen**

**AFSCME Local 3477**
**Juvenile Probation**
**116 S. Western**
**PO Box 12499**
**Chicago, IL 60612**

**President**
Jason Smith

**Vice President**
Lloyd Marshall

**Secretary**
Kisha Roberts

**Treasurer**
Theodis Chapman

**Executive Board**
Russell Akis
Marty Gleason
Jeffery Haynes
Samuel Johnson
Juanita Wills

**Trustees**
Aaron Campbell
Nicholas Chio
Nelson Rivera

November 18, 2015

Avik Das
Chief Probation Officer/ Acting Director
1100 South Hamilton 2nd floor
Chicago, IL 60612

Re: Personnel Policy Manual

Dear Mr. Das,

Several letters were sent from Council 31 reiterating the position of the Union in 2008 from Nefertiti Smith and in 2009 from Maggie Lorenc. These letters addressed their concerns of the personnel policies that continue to be approved and implemented with respect to AFSCME Local 3477 members. These letters that were presented to Michael Rohan, former Director of Cook County Juvenile Probation and addressed the personnel policies that was in direct conflict with the agreement to the provisions in the Collective Bargaining Agreement.

The Collective Bargaining Agreement negotiated between AFSCME and the Chief Judge's Office is the ultimate determining document with respect to wages, benefits and working conditions. If your office wishes to make changes to any of these areas discussed in the agreement, then I suggest placing those changes on the local negotiation bargaining table. Otherwise, your attempts to circumvent the contract by implementing departmental policies are an unfair labor practice.

The policies that contradict the Collective Bargaining Agreement will not be discussed at the labor management meetings as this is not the proper venue. If the intent is to clarify the language in the Collective Bargaining Agreement, my suggestion is that the department simply quotes the contract.



State of Illinois
Circuit Court of Cook County
Juvenile Probation Department

Timothy C. Evans
Chief Judge

Michael J. Rohan
Director
Probation and Court Services

1100 S. Hamilton Avenue
2nd Floor
Chicago, Illinois 60612
(312) 433-6575
(312) 433-7388 Fax

MEMORANDUM

March 28, 2006

TO: P.O. III's, IV's, and IV's

FROM: Discipline and Corrective Action Committee

RE: Corrective Action

The Discipline and Corrective Action Committee has developed the attached protocol as it relates to Corrective Action. Supervisors and deputies should utilize the document as a guideline for implementing Corrective Action. The document will be discussed at the full management meeting on April 4, 2006.

C: Michael Rohan
Charles Young
Thomas Morgan

WMP

# Fw: Meetings with Commissioner Sims and Supt. Dixon

### Dennis Alexander (Juvenile Probation)

Tri 4/8/2016 10:15 AM

To Tandra L Tyler (Juvenile Probation) <tandra.tyler@cookcountyil.gov>,

**From:** Avik Das (Juvenile Probation)
**Sent:** Wednesday, April 6, 2016 4:48 PM
**To:** Tyrone Hutson (Juvenile Probation)
**Cc:** William Patterson (Juvenile Probation); Donna Neal (Juvenile Probation); Dennis Alexander (Juvenile Probation); Karen Fannin-Kelly (Juvenile Probation); Dwayne Johnson (Juvenile Probation); Miquel Lewis (Juvenile Probation)
**Subject:** Meetings with Commissioner Sims and Supt. Dixon

Dear Tyrone,

I recently received a call from Superintendent Dixon to apprise me of the meeting you had with him yesterday at the request of Commissioner Sims, apparently based on her conversations with you and concerning the coalition petition.

Suffice it to say, I am notice as to where you and I stand relative to your comfort level with meeting with me in person, as I have not yet had that opportunity nor do I imagine you believe I deserve one.

Nevertheless, please consider meeting with me in my office either tomorrow at noon or Friday at noon, or at another time and place of your choosing. Given what I thought we had in terms of rapport and history, I wonder if you would even consider having lunch with me wherein we could touch base and perhaps we may be able to rehabilitate some level of comfort in our lines of communication.

In the alternative, please consider sharing your thoughts and concerns with any one of those copied herein as they are members of the leadership team I have identified to help develop and maintain lines of communications with the coalition members and help management make progress on addressing the concerns.

Mr. Dixon certainly gave me some details relative to the perspectives both you and Commissioner Sims shared with him including similar concerns he confronts within the JTDC. He affirmed to me that he told you that he would reach out to me and apprise me of this interaction. He has also expressed his availability to join me in these discussions with you and other coalition members.

I would also welcome your assistance in arranging an opportunity to meet with you and Commissioner Sims.

Thank you for your consideration and I look forward to our meeting if you so choose.

-Avik

26 FEBRUARY 2004

TO: CULTURAL DIVERSITY COMMITTEE

FROM: SPO JORDANETTE MATTHEWS

RE: WITHDRAWAL

I am withdrawing from the cultural diversity committee. My
reasons are many. I do not have the faith that this department
has a true commitment to cultural diversity other than "WINDOW
DRESSING". There have been too many instances where the
"DENIGRATION OF CERTAIN AFRICAN AMERICANS WOMEN" have occurred
in the presence of AFRICAN AMERICAN MEN and sometimes AFRICAN
AMERICAN WOMEN and those individuals did not bother to speak up
on the behalf of those women. I can only assume since I've been
labeled as a "CONSPIRACY BUFF" that those individuals did not
1) disagree with the denigration or;
2) they were afraid of "CENSURE".

I have come to understand more and more the significance of REV.
MARTIN LUTHER KING JR. quote "THE ULTIMATE MEASURE OF A MAN IS
NOT WHERE HE STANDS IN MOMENTS OF COMFORT AND CONVENIENCE, BUT
WHERE HE STANDS AT TIMES OF CHALLENGE AND CONTROVERSY".

JORDANETTE MATTHEWS

JECM300569                    Note Detail

| Minor`s Name | JAMES C COCKREL | | JEMS ID | 10319170 |
| Author | JASON M SMITH | | Entry Date | 3/27/2015 |
| Subject | CONTACT | | | |

Person Contacted            Type          Location    Date
BLAIR      BENNIE            Face To Face  Office      3/27/2015

Notes
 PO. WAS CALLED INTO A MEETING BY DCPO KELLY TO DISCUSS THE REASON WHY
THERE IS A NEED TO WORK ON A SATURDAY. IT WAS EXPLAINED TO MANAGEMENT THAT
THE FAMILY OF JUVENILES WHO ARE NOT AVAILABLE DURING THE WEEK TO BE SEEN
THAT AN ADJUSTED IS NECESSARY IN ORDER TO FULFILL THE EXPECATIONS OF THE
DEPARTMENT. IT WAS STATED IN THE MEETING THAT THE DEPARTMENT HAS QUESTIONED
HER ABOUT THE TIME ALLOCATED TO VISITS THE FAMILY DURING THE WEEK AND
THE REVIEW OF MY TIMESHEET DISPLAYING IN THE OFFICE AND MEETINGS FOR
UNION ACTIVITIES. IT WAS EXPLAINED DURING THE WEEK THAT AS THE UNION REP
THE DEPARTMENT HAS MEETINGS, COURT TIME DEDICATION, REFERRALS AND OTHER
RESPONSIBILITIES THAT CAUSE THIS PO TO ADJUST HIM TIME TO FILL THE REQUEST
OF THE FAMILY BUT AS WELL AS MY RESPONSIBILITIES. SHE QUESTIONED ABOUT THE   +

F1=Help  F5=Refresh  F12=Cancel  F16=TextEdit  F21=Change  F22=Delete

JECM300569                          Note Detail

Minor`s Name   JAMES C COCKREL                JEMS ID       10319170
Author         JASON M SMITH                  Entry Date    3/27/2015
Subject        CONTACT

Person Contacted                      Type        Location   Date
BLAIR     BENNIE                      Face To Face Office     3/27/2015

Notes
AWARDING OF COMP TIME WHEN THE HOURS EXCEED THE 40 HOUR THRESHOLD. IT WAS
EXPLAINED THAT THIS IS A CONTRACTUAL ISSUE AND THE CHOICE OF A PROBATION
OFFICER TO REQUEST COMP ACCORDING TO THE UNION CONTRACT. SHE SIGNALED TO
THIS PO THAT THE DEPARTMENT HAS BEEN MONITORING THIS PROBATION OFFICER
TIME SHEET AND IT IS NOT NECESSARILY THE SPO WHO HAS CALLED INTO QUESTION
THIS PROBATION OFFICER'S USE OF TIME, BUT BECAUSE OF HIS UNION ACTIVITIES.

                                                                        +

F1=Help  F5=Refresh  F12=Cancel  F16=TextEdit  F21=Change  F22=Delete



ILLINOIS DEPARTMENT OF
# Human Rights

Bruce Rauner, Governor
Rocco J. Claps, Acting Director

February 13, 2015

Mr. Jason Smith
C/O Cook County Juvenile Probation
1100 S. Hamilton
Chicago, IL 60612

Re: **Charge No.   2014CF3506**
**Complainant: Lauren Brown**
**Respondent:   Cook County Juvenile Probation**

Dear Mr. Smith:

I have been advised that you can provide information pertinent to the Department's investigation of the above captioned charge. Please contact me as soon as possible to discuss this matter. It is critical that the Department's investigation be as thorough and complete as possible. Therefore, it is important that all possible witnesses be interviewed. Even if you do not have any knowledge of this matter, I still need to contact you to confirm this. Please be advised that it is illegal for anyone to retaliate against a witness in one of the Department's investigations. If requested, the Department can keep the names of witnesses confidential. However, at a later date confidential witnesses may be subpoenaed if there is a public hearing on the case.

Please contact me as soon as possible at (312) 814-4303 between the hours of 8:00 a.m. and 4:00 p.m. You may also reach me via email at Judith.A.Weingartner@illinois.gov. If I am not available, please leave your name and a telephone number and/or an email address where I can reach you during business hours. If you send an email, please reference the charge number above and state your name in the email message.

Your cooperation in this matter is greatly appreciated.

Sincerely,

Judith Weingartner
Human Rights Investigator
Charge Processing Division

#27
08/12



March 31, 2009

Gregory Dunslan
Executive Director

Former
state President
William Lucy
Secretary-Treasurer
International Vice...

Maurice...
Deputy Trustee...

**Sent via Certified U.S. Mail**

Michael Rohan
Director of Probation and Court Services
1100 South Hamilton, 2nd Floor
Chicago, IL 60612

**Re: Personnel Policy Manual**

Dear Mr. Rohan:

This letter is to reiterate the Union's position concerning the personnel policies that your office continues to approve and implement with respect to AFSCME Local 3477 members. As stated at our Labor/Management meeting on March 20th, it is the Union's position that many of the policies that you continue to implement either touch upon areas covered in our collective bargaining agreement with the Chief Judge's Office or are in direct conflict with that agreement.

As I stated earlier, the collective bargaining agreement negotiated between AFSCME and the Chief Judge's Office is the ultimate determining document with respect to wages, benefits and working conditions. If your office wishes to make changes to any of these areas discussed in the agreement, then I suggest placing those changes on the local negotiation bargaining table. Otherwise, your attempts to circumvent the contract by passing departmental policies is an unfair labor practice.

As we discussed on the 20th, the Union will not wait until all the departmental policies have been passed (as originally intended) since new policies continue to be distributed almost every week. Therefore, the Union will be taking action to protect those provisions of our contract which we believe you are violating by implementing your policies.

Sincerely,

Maggie Lorenc
Staff Representative
AFSCME Council 31

cc    Mike Willis, President, AFSCME Local 3477
      Bruce Wisniewski, Administrator, Office of the Chief Judge



**We Make America Happen**

**AFSCME Local 3477**
Juvenile Probation
116 S. Western
PO Box 12499
Chicago, IL 60612

April 10, 2015

Chief Judge Circuit Court of Cook County
Honorable Timothy Evans
Circuit Court of Cook County
Daley Center
50 W. Washington St., Rm. 2600
Chicago, Illinois 60602

**President**
Jason Smith

**Vice President**
Lloyd Marshall

**Secretary**
Kisha Roberts

**Treasurer**
Tyrone Hutson

**Executive Board**
Russell Akis
Marty Gleason
Jeffery Haynes
Samuel Johnson
Juanita Wills

**Trustees**
Aaron Campbell
Nicholas Chio
Nelson Rivera

**Staff Rep**
Eugene Boatright

Dear Chief Judge Evans,

AFSCME Local 3477 representing over three hundred Cook County Juvenile Probation Officers is officially and humbly requesting that the Blue Ribbon Committee that was successful in selecting the next Administrator of the Cook County Juvenile Temporary Detention Center be reestablished to select the next Director of the Cook County Juvenile Probation Department. This process will afford the department the opportunity to expand the process of fostering an environment of fair and equitable treatment while allowing a wide array of talented individuals internally and externally to present their credentials that may qualify them to lead this department. Cook County Juvenile Probation Officers are the best frontline workers that have helped this department be recognized as a model throughout this state and country. The reestablishment or creation of a new Blue Ribbon Committee would illustrate to these men and women that their voices have been heard within this process.

Delegations from around the world have come to observe our Probation Officers, programs and services that have been established within the juvenile justice system to foster change among our most vulnerable and valuable population while ensuring the safety of the public. The Blue Ribbon Committee could serve as another positive model of Cook County to ensure that every individual who is interested in this position of Director of Cook County Juvenile Probation be given an equal opportunity to apply regardless of political affiliation, race and gender. It is essential that the next Director prioritizes our neighborhoods and children instead of management and bureaucracy.

It is our hope that President Preckwinkle and the Cook County Commissioners would encourage you and support this method in order to ensure that the most deserving and qualified candidate is selected to lead this department. The next Director should be someone who will champion an environment of cooperation while protecting the public as well as serving the taxpayers of Cook County effectively.

A petition has been created and begun to be circulated and will be presented to you and the Cook County Board. We look forward to your response and the responses of our elected officials from their respective districts about their opinion on this matter.

Respectfully

Jason Smith
President/ AFSCME Local 3477

CC: President Toni Preckwinkle
Cook County Commissioners

**STATE OF ILLINOIS**
**CIRCUIT COURT OF COOK COUNTY**
**JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT**

TIMOTHY C. EVANS
CHIEF JUDGE

AVIK DAS
ACTING DEPUTY DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6575
(312) 433-7388 FAX

December 11, 2015

My name is Jordanette Matthews. I have worked within the Juvenile Probation Department for the past 26.3 years as a Juvenile Probation Officer. I am retiring December 31, 2015. I feel compelled to use this retirement letter as an opportunity to clarify how I feel this department treats it's employees, specifically Negroes/Blacks or for those whom think that have arrived African-Americans.

I have endured racism in this department it seems like from day one, but in my mind it was an opportunity to help children who needed it the most. I came from the City of Chicago Building Department which was also racist I was a terminal operator. I imagined coming to Juvenile Probation would be different after all I was finally getting a chance at a Career how naïve.

After finishing up my 12 week training period and passing the legal examination I was given my work assignment. I was told by the Chief Probation Officer that I was being assigned to GBO ( GRAND BOULEVARD OFFICE), he also felt compelled to let me know that he would never send a White Woman to the projects. Not a problem for me it only meant that I would be given an opportunity to work with the most vulnerable forgotten population. I have always wanted to make a difference in the lives of Black people as I personally knew and know our struggle. I think have performed by job admirably.

I guest this admiration had other thoughts about my abilities. I have always been classified as a person who speaks what is on their mind, which is a very accurate assessment. However, I don't believe that speaking your mind is BAD thing as a matter of fact that is the way I was raised during the 50's and 60's by my more than capable Negro parents, yes Father and Mother. This letter may seem as if I am an ANGRY BLACK WOMAN I AM, but it's also an accurate observation of what has transpired within this department. I never believed that your stature in life defines how you should be treated.

I took and passed the Supervisors examination 3 times, the first time the list was exhausted, the second time the list ended at my name although there was a position available in Rolling

Meadows, the third time I wrote a letter to then Chief Judge Donald P. O'Connell alleging my not being promoted because of Racism, I was then promoted within a month or two.

YES I FEEL THIS DEPARTMENT IS RACIST AND IT CONTINUES EVEN NOW, WHEN IS ENOUGH ENOUGH. This Administration past and present seems bound and determined to destroy the reputation of Union President Jason Smith because he stands up for what he believes in.

I have provided several documents that may not substantiate what has been inflicted on Blacks and African-Americans but, just imagine that an inkling of it is true, then imagine yourself being subjected to this type of treatment year in and year out. You; can't even imagine. Don't get me wrong there are several African- Americans that would not agree but, there are twice as many Black employees that would agree and support my claims of RACISM.

I submitted bids to fill a vacancy within the Training Department from 2002 through 2010 and with the SENORITY allowing me to fill the position. Some of the reasons that I was given 2003; Deputy Director Charles M. Young told me he had good news and bad news for me. The good news was that my nephew would be in the training class; the bad news because my nephew would be in training class that I would not fill the open position as a Supervisor in the training department. Which means that I could not be professional, however to-date there is a DCPO assigned to a division where he niece or cousin is assigned both are White females, but no conflict of interest. I guess as a Negro woman I have no character. Every time a training position became available I was never chosen. The last time in 2010 the language changed about candidates for the training position would be assessed. Although the Hispanic female was given a tape of what was needed to make a good presentation, no I never knew there was a tape until after process was completed. I filed a grievance and that too was denied. I was told by then Director Michael J. Rohan that he knew how it seemed but, that he was choosing the Hispanic female even though I had the most senority. He also stated you didn't make a good presentation; your colleagues evaluated you. I surely trusted those colleagues to be objective especially when they knew what was expected of them. I did file an complaint with EEOC, I got exactly what I expected they sided with Director Rohan.

Let's bring it forward to now. There is a clinical division 95% White; you have White females supervising Embedded Clinical Interns/Externs. There are claims that these interns/externs take minors to McDonald' to provide confidential interviews and counseling, how confidential is that. Being born into Poverty, witnessing trauma and other negative issues are having or going to have severe psychological issues and even if so are any of the clinical people PSYCHIATRISTS. There are no Blacks or African-Americans that can be clinical interns/externs and be hired for these positions.

I supervise the Juvenile Court Drug Treatment Program which is a Diversion program. But, no one bothered to learn how the DTP functions. PO's assigned to the unit have submitted transfer request because they are unsure of the fate of DTP. There was an allegation that a White female DCPO made a statement that she had been trying to get the drug program closed for years. This same DCPO could not manage to supervise a unit as a supervisor, but was promoted to a DCPO I guess that shows character. Now there's an allegation that the DTP will be merged with another unit. But you have a clinical division that cannot adequately address the needs of their clients. I would never suggest that no clinical PO is able to address their clients needs, but the majority cannot

When will there ever be a BLACK/NEGRO DIRECTOR OF PROBATION and why not?? Recently there were several SPO'S promoted to DCPO'S for what?

I have only asked two people (Charles M. Young and William Patterson) throughout my years of employment to hire my relatives that believe it or not are qualified to work here, those are people that I have some confidence in. In the words of the Great Dr. Martin Luther King Jr.,

**"THE ULTIMATE MEASURE OF A MAN IS NOT WHERE HE STANDS IN MOMEENTS OF COMFORT AND CONVENIENCE, BUT WHERE HE STANDS AT TIMES OF CHALLENGE AND CONTROVERSY".**

To my two relatives employed here I have informed them both FOREWARNED IS FOREARMED and also YOU CAN'T USE THE GOLDEN RULE IN A CROWD THAT DOESN'T PLAY FAIR. THIS CROWD DOES NOT PLAY FAIR.

Yes I want this to be my RETIRMENT LETTER. I HAVE ACHIEVED SOME OF MY GOALS. I could go on and on but is anybody LISTENING.

SUPERVISOR JORDANETTE MATTHEWS

C. AVIK DAS

JASON SMITH

*Quality Assurance*
*file*
*11-10-05*

MEMORANDUM
November 7, 2005

TO:        Michael J. Rohan

FROM:      Jennifer Nunez

RE:        Quality Assurance

The Quality Assurance (QA) committee met on September 13th, September 30th, and October 26th. The committee consists of DCPO's Simon Dmukauskas, Chuck Michalek, Rose Golden, Sharol Unger, Irv Ashford, Jose Isais, and SPO's Dwyane Johnson, Sharon Throw-Koc, Marisol Vergara, Lety Barrera, Tina Young, Joe Pacelt, Karen Givens, and myself. The meeting on September 30th was attended by Helen Warren as the union representative.

The committee has defined its goal "To ensure a consistent, quality delivery of services to all of our clients, families, and the community."

The committee is recommending that Quality Assurance begin its focus on the traditional field units and eventually implement reviews in the specialized units.

We are requesting your permission for a "practice review" on closed folders randomly selected from DCPO Dmukauskas's Division. The review will be conducted by teams of two and loosely follow the "CMR Summary" until we develop our own QA template. I will also be looking to incorporate the "Case Plan Quality Review Instrument" once Mark Myrent has made his revisions.

If you would like further clarification or have questions, please do not hesitate to contact me.



State of Illinois
Circuit Court of Cook County
Juvenile Probation Department

Charles M. Young
Deputy Director
Probation and Court Services

1100 S. Hamilton Avenue
8th Floor
Chicago, Illinois 60612
(312) 433-6636
(312) 433-6209 Fax

Memorandum
January 15, 2013

To:     Jason Smith
        Vice-President
        AFSCME Local 3477

From:   Charles M. Young⟨'M.Y.
        Deputy Director

Re:     Group Grievance

On Thursday, January 10, 2013, a grievance meeting was conducted by me to address the grievances filed by you on behalf of members Marian Fox, Marvene Hill, Fernando Johnson, Tasha Montgomery and Jeannie Wells. All were present with you and Union Representative Emily Pierce except Ms. Fox.  Management representative Donna Neal also attended the meeting. You indicated that management has violated Article XX, Section 9, of the Collective Bargaining Agreement by issuing directive to "predominately black" group of probation officers (adjudicators) and it was not given to other officers in the division. You stated that this action was discriminatory based on race.

During the meeting, you raised issues about management's right to issue the directive and you questioned the purpose of the directive. Article III, Section 1 (e), states that the Employer has the right to direct the work force, assign work and determine the number of employees assigned to operations." The purpose of the directive is stated in the notice issued by DCPO Virginia Caulfield on November 5, 2012.

The adjudicators were instructed to indicate on the white board in Deputy Chief Caulfield's office when reporting to court and when the court call is complete. This had been previously accomplished with a phone call to Deputy Chief Caulfield's secretary but her duties would now make her unavailable to receive the calls. The use of the

board provides SPOs McKnight and Bailey-Holland and the Deputy Chief with information regarding the availability of adjudicators for courtroom coverage. The department is required to provide adjudicator coverage to the judges whose calendars need them.

Your allegation that the directive is discriminatory based on race has no factual basis. The directive was distributed to every adjudicator individually and all adjudicators are not black. It is also noted that there are eleven (11) adjudicators, nine of which are black, but only five (5) are grievants. You also stated that the Release Upon Request (RUR) officers did not receive the directive. The job functions of the adjudicators and the RUR officers are distinctly different and the need addressed in the directive was for adjudicators not RUR staff.

I have reviewed the documents, your allegations and your arguments and I cannot discern any support for your grievances. Therefore, the grievances are denied.

CMY/kms

c: Michael J. Rohan
   Rose Marie Golden
   Michael Willis
   Marian Fox
   Marvene Hill
   Fernando Johnson
   Tasha Montgomery
   Jeannie Wells
   Emily Pierce
   Personnel Files



# Memorandum

Discrimate
Complaint

**Date:** 12/6/2012

**To:** Jason Smith, AFSCME Local 3477

**From:** Rose M. Golden, Director of Human Resources

**RE:** Step-Two Grievance Response

On December 3, 2012, a step-two grievance meeting was held in response to grievances filed on behalf of Tasha Montgomery, Marian Fox, Fernando Johnson, Jeannie Wells, and Marvene Hill. The grievance, which was filed on November 30, 2012, indicates that, "On 11/5/12, Management implemented a directive that violates Article XX Section 9 and all pertinent contract provisions." The grievance form lists the required adjustment as, "The union is requesting that management rescind the directive, cease and desist with the discrimination and remove the notice issued on 11/15/12 from the personnel file." Along with the two of us, present for the meeting were DCPO William Patterson, Kisha Roberts (union representative), Tasha Montgomery, Marian Fox, Fernando Johnson, Jeannie Wells, and Marvene Hill.

During the meeting, you presented the following arguments:

- DCPO Caulfield oversees an entire division, and the unit that was given this directive consists of predominantly black officers. Therefore, the directive appears discriminatory.

- The RUR unit, which is predominantly white, was not given this same directive.

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE JUSTICE AND CHILD PROTECTION DEPARTMENT

TIMOTHY C. EVANS
CHIEF JUDGE

MICHAEL J. ROHAN
DIRECTOR
PROBATION AND COURT SERVICES



1100 S. HAMILTON AVENUE
2ND FLOOR
CHICAGO, ILLINOIS 60612
(312) 433-6569
(312) 433-7388 FAX

To:     Jordanette Matthews
        Juanita Cannon

From:   Rose Marie Golden

Date:   July 21, 2011

Re:     Grievance

    I am in receipt of the two grievances that you filed on behalf of Probation Officers Christine Moran and Karen Wardlaw. Please note in that both Charles and I were party to a discussion with the Union regarding the current assignment that is being grieved, I would suggest that the Union offer a proposed resolution to this matter without formally relying on the grievance procedure. The assignment in question was mutually agreed to and if the Union has now changed its position, you simply need to inform me and not grieve a matter to which you were a party.

RG/kms

c:   Michael J. Rohan
     Charles M. Young
     Avik Das
     Francisco Arenas

## PRESENTATION

In all my years her on Earth I have seen a lot of things dealing with racism. My mother and father were from the South, where Jim Crow reared it'sd ugly head. I watched as a young child with my brother on television as blacks or Negroes as they were called were mistreated.

In all of my 49 years on this earth, I would never realize I would experience the racial disharmony here at juvenile court. I have experienced it personally by my Deputy Chief Ginny Caulfield. DCPO is a top leader in Mike Rohan's camp, and she does his bidding. I have never ever experience anything so unpleasant with her as my DCPO.

I have been constantly a target of DCPO Caulfield. She has attacked my professionalism, credibility, and my integrity.

Let me give you some examples:

- I was called into her office this past January where she questioned me regarding thestatistics. My stalstivs were correct and I had took the time before to show DCPO Caulfield how we do the stats. She refused to learn. Instead she continued toinform me she had lost my stats for PO's Ronda and Knox. She tried to bait me into an argument where she can right me up. I bought JOrdanette back and all of sudden the stats reappeared.
- Explain the Terry Johnson situation
- Explain the evaluation situation
- Explain the poor treatment of my po's
- Explain the unfair treatment
-       1) doing over of minutes
-       2) days off memos other sup's do not do on
-       3) Special task without even asking you
-       4) Disrepect my intelligence, professionalism and integrity
-       5) Using intimidation tactics such as threats of disciplinary action

Also in the brief I have. If I was such a bad PO the SPO, why do I have over twenty commendation letters. In my 11 years of employment here, I have exceed 8of those 11yearzs.

# MEMO

TO:  DCPO GINNY CAULFIELD
     CENTRAL INTAKE SERVICES DIVISION

FR:  SPO JAMES WORTHINGTON
     SCREENING CENTRAL

RE:  OUR MEETING OF 1/16/09

DA:  January 21, 2009

DCPO Caulfield:

Respectfully I am sending you this memo as a clarification of my position
and a rebuttal to our meeting on Friday January 16th.

On this day you had requested to meet with me regarding my statistics from
December 2008. I am well was aware of Field Unit Supervisors
responsibility to complete statistics every month and this is also done in
screening.

Your sense of concern seemed to be why probation officer, Terry Johnson,
and why she had more cases for the month of December than my other
officers. What I was trying to explain was that the number between all the
officers varies monthly. In PO Johnson's case she had the most cases in

along with his unit officers. His mother, Judge Sybil Thomas was made aware of the mistreatment of her son and she was in the process of contacting Judge Heaston regarding this matter. Peter had another accident and is on leave again. He called me on Tuesday July 21, 2009 to let me know he will be ready to report to work on Tuesday July 28th.

PO Ronda had informed me of someone entering her computer and unlocking her desk and going in it. This had happened a couple of times. I informed you regarding this matter. Ginny, you did not take it serious. Instead you denied you were ever over in her work area. I called DCPO Arnie Salazar who told me both you and he had entered Madeline's computer. I also was informed by PO Peter Thomas you were also at PO Ronda's cubicle. Ms. Ronda has also confided in me on several occasions you had called her names and had verbally threatened and intimidated her.

My unit due to your tactics of intimidation and being unprofessional, have had to deal with a lot of stress. A lot of sick days have been used by them because of your tactics. My unit is the only unit that is targeted in this fashion. Not only is it unfair, but it is racist!!

I have had to put up a lot by you. Your treatment towards me has been very unfair. My intelligence, integrity, and my heritage has been insulted by you. This has to stop.

DCPO Caulfield I just believe it is wrong for a manager. Whether they are an administrator, deputy, or supervisor to treat officers unfairly. I also feel it is wrong to use one's authority as a manager, to instigate, or threatened a subordinate employee before knowing all of the facts. And, if there is a problem, to allow for corrective opportunity. As a result I just feel that I have been placed in a very uncompromising position.

disciplinary action. I was shocked of this memo from Mr. Young. The memo was written by him as if I did not do the evaluations and hand them in at all. He immediately defended Rose Golden and he was truly wrong. He delivered his message to me through Union President Michael Willis. He refused to review the memeo that was falsified by Ginny Caulfield. And he refused to speak to me. When I left a message for Mr. Young. He called Mike Wills and stated, "Mike is he sure he wants to talk to me". I took this as being intimidated.

The evaluations were completed by me and turned in a day earlier. On Wednesday April 15th. I still stand by my scores. As a matter of act the disciplinary issue was dropped.

On Thursday April 30th. You again met with me to try and change my scores. I was very shocked when I saw you had changed all of my probation officers scores. You had scored them very low. I informed you that was wrong, and I still stand by my scores I had previous given them. At that time you became agitated and you tried to intimidate me into changing those scores. You told me you could change the scores and the employees must sign those evaluations. I informed you as a member of our Local #3477 Executive Board, in our contract no one can change those scores except the supervisor who scored them. I then became uncomfortable due to your unprofessional manner and left your office. I took the evaluations so my unit could review them. I sought advice from my Chief Steward SPO Jordanette Matthews and Local President Michael Willis. The both asked me to give those evaluations to my officers and have them write a rebuttal to your scores. This is exactly what my officers have done.

Recently members of my unit Probation Officers Peter Thomas and Madeline Ronda have been harassed by you. Peter had just came back from medical leave. And it was very unprofessional of you to treat him in that manner. Peter was a big help to the unit. From the first day back all you did was consistently ride this poor officer's back. You would go through his private items at his work site. And you would question his wife who is a public defender investigator to have lunch with her husband. You did not offer this young many any assistance. You also had other personnel bother him. As a supervisor I made them stop. As Peter's supervisor I helped him

Caulfield that could lead you into making accusations I was insubordinate with you.

On Friday February 20, 2009. I gave you all four of my officer's evaluations.

You had written on them for me to change the score and make any necessary additions. You became agitated and defensive. When I informed you I do not have to change the score per the union. You responded to me negativity when I had told you I had informed Chief Steward SPO Jordanette Matthews for her advisement into this matter. I did take those evaluations back and made the necessary additions but kept the same scores. I returned them all to you again on March 20th. You made written comments which some I took as a personal attack on my officers and myself as a supervisor. Again Ginny, you tried to use intimidating tactics to try and make me change those scores. Again you gave those evaluations back and told me they were not enough. Ms. Caulfield I felt this was an abuse of your power as a deputy. Since I refuse to let you break me. You thought you would further insult my integrity, by having me do those evaluations over. You even wrote down the score which you felt each one of my officer's deserve. That was totally unprofessional and out of order by you. They were low scores you had wanted to give them.

On March 31st, you had called me and left a message the evaluations were due on April 1st. This was the first time I had heard this. I left you a message and informed you of this. You called me back and not only told me you wanted those evaluations by April 1st which was tomorrow. Ginny you said Rose informed you through Mike Rohan I would be face with disciplinary action. I in turn told you I will be speaking with the union. I had called Rose Golden for clarity. But you became adamant about that, and you sent me a very unprofessional memo that was supposed to be from Rose but it was actually you. You falsified a document from an administrator. This is definitely against departmental policy. I sent you a memo back (memo dated April 2nd from me is included with this letter).

You had also involved management where you falsely made accusations against me. You had the Human Resources Director Rose Golden, denied she ever said anything to me. I was also very shocked with management's stance. They had sent me a memo. The memo was written as if I never had handed in any evaluations to you. This was very untrue. Management had given me in writing. A memo, by Deputy Director Charles Young directing me to hand the evaluations in to you by April 16th, or I was to face

Mark Dean Myrda. You did not care for the reason I was understaffed. I told you I was working on PO Ronda's case list. You demanded them right now. I told you I did not have them but I will have them for tomorrow. I also did not appreciate the tone in your voice.

It was very condescending and very unprofessional.

On Tuesday 2/17/09, after being off for the weekend, your negative behavior towards me continued. When I arrived to my office, I was immediately told by Probation Officer Ladson and Mc Duffie you and SPO Tom Reagan had entered my office while I was off. Some of the items in my office were disturbed. You also had jumped to conclusions regarding paperwork I had left out. I saw this by note you left on my work entitled "see me". I also found one of my case log sheets from Friday February 13, 2009 was missing. Due to Tuesday being a high volume day. I was unable to meet with you. Also I had a lot of work that needed to be completed which would enable me to catch up to date.

The next day Wednesday February 18, 2009 I was working on PO Ronda's evaluation. You had called and wanted to meet with me right now in your office. You inquired did I see your note. I informed you I did and all the work was completed. I went to your office to meet with you. Ms. Caulfield you had informed me, you had entered my office while I was away, along with SPO Tom Reagan. You had insulted my intelligence by accusing me of leaving work on the floor in my office. You had assumed in your mind those were new cases. I told you those were old "no file" cases given to me by Po Mc Duffie. I had completed all of her old cases yesterday. . I also had informed you I could not get a chance to do my work because of your interference by placing me on uneccessary tasks. Which I believe was very frivolous, and showed your lack of management skills. I also had told you my case log sheet was missing. I informed you I had asked SPO Reagan if he had it. He flatly denied it. I found this answer from SPO Reagan to be very untrue. Your negative attitude towards me, led me to believe you were taking SPO Reagan's side. If this situation was reversed, you would have demanded me to find his case log sheet. But in a very demeaning way you made it seem like it was my fault. Not only was it demeaning but it was also bias and very insensitive. You also made a statement; "Do you think I am picking on you?" Ms. Caulfield, I refused to give you an answer to that question. The reason, I wanted to maintain my professionalism. And I refused to be intimidated or coerced into another argument with you. Ms.

Deputy. You also continued to state, as in our previous meeting. DCPO Arnie Salazar did not do any monthly statistics,

At 2:00 pm on that date of February 9th. You held a Division Meeting with all three of your supervisors. In your meeting you continued to take insinuating jabs at my unit and myself. You also criticized the Union and said Mr. Rohan will not have anyone or the union, intimidate anyone. I expressed concern to you in this meeting, the union would not intimidate no one. Ms. Caulfield you used your division meeting to further insinuate through unwarranted criticism to my unit, which I deemed was very unprofessional. You further criticized me by having SPO Tom Reagan show me how to close cases and do statistics. Deputy Caulfield I take this as an insult to my integrity and professionalism as a supervisor. I am a very hard working supervisor and I know how to do my job.

Ms. Caulfield you then scheduled a meeting with me for the next day, Tuesday February 10th. Our monthly individual supervisor meeting with the deputy, you said. You used this meeting to still bring up the statistic subject from January 16th. In previous paragraphs, again I thought we were finished with this subject. But you used this meeting on February 10th, as a way for revenge. You continued to use intimidation & vengeful tactics to try to get me to be insubordinate with you. This I felt, was very unprofessional by you as a deputy. You also made me feel very uncomfortable in this meeting. You also stated I had no right to talk to the union or have the union attend any of your meetings with my officers or myself. You were wrong. I tried to explain to you in our contract a probation officer has a right for a steward to sit in with them for any meeting with a supervisor or a deputy. You said I was asking for legal trouble and I asked you to explain how? And you could not explain your statement. You got very defensive and said "This is my meeting?" Ms. Caulfield, I was not trying to take over your meeting. I was trying to make a point. Ms. Caulfield you could not respect that. You continued to slander your fellow colleague DCPO Arnie Salazar, as you had in previous meetings with me. Again you stated Arnie did not do his job and he did not do any statistics. And I felt, it was very unprofessional of you to talk about another deputy in a negative way to me. A couple of PO's and myself felt this statement was not true. The officers and I inquired from DCPO Salazar if he did do statistics. DCPO Salazar told us he collected the statistics each month from the supervisors and he sent them up to DCPO

Unfortunately you have still treated me with unprofessionalism. You have also questioned my integrity. Again on 2/6/09 I had met with you again over the same issue of the statistics. I thought the matter was cleared up on Monday February 2, 2009. I took time on that date to show you how you figure out the total items on the monthly statistics. On Monday you said you had no problem. Then I thought the matter was closed. Ms. Caulfield it is unfortunate you continue to still ridicule me. At this meeting on Friday, you had changed your mind and wanted my unit to give you those list of cases. I informed you that would be impossible since it was already 2:45 pm. Plus, I had told you we had already discussed and settled this matter on this past Monday. You instead chose to put pressure on my unit. You even wanted me to enter PO Ronda's locked drawer, even after I had told you, I had all of her stats from December and January and I turned them into you. You tried to say you did not receive PO Ronda's January statistics, but I caught you and corrected you. I showed you where all four of my Probation Officers Statistics from January were right on your desk. You instead requested to see my unit on Monday February 9, 2009, at 1:00pm. You also added our previous Deputy Arnie Salazar did not do any monthly statistics.

Before the Monday meeting I spoke with my unit. They requested for Chief Steward Jordanette Matthews to be notified. I spoke with Jordanette, and she was shocked the problem was still going on. SPO Matthews gave me instructions for my unit and myself. She also informed me she will be speaking with you. Po Mc Duffie was unable to make the meeting. This was due to her working part-time and getting off at 12:00pm. Po Mc Duffie informed me she had met with you earlier. She had told you she had came by your office on several occasions to turn her list of cases to you. Po Mc Duffie also told me you were never in your office no those occasions. The Chief Steward SPO Matthews did request of you to supply minutes from our meeting. Unfortunately I had to let our Steward know you still have not answered her request as of this date.

DCPO Caulfield, Probation Officers Johnson, Knox and myself attended your meeting. PO Knox gave you the list of cases you requested. You had asked her, "What is this for?" PO Knox and I were surprised you were the one who requested this assignment. I asked you again were the other two units doing this assignment. You looked at me and told me no. You tried to ridicule me in front of my unit. Ms. Caulfield you did this by telling them I had messed up statistics. You still could not show me how I messed up last year statistics. This to me was a very unprofessional move by you as a

me to reproduce in writing Po Johnson's 132 cases, and I find this to be professionally unfair and offensive. However I am not above reproach but unnecessary scrutiny si not warranted when I have taken the liberty to be the

Supervisor that I am capable of. Ms. Caulfield, I am assured that no other Supervisor, has been scrutinized as I have been, and I find this to be harassment because I am not treated with the same respect as other supervisors.

I am fortunate to work with such outstanding and hard working professional such as Ms. Johnson. Your accusation of me being defensive of my office is not the appropriate gesture or approach to take. It can be stated that I am very professionally supportive of the officers I supervise because I respect them as persons as well as their work. It is my experience and philosophy that in order to get the most productivity out of my officers, I must treat them with respect and dignity and not to cast doubt on their professionalism

Ms Caulfield I have complied with every directive you have given me, an example is when you requested statistics for the moth of December 2008, for Probations Officers Knox and Ronda and I placed them on your desk. In the interim, the stats were missing from your desk; however, you denied ever receiving them. This type of professional behavior of blaming and accusing me of not doing my job is not professional and is not accepted because it gives credence that I am lying. I was hoping to have a good working relationship with you, but trust is of issue and I am totally in disagreement with your assertion to SPO Jordanette Matthews that I am insubordinate with you which is not the case. I firmly believe that I should have an opportunity to express my position, ideas, and concerns without being labeled. Apparently you have prejudged my character, and I am not who you think I am. I am a hard working, dedicated and caring professional who tries to lead by example. There is nothing I will ask of my staff that I would not do myself. All I am asking is that you treat me he same as other supervisors fairly Ms Caulfield. I have been employed here in the Probation Department for a little over ten years, and I have never been insubordinate to any supervisor or deputy chief, nor have I ever received any type of reprimand or discipline. I have over twenty commendations letters in my file that were written by management for the excellent job I have done as a Probation Officer, of which I am proud.

The issue and concern seem to be directed at one of my Probations Officers I supervise. The question was why probation officer, Terry Johnson, had more cases for the month of December than any other officer in the unit. It has been established in this department that each month the case distribution and assignment of cases between the Probation Officers frurates for several reasons. It is impossible to balance a caseload with the magnitude of cases we receive monthly, and it is certain that in some instances an officer will have more cases than others. However, I am at liberty to explain that there is no deceit in case assignments but the system flows in an uneven balance but this is not a problem because eventually the cases balance themselves out. Please refer to the scenario that I have provided for you. A classic example is the moth of December 2008, as I have brought to your attention; PO Mc Duffie had the highest number of cases. Other examples are that:

Pos have to fill in for one another when there is an absence from the office, either because someone is sick, on vacation and or on a personal business day. Therefore, this places hardship on the SPO who often times causes an imbalance in case assignment in addition to when officers have more closed cases than others.

With all due respect, DCPO Caulfield, I was some what professionally offended and concerned, because you did not want to hear any justification or reason for the imbalance of cases. Instead you produced closed cases of PO Mc Duffie and PO Johnson and proceeded to question my professional integrity. First, and foremost, you asked why PO Mc Duffie had closed cases from several months and "why now I was just giving them to you." As, I attempted to explain that I gave PO Mc Duffie latitude and afforded her an opportunity as a professional courtesy to close her cases in a slower manner than usual because of her illness and part time work status. Ms. Mc Duffie's doctor identified that she was to work at a gradual pace, and I honored this of which I think I have the professional latitude of administering, in the event if there is no harm caused. However I hoped that I could be commended for my professional patience and discretion as a result of PO Mc Duffie's unfortunate illness, and I would hope as our Deputy, you would support my efforts since I have professional discretion to make decision that enhances morale and team work and cooperation

Ms Caulfield it is unclear to me why you would not accept my professional explanation regarding Po Johnson's high case load for the month of December 2008. Instead, you found it fitting to duplicate work and ordered

# MEMO

TO:   DCPO GINNY CAULFIELD
      CENTRAL INTAKE SERVICES DIVISION

FR:   SPO JAMES WORTHINGTON
      SCREENING CENTRAL

RE:   Our Meetings from 1/16/09—7/22/09/

DA:   April 13, 2009

*Notified*

NOTE: THIS LOG HAS BEEN GIVEN TO THE HANDS OF THE CHIEF
JUDGE THE HONORABLE TIMOTHY C. EVANS

DCPO Caulfield:

Pursuant to the meeting that you and I engaged in on Friday January 16,
2009, I respectfully submit this memorandum as clarity and rebuttal of the
position that I manifest.

On the above date, you requested to meet with me regarding my December
2008 statistics. For the record, I am extremely knowledgeable of the
Juvenile Justice Department's policy and expectation of Field Unit
Supervisors to complete statistics on a monthly basis and of which these
expectations are also required of the Screening Department



STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
JUVENILE PROBATION DEPARTMENT

**ALTON SMITH**
Supervisor of Markham North Unit
Markham Suburban Division



16501 South Kedzie
Markham, Illinois 60428
708-232-4647
708-232-4327 (Fax)
alton.smith@cookcountyil.gov

## MEMORANDUM

DATE:    11/6/2013

TO:      DCPO IRV ASHFORD MARKHAM

FROM:    SPO ALTON SMITH

RE:      INVESTIGATORY HEARING

Whether it was purposeful or not to schedule an Investigatory Hearing, two days before the first anniversary of my wife's death is abusive and solidifies my belief of being a persona non grata. This is a case of when an officer's work does not comply with department standards relative to timeliness, thoroughness, appropriateness etc. and is absent the corrective action that should have already been initiated. The expectation that staff will be held accountable fairly and objectively is erroneous.

The U.S. Department of the Interior Hostile Work Environment pdf defines a hostile work environment is a form of harassment. It is demonstrated by such severe and pervasive conduct that permeates the work environment and interferes with an employee's ability to perform his or her job." This claim cannot be substantiated due to the DCPO being copied in all interactions. This officer has also requested more interaction which I felt was a veiled attempt to satisfy her agenda of securing my termination. I constantly avoid her attempts to antagonize me and this is exactly the safety issue I brought to the attention of the Human Resources Director April 10, 2013. This safety issue exacerbates my disability and causes me undue stress. Below are a few of the many examples of noncompliance with department standards (all of which are known to DCPO):

1-12-12 missing copy of A. Brown Supplemental Petition that accompanies VOP Request Memo.
1-13-12 She wrote on D. Pope Supervisory Memo in Client Folder.
1-17-12 B. McGowan Marx Fund Request circumvention (she looks for me on breaks and lunches)direct to DCPO. Told DCPO she did not refuse to do D. Wrice Social after giving me the wrong policy (Contact Standards) to support why she was not going to do it. HR Director R. Golden's message about Waived Socials was forwarded to her.
1-20-12 She wrote on Supervisory Memo. J. McDade folder.
12-21-12 End in the District to start her seven day vacation.
2-20-13 Time Sheet; no name, signed in at 8:12 for 7:50. Complained about send L. Jefferson VOP not being sent to ASA but she had not signed out.
2-21-13 signed in at 8:10 for 7:40.
2-25-13 8:19 looking for Time Sheet to sign in forty nine minutes into sift. (DCPO had them to discuss her tardiness).

Page 2

3-5-13 Asked me "Are you saying I have to take Comp?" when told previously the Director said Flex Time is preferable. Signed in at 7:47 for 7:45.

3-6-13 no call or Time Sheet for whereabouts.

3-7-13 brings J. Ewing VOP to DCPO when I'm on break. Email inaccurate because she was supposed to let me know what time she wanted to take.

3-11-13 brings B. McClure's VOP to DCPO when I'm on break.

3-20-13 signed in 7:37 at 7:48

5-21-13 told me and DCPO of nonexistent policy regarding accrued time and the field.

5-22-13 arrived at 8:12 gone since 5:20 am. Signs in after DCPO prompt at 7:40 claiming field but not on Green Sheet.

7-8-13 invalid RMS due to promise of D. Harden 4-17 Case Plan not fulfilled to IPS. She misrepresented situation to DCPO.

7-22-13 DCPO alerted 7:45 sign in but actually 7:50.

7-25-13 DCPO addresses punctuality for a second time.

7-29-13 signs in at 7:37 but actually 7:41.

8-1-13 signs in at 7:43 but actually 7:52 DCPO addresses punctuality for a third time.

8-2-13 DCPO allows one field visit to sign a consent that take over an hour against Director's request of consolidation of visits.

8-5-13 signs in at 7:25 but actually 7:37.

8-6-13 signs in at 7:23 but actually 7:30.

9-5-13 had to discontinue a phone call after she raised her voice when told of her practice of being in field before taken time off was not in accordance to Director's request.

9-26-13 Misrepresents to HR Director according to DCPO that I cut her off and don't listen to her when in actuality I direct her to the DCPO **when she becomes hostile.**

10-18-13 More false allegations to Human Resources.

10-31-13 SPO Karen Sylva-Givens informs me she overheard her plotting against me.

11-1-13 PO Kaletha Seay informs me she overheard her plotting against me.

Not to mention the multiple Social Investigation errors repeated constantly.

http://www.blm.gov/pgdata/etc/medialib/blm/nv/information/equal_employment_opportunity.Par.90684.File.dat/Hostile_Work_Environment.pdf

C:     Michael J. Rohan
       Charles Young
       Rose Golden
       William Patterson
       Michael Willis
       Jason Smith
       Personnel File

11/21/13                                        RE: Accountability

## RE: Accountability

Irvin Ashford (OCJ)
**Sent:**Wednesday, March 06, 2013 11:06 AM
**To:** Alton Smith (OCJ)
**Cc:** Nicole Bradley (OCJ)

I read your email concerning this Officers whereabout. Your instructions to her is online with the Department
andards. Field sheet are to be prepared before an Officer go into the field and the Supervisor must be notified.
DCPO Ashford

**From:** Alton Smith (OCJ)
**Sent:** Wednesday, March 06, 2013 10:26 AM
**To:** Nicole Bradley (OCJ)
**Cc:** Irvin Ashford (OCJ)
**Subject:** Accountability

Yesterday you informed me of a personal appointment today and was given instructions on how to be accountable.
Today, almost three hours into your shift your whereabouts are unknown and you Field Itinerary Form for today is
blank. In the future please adhere to Policy regarding Accountability.



Executive Director
Henry Bayer

Executive
Vice Presidents
Bill Jacobs
Roberta Lynch
Yolanda Woods
Cornel Tella Goodloe

Secretary
Nancy Fitzwater

Treasurer
Jim Ryan

Executive Board
Carol Arrandale
Octavio Banks
Gary Castaneda
Gary Ciaccio
Robert Ficco
Larry Fleet
David Fleet
Michael Newsome
Richard Hartz
Kathy Hartmann
Kevin Johnson
Gary Kroeschel
Bill Lukow
David Morris
Patricia Ousner
Hector Redman
Ralph Fernandez
Larry Clark
Beth Rascoria
Ric Sanders
Edward Stewart
Denise Laughter
Eric Serrano Chairman
Lisette Weaver
Clarence Wesner
Tully Williams

Retiree President
Regina Ross

Trustees
Kenneth Wasson
Leata Lane
Toni Hunka

02/11

August 8, 2011

James Worthington
4710 Lincoln Highway #244
Matteson, Illinois 60443

Dear James:

I am in receipt of your letter addressed to Henry Bayer and copied to me. I too am concerned about the downward direction your local executive board is taking. There have been decisions made by the board that do not look out for the benefit of the membership on a whole, but for those few board members who may personally benefit.

Lately, I have been made aware of a decision that is a direct violation of the contractual agreement. You refer to this decision in your letter and I believe it is my obligation to respond to what you believe is right. There can be no agreement that violates the collective bargaining agreement that is between AFSCME Council 31 and the Office of the Chief Judge and at no time would we ever agree to extend the current bid list indefinitely. This decision says to our membership that there are only three people who matter and who should be provided with the opportunity for upward mobility. In the fifteen years I serviced your local, I have never signed a waiver such as this, and in my twenty-six years of being a steward/representative, I never even considered such a thing.

It is also important to remind you that there are no secrets in an executive board meeting or any other meetings of the local. While it may not have happened in the most recent past, board members have a right to publish what has taken place during a meeting. If there is an issue regarding the accuracy of what was put out, that is a different issue, but the mere fact that the actions of the board members was reported to the membership is not a violation of the International nor the Local's constitution.

With respect to the racial issues, unless I have read the membership of local 3477 wrong, I find the members have little to no tolerance for the childish behaviors of the executive board and are more interested in job security and getting a contract that is decent, maintaining their benefits. I also noted that you did not make mention of the threats of physical harm made during the meetings, which too is considered to be intolerable.

I will be in attendance at your executive board meeting on Tuesday, August 16th, with the hope that I can assist in bringing some civility to the local. I believe it is very important that the board take a look at how each one of you have contributed to the progress or the detriment of the local.

If there are any questions before Wednesday, please do not hesitate to contact me at (312) 641-6060.

Sincerely,

Nefertiti Smith, M.S.W.
Regional Director

Cc:    Henry Bayer
       Maggie Lorenc
       Avik Das

March 7, 2005

To: Michael J. Rohan
    Director of Probation and Court Services

From: Andrea Korte
      Probation Officer II

Re: Part-time Employment

This is to officially inform you that I will be returning to work from my maternity leave on Monday, April 4, 2005. As I indicated in my maternity leave request dated 12-02-04, I am hoping to be allowed to work a part-time schedule of 20 hours per week upon my return.

I am proposing to work a full day on Mondays and Tuesdays and in the a.m. on Wednesdays. As Tuesday is my normal court day, I would always plan to be present to handle any and all cases in court. If a sufficient need arises, I am also prepared to be as flexible as possible to accommodate the needs of my caseload and Juvenile Court. I expressed these intentions to both Jose Isais, my DCPO, as well as Diane Bufano, my supervisor, prior to going on maternity leave and both have been supportive of this plan as well.

As I noted in my prior correspondence, I have been a field probation officer in the North Division since July of 1988, and have worked hard to always provide my clients and their families with the best service possible while simultaneously upholding and furthering the ideals of Cook County Juvenile Court. I remain confident that working part-time will not compromise my commitment to my career here, but will enable me to successfully balance this with my new responsibilities to my family as well.

As a respected veteran field probation officer with nearly 17 years of experience, I trust that my commitment to Juvenile Court speaks for itself. I can assure you that I will continue to demonstrate the same level of professionalism and responsibility in carrying out my duties as a probation officer as I always have. Thank you again for your consideration in these matters.

Respectfully submitted,

Andrea L. Korte

Andrea L. Korte, A.M., LSW

Cc:   Bill Siffermann, Deputy Director of Probation and Court Services
      Charles Young, Director of Administrative Services
      Thomas Morgan, Personnel Administrator
      Jose Isais, DCPO/North Division
      Diane Bufano, SPO/North Division
      Michael Willis, AFSCME President

AFSCME LOCAL **3477**
STEP **4**

 **AFSCME.**
In the public service

# OFFICIAL GRIEVANCE FORM

\ME OF EMPLOYEE _James Worthington_ DEPARTMENT _Juvenile Probation_
CLASSIFICATION _Supervisory Probation Officer ( PO III )_
WORK LOCATION _Juvenile Court_ IMMEDIATE SUPERVISOR _____
TITLE _____

## STATEMENT OF GRIEVANCE:

List applicable violation: Employer violated Art XIX, Sect. 1; Art. XX,
Sect 9, and any other applicable contract sections when it issued
a seven day suspension for alleged political activity.

Adjustment required: That the discipline be retracted, the discipline be
removed from his file, the grievant be given back pay, and any
and all other remedies that would otherwise make the grievant whole.

**I authorize the A.F.S.C.M.E. Local** _3477_ **as my representative to act for me in the disposition of this grievance**

.te _6/15/0_ Signature of Employee _James Worthington_
Signature of Union Representative _Maggie Jones_ Title _Staff Representative Council 31_
Date Presented to Management Representative _6-22-10_
Signature _____ Title _____

Disposition of Grievance: _____

**THIS STATEMENT OF GRIEVANCE IS TO BE MADE OUT IN TRIPLICATE. ALL THREE ARE TO BE SIGNED BY THE EMPLOYEE AND/OR THE AFSCME REPRESENTATIVE HANDLING THE CASE.**

ORIGINAL TO _Bruce Wisniewski_
COPY _____
COPY: LOCAL UNION GRIEVANCE FILE

**NOTE: ONE COPY OF THIS GRIEVANCE AND ITS DISPOSITION TO BE KEPT IN GRIEVANCE FILE OF LOCAL UNION.**



**Council 31**
**AFSCME**

October 22, 2013

Michael Willis. President
AFSCME Local 3477
6534 South Rockwell
Chicago, Illinois 60629

> RE    **Request to File Unfair Labor Practice Charge for**
> **Juan Mojica**

Dear Mike:

On October 21, 2013, I received a request from Maggie Lorenc, Staff
Representative to file an Unfair Labor Charge (ULP) against the Office of the
Chief Judge and Juvenile Probation Administration. This is the very same case that
you, Jason Smith, Maggie and I discussed in great detail on October 8, 2013. At
that time, I explained that once the Union and Management has entered into an
agreement, we cannot turn around and file a ULP over the very same issue.

The issues as outline in the request was 1) the discipline was too harsh; 2)
Management use coercive tactics; 3) the Department failed to turn over requested
documents and 4) requiring the Union to sign the settlement agreement.

As it relates to the discipline, this is a Collective Bargaining (contract) violation
and not subject of a ULP; the tactics as described in the write up was manipulative
and at best, it would be incumbent upon us (the Union) to out maneuver
management; the issue relative to the Department's failure to turn over documents
is currently pending at the Labor Board now, this information could be used to
further support the current charges and finally, under the Collective Bargaining
Agreement and past history with your local, there is absolutely nothing requiring
the Union to sign off on a document, agreement, etc. that we are not in agreement
with. From the beginning, you made yourself very clear that you believed the
discipline was too harsh and wanted to take this case to arbitration. As you will
remember it was Juan Mojica who insisted that the settlement be reached, because
of his fear other delinquencies will be discovered.

This is a none-precedent setting case. It has no bearing on future discipline cases in
your local or the County. It is the position of Council that this is not a subject for
Labor Board; therefore, this case is being rejected.



American Federation of State, County and Municipal Employees, Council 31

TE (312) 641-6060    FAX (312) 861-0979    WEB www.afscme31.org    205 North Michigan Avenue, Suite 2100  Chicago, Illinois 60601

If there are further questions you have, please do not hesitate to contact Maggie Lorenc or myself at (312) 641-6060.

Fraternally,

Nderlul Smull, M.S.W
Regional Director

Cc:    Marci Bailey
       Maggie Lorenc
       Jason Smith

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s) |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | FEPA<br>X EEOC | 440-2014-03346<br>and EEOC |

Illinois Department Of Human Rights

_State or local Agency, if any_

| Name (indicate Mr. Ms. Mrs.)<br>**AFSCME Local 3477** | Home Phone (incl. Area Code)<br>**(773) 242-4658** | Date of Birth |
|---|---|---|

Street Address<br>**1100 S. Hamilton, Chicago, IL 60623**

City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**OFFICE OF THE CHIEF JUDGE CIRCUIT COURT OF COOK COUNTY - JUVENILE PROBATION DEPARTMENT** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(312) 433-6776** |
|---|---|---|

Street Address<br>**1100 S. Hamilton, Chicago, IL 60612**

City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

City, State and ZIP Code

Street Address

DISCRIMINATION BASED ON (Check appropriate box(es).)

| X RACE | COLOR | SEX | RELIGION | NATIONAL ORIGIN |
| RETALIATION | AGE | DISABILITY | GENETIC INFORMATION | |
| OTHER (Specify) | | | | |

DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest      Latest<br>**04-22-2014**

X CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

AFSCME Local 3477 is filing the instant charge on behalf of Black probation officers. Since 2008 and ongoing, Respondent has subjected Black employees to different terms and conditions of employment than non Black employees, including but not limited to, discipline, work assignments, transfer requests and administering of supervisory tests.

Respondent has discriminated against blacks as a class in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Apr 28, 2014     _Charging Party Signature_<br>Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

# Password posted online

### Jason Smith (OCJ)

Tue 9/30/2014 9:50 AM

Rose M Golden (OCJ) <rose.golden@cookcountyil.gov>;

Lloyd Marshall Jr. (OCJ) <lloyd.marshalljr@cookcountyil.gov>; Tyrone Hutson (OCJ) <tyrone.hutson@cookcountyil.gov>; Kisha T Roberts (OCJ) <kisha.roberts@cookcountyil.gov>; Martin Gleason (OCJ) <martin.gleason@cookcountyil.gov>; Russell Akis (OCJ) <russell.akis@cookcountyil.gov>; Jeffery Haynes (OCJ) <jeffery.haynes@cookcountyil.gov>; Samuel Johnson (OCJ) <samuel.johnson@cookcountyil.gov>; Juanita A Cannon (OCJ) <Juanita.Wills@cookcountyil.gov>

Good Morning Rose,

I have received a number of complaints in regard to the employees' ID number being posted online. The Probation Officers are afraid that someone will be able to access their email address because this is the number they used to log in on their email and log on to their computers with this information. A number of officers attempted to change their password, but was denied access. This is a safety issue for our members and we should discuss allowing our members the ability to change their passwords. Please let me know when you are available to have this discussion.

Thanks

Jason Smith
President/ AFSCME Local 3477

# ILLINOIS LABOR RELATIONS BOARD

☐ **LOCAL PANEL:** e.g., County of Cook, City of Chicago, Chicago Transit Authority, Forest Preserve District of Cook County

☒ **STATE PANEL:** e.g., State of Illinois, county governments, municipal governments, Regional Transportation Authority

| DO NOT WRITE IN THIS SPACE |
|---|
| CASE NUMBER |
| |
| DATE FILED |
| |

## CHARGE AGAINST LABOR ORGANIZATION

**INSTRUCTIONS:** In accordance with the Illinois Public Labor Relations Act, 5 ILCS 315 (2014), *as amended*, and the Rules and Regulations of the Illinois Labor Relations Board, 80 Ill. Adm. Code §1200.20 and 1220.20, the following information is required. Submit an original and one (1) copy of this charge to the Illinois Labor Relations Board. If more space is required for any item, attach additional sheet(s), numbering items accordingly. This petition may be filed in either of the Board's offices or at **ILRB.Filing@illinois.gov**. Facsimiles are no longer accepted.

| Illinois Labor Relations Board<br>801 South 7ᵗʰ Street, Suite 1200A<br>Springfield, Illinois 62703<br>(217) 785-3155 | Illinois Labor Relations Board<br>160 North LaSalle Street, Suite S–400<br>Chicago, Illinois 60603-3103<br>(312) 793-6400 |
|---|---|

This agency is requesting disclosure of information that is necessary to accomplish the statutory purpose as outlined under 5 ILCS 315 (2014), as amended. Disclosure of this information is REQUIRED. Failure to provide any information will result in this form not being processed.

> **BY STATUTE ONLY CHARGES FILED AND SERVED ON THE PARTIES WITHIN SIX (6) MONTHS OF THE DATE OF THE EVENT OR CONDUCT WHICH IS THE SUBJECT OF THE CHARGE WILL BE PROCESSED BY THE ILLINOIS LABOR RELATIONS BOARD.**

| | | |
|---|---|---|
| **1.** | **NAME OF LABOR ORGANIZATION AND AFFILIATION** (against whom charge is brought)<br>AFSCME COUNCIL 31, LOCAL 3477 | **TELEPHONE NUMBER**<br>312-641-6060 |
| | **STREET, CITY, STATE, ZIP**<br>205 N. MICHIGAN | **E-MAIL**<br>ROLYNCH@AFSCME31.ORG |
| **2.** | **LABOR ORGANIZATION REPRESENTATIVE**<br>ROBERT LYNCH, LLOYD MARSHALL, STEVE KASPERSKI, EUGEUGENE BOATRIGHT, JOE BELLA | **TELEPHONE NUMBER**<br>312-641-6060- |
| | **STREET, CITY, STATE, ZIP**<br>205 N. MICHIGAN, CHICAGO, IL 60601 SUITE 2100 | **E-MAIL**<br>ROLYNCH@AFSCME31.ORG |
| **3.** | **NAME OF CHARGING PARTY**<br>JASON SMITH | **TELEPHONE NUMBER**<br>773-242-4658 |
| | **STREET, CITY, STATE, ZIP**<br>3515 W CERMAK, CHICAGO, IL 60623 | **E-MAIL**<br>JASON.SMITH@COOKCOUN |
| | **JOB TITLE** (at time of alleged unfair labor practice)<br>PROBATION OFFICER | **NAME OF EMPLOYER** (at time of alleged unfair labor practice)<br>CHIEF JUDGE TIMOTHY EVANS |
| **4.** | **CHARGING PARTY REPRESENTATIVE**<br>JASON SMITH | **TELEPHONE NUMBER**<br>773-242-4658 |
| | **STREET, CITY, STATE, ZIP**<br>3515 W CERMAK, CHICAGO IL 60623 | **E-MAIL**<br>JASON.SMITH@COOKCOUN |

| 5. | It is alleged that the above-named labor organization has engaged in (an) unfair labor practice(s) within the meaning of Section 10(b) subsection(s) ( 6 ) of the Illinois Public Labor Relations Act. 1,2,3, |
|---|---|

| 6. | **BASIS OF CHARGE** (specify in detail: facts, names, addresses, sites, dates, etc.) (use attachments if necessary) |
|---|---|

Date(s) of alleged wrongful action(s):
11.10.16 - 11.21.16

Name(s) of individual(s) involved:
LLOYD MARSHALL, STEVE KASPERSKI, EUGENE BOATRIGHT AND JOE BELLA

Location(s) of alleged wrongful action(s):
1100 S. HAMILTON

Describe what happened:

A GRIEVANCE WAS FORWARDED TO AFSCME COUNCIL 31 ON 11.10.16 FOR ARBITRATION BY EMAIL. THE UNION FAILED TO SCHEDULE THIS GRIEVANCE FOR ARBITRATION AND FAILED TO APPEAR DURING THE GRIEVANCE HEARING AS REQUESTED. THE FLEX TIME SCHEDULE REQUESTED WAS DENIED BY THE EMPLOYER. I FILED A PREVIOUS UNFAIR LABOR CHARGE AGAINST COUNCIL 31 AND I HAVE CHALLENGED AFSCME COUNCIL 31 FAILURE TO PROVIDE FAIR REPRESENTATION. THE UNION HAS PARTICPATED AND CONSPIRED WITH THE EMPLOYER AND MANAGEMENT TO VIOLATE THIS MEMBER'S RIGHTS UNDER THE CONTRACT WHERE THE LANGUAGE IS NOT AMBIGUOUS AND CONTRADICTS THE LANGUAGE IN THE POLICY, THE GRIEVANCE PROCESS OR FLEX TIME SCHEDULE.
OBJ;OBJ;OBJ;

**SUPPORTING DOCUMENTS** (please include copies of any documents relevant to your charge)
The supporting documents filed with this charge will be considered part of the charge and will be served on the Employer.

| 7. | **RELIEF OR REMEDY SOUGHT BY CHARGING PARTY** |
|---|---|

I AM REQUESTING THAT AFSCME COUNCIL 31 RECEIVE A FINE, CEASE AND DESIST WITH THE DISCRIMINATORY PRACTICES AND THAT THIS CASE BE FORWARDED FOR ARBITRATION.

I have read the above petition and all attachments. The statements contained therein are true to the best of my knowledge and belief.

NAME: JASON SMITH

BY: _____
Signature of person filing petition

TITLE: PROBATION OFFICER

DATE: 3.24.17


We Make America Happen

Lee Saunders
President

Laura Reyes
Secretary-Treasurer

Richard Abelson
Judicial Panel Chairperson

Judicial Panel Members
Kahim Boles
Philadelphia, PA

Richard Gollin
Jersey City, NJ

Michael Hanna
Portland, OR

Sheila Hill
Catonsville, MD

Keith January
Detroit, MI

Gerard Jolly
Grove City, OH

Theodorah McKenna
Los Angeles, CA

Dayton Nakanelua
Honolulu, HI

Steve Preble
Wolcott MN

Jim Tucciarelli
Staten Island, NY

February 17, 2017

## JUDICIAL PANEL CASE NO. 16-54-A
## Smith v. Marshall

### GREETINGS:

Enclosed is the decision of the full Judicial Panel on the appeal filed on the above matter from the decision of Judicial Panel member Steve Preble.

By a vote of 8-0, the full Judicial Panel has sustained the decision of the trial officer.

In Solidarity,

Richard Abelson
Judicial Panel Chairperson

RA:spp

cc:   Lee Saunders, President
      Laura Reyes, Secretary-Treasurer
      Gino Carbenia, Regional Director O&FS
      Erin Okantey, AFSD
      Jason Smith
      Lloyd Marshall

JUDICIAL PANEL CASE NO. 16-54-A
Smith v. Marshall

## DECISION ON THE APPEAL TO THE FULL PANEL

The full Judicial Panel at its meeting on **February 9** pursuant to Article XI, Section 14 of the International Constitution, heard and decided the appeal filed in this case.

After reviewing the record and discussing the issues presented by the appeal, the full Judicial Panel voted to sustain the decision of the trial officer.

DATED: **February 17, 2016**                    BY THE FULL JUDICIAL PANEL

Panel members voting aye:  Jim Tucciarelli, Keith January, Dayton Nakanelua, Michael Hanna, Sheila Hill, Theodorah McKenna, Gerard Jolly, Kahim Boles

Panel members voting no:

Panel members not participating: Richard Abelson, Steve Preble

Panel members absent:  Richard Gollin



**We Make America Happen**

Lee Saunders
President

Laura Reyes
Secretary-Treasurer

Richard Abelson
Judicial Panel Chairperson

Judicial Panel Members

Kabir Bates
Philadelphia, PA

Richard Collin
Jersey City, NJ

Michael Hanna
Portland, OR

Shola Hill
Catonsville, MD

Keith January
Detroit, MI

Gerard Jolly
Grove City, OH

Theodorah McKenna
Los Angeles, CA

Dayton Nakanelua
Honolulu, HI

Steve Preble
Itasca, MN

Jim Tucciarelli
Staten Island, NY

December 22, 2016

Jason Smith
3515 W. Cermak
Chicago IL 60623

Lloyd Marshall
10423 S Morgan
Chicago, IL 60643

Re: JUDICIAL PANEL CASE NO. 16-54-A
    Smith v. Marshall

GREETINGS:

The full Judicial Panel will meet to hear the appeal in the above-captioned case on **February 9, 2017 at 10 a.m. at the Hilton Atlanta, 255 Courtland Street NE, Atlanta, GA.**
Pursuant to the Rules of Procedure of the Judicial Panel, any interested party wishing to do so may file with the Judicial Panel a written statement setting forth its position on the appeal. The Judicial Panel must receive such written statement no later than **January 16, 2017** in order to be considered by the Full Panel.

In Solidarity,

Richard Abelson
Judicial Panel Chairperson

RA:spp

cc:    Lee Saunders, President
       Laura Reyes, Secretary-Treasurer
       Gino Carbenia, Regional Director O&FS
       Erin Young, AFSD



American Federation of State, County and Municipal Employees, AFL-CIO
TEL (202) 429-1210    FAX (202) 822-8169    1625 L Street, NW, Washington, DC 20036

"Violation of contract" - the labor board does not handle violations of the contract, that is what the grievance procedure is for and the labor board will defer any violations of the contract to that process and an arbitrator. Disciplining an employee is not inherently a violation of the contract unless it is without just cause and is not progressive and corrective. Therefore, what other sections of the contract do you believe have been violated?

Unwarranted investigation:"
- who was investigated?
- who was involved in the investigation?
- when did these meetings take place?
- how many times did these meetings take place?
- how long did the meetings last?
- what was said at these meetings?
- were the members being investigated being singled out for their union activment?
- what was the nature of the issue being investigated?
- did discipline result as a result of the investigation?
- who was disciplined?
- what was the level of discipline?

This information will be used if we go to with our union to their own legal staff, to determine if there is a violation of the law. "Exceptions" are exceptions that can be used in mediating the labor board to act and stay the hearing to act at offer. For example, the labor board will not decide matters of a contract or discrimination, their powers do not extend past these areas entirely. Exceptions on which situations an exception may be used are listed and are for this most part reserved for a very specific time where some of the rights the previous under an contract.

If you have any questions, please let me know. Please share this correspondence with other executive board members who have expressed interest in pursuing this action. Thank you.

Maggie Loren
Staff Representative
AFSCME Council
(312) 641-6064 ext. 4497

Important/Confidential: This message is intended only for the use of the addresses shown above. It contains information that may be privileged, confidential, and or exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are hereby notified that the copying, use or distribution of any information or material transmitted in or with this message is strictly prohibited. If you received this message in error, please contact me immediately and destroy the original message. Thank you.

*************************

From: ojinen-davis@hotmail.com [ojinen-davis@hotmail.com]
Sent: Wednesday, January 11, 2013 12:10 PM
To: Maggie Loren
Subject: Unfair Labor Practice

Maggie

At the Executive meeting, the board voted to file a ULP against our Director Mike Roland. I am seeking your thoughts as any documentation needed to file a claim. If you could please inform us what needs to be place in the petition. Also, will there witnesses who could be willing to come forward from any local locals.

Also, inaction notify our Local to base here. The department has not been doing too with the unfair disciplining of our members. Indeed we feel it is unjust. This union and local needs to take a stand and put a stop to all of the madness.

Unfortunately I won't be at Tuesday meeting. I am just getting back to work due to the loss of my mother.

James
Executive Board Member Local #1477

Print                                                                                          2/22/16 6:38 AM

"Violation of contract" - the labor board does not handle violations of the contract; that is what the grievance procedure is for and the labor board will defer any violations of the contract to that process and an arbitrator. Disciplining an employee is not inherently a violation of the contract unless it is without just cause and is not progressive and corrective. Therefore, what other sections of the contract do you believe have been violated?

"Unwarranted investigations":
- who was investigated?
- who was involved in the investigation?
- when did these meetings take place?
- how many times did these meetings take place?
- how long did the meetings last?
- what was said at these meetings?
- were the members being investigated being singled out for their union activities?
- what was the nature of the issue being investigated?
- did discipline result as a result of the investigation?
- who was disciplined?
- what was the level of discipline?

This information will be used by myself, with consultation from our legal staff, to determine if there is a violation of the law. As I explained at the exec board meeting, the labor board is not always the forum to handle issues. For example, the labor board will not decide matters of racial or sex discrimination, their power do not extend past those of union activity. Depending on what information is compiled, these issues may be better suited for another governmental agency or an already being grieved through the process under our contract.

If you have any questions, please let me know. Please share this correspondence with other executive board members who have expressed interest in pursuing this action. Thank you

Maggie Lorenc
Staff Representative
AFSCME Council 31
(312) 641-6060 ext. 4357

Important/Confidential: This message is intended only for the use of the addressees shown above. It contains information that may be privileged, confidential, and or exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are hereby notified that the copying, use or distribution of any information or material transmitted in or with this message is strictly prohibited. If you received this message in error, please contact me immediately and destroy the original message. Thank you.

*********************

From: wjamesdown@aol.com [wjamesdown@aol.com]
Sent: Wednesday, January 11, 2012 12:46 PM
To: Maggie Lorenc
Subject: Unfair Labor Practice

Maggie

At the December meeting, the board voted to file a ULP against our Director Mike Rohan. I am sending you this draft, since we were informed it needed more. Could you please inform me what needs to be place in this petition? Also we do have witnesses who would be willing to come forward to verify their charges.

Also something really needs to be done here. The department is going crazy with the unfair disciplining of our members and we feel it is unjust. This union and local needs to take a stand and put a stop to all of this madness.

Unfortunately I was not at Tuesday meeting. I am just getting back to work, due to the loss of my mother.

James
Executive Board Member Local #3477

Print

2/22/16 6:31 AM

Subject: FW: Letters from Michael Willis
Date: Fri, 13 Jan 2012 19:53:33 -0600

these are the letters that Mike wanted me to forward to you. Any questions email me!!!

Michael Willis.

On Jan 14, 2012, at 12:05 AM, '　　　　　　" 　　　　　 wrote:

> What is his suggestion? This is ridiculous
>
> *Connected by DROID on Verizon Wireless*
>
> -----Original message-----
>
> **From:** Michael <　　　　　　　　　　>
> **To:** Jason Smith <　　　　　　　　　　>
> **Sent:** Sat, Jan 14, 2012 05:51:49 GMT+00:00
> **Subject:** Re: letter 3
>
> Jason. Judge Stulley. Thinks I should not send the letter to the judge yet. He said Rohan and the judge working together.
>
> Michael Willis.
>
> On Jan 13, 2012, at 6:52 PM, Jason Smith 　　　　　　　　　　 wrote:
>
>> I change some language in this letter. I want you to compare the second letter to this letter. I was wondering why we cannot send this letter to Bruce as a response to your grievance. Give me your thoughts. I am sending it out tonight certified mail. I want to make sure I send all the appropriate documents. I will try and call you again around 9 p.m.
>>
>> <Grievance 3.doc>

about:blank

Page 2 of 2

Print

2/22/16 6:31 AM

| | |
|---|---|
| **Subject:** | Re: letter 3 |
| **From:** | Jason Smith (jason4951@sbcglobal.net) |
| **To:** | willissigma1@hotmail.com; |
| **Date:** | Saturday, January 14, 2012 8:24 AM |

Mike,

I respect his opinion, but how long are we suppose to be afraid? We cannot be afraid to challenge the status quo. If Martin Luther King would have never fought for our rights we would be in the same predicament today and nothing would have changed. The unfairness has to stop some where and change has to come eventually. Let me know how your conversation goes and you let me know if you want the second letter sent.

**From:** Michael <willissigma1@hotmail.com>
**To:** "jason4951@sbcglobal.net" <jason4951@sbcglobal.net>
**Sent:** Sat, January 14, 2012 12:38:34 AM
**Subject:** Re: letter 3

*Mike,*

*You do know that Chief Judge Evans will probably share your letter with Rohan. Be careful, unless you are ready to leave because you know as well as I how vindicted Rohan can be. Let's talk before you send this to Tim.*

*Judge Mike*

**From:** tripplem@hotmail.com
**Subject:** FW: Letters from Michael Willis
**Date:** Fri, 13 Jan 2012 20:11:39 -0600

what do you think??/------

**From:** willissigma1@hotmail.com
**To:** tripplem@hotmail.com

about:blank

Page 1 of 2

Illinois Labor Relations Board

During a meeting on Dec 10, 2015, President Jason smith of local 3477 requested a motion to advance this grievance to arbitration. Jason smith explained to the board that the grievance had merit as management and the employer refused to hear the grievance. He explained that by the employer refusing to hear the grievance that this Probation Officer had the right to proceed to arbitration. Lloyd marshall, Martin Gleason, Kisha Roberts- Tabbs and Samuel Johnson failed to advance this issue to arbitration by refusing to vote on the motion made by Theodis Chapman. The board members of this local and council 31 is aware of discrimination and retaliation that has taken place against this probation officer of his non union activities and activities and are also aware that I have been outspoken against council 31 and local 3477 because of their failure to provide proper representation to the probation officers by allowing deputy chief probation officers and the director the authority to discipline probation officers and instituting policies that violate the collective bargaining agreement and the constant violation of due process and perpetuating these violations by not addressing it through arbitration. The local and Council 31 are aware that I and a group of probation officers have initiated a class action lawsuit to contest the discriminatory practices under the office of the chief judge juvenile probation against black officers. Vice President Lloyd Marshall has made statements about parlaying favors for management. AFSCME Council 31 was present and allowed this injustice to happen. I filed a grievance over this same issue last year and never received a response from the union about an arbitration date. I filed a grievance over compensatory time and never heard a from the union about an arbitration. i have written letters to both the president of this local and AFSCME Council 31 about these violations and others as well.

Patrick
Johnson

Illinois Labor Relations

MAR 2 5 2016

RELATIONS BOARD
SPRINGFIELD, ILL.



**Make America Happen**

Lee Saunders
President

Laura Reyes
Secretary-Treasurer

**Vice Presidents**
Ken Allen
Portland, OR

Richard L. Caponi
Pittsburgh, PA

Ken Deitz, RN
San Dimas, CA

Greg Devereux
Olympia, WA

Danny Donohue
Albany, NY

David R. Filman
Harrisburg, PA

Kathleen Garrison
Latham, NY

Mattie Harrell
Franklinville, NJ

Johanna Puno Hester
San Diego, CA

Danny J. Homan
Des Moines, IA

Melvin Hughes Sr.
Houston, TX

Salvatore Luciano
New Britain, CT

John A. Lyall
Worthington, OH

Kathryn Lybarger
Oakland, CA

Roberta Lynch
Chicago, IL

Christopher Mabe
Westerville, OH

Glenard S. Middleton Sr.
Baltimore, MD

Ralph Miller
Los Angeles, CA

Gary Mitchell
Madison, WI

Victoria E Mitchell
New York, NY

Douglas Moore Jr.
San Diego, CA

Frank Moroney
Boston, MA

Michael Newman
Chicago, IL

Henry Nicholas
Philadelphia, PA

Randy Perreira
Honolulu, HI

Steven Quick Sr.
Indianapolis, IN

Lillian Roberts
New York, NY

Eddie Rodriguez
New York, NY

Lawrence A. Roehrig
Lansing, MI

Joseph P. Rugola
Columbus, OH

Eliot Seide
South St. Paul, MN

Mary E. Sullivan
Albany, NY

Braulio Torres
San Juan, PR

Jeanette D. Wynn
Tallahassee, FL

April 6, 2016

Jason Smith, President
AFSCME Local 3477
3515 W. Cermak Road
Chicago, IL 60623-3130

Dear Brother Smith:

Enclosed is an executive summary of the findings made by our International
Auditor as a result of the review of Illinois Local 3477's records. The purpose of the
executive summary is to guide Local 3477's financial decision makers and executive
board in changing and/or instituting policies and procedures that will aid the Local in
avoiding financial difficulties.

I would like to thank the officers of Local 3477 for assistance they provided
to the International Auditor in conducting the review. If you need any further
information about the review, please do not hesitate to contact me at (202) 429-8410.

In solidarity,

Karen J. Tyler
Associate Director, Auditing

Enclosure

cc:    Steve Fantauzzo, Chief of Staff to the President
       Mike Sukal, Director, Organizing & Field Services
       Jeffrey Taggart, Director, Accounting & Auditing
       Gino Carbenia, Central Regional Director
       Roberta Lynch, Executive Director, AFSCME Council 31

Chicago, IL 60612


O: 312-433-6575

F: 312-433-7388

_____

From: Mike Gandhi (Facilities Management)
Sent: Friday, May 27, 2016 10:13 AM
To: Avik Das (Juvenile Probation)
Subject: RE: ALERT: Union Election Participation
Prohibited During Work Hours


Avik,


We have removed the meeting from the Auditorium
calendar. Jason Smith called me asking for reasons
and that they have done similar activities many
times in the past. I told him that we cannot allow
the Union to tie up the auditorium to do Union
business the whole day and that I would be happy to
give them the room during lunch hours of 12-2 pm.


He wants me to send him the document stating that in
the rules. He also stated that he will be calling
the president.  Thank you.


Mike Gandhi

Deputy Director

Cook County Facilities

CELL: (312) 995-3948

OFFICE: (312) 433-4564


From: Avik Das (Juvenile Probation)
Sent: Thursday, May 26, 2016 7:42 AM
To: Mike Gandhi (Facilities Management)